**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br>     Plaintiff & Counterclaim-Defendant, <br><br>   v. <br><br> GILEAD SCIENCES, INC. and <br> GILEAD SCIENCES IRELAND UC, <br><br>     Defendants & Counterclaim-Plaintiff. | C.A. No. 19-02103-MN |

## DEFENDANTS' SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES AND DEFENDANT GILEAD SCIENCES, INC.'S SECOND AMENDED COUNTERCLAIMS

Pursuant to Federal Rules of Civil Procedure 13 and 15(a), Defendant Gilead Sciences, Inc. ("GSI") and Gilead Sciences Ireland UC ("GSIUC") (collectively, "Defendants") hereby file Defendants' Second Amended Answer and Affirmative Defenses and Defendant GSI's Second Amended Counterclaims in response to the Complaint of the United States of America (the "Government" or "Plaintiff"). This filing supersedes Defendants' First Amended Answer and Affirmative Defenses and GSI's First Amended Counterclaims, filed on March 27, 2020 (D.I. 13).

## ANSWER

Defendants Gilead Sciences, Inc. ("GSI") and Gilead Sciences Ireland UC ("GSIUC") (collectively, "Defendants") hereby respond to the Complaint of the United States of America (the "Government" or "Plaintiff") as follows.  Defendants deny each and every allegation contained in the Government's Complaint that is not expressly admitted below.  To the extent any factual allegation below is admitted, it is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably may follow from the admitted facts.  No admission below should be construed as an admission or concession regarding the relevance of any allegation to any cause of action identified in the Complaint.  No admission below should be construed as an admission concerning the accuracy, authenticity, admissibility, or relevance of any documents cited or referenced in the Complaint.  No admission below with respect to GSI should be construed as an admission with respect to GSIUC, nor should any admission below with respect to GSIUC be construed as an admission with respect to GSI.  Defendants deny that the Government is entitled to the relief requested in the Complaint or to any other relief.

1.      Defendants admit that HIV is the cause of AIDS.  Defendants admit that researchers, including Defendants' researchers, have made and continue to make extensive efforts to develop treatments to prevent the spread and effects of HIV and AIDS.  Defendants admit that millions of people are living with HIV and that millions have died due to AIDS.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 1 of the Complaint and therefore deny those allegations.

2.      Defendants deny that CDC researchers "succeeded where others had not" and "conceived of and developed" the use of emtricitabine and "tenofovir or a tenofovir prodrug" as

pre-exposure prophylaxis, or PrEP.  Defendants deny that CDC researchers used "new" and "precise" animal modeling methods.  Defendants deny that the two-drug regimens described in Paragraph 2 were "innovative" as of the mid-2000s.  Defendants admit that Truvada® (tenofovir disoproxil fumarate and emtricitabine) is indicated in combination with safer sex practices for PrEP to reduce the risk of sexually acquired HIV-1 in adults at high risk.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 2 of the Complaint and therefore deny those allegations.

3.     Defendants admit that, as of 2006, at least some scientists and community advocates expressed concerns that PrEP could promote unsafe sexual practices and consequently increase the number of sexually transmitted diseases and questioned whether some patients would adhere to the PrEP regimen.  Defendants deny the remaining allegations in Paragraph 3 of the Complaint.

4.     Defendants deny that the CDC's efforts constituted a "breakthrough" or that the CDC developed "new PrEP regimens."  Defendants admit that, following the CDC macaque research, researchers changed the methodology of at least one human PrEP trial.  Defendants deny that the human PrEP trials used or demonstrated the efficacy of "CDC's new PrEP regimens."  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 4 of the Complaint and therefore deny those allegations.

5.     Defendants deny that the four patents asserted in this case reflect any "innovative regimens" developed by the CDC.  Defendants deny that the CDC is entitled to a "reasonable royalty."  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 5 of the Complaint and therefore deny those allegations.

6.    Defendants admit that one or both of GSI and GSIUC manufactures, markets, and sells Truvada® and Descovy®, either in the United States or elsewhere in the world.  Defendants admit that these products include a combination of (i) FTC and (ii) a tenofovir prodrug. Defendants admit that, when used as directed as part of a PrEP regimen and safe sex practices, these products are effective at reducing the risk of sexually transmitted HIV infection.  Defendants admit that GSI received FDA approval for use of these products in treating HIV infections in combination with other medications.  Defendants admit that GSI subsequently received FDA approval for the use of Truvada® and Descovy® as part of PrEP regimens.  Defendants deny that the use of Truvada® and Descovy® as part of PrEP regimens is claimed and protected by CDC's patents.  Defendants deny that the CDC's PrEP research was "groundbreaking."  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny that GSIUC has FDA approval to sell Truvada® or Descovy®, including for use as PrEP regimens.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 6 of the Complaint and therefore deny those allegations.

7.    Defendants admit that GSI markets and sells Truvada® and Descovy® in the United States for all of their indications, including their PrEP indications.  Defendants deny that the PrEP regimens for which Truvada® and Descovy® are indicated are "protected by CDC's patents." Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to

form a belief as to the remaining allegations in Paragraph 7 of the Complaint and therefore deny those allegations.

8.      Defendants deny the allegations in Paragraph 8 of the Complaint.

9.      Defendants admit that they have not obtained a license from the CDC for any of the four patents asserted in the Complaint, which Defendants contend are invalid.  Defendants admit that they have earned revenues from the sale of Truvada® and Descovy®, either in the United States or elsewhere, and that Defendants have not paid and have no obligation to pay royalties to the CDC based on those sales revenues.  Defendants lack sufficient knowledge or information to form a belief as to the vague allegation concerning "research funded by hundreds of millions of taxpayer dollars" and therefore deny that allegation.  Defendants deny the remaining allegations in Paragraph 9 of the Complaint.

## I.      Nature of the Action[1]

10.      Paragraph 10 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Plaintiff has alleged that Defendants have infringed U.S. Patent Nos. 9,044,509 (the "'509 Patent"), 9,579,333 (the "'333 Patent"), 9,937,191 (the "'191 Patent"), and 10,335,423 (the "'423 Patent") (collectively, the "Patents-in-Suit") under 35 U.S.C. § 271 *et seq.*  Defendants deny that they have infringed any valid and enforceable claim of the Patents-in-Suit.

## II.     Parties

11.      Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 11 of the Complaint and therefore deny those allegations.

---

[1] Defendants' inclusion of the headings from the Government's Complaint is for purposes of convenience only and should not be construed as an admission or concession regarding the accuracy, implications, or relevance of those headings.

12.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 12 of the Complaint and therefore deny those allegations.

13.     Defendants admit the allegations in Paragraph 13 of the Complaint.

14.     Defendants admit that Defendant GSIUC (formerly known as Gilead Sciences Limited) is an unlimited liability company formed under the laws of Ireland, with a principal place of business at IDA Business & Technology Park, Carrigtohill, County Cork, Ireland.  Defendants admit that GSIUC is a wholly owned, indirect subsidiary of GSI.  Defendants deny that GSIUC markets or sells Truvada® and Descovy® for PrEP in the United States or for the U.S. market. Defendants' investigation is ongoing, and based on the information currently known to Defendants, Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 14 and therefore deny those allegations.

15.     Paragraph 15 of the Complaint contains conclusions of law to which no response is required.

**III.     Jurisdiction and Venue**

16.     Paragraph 16 of the Complaint contains conclusions of law to which no response is required.

17.     Paragraph 17 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that GSI is a Delaware corporation.  Defendants admit that GSI and Emory University filed a complaint against Aurobindo Pharma Ltd. and Aurobindo Pharma USA, Inc. in Case No. 1:18-cv-00765 in the District of Delaware on May 18, 2018.  Defendants admit that GSI and Emory University filed a complaint against Amneal Pharmaceuticals LLC in Case No. 1:17-cv-00943 in the District of Delaware on July 13, 2017.

18.     Paragraph 18 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that GSIUC has manufactured Truvada® and Descovy® products, at least for non-U.S. markets, and that Truvada® and Descovy® products have been labeled, marketed, distributed, and sold to residents of Delaware.  Defendants admit that Janssen Pharmaceutica, N.V., Janssen Sciences Ireland UC, GSI, and GSIUC filed a complaint against Mylan Pharmaceuticals, Inc. and Mylan Inc. in Case No. 1:15-cv-00760 in the District of Delaware on August 31, 2015.  Defendants admit that GSI and GSIUC filed a complaint against AbbVie, Inc. in Case No. 1:15-cv-00399 in the District of Delaware on May 19, 2015.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 18 and therefore deny those allegations.

19.     Paragraph 19 of the Complaint contains conclusions of law to which no response is required.

20.     Defendants admit that GSI has earned revenues from the sale of Truvada® for PrEP and Descovy® for PrEP in the United States.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21.     Paragraph 21 of the Complaint contains conclusions of law to which no response is required.

## IV.   Technical and Historical Background

### A.     The Human Immunodeficiency Virus

22.     Defendants admit the allegations in Paragraph 22 of the Complaint.

23.     Defendants admit the allegations in Paragraph 23 of the Complaint.

– 7 –

24.     Defendants admit that HIV infects human $CD4^+$ cells (among others), uses those cells to replicate the virus, and kills $CD4^+$ cells.  HIV infection of $CD4^+$ cells and HIV replication are complicated and involve numerous chemical and biological reactions.  Defendants admit the basic steps outlined in Paragraph 24 of the Complaint, except to the extent that the description is overly simplistic and omits critical details in the infection and replication process.

25.     Defendants admit that, over time, an HIV infection can lead to acquired immune deficiency syndrome ("AIDS").  Defendants likewise admit that AIDS is diagnosed when a person's $CD4^+$ T cell count falls below 200 cells/$mm^3$ or the person has an AIDS-defining illness. Defendants further admit that a person diagnosed with AIDS often has opportunistic illnesses due to a weakened immune system.  To the extent there are other allegations in Paragraph 25 of the Complaint, Defendants deny the allegations as being overly simplistic and omitting critical details.

26.     Defendants admit the basic principles outlined in Paragraph 26, except to the extent that the description is overly simplistic and omits critical details in the infection process.

27.     Defendants admit that HIV-1 and HIV-2 are the major types of HIV; that HIV-1 and HIV-2 can both lead to a weakening of an infected person's immune system; that HIV-1 and HIV-2 are genetically distinct; that the recommended antiretroviral treatments may be different for patients infected with HIV-1 versus HIV-2; and that HIV-1 is the more predominant type of HIV found in human infections worldwide.  To the extent there are other allegations in this paragraph, Defendants deny the allegations as being overly simplistic and omitting critical details.

28.     Defendants admit the allegations in Paragraph 28 of the Complaint.

29.     Defendants admit the allegations in Paragraph 29 of the Complaint.

**B.      The HIV/AIDS Epidemic**

30.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 30 of the Complaint and therefore deny those allegations.

– 8 –

31.     Defendants admit the allegations in Paragraph 31 of the Complaint, except to the extent that the efficacy of ART regimens can vary based on the type of therapy, patient compliance, and other factors.

32.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 32 of the Complaint and therefore deny those allegations.

33.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 33 of the Complaint and therefore deny those allegations.

34.     Defendants admit the allegations in Paragraph 34 of the Complaint.

**C.     Treatment of HIV Infections**

35.     Defendants admit that current FDA-approved treatments for HIV are highly effective but not curative, and that these treatments can help people with HIV live longer, healthier lives but do not eliminate the virus from the human body or prevent reemergence of the virus when treatment is discontinued.   Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 35 of the Complaint and therefore deny those allegations.

36.     Defendants admit the basic statements in Paragraph 36, except to the extent that the description is overly simplistic and omits critical details in the drug-resistance process.

37.     Defendants admit that the current standard of care for HIV infection is the administration of three or more antiretroviral drugs from at least two different drug classes. Defendants further admit that the goal of this treatment strategy is to keep a patient's viral load (a measure of the amount of virus in the bloodstream) below detectable levels.  Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 37 of the Complaint and therefore deny those allegations.

38.     Defendants admit that (i) nucleoside reverse transcriptase inhibitors (NRTIs) and nucleotide reverse transcriptase inhibitors (NtRTIs), (ii) nonnucleoside reverse transcriptase inhibitors (NNRTIs), (iii) protease inhibitors (PIs), (iv) integrase inhibitors, and (v) entry or fusion inhibitors are different classes of antiretroviral drugs that can be used to treat HIV infections.

39.     Defendants admit the basic statements in Paragraph 39 of the Complaint, except to the extent that the description is overly simplistic and omits critical details about the functioning of NRTIs and NtRTIs.

40.     Defendants lack sufficient knowledge or information to form a belief as to the vague and overbroad allegations in Paragraph 40 of the Complaint and therefore deny those allegations.

41.     Defendants lack sufficient knowledge or information to form a belief as to the vague and overbroad allegations in Paragraph 41 of the Complaint and therefore deny those allegations.

42.     Defendants admit that, under the current standard of care for HIV infection, a standard ART regimen may include two NRTI/NtRTIs and one integrase inhibitor, NNRTI, or PI; however, the current standard of care also allows for treatment with other drug combinations. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 42 of the Complaint and therefore deny those allegations.

43.     The document cited in Paragraph 43 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 43 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 43 of the Complaint and therefore deny those allegations.

44.     The document cited in Paragraph 44 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 44 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 44 of the Complaint and therefore deny those allegations.

45.     Defendants admit the allegations in Paragraph 45 of the Complaint.

46.     Defendants admit that, using antiretroviral drugs currently approved by the FDA, a patient infected with HIV must use ART therapy for the remainder of the patient's life; otherwise, the patient's viral load of HIV may rise and the patient may transmit HIV to others.   Defendants deny that a patient must adhere to one single ART treatment regimen continuously for the remainder of the patient's life.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 46 of the Complaint and therefore deny those allegations.

**D.     Truvada®**

47.     Defendants admit Truvada® is a registered trademark and is the proprietary name for a fixed-dose combination therapy that was invented and developed by GSI researchers for the treatment of HIV and later for the prevention of HIV infection, and that Truvada® consists of emtricitabine and tenofovir disoproxil fumarate.

48.     Defendants admit that the Truvada® drug product, which was invented by GSI researchers, is a fixed-dose, two-drug combination of emtricitabine (FTC) and tenofovir disoproxil fumarate (TDF) that is available in four strengths: (i) 200 mg FTC with 300 mg TDF, (ii) 167 mg FTC with 250 mg TDF, (iii) 133 mg FTC with 200 mg TDF, and (iv) 100 mg FTC with 150 mg TDF.   Defendants further admit that the current package insert for Truvada® instructs the administration of only the strength containing 200 mg FTC with 300 mg TDF for adult use.

Defendants further admit that Truvada® was approved for sale by the FDA in 2004 for the treatment of HIV-1 infection in adults when used in combination with other antiretroviral agents (such as non-nucleoside reverse transcriptase inhibitors or protease inhibitors).  To the extent Paragraph 48 of the Complaint contains any additional allegations, Defendants deny them.

49.     Defendants admit that TDF is a tenofovir prodrug; that TDF is enzymatically and/or chemically converted by metabolic processes in the body into tenofovir; and that tenofovir—which cannot be administered orally—is an NtRTI that was first discovered in the 1980s.  To the extent Paragraph 49 of the Complaint contains any additional allegations, Defendants deny them.

50.     Defendants admit that they developed tenofovir disoproxil fumarate, which is specifically designed to require initial diester hydrolysis for conversion to tenofovir and subsequent phosphorylations by cellular enzymes to form tenofovir diphosphate.  Defendants further admit that tenofovir diphosphate inhibits the activity of HIV-1 reverse transcriptase.  To the extent that Paragraph 50 of the Complaint contains any additional allegations, Defendants deny them.

51.     The document cited in Paragraph 51 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 51 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that FTC was discovered in the mid-1990s and is an NRTI that has been used in ART regimens at least since FDA's approval of Emtriva® in 2003.  Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 51 of the Complaint and therefore deny those allegations.

52.     Defendants admit that Truvada®, which was invented by GSI researchers, is indicated in combination with other antiretroviral agents for the treatment of HIV-1 infection in adults and pediatric patients weighing at least 17 kg.  Defendants further admit that, under current

guidelines, Truvada® may be used in an ART regimen in combination with an integrase inhibitor (for example, DTG or RAL); however, other combinations including Truvada® are also consistent with current treatment guidelines.   Defendants further admit that Atripla®, Complera®, and Stribild® are the proprietary names for Defendants' products that contain FTC and TDF, among other components, and that these products may be administered as once-daily ART regimens. Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 52 of the Complaint and therefore deny those allegations.

53.     Defendants admit that GSI received FDA approval in 2012 to sell Truvada®, which was invented by GSI researchers, as a tablet consisting of 200 mg FTC and 300 mg TDF for pre-exposure prophylaxis (PrEP), in combination with safer sex practices, to reduce the risk of sexually acquired HIV-1 in adults at high risk.   Defendants deny that GSIUC has FDA approval to sell Truvada®.   Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

**E.     Descovy®**

54.     Defendants admit that Defendants manufacture, distribute, and sell the Descovy® drug product, either in the United States or elsewhere in the world.   Defendants further admit that Descovy® is the proprietary name of a fixed-dose antiretroviral drug combination that includes FTC and tenofovir alafenamide, which is a phosphonamidate prodrug of tenofovir invented by GSI researchers.

55.     Defendants admit that the Descovy® drug product does not contain TDF but does contain TAF.   TAF is used to refer to tenofovir alafenamide, the free base.   The form of tenofovir in the Descovy® drug product is tenofovir alafenamide (TAF) hemi-fumarate.   Defendants deny that TAF is an ester of tenofovir.   Defendants admit that the introduction of TAF in blood plasma

allows for permeation into cells.  TAF is designed to intracellularly convert to tenofovir primarily through hydrolysis by cathepsin A followed by additional hydrolysis steps.  Tenofovir is subsequently phosphorylated by cellular kinases to the active metabolite tenofovir diphosphate.

56.     Defendants admit that the FDA approved the Descovy® drug product, which was invented by GSI researchers, in April 2016 for the treatment of HIV-1 infection in adults and pediatric patients 12 years of age and older in combination with other antiretroviral agents. Defendants further admit that Descovy® tablets approved by the FDA are available in one strength, a combination that includes 200 mg of FTC and 25 mg of TAF.

57.     The document cited in Paragraph 57 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 57 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that, on October 3, 2019, GSI received FDA approval to sell Descovy® as a tablet consisting of 200 mg of FTC and 25 mg of TAF for the following indication: "DESCOVY is indicated in at-risk adults and adolescents weighing at least 35 kg for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection from sexual acquisition, excluding individuals at risk from receptive vaginal sex. Individuals must have a negative HIV-1 test immediately prior to initiating DESCOVY for HIV-1 PrEP." Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  To the extent Paragraph 57 of the Complaint contains other allegations, they are denied.

F.      **Efforts to Develop Regimens to Prevent HIV Transmission**

58.     Defendants admit that patients whose HIV is fully suppressed by ART receive a clinical benefit and that poor adherence to the ART regimen reduces that benefit.  Defendants further admit that persons living with HIV not receiving ART or who are unaware of their HIV-

positive status can spread HIV.  Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 58 of the Complaint and therefore deny those allegations.

59.     Defendants admit that vaccines, post-exposure prophylaxis, and pre-exposure prophylaxis are being pursued as separate and distinct strategies in an effort to protect HIV-negative persons from infection, among other potential strategies for preventing transmission to HIV-negative persons, such as treatment of people living with HIV through ART.  Defendants lack sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 59 of the Complaint and therefore deny those allegations.

### G.     Decades of Unsuccessful Attempts to Create an HIV Vaccine

60.     Defendants admit the allegations in Paragraph 60 of the Complaint.

61.     The document cited in Paragraph 61 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 61 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 61 of the Complaint and therefore deny those allegations.

62.     The document cited in Paragraph 62 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 62 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 62 of the Complaint and therefore deny those allegations.

63.     Defendants admit that there has been extensive research into an effective HIV vaccine.  Defendants further admit that they are unaware of the existence of any effective HIV vaccine, although promising vaccines are currently being studied, including through collaborations

– 15 –

with Defendants.  To the extent that Paragraph 63 contains any additional allegations, Defendants lack sufficient knowledge or information to form a belief as to those allegations and therefore deny them.

**H.     Post-Exposure Prophylaxis (PEP) Regimens Based on Empirical Data**

64.     Defendants admit that post-exposure prophylaxis, or PEP, is a known type of HIV-prevention regimen.  Defendants admit that PEP involves taking antiretroviral medication shortly after a potential exposure that presents a risk for HIV infection.  The document cited in Paragraph 64 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 64 purporting to summarize that document to the extent they are inconsistent with that document.

65.     The document cited in Paragraph 65 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 65 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 65 of the Complaint and therefore deny those allegations.

66.     The document cited in Paragraph 66 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 66 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 66 of the Complaint and therefore deny those allegations.

67.     The document cited in Paragraph 67 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 67 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 67 of the Complaint and therefore deny those allegations.

### 1.    *Early Data Regarding Tenofovir Alone for PEP*

68.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 68 of the Complaint and therefore deny those allegations.

69.    The document cited in Paragraph 69 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 69 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 69 of the Complaint and therefore deny those allegations.

### 2.    *PEP Guidelines*

70.    Defendants admit the allegations in Paragraph 70 of the Complaint.

71.    The document discussed in Paragraph 71 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 71 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that the use of the Truvada® drug product for PEP, as described in the document discussed in Paragraph 71, anticipates claims 12 and 14-18 of the '509 Patent and claims 12 and 14-17 of the '333 Patent, all of which were disclaimed by the Government after the filing of this lawsuit.  Defendants admit that neither the CDC nor HHS invented the use of Truvada® for PEP or PrEP.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 71 of the Complaint and therefore deny those allegations.

72.    The document cited in Paragraph 72 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 72 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 72 of the Complaint and therefore deny those allegations.

73.     The document cited in Paragraph 73 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 73 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 73 of the Complaint and therefore deny those allegations.

74.     The document discussed in Paragraph 74 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 74 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 74 of the Complaint and therefore deny those allegations.

75.     The document cited in Paragraph 75 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 75 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 75 of the Complaint and therefore deny those allegations.

76.     The document cited in Paragraph 76 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 76 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 76 of the Complaint and therefore deny those allegations.

I.      **Pre-Exposure Prophylaxis (PrEP)**

77.     Defendants admit that pre-exposure prophylaxis (PrEP) refers to a regimen including oral medications that, when taken on a regular basis prior to exposure, prevent the spread of HIV.  Defendants admit that PrEP research has been undertaken by multiple research groups,

including Defendants.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 77 of the Complaint and therefore deny those allegations.

78.    The document cited in Paragraph 78 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 78 purporting to summarize that document to the extent they are inconsistent with that document.  For example, Defendants deny that the cited source identifies PEP as a "28-course of antiretroviral therapy."

79.    Defendants admit that the applications for PrEP regimens for Truvada® and Descovy® that the FDA and foreign regulatory authorities have approved included animal data and data from randomized human clinical trials.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 79 of the Complaint and therefore deny those allegations.

80.    The documents cited in Paragraph 80 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 80 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants admit that FTC/TDF and FTC/TAF, when taken in adherence to a prescribed PrEP regimen, have been estimated to reduce the risk of contracting HIV from sex with an effectiveness of about 99 percent.  However, due to the vagueness of these allegations, including those concerning "effectiveness" and "evidence from several large clinical trials and observational studies of at-risk populations," Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 80 of the Complaint and therefore deny those allegations.

### 1. *Early PrEP Efforts*

81.     Defendants deny that the CDC established "effective daily PrEP regimens in the mid-2000s." Defendants admit that prior to the mid-2000s, concerns existed regarding, among other things, the sociological considerations surrounding PrEP's overall efficacy, "risk compensation," a person's ability to adhere to a daily PrEP regimen, the safety and burden of a daily PrEP regimen for otherwise healthy people, and the potential for developing resistant HIV strains if PrEP fails. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 81 of the Complaint and therefore deny those allegations.

82.     The document cited in Paragraph 82 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 82 purporting to summarize that document to the extent they are inconsistent with that document. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 82 of the Complaint and therefore deny those allegations.

83.     The documents cited in Paragraph 83 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 83 purporting to summarize those documents to the extent they are inconsistent with those documents. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 83 of the Complaint and therefore deny those allegations.

84.     The document cited in Paragraph 84 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 84 purporting to summarize that document to the extent they are inconsistent with that document. Defendants admit that TDF received FDA approval in 2001 and that TAF was also known as GS-7340. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 84 of the Complaint and therefore deny those allegations.

85.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 85 of the Complaint and therefore deny those allegations.

86.     The document cited in Paragraph 86 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 86 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 86 of the Complaint and therefore deny those allegations.

87.     The document cited in Paragraph 87 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 87 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 87 of the Complaint and therefore deny those allegations.

88.     The document cited in Paragraph 88 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 88 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 88 of the Complaint and therefore deny those allegations.

89.     The document cited in Paragraph 89 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 89 purporting to summarize that document to the extent they are inconsistent with that document.

90.     The document cited in Paragraph 90 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 90 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that GSI supported the work

described in Exhibit 25. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

91.     Defendants deny that, as of the priority date for the Patents-in-Suit, no one expected a TDF/FTC regimen to be effective as a PrEP regimen. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 91 of the Complaint and therefore deny those allegations.

92.     Defendants deny that no researchers focused on two-drug regimens for PrEP studies before the CDC performed its macaque study. Defendants lack sufficient knowledge or information to form a belief as to the first sentence of Paragraph 92 of the Complaint and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 92 of the Complaint.

**2.     *Research Leading to CDC's Innovative FTC/Tenofovir Prodrug Regimens***

93.     Defendants admit the allegations in Paragraph 93 of the Complaint.

94.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 94 of the Complaint and therefore deny those allegations.

95.     Defendants deny that CDC researchers were the first to design a study using FTC/TDF to prevent HIV infection. Defendants lack sufficient knowledge or information to form a belief as to the allegations in the first sentence of Paragraph 95 of the Complaint and therefore deny those allegations. Defendants deny the allegations in the second sentence of Paragraph 95 of the Complaint.

### 3.  CDC's Animal Modeling Techniques

96.     Defendants deny that the CDC alone provided any "breakthrough work" on PrEP. Defendants deny that the animal model described in Paragraph 96 of the Complaint was "new." Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 96 of the Complaint and therefore deny those allegations.

97.     Defendants admit that animal research methodologies that focused on large single doses of SIV or SHIV at mucosal surfaces did not accurately represent typical repeat, low-dose mucosal exposures experienced by humans with the sexual transmission of HIV.  Defendants admit that such inaccuracies could underestimate the efficacy of potential treatments.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 97 of the Complaint and therefore deny those allegations.

98.     Defendants deny that the CDC's methodology was "new."  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 98 of the Complaint and therefore deny those allegations.

### 4.  CDC's Determination of Proper Dosing

99.     On the basis that GSI researchers provided data and assistance with applicable dosing experiments, Defendants deny that the named inventors were solely responsible for the "prior determination of the proper doses of FTC and TDF used in their study."  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 99 of the Complaint and therefore deny those allegations.

100.     Defendants deny that "no literature or other studies suggested that the therapeutic doses of TDF and FTC available in Truvada® would also constitute effective preventive doses for a PrEP regimen."  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 100 of the Complaint and therefore deny those allegations.

101.    Defendants admit that, to control for species differences in the elimination of drugs, GSI and CDC researchers collaborated on pharmacokinetic studies to determine what doses in macaques would approximate appropriate blood and cellular levels of FTC and TDF in humans. Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 101 of the Complaint and therefore deny those allegations.

### 5.    *CDC's Determination of Appropriate FTC Dose*

102.    The document cited in Paragraph 102 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 102 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that GSI employees Drs. Michael Miller and Howard Jaffe participated in the email exchange reflected in Exhibit 28. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 102 of the Complaint and therefore deny those allegations.

103.    Defendants admit that GSI and the CDC entered into a Material Transfer Agreement (MTA) that the CDC executed on December 28, 2004, and that GSI executed on January 31, 2005.  The document cited in Paragraph 103 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 103 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 103 of the Complaint and therefore deny those allegations.

104.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 104 of the Complaint and therefore deny those allegations.

105.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 105 of the Complaint and therefore deny those allegations.

### 6.     *CDC's Determination of Appropriate TDF Dose*

106.     Defendants admit that the CDC conducted pharmacokinetic research, in collaboration with GSI, to ensure proper dosing.  Defendants deny that this research was CDC's "own" or exclusive research.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 106 of the Complaint and therefore deny those allegations.

107.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 107 of the Complaint and therefore deny those allegations.

108.     The document cited in Paragraph 108 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 108 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 108 of the Complaint and therefore deny those allegations.

109.     The document cited in Paragraph 109 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 109 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 109 of the Complaint and therefore deny those allegations.

### 7.    *CDC's PrEP Experiments*

110.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 110 of the Complaint and therefore deny those allegations.

111.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 111 of the Complaint and therefore deny those allegations.

112.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 112 of the Complaint and therefore deny those allegations.

113.    Defendants deny that the CDC's modeling techniques were "newly-developed." Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 113 of the Complaint and therefore deny those allegations.

114.    The document cited in Paragraph 114 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 114 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 114 of the Complaint and therefore deny those allegations.

### 8.    *Results of CDC's PrEP Experiments*

115.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 115 of the Complaint and therefore deny those allegations.

116.    The document cited in Paragraph 116 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 116 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 116 of the Complaint and therefore deny those allegations.

117.   Defendants deny that the results referred to in Paragraph 117 of the Complaint "demonstrated" definitively that "a person at risk for HIV infection could be effectively protected against HIV infection by regular prophylactic doses of FTC and tenofovir or FTC and a tenofovir prodrug." Defendants further deny that the results permitted the CDC researchers to "conclude" definitively that the identified dosing levels would be "highly effective in adult humans." Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 117 of the Complaint and therefore deny those allegations.

118.   Defendants deny the allegations in Paragraph 118 of the Complaint.

**J.     Gilead's Contribution Limited to Drug Donations**

119.   Defendants deny the allegations in Paragraph 119 of the Complaint.

120.   Defendants admit GSI executed MTAs and amendments to MTAs with CDC between 2004 and 2008 under which GSI agreed to provide, and did provide, CDC with FTC, TDF, and tenofovir. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 120 of the Complaint and therefore deny those allegations.

121.   Defendants admit that an MTA related to the research leading to the Patents-in-Suit was signed in December 2004 by Dr. Heneine, and later by Dr. Mick Hitchcock, GSI's then–Vice President of Medical Affairs, in response to Dr. Heneine's email request for a cost-free transfer of FTC to CDC. Defendants deny that this MTA was the earliest MTA related to the research leading to the Patents-in-Suit. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

122.    Defendants admit that GSI entered into at least three other MTAs, as well as several MTA amendments, with the CDC, as well as amendments to these agreements.  The documents discussed in Paragraph 122 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 122 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants deny the remaining allegations in Paragraph 122 of the Complaint.

123.    The document cited in Paragraph 123 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 123 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that the CDC agreed to provide GSI with prompt notice of any applications for intellectual property based on material provided under the terms of the MTA.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

124.    The document cited and the other documents discussed in Paragraph 124 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 124 purporting to summarize those documents to the extent they are inconsistent with those documents. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

125.    Defendants deny the allegations in Paragraph 125 of the Complaint.

126.    The document cited in Paragraph 126 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 126 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants deny that "[o]ther than the provision

– 28 –

of the study drugs, Gilead provided no substantive input into the protocol and methods used in CDC research." Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 126 of the Complaint and therefore deny those allegations.

127.    The document cited in Paragraph 127 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 127 purporting to summarize that document to the extent they are inconsistent with that document. Defendants deny the remaining allegations in Paragraph 127 of the Complaint.

**K.    Patent Applications Covering CDC's Invention and Disclosure to Gilead**

128.    Defendants admit that U.S. non-provisional patent application number 11/669,547 was filed on January 31, 2007, and was published by the PTO on November 15, 2007. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 128 of the Complaint and therefore deny those allegations.

129.    Defendants admit that PCT Application No. US2007/002926 was published on August 16, 2007. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 129 of the Complaint and therefore deny those allegations.

130.    The document cited in Paragraph 130 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 130 purporting to summarize that document to the extent they are inconsistent with that document. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 130 of the Complaint and therefore deny those allegations.

131.    Defendants admit that GSI received a draft copy of the referenced article prior to its publication. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 131 of the Complaint and therefore deny those allegations.

132.    Defendants admit that some later papers relating to the CDC's PrEP research were made available to employees of GSI before publication.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants lack sufficient knowledge or information to form a belief as to the vague allegations in Paragraph 132 of the Complaint and therefore deny those allegations.

133.    The documents referenced in Paragraph 133 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 133 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 133 of the Complaint and therefore deny those allegations.

134.    Defendants deny the allegations in Paragraph 134 of the Complaint.

**L.    Immediate Impact of CDC's Innovative Regimens on Clinical Research**

135.    The document cited in Paragraph 135 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 135 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 135 of the Complaint and therefore deny those allegations.

136.    The document cited in Paragraph 136 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 136 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 136 of the Complaint and therefore deny those allegations.

137.    The document cited in Paragraph 137 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 137 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 137 of the Complaint and therefore deny those allegations.

138.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 138 of the Complaint and therefore deny those allegations.

139.    Defendants admit that the methodology of the PrEP trial in Botswana was changed, at least in part, due to research published by the CDC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 139 of the Complaint and therefore deny those allegations.

140.    Defendants admit that the methodology of the PrEP trial in Botswana was changed, at least in part, due to research published by the CDC.  Defendants admit that the planned methodology of the iPrEx trial was changed after the CDC's findings were presented, but Defendants deny that, after the iPrEx screening began in 2008, there was a change to FTC/TDF from TDF only.  Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 140 of the Complaint and therefore deny those allegations.

141.    The document cited in Paragraph 141 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 141 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 141 of the Complaint and therefore deny those allegations.

142.    The document cited in Paragraph 142 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 142 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 142 of the Complaint and therefore deny those allegations.

143.    Defendants deny the allegations in Paragraph 143 of the Complaint.

**M.    Numerous Subsequent Clinical Studies Confirming the Groundbreaking Efficacy of CDC's Inventive FTC/TDF Regimen**

144.    Defendants admit that FTC/TDF, when taken in adherence to a prescribed PrEP regimen, has been estimated to reduce the risk of contracting HIV from sex with an effectiveness of about 99 percent.   However, due to the vagueness of these allegations, including those concerning the terms "a number of human studies" and "confirmed," Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 144 of the Complaint and therefore deny those allegations.

145.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 145 of the Complaint and therefore deny those allegations.

146.    Defendants deny the allegations in Paragraph 146 of the Complaint.

**1.    *iPrEx Study***

147.    Defendants admit that NIH was a sponsor of clinical trial NCT00458393, which is known by the name iPrEx and which ran from 2007 through 2014, including 2007 to 2011. Defendants further admit that the iPrEx trial was a randomized, double-blind, placebo-controlled

multinational study evaluating Truvada® in 2,499 HIV-seronegative men or transgender women who have sex with men and with evidence of high-risk behavior for HIV-1 infection.

148.    The document cited in Paragraph 148 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 148 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants deny that iPrEx was the first published human study showing the clinical efficacy of PrEP.  Defendants admit that the iPrEx trial showed that, at the end of treatment, emergent HIV-1 seroconversion was observed in 131 subjects, of which 48 occurred in the Truvada® group and 83 occurred in the placebo group, indicating a 42% reduction in risk; the iPrEx trial also showed that efficacy was strongly correlated with adherence. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 148 of the Complaint and therefore deny those allegations.

149.    The documents cited in Paragraph 149 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 149 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 149 of the Complaint and therefore deny those allegations.

150.    The document cited in Paragraph 150 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 150 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that the planned methodology of the iPrEx trial changed after the CDC's findings were presented, but Defendants deny that, after the iPrEx screening began in 2008, there was a change to FTC/TDF from TDF only.

151.    Defendants admit that, in his testimony before the United States House Committee on Oversight and Reform (House Oversight Committee) in May 2019, current GSI CEO Daniel O'Day offered the following testimony in response to a question by Congressman Jim Jordan:

> Rep. Jordan:  And earlier, Dr. Grant said Gilead did not provide leadership or funding for PrEP in the studies at CDC.  Is that true?
>
> Mr. O'Day:  No, that's not true.  I mean, we have nine scientists that were involved in the iPrEx trial itself.  It was one of the two trials that went to the FDA to seek approval.  And of those, we have two scientists, both who are still with the company actually, that were authors in the primary New England Journal article that is the iPrEx study.
>
> And to be an author on the New England Journal of Medicine article, you must -- you must have involvement in the trial, in addition to the free medicine we provided and the know-how.

152.    The document cited in Paragraph 152 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 152 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants deny the remaining allegations in Paragraph 152.

153.    The document cited in Paragraph 153 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 153 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants deny that GSI has been "a hesitant partner on PrEP research"; deny that GSI "did not provide leadership, innovation, or funding for PrEP research"; and deny that GSI limited its involvement in PrEP research "to donating study drug and placebos."  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.

154.    The document cited in Paragraph 154 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 154 purporting to summarize that document to the

extent they are inconsistent with that document. Defendants admit that GSI provided medication for the iPrEx study but did not provide monetary funding. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 154 of the Complaint and therefore deny those allegations.

2. *Partners PrEP Study*

155.    Defendants admit that clinical trial NCT00557245, which is known by the name Partners PrEP, was initiated in 2007 with a study start date in 2008. Defendants further admit that the Partners PrEP trial was a randomized, double-blind, placebo-controlled 3-arm trial conducted in 4,758 HIV-1 serodiscordant heterosexual couples in Kenya and Uganda to evaluate the efficacy and safety of TDF (N=1,589) and FTC/TDF (N=1,583) versus (parallel comparison) placebo (N=1,586) in preventing HIV-1 acquisition by the uninfected partner. The document cited in Paragraph 155 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 155 purporting to summarize that document to the extent they are inconsistent with that document.

156.    The document cited in Paragraph 156 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 156 purporting to summarize that document to the extent they are inconsistent with that document. Defendants admit that the Partners PrEP trial showed that the risk reduction for Truvada® relative to placebo was 75% and that efficacy was strongly correlated with adherence. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 156 of the Complaint and therefore deny those allegations.

157.    The document cited in Paragraph 157 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 157 purporting to summarize that document to the extent they are inconsistent with that document.

158.    The documents cited in Paragraph 158 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 158 purporting to summarize those documents to the extent they are inconsistent with those documents.   Defendants admit that GSI provided medication for the Partners PrEP study but did not provide monetary funding.   Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 158 of the Complaint and therefore deny those allegations.

159.    The document cited in Paragraph 159 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 159 purporting to summarize that document to the extent they are inconsistent with that document.

### 3.    *TDF2 Study*

160.    The document cited in Paragraph 160 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 160 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 160 of the Complaint and therefore deny those allegations.

161.    The document cited in Paragraph 161 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 161 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 161 of the Complaint and therefore deny those allegations.

162.    The document cited in Paragraph 162 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 162 purporting to summarize that document to the extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 162 of the Complaint and therefore deny those allegations.

### 4.    *PROUD Study*

163.    Defendants admit that studies started after iPrEx, Partners PrEP, and TDF2 found a daily Truvada® regimen to have higher efficacy than reported in the iPrEx, Partners PrEP, and TDF2 trials in some circumstances.  To the extent there are further allegations in Paragraph 163 of the Complaint, Defendants lack sufficient knowledge or information to form a belief as to those allegations and therefore deny those allegations.

164.    The document cited in Paragraph 164 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 164 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that GSI provided financial and in-kind support, including the Truvada® drug product and a grant for diagnostic testing, for the PROUD study.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 164 of the Complaint and therefore deny those allegations.

165.    The documents cited in Paragraph 165 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 165 purporting to summarize those documents to

the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 165 of the Complaint and therefore deny those allegations.

### 5.    *ANRS-IPERGAY Study*

166.    The document cited in Paragraph 166 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 166 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants admit that GSI provided financial and in-kind support, including medications and funding, for the IPERGAY study.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 166 of the Complaint and therefore deny those allegations.

167.    The documents cited in Paragraph 167 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 167 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 167 of the Complaint and therefore deny those allegations.

### 6.    *CDC's Methodology Now "Gold Standard" For Clinical Researchers*

168.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 168 of the Complaint and therefore deny those allegations.

169.    Defendants deny that macaque modeling and testing are always necessary prior to the use of ARVs in human clinical trials for PrEP.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 169 of the Complaint and therefore deny those allegations.

N.     **Approval and Sales of Truvada® and Quick Approval of Descovy® That Followed from CDC's Inventive Work**

170.    Defendants admit that in July 2012, FDA approved the Truvada® drug product, which was invented by GSI researchers, for use as PrEP and that GSI owns a U.S. trademark registration for Truvada for PrEP.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 170 of the Complaint.

171.    Defendants admit that GSI's application for FDA approval of Truvada® for the PrEP indication cited the iPrEx and Partners PrEP studies, among other studies.  Defendants deny that, other than donating drugs, GSI did not support any of the clinical efforts leading to FDA approval of Truvada® for the PrEP indication.  Defendants deny that GSI openly expressed skepticism regarding PrEP.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  The document cited in Paragraph 171 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 171 purporting to summarize that document to the extent they are inconsistent with that document.

172.    Defendants admit that, following FDA approval of Truvada® for the PrEP indication, GSI developed and supported educational initiatives and demonstration projects designed to identify at-risk persons who could benefit from PrEP.  Defendants deny the remaining allegations in Paragraph 172 of the Complaint.

173.    The document cited in Paragraph 173 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 173 purporting to summarize that document to the extent they are inconsistent with that document.

174.     Defendants admit that, as of January 1, 2013, the annualized wholesale acquisition cost ("WAC") for Truvada® was approximately $14,883.61 in the United States, although the cost varied depending on the specific payor.  The documents cited in Paragraph 174 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 174 purporting to summarize those documents to the extent they are inconsistent with those documents.

175.     The document cited in Paragraph 175 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 175 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 175 of the Complaint and therefore deny those allegations.

176.     The document cited in Paragraph 176 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 176 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 176 of the Complaint and therefore deny those allegations.

177.     Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 177 of the Complaint and therefore deny those allegations.

178.     Defendants admit that, as of November 2019, the wholesale acquisition cost (WAC) of a bottle containing 30 tablets of Truvada® was $1757.90.  Defendants admit that GSI has increased the U.S. WAC for Truvada®.  Defendants admit that Defendants' global revenues for Truvada® in 2018 were $2.997 billion.  Defendants admit that GSI's domestic sales of Truvada® for the PrEP indication contributed to Defendants' collective overall revenues for Truvada®. Defendants admit that Defendants are committed to ensuring that people who are at high risk for

HIV infection have access to prevention options, including Truvada® and Descovy®, where available.  Defendants admit that GSI maintains patient-assistance programs and has taken a leadership position in ensuring patients have access to life-saving medications through a variety of programs and partnerships, including GSI's co-pay coupon program for eligible people with commercial insurance and its Truvada for PrEP® Medication Assistance Program for people who lack insurance coverage.  Defendants admit that GSI's recent commitment to the CDC to provide up to 2.4 million bottles of Truvada® or Descovy® annually free of charge will support a greatly accelerated effort to reach uninsured Americans at risk for HIV.  Further, Defendants admit that a CDC analysis found that of the estimated 1.2 million people in the U.S. eligible for PrEP, less than 1 percent do not have financial assistance to pay for PrEP medication and care.  *See* Smith et al., "Estimated coverage to address financial barriers to HIV preexposure prophylaxis among persons with indications for its use, United States, 2015," *J. Acquir. Immune Defic. Syndr*. 2017 December 15; 76(5): 465–472.  The documents cited in Paragraph 178 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 178 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 178 of the Complaint and therefore deny those allegations.

179.    Defendants admit that GSI submitted a supplemental new drug application to FDA on April 5, 2019, seeking approval to market Descovy® for, among other things, use in at-risk adults and adolescents weighing at least 35 kg for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection from sexual acquisition, excluding individuals at risk from receptive vaginal sex, provided that such individuals have a negative HIV-1 test immediately prior to

initiating Descovy® for HIV-1 PrEP.  Defendants deny the remaining allegations in Paragraph 179 of the Complaint.

180.    Defendants admit the allegations in Paragraph 180 of the Complaint.

181.    The document cited in Paragraph 181 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 181 purporting to summarize that document to the extent they are inconsistent with that document.  Specifically, Defendants deny that Exhibit 9 includes the quote in Paragraph 181 of the Complaint, but Defendants admit that Exhibit 9 says "Descovy is not indicated in individuals at risk of HIV-1 infection from receptive vaginal sex because the effectiveness in this population has not been evaluated."  Defendants admit that, on October 3, 2019, FDA approved GSI's supplemental NDA to market Descovy® for use in at-risk adults and adolescents weighing at least 35 kg for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection from sexual acquisition, excluding individuals at risk from receptive vaginal sex, provided that such individuals have a negative HIV-1 test immediately prior to initiating Descovy® for HIV-1 PrEP.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 181 of the Complaint and therefore deny those allegations.

**O.    PrEP as Critical Component of Effort to End HIV Epidemic**

182.    The documents cited in Paragraph 182 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 182 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 182 of the Complaint and therefore deny those allegations.

183.    The document cited in Paragraph 183 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 183 purporting to summarize that document to the

extent they are inconsistent with that document.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 183 of the Complaint and therefore deny those allegations.

184.   Defendants admit that efforts to administer Truvada® for PrEP in identified geographic areas, or "hot spots," in the United States could be helpful to certain communities. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 184 of the Complaint and therefore deny those allegations.

185.   Defendants admit that efforts to reach marginalized and hard-to-reach communities at high risk for HIV infections can be hindered by stigma associated with PrEP use.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 185 of the Complaint and therefore deny those allegations.

186.   Defendants deny that the cost of the Truvada® drug product is a critical barrier to increasing access to PrEP in the United States.  Defendants deny that the cost of the Truvada® drug product is a major reason that many at risk of HIV infection in the United States are not currently taking Truvada® for the PrEP indication.  Defendants admit that Defendants are committed to ensuring that people who are at high risk for HIV infection have access to prevention options, including Truvada® and Descovy®, where available.  Defendants admit that GSI maintains patient-assistance programs and has taken a leadership position in ensuring patients have access to GSI's medications through a variety of programs and partnerships, including GSI's co-pay coupon program for eligible people with commercial insurance and its Truvada for PrEP® Medication Assistance Program for people who lack insurance coverage.  Defendants admit that GSI's recent commitment to the CDC to provide up to 2.4 million bottles of Truvada® or Descovy® annually free of charge will support a greatly accelerated effort to reach uninsured Americans at risk for

HIV.  Further, Defendants admit that a CDC analysis found that of the estimated 1.2 million people in the U.S. eligible for PrEP, less than 1 percent do not have financial assistance to pay for PrEP medication and care.  *See* Smith et al., "Estimated coverage to address financial barriers to HIV preexposure prophylaxis among persons with indications for its use, United States, 2015," *J. Acquir. Immune Defic. Syndr*. 2017 December 15; 76(5): 465–472.  Defendants admit that, in the United States, Truvada® is currently sold only by GSI, which has substantial rights in patents covering that product.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 186 of the Complaint and therefore deny those allegations.

187.    The documents cited in Paragraph 187 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 187 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants admit that some activists have criticized the pricing of Truvada® in the United States.  Defendants admit that the pricing of Truvada® in the United States was a topic during a House Oversight Committee hearing in May 2019.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 187 of the Complaint and therefore deny those allegations.

188.    The documents cited in Paragraph 188 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 188 purporting to summarize those documents to the extent they are inconsistent with those documents.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 188 of the Complaint and therefore deny those allegations.

P.     **Teva Settlement Announcement**

189.   Defendants admit that GSI has taken actions regarding access to Truvada®. Defendants deny the remaining allegations in Paragraph 189 of the Complaint.

190.   Defendants admit that GSI disclosed the following in a May 8, 2019 Form 10-Q securities filing: "Pursuant to a settlement agreement relating to patents that protect Truvada and Atripla, Teva Pharmaceuticals will be able to launch generic fixed-dose combinations of emtricitabine and TDF and generic fixed-dose combinations of emtricitabine, TDF and efavirenz in the United States on September 30, 2020." Defendants admit that this settlement took place in 2014. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants deny the remaining allegations in Paragraph 190 of the Complaint.

191.   Defendants admit that Douglas M. Brooks, GSI's Executive Director for Community Engagement, sent an email to several individuals on May 8, 2019, stating that:

> There has been significant speculation, and some misinformation, in recent months related to the Truvada patents and the timing of a generic version of the drug into the market.
>
> Gilead reached an agreement with Teva Pharmaceuticals in 2014 to allow the early launch of a generic version of Truvada into the market in 2020, a year earlier than required.
>
> For background, a generic version of Truvada is not currently available. The patents and exclusivity for tenofovir disoproxil fumarate (TDF), one component of Truvada, have expired. The patent for emtricitabine, the other component of Truvada, expires in September of 2021.
>
> Pursuant to a settlement agreement reached in 2014 relating to patents that protect Truvada as well as Atripla (emtricitabine/TDF/efavirenz), Teva will be able to launch generic fixed-dose combinations of emtricitabine and TDF and generic

> fixed-dose combinations of emtricitabine, TDF and efavirenz in the
> United States on September 30, 2020.
>
> This agreement is not related to current discussions with the U.S.
> government to broaden access to Truvada for PrEP for vulnerable
> populations and support the federal plan to end the HIV epidemic.
> Those discussions are ongoing.

Defendants deny the allegations of Paragraph 191 to the extent they are inconsistent with the text

above.

192.    Defendants deny the allegations in Paragraph 192 of the Complaint.

193.    The document cited in Paragraph 193 of the Complaint speaks for itself, and

Defendants deny the allegations of Paragraph 193 purporting to summarize that document to the

extent they are inconsistent with that document.   Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 193 of the Complaint and

therefore deny those allegations.

194.    The document cited in Paragraph 194 of the Complaint speaks for itself, and

Defendants deny the allegations of Paragraph 194 purporting to summarize that document to the

extent they are inconsistent with that document.   Defendants lack sufficient knowledge or

information to form a belief as to the remaining allegations in Paragraph 194 of the Complaint and

therefore deny those allegations.

195.    Defendants admit that the launch of the Descovy® PrEP indication has preceded the

availability of any generic equivalent of Truvada® in the United States.   Defendants lack sufficient

knowledge or information to form a belief as to the remaining allegations in Paragraph 195 of the

Complaint and therefore deny those allegations.

**V.    CDC's Patents**

196.    Paragraph 196 of the Complaint contains conclusions of law purporting to

summarize the scope of the claims of the Patents-in-Suit, to which no response is required.   To the

extent a response to those conclusions of law is required, Defendants deny those allegations.  The patents referenced in Paragraph 196 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 196 purporting to summarize those patents to the extent they are inconsistent with those patents.  Defendants deny that the patents referenced in Paragraph 196 are valid.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 196 of the Complaint and therefore deny those allegations.

### A. The '509 Patent

197.   Defendants admit that the '509 Patent is entitled "Inhibition of HIV Infection through Chemoprophylaxis" and bears an issuance date of June 2, 2015.  Defendants admit that the '509 Patent states that it "claims priority of U.S. Provisional Patent Application Ser. No. 60/764,811 filed Feb. 3, 2006."  Defendants deny that the '509 Patent was validly issued.

198.   Defendants admit that the '509 Patent lists Walid M. Heneine, Thomas M. Folks, Robert Janssen, Ronald Otten, and Jose Gerardo García Lerma as inventors on its face.  Defendants deny that the '509 Patent is valid.

199.   Paragraph 199 of the Complaint contains conclusions of law to which no response is required.  To the extent a response to those conclusions of law is required, Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 199 of the Complaint and therefore deny those allegations.

200.   Paragraph 200 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, the '509 Patent speaks for itself, and Defendants deny the allegations of Paragraph 200 purporting to summarize that patent to the extent they are inconsistent with that patent.

201.   Paragraph 201 of the Complaint contains conclusions of law to which no response is required.  To the extent an answer is required, the '509 Patent speaks for itself, and Defendants

deny the allegations of Paragraph 201 purporting to summarize that patent to the extent they are inconsistent with that patent.  Defendants admit that HHS canceled Claim 12 via statutory disclaimer after being faced with GSI's invalidity positions in IPR2019-01453.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 201 of the Complaint and therefore deny those allegations.

202.   Defendants admit that TDF is a fumaric acid salt of the bis-isopropoxycarbonyloxymethyl ester prodrug of tenofovir.  Defendants deny that TAF is a tenofovir ester.  To the extent that Paragraph 202 of the Complaint includes allegations about the scope of the claim term "tenofovir ester," Paragraph 202 of the Complaint contains conclusions of law to which no response is required.

203.   Paragraph 203 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, the '509 Patent speaks for itself, and Defendants deny the allegations of Paragraph 203 purporting to summarize that patent to the extent they are inconsistent with that patent.

204.   Paragraph 204 of the Complaint contains conclusions of law to which no response is required.

205.   The patents referenced in Paragraph 205 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 205 purporting to summarize those patents to the extent they are inconsistent with those patents.  Defendants admit that HHS has canceled Claims 12 and 14-18 via statutory disclaimer after being faced with GSI's invalidity positions in IPR2019-01453.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 205 of the Complaint and therefore deny those allegations.

B.     The '333 Patent

206.    Defendants admit that the '333 Patent bears an issuance date of February 28, 2017. Defendants deny that the '333 Patent was validly issued.

207.    Paragraph 207 of the Complaint contains conclusions of law to which no response is required.  To the extent a response to those conclusions of law is required, Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 207 of the Complaint and therefore deny those allegations.

208.    Paragraph 208 of the Complaint contains conclusions of law to which no response is required.  To the extent an answer is required, Defendants admit that HHS has canceled Claims 12 and 14-17 via statutory disclaimer after being faced with GSI's invalidity positions in IPR2019-01454.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 208 of the Complaint and therefore deny those allegations.

209.    The '333 Patent speaks for itself, and Defendants deny the allegations of Paragraph 209 purporting to summarize that patent to the extent they are inconsistent with that patent.

210.    The '333 Patent speaks for itself, and Defendants deny the allegations of Paragraph 210 purporting to summarize that patent to the extent they are inconsistent with that patent. Defendants admit that HHS has canceled Claim 12 via statutory disclaimer after being faced with GSI's invalidity positions in IPR2019-01454.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 210 of the Complaint and therefore deny those allegations.

211.    Paragraph 211 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, the '333 Patent speaks for itself, and Defendants deny the allegations of Paragraph 211 purporting to summarize that patent to the extent they are inconsistent with that patent.

### C.   The '191 Patent

212.   Defendants admit that the '191 Patent bears an issuance date of April 10, 2018. Defendants deny that the '191 Patent was validly issued.

213.   Paragraph 213 of the Complaint contains conclusions of law to which no response is required.  To the extent a response to those conclusions of law is required, Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 213 of the Complaint and therefore deny those allegations.

214.   Paragraph 214 of the Complaint contains conclusions of law to which no response is required.

215.   The '191 Patent speaks for itself, and Defendants deny the allegations of Paragraph 215 purporting to summarize that patent to the extent they are inconsistent with that patent.

216.   The '191 Patent speaks for itself, and Defendants deny the allegations of Paragraph 216 purporting to summarize that patent to the extent they are inconsistent with that patent.

### D.   The '423 Patent

217.   Defendants admit that the '423 Patent bears an issuance date of July 2, 2019. Defendants deny that the '423 Patent was validly issued.

218.   Paragraph 218 of the Complaint contains conclusions of law to which no response is required.  To the extent a response to those conclusions of law is required, Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 218 of the Complaint and therefore deny those allegations.

219.   Paragraph 219 of the Complaint contains conclusions of law to which no response is required.

220.   The '423 Patent speaks for itself, and Defendants deny the allegations of Paragraph 220 purporting to summarize that patent to the extent they are inconsistent with that patent.

221.    The '423 Patent speaks for itself, and Defendants deny the allegations of Paragraph 221 purporting to summarize that patent to the extent they are inconsistent with that patent.

222.    Defendants admit that both TDF and TAF are prodrugs metabolized in the body to form the active metabolite tenofovir diphosphate.  To the extent that Paragraph 222 of the Complaint includes allegations about the scope of the claim term "tenofovir prodrug," Paragraph 222 of the Complaint contains conclusions of law to which no response is required.

223.    Paragraph 223 of the Complaint contains conclusions of law to which no response is required.  Defendants admit that the '333, '191, and '423 Patents share the same title and list the same inventors as the '509 Patent.

## VI.    CDC'S EFFORTS TO LICENSE THE PATENTS-IN-SUIT

### A.    CDC's Licensing of Its Patented Work Outside the United States

224.    Defendants admit that GSI has substantial rights in the patents listed for all strengths of Truvada® in the FDA's *Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations*, including, but not limited to, rights associated with being a licensee of those patents and the right to sue for infringement of those patents.  Defendants further admit that GSI is the assignee of additional patents listed in the *Orange Book* for the 200 mg FTC, 300 mg TDF strengths of Truvada®.  Whether these patents that are held or licensed by GSI would prevent the sale by others of pharmaceutical combinations of tenofovir disoproxil fumarate (TDF) and emtricitabine (FTC) in the United States is a conclusion of law to which no response is required. Defendants further admit that generic forms of FTC/TDF fixed-dose tablets are now on the market in some non-U.S. countries where Defendants' patent protections have expired.  Defendants deny the remaining allegations of Paragraph 224 of the Complaint.

225.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 225 of the Complaint and therefore deny those allegations.

226.    Defendants admit that Mylan challenged European Patent No. 2,015,753, making only allegations based on documents examined during prosecution and making no arguments citing the prior art cited by GSI in its IPR petitions, Nos. IPR2019-01453, -01454, -01455, and -01456.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 226 of the Complaint and therefore deny those allegations.

227.    Defendants deny that the claims of CDC's European patent are valid.   Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 227 of the Complaint and therefore deny those allegations.

228.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 228 of the Complaint and therefore deny those allegations.

229.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 229 of the Complaint and therefore deny those allegations.

230.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 230 of the Complaint and therefore deny those allegations.

231.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 231 of the Complaint and therefore deny those allegations.

232.    Defendants admit that GSI has sold the Truvada® drug product, which contains an indication for PrEP, in the United States without paying any royalties to CDC.   Defendants further admit that one or more corporate affiliates of GSI has sold Truvada® in certain non-U.S. jurisdictions where Truvada® is indicated for PrEP without paying any royalties to CDC. Defendants deny that CDC is entitled to any royalties from the sale of Truvada® for PrEP. Defendants deny the remaining allegations in Paragraph 232 of the Complaint.

**B.      Gilead's Refusal to Take a License to CDC's Patents**

233.    Defendants lack sufficient knowledge or information to form a belief as to the vague allegations in Paragraph 233 of the Complaint and therefore deny those allegations.

234.    Defendants admit that Dr. Jay Parrish, who was a member of GSI's Corporate Development Team, received the email shown in Exhibit 78 from Laura T. Prestia, Technology Transfer Fellow-CDC Unit, Office of Technology Transfer, National Institutes of Health, on or around October 23, 2014.  Defendants further admit that Dr. Linda Higgins, who was GSI's Vice-President of Biology, received an email substantially similar to the email shown in Exhibit 78 from Laura T. Prestia, Technology Transfer Fellow-CDC Unit, Office of Technology Transfer, National Institutes of Health, on or around October 23, 2014.  Defendants deny that these communications constituted notice of the patented technology or alleged inventions.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 234 of the Complaint and therefore deny those allegations.

235.    The document cited in Paragraph 235 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 235 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants deny that these communications constituted notice of the patented technology.

236.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 236 of the Complaint and therefore deny those allegations.

237.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 237 of the Complaint and therefore deny those allegations.

238.     Defendants admit that Jay Parrish, an employee of GSI, received an email from Tara Kirby, Ph.D., CDC Team Supervisor, Technology Transfer and Intellectual Property Office, National Institute of Allergy and Infectious Diseases, on or around March 11, 2016, that stated, among other things, "The matter I wanted to discuss with you is an invention from CDC's Division of HIV/Aids Prevention Surveillance and Epidemiology, our reference number E-195-2013/0.  We have recently obtained issued patents for this invention in a number of jurisdictions, including the United States (USPN 9,044,509), and we believe that your marketed drug, Truvada, may be covered by these patents.  For your ease of reference, I have attached a copy of the issued U.S. patent, as well as a listing of our patent filings relating to this invention.  We would be happy to discuss an amicable resolution to this matter.  This invention is available for licensing on a non-exclusive basis, so I have attached a copy of our standard license application form for your review and consideration."  Defendants further admit that this email attached a copy of the '509 Patent, a document purporting to show a listing of CDC's patent filings related to the alleged invention, and a document purporting to be a standard license application form.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  To the extent there are remaining allegations in Paragraph 238 of the Complaint, Defendants deny them.

239.     Defendants admit that Defendants' outside counsel, WilmerHale LLP, spoke with Dr. Kirby by telephone in April 2016.  Defendants deny the remaining allegations in Paragraph 239 of the Complaint.

240.     Defendants admit that individuals from GSI and HHS engaged in two confidential conferences in 2017 and continued to correspond and communicate in 2018.  Defendants admit

that the parties were unable to resolve the dispute and admit they did not enter into a licensing agreement. Defendants deny the remaining allegations in Paragraph 240 of the Complaint.

241.    Defendants admit that GSI has publicly and repeatedly stated its position that the Patents-in-Suit are invalid, including in the testimony of GSI's CEO Daniel O'Day before the House Oversight Committee in May 2019. Defendants deny that they infringe the Patents-in-Suit. Defendants further admit that an invalid patent cannot be infringed. Defendants deny the remaining allegations in Paragraph 241 of the Complaint.

242.    Defendants admit the allegations in Paragraph 242 of the Complaint.

243.    Defendants admit that GSI challenged the validity of all claims of the four Patents-in-Suit by petitioning for *inter partes* review (IPR) at the PTO. Defendants further admit that GSI filed petitions on August 21, 2019, challenging the validity of all claims of the '509 and '333 Patents, in Patent Trial and Appeal Board ("PTAB") docket numbers IPR2019-01453 and IPR2019-01454, respectively; and on August 23, 2019, challenging the validity of all claims of the '191 and '423 patents, in PTAB docket numbers IPR2019-01455 and IPR2019-01456, respectively. Defendants deny the remaining allegations in Paragraph 243 of the Complaint.

**C.    CDC's Efforts to License Generic Products in United States**

244.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 244 of the Complaint and therefore deny those allegations.

245.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 245 of the Complaint and therefore deny those allegations.

246.    Defendants deny that Teva or any other generic manufacturer will launch a product branded as Truvada®. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 246 of the Complaint and therefore deny those allegations.

247.    Defendants admit the allegations in Paragraph 247 of the Complaint.

248.    Defendants lack sufficient knowledge or information to form a belief as to the allegations in Paragraph 248 of the Complaint and therefore deny those allegations.

### D.    Gilead's Intellectual Property Relating to CDC's Inventive Regimens

249.    Defendants admit that GSI has pursued trademark protection relating to Truvada® for PrEP and GSIUC has pursued trademark protection relating to Descovy® for PrEP.  Defendants admit that Defendants have not taken a license to the Patents-in-Suit.  Defendants deny that the Government has any valid intellectual property rights in PrEP and therefore that Defendants have any obligation to license or acknowledge such rights.  Defendants deny the remaining allegations in Paragraph 249 of the Complaint.

250.    Defendants admit the allegations in Paragraph 250 of the Complaint to the extent that "Gilead" refers to GSI.  The allegations in this paragraph are denied to the extent that "Gilead" refers to GSIUC.

251.    Defendants admit that GSIUC applied for a trademark in the United States for exclusive use of the mark, DESCOVY FOR PREP, and that GSIUC's application for the mark was filed on January 17, 2019 as U.S. Ser. No. 88,266,226.  Defendants admit that GSIUC applied for trademark registration of Descovy for PrEP's logo as U.S. Ser. No. 88,615,918.  The allegations in this paragraph are denied to the extent that "Gilead" refers to GSI.  Defendants deny the remaining allegations in Paragraph 251 of the Complaint.

252.    Defendants admit that GSI filed the trademark applications referenced in Paragraph 250 of the Complaint after Plaintiff proposed a license to the '509 Patent.  Defendants deny that GSI filed the trademark applications referenced in Paragraph 250 of the Complaint after Plaintiff identified the remaining Patents-in-Suit because, among other things, the remaining Patents-in-Suit had not issued as of the referenced trademark application dates.  Defendants further admit that GSIUC filed the trademark application referenced in Paragraph 251 of the Complaint after Plaintiff

– 56 –

proposed a license to at least the '509 Patent. Defendants deny that GSIUC filed trademark application U.S. Ser. No. 88,266,226 referenced in Paragraph 251 of the Complaint after Plaintiff identified at least the '423 Patent because, among other things, the '423 Patent had not issued as of January 17, 2019. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 252 of the Complaint and therefore deny those allegations.

## VII.   GILEAD'S WILLFUL INFRINGEMENT OF CDC'S PATENTS

### A.   Inducement of PrEP Regimens Through Sales of Truvada®

253.   Defendants admit that, since, 2012, GSI has marketed and sold bottles of Truvada® in the United States for all indications on its label, including its PrEP-related indication. Defendants deny any remaining allegations in Paragraph 253 of the Complaint.

254.   Defendants admit that Truvada® has been Defendants' top-selling HIV medication by revenue worldwide over the full period from its launch in 2004 through the end of Defendants' fiscal year 2018. Defendants deny, however, that Truvada® has been Defendants' top-selling HIV medication by revenue worldwide in each year during that period; for example, Defendants deny that Truvada® was Defendants' top-selling HIV medication by revenue worldwide in fiscal years 2017 or 2018. Defendants admit that Defendants' collective worldwide revenue from Truvada® was approximately 20.5% of their collective worldwide revenue from HIV products and approximately 13.8% of their collective worldwide revenue from all products in fiscal year 2018, but Defendants state that these percentages have varied based on the fiscal year and market considered. Defendants lack sufficient knowledge or information to form a belief as to the remaining vague allegations in Paragraph 254 of the Complaint and therefore deny those allegations.

255.   Defendants admit that the percentage of Truvada® sales attributable to the PrEP indication has fluctuated over time. Defendants admit that Defendants estimate that more than

60% of demand for Truvada® in the first quarter of 2019 was attributable to use for the PrEP indication. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 255 of the Complaint and therefore deny those allegations.

256.   Defendants admit that GSI has educated healthcare providers and patients on administration of Truvada® for the PrEP indication via the FDA-approved package insert for Truvada®, the FDA-approved packaging for Truvada®, and promotional messaging consistent with these FDA-approved messages. Defendants' investigation is ongoing, and based on the information currently known to Defendants, Defendants deny the remaining allegations of Paragraph 256 of the Complaint.

257.   Defendants admit that Truvada® tablets are formulated with FTC and TDF in four dosage combinations, one of which is 200 mg FTC and 300 mg TDF. The document cited in Paragraph 257 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 257 purporting to summarize that document to the extent they are inconsistent with that document.

258.   The document cited in Paragraph 258 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 258 purporting to summarize that document to the extent they are inconsistent with that document.

259.   Defendants admit that GSI has promoted Truvada® for PrEP and has made available a pamphlet entitled "TRUVADA for a Pre-Exposure Prophylaxis (PrEP) indication." Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that

"Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 259 of the Complaint.

260.    Defendants admit that GSI provides the document cited in Paragraph 260 for prescribing healthcare providers and patients to sign prior to initiating Truvada® for PrEP.  The document cited in Paragraph 260 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 260 purporting to summarize that document to the extent they are inconsistent with that document.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 260 of the Complaint.

261.    Defendants admit that GSI obtained a U.S. trademark registration for Truvada for PrEP® and applied for a U.S. trademark registration for the phase "Step Up. PrEP Up" for "promoting public awareness of prevention, treatment, and diagnosis of HIV and AIDS."  Compl. Ex. 86 at 1.  Defendants further admit that GSI has obtained a U.S. trademark registration for "a three-dimensional configuration of an oblong tablet, combined with the color blue as applied to the entire surface of the tablet" for "pharmaceutical preparations, namely, pre-exposure prophylaxis (PrEP) preparations for prevention and risk mitigation of contracting HIV."  Compl. Ex. 87 at 1-2.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 261 of the Complaint.

## B.    Gilead's Clinical Trials to Obtain FDA Approval of Descovy® for PrEP

262.    Defendants admit that GSI conducted a clinical trial as part of the FDA approval process for Descovy® for the PrEP indication.  Defendants' investigation is ongoing, and based on

the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining vague allegations in Paragraph 262 of the Complaint and therefore deny those allegations.

263.    Defendants admit that the DISCOVER trial is titled "Safety and Efficacy of Emtricitabine and Tenofovir Alafenamide (F/TAF) Fixed-Dose Combination Once Daily for Pre-Exposure Prophylaxis in Men and Transgender Women Who Have Sex With Men and Are At Risk of HIV-1 Infection (DISCOVER)."  Defendants admit that GSI is the sole sponsor of this trial and that this trial was intended to support GSI's supplemental new drug application seeking FDA approval to market Descovy® for the PrEP indication.  Defendants admit that GSI did not enlist any Government support or funding for the DISCOVER trial and that the Government did not directly support or fund the DISCOVER trial.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 263 of the Complaint and therefore deny those allegations.

264.    Defendants admit that the DISCOVER trial consists of three experimental arms: a) an experimental arm in which the subject is given FTC/TAF (200/25 mg tablet) and an FTC/TDF placebo, each administered orally once daily for at least 96 weeks; b) an experimental arm in which the subject is given FTC/TDF (200/300 mg tablet) and an FTC/TAF placebo, each administered orally once daily for at least 96 weeks; c) an open-label extension experimental arm wherein, once all participants have been on blinded treatment for at least 96 weeks, the study will be unblinded and participants will be offered the option to continue on open-label FTC/TAF treatment for pre-

exposure prophylaxis in the open-label extension for 48 weeks, where the open label FTC/TAF (200/25 mg tablet) regimen is administered orally once daily.  The allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC. Defendants deny any remaining allegations in Paragraph 264 of the Complaint.

265.    The documents cited in Paragraph 265 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 265 purporting to summarize those documents to the extent they are inconsistent with those documents.

266.    The document cited in Paragraph 266 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 266 purporting to summarize that document to the extent they are inconsistent with that document.

267.    Defendants admit that GSI submitted a supplemental new drug application to FDA on April 5, 2019, seeking approval to market Descovy® for, among other things, use in at-risk adults and adolescents weighing at least 35 kg for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection from sexual acquisition, excluding individuals at risk from receptive vaginal sex, provided that such individuals have a negative HIV-1 test immediately prior to initiating DESCOVY for HIV-1 PrEP.  Defendants further admit that FDA approved GSI's sNDA for this indication on October 3, 2019.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  To the extent Paragraph 267 of the Complaint contains additional allegations, Defendants deny them.

268.    Defendants admit that all participants on the DISCOVER trial were required to roll over to the open label phase by July 31, 2019.  Defendants admit that the DISCOVER open label phase will be ongoing until Descovy® for PrEP is commercially available in participants'

respective countries.  Defendants admit that the open label phase for participants in the United States will end by October 2020.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 268 of the Complaint and therefore deny those allegations.

### C.    Inducement of PrEP Regimens Through Sales of Descovy®

269.    Defendants admit that GSI is now marketing and selling Descovy® for all of its indications, including its indication for PrEP in certain patient populations.  Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants deny the remaining allegations in Paragraph 269 of the Complaint.

270.    Defendants admit that GSI holds U.S. patents relating to Descovy®.  Defendants admit that there are no generic versions of Descovy® currently on the market in the United States. Defendants' investigation is ongoing, and based on the information currently known to Defendants, the allegations in this paragraph concerning the activities of "Gilead" are denied to the extent that "Gilead" refers to GSIUC.  Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 270 of the Complaint and therefore deny those allegations.

271.    Defendants deny the allegations in Paragraph 271 of the Complaint.

272.    Defendants admit that GSI has educated healthcare providers and patients on administration of Descovy® for PrEP via the FDA-approved package insert for Descovy®, the FDA-approved packaging for Descovy®, and promotional messaging consistent with these FDA-approved messages.  Defendants deny the remaining allegations of Paragraph 272 of the Complaint.

273.    The document cited in Paragraph 273 of the Complaint speaks for itself, and Defendants deny the allegations of Paragraph 273 purporting to summarize that document to the extent they are inconsistent with that document.

274.    Defendants admit that GSIUC applied for a trademark in the United States for exclusive use of the mark, DESCOVY FOR PREP.  The documents cited in Paragraph 274 of the Complaint speak for themselves, and Defendants deny the allegations of Paragraph 274 purporting to summarize those documents to the extent they are inconsistent with those documents. Defendants deny the remaining allegations of Paragraph 274 of the Complaint.

**D.    Willfulness and Deliberateness of Gilead's Activities**

275.    Defendants deny the allegations in Paragraph 275 of the Complaint.

276.    Defendants deny that they have not contended that the marketing and selling of Truvada® for PrEP and Descovy® for PrEP do not infringe the Patents-in-Suit.  Defendants admit that they have not made such a contention in testimony before Congress.

277.    Defendants admit that GSI has asserted that the Patents-in-Suit are invalid in public statements.  Defendants deny the remaining allegations in Paragraph 277 of the Complaint.

278.    Defendants deny the allegations in Paragraph 278 of the Complaint.

279.    Paragraph 279 of the Complaint contains conclusions of law to which no response is required.  To the extent there are any factual allegations in Paragraph 279 of the Complaint, Defendants deny them.

## COUNT I:
### GILEAD'S WILLFUL INFRINGEMENT OF THE '509 PATENT BASED ON TRUVADA FOR PREP® AND DESCOVY® FOR PREP

280.    Defendants repeat and incorporate the admissions and denials in the preceding paragraphs as though fully set forth herein.

281.     Defendants admit that the '509 Patent bears an issuance date of June 2, 2015. Defendants admit that the '509 Patent lists the United States of America as the assignee on its face. Defendants deny that the '509 Patent was validly issued.  The remainder of Paragraph 281 of the Complaint contains conclusions of law to which no response is required.

282.     Defendants deny the allegations in Paragraph 282 of the Complaint.

283.     Defendants deny the allegations in Paragraph 283 of the Complaint.

284.     Defendants deny the allegations in Paragraph 284 of the Complaint.

285.     Defendants deny the allegations in Paragraph 285 of the Complaint.

286.     Defendants deny the allegations in Paragraph 286 of the Complaint.

287.     Defendants deny the allegations in Paragraph 287 of the Complaint.

288.     Defendants deny the allegations in Paragraph 288 of the Complaint.

## COUNT II:
### GILEAD'S WILLFUL INFRINGEMENT OF THE '333 PATENT BASED ON TRUVADA FOR PREP®

289.     Defendants repeat and incorporate the admissions and denials in the preceding paragraphs as though fully set forth herein.

290.     Defendants deny that the '333 Patent was issued on June 2, 2015.  Defendants admit that the '333 Patent lists the United States of America as the assignee on its face.  Defendants deny that the '333 Patent was validly issued.  The remainder of Paragraph 290 of the Complaint contains conclusions of law to which no response is required.

291.     Defendants deny the allegations in Paragraph 291 of the Complaint.

292.     Defendants deny the allegations in Paragraph 292 of the Complaint.

293.     Defendants deny the allegations in Paragraph 293 of the Complaint.

294.     Defendants deny the allegations in Paragraph 294 of the Complaint.

295.    Defendants deny the allegations in Paragraph 295 of the Complaint.

296.    Defendants deny the allegations in Paragraph 296 of the Complaint.

## COUNT III:
### GILEAD'S WILLFUL INFRINGEMENT OF THE '191 PATENT
### BASED ON TRUVADA FOR PREP®

297.    Defendants repeat and incorporate the admissions and denials in the preceding paragraphs as though fully set forth herein.

298.    Defendants deny that the '191 Patent was issued on June 2, 2015.  Defendants admit that the '191 Patent lists the United States of America as the assignee on its face.  Defendants deny that the '191 Patent was validly issued.  The remainder of Paragraph 298 of the Complaint contains conclusions of law to which no response is required.

299.    Defendants deny the allegations in Paragraph 299 of the Complaint.

300.    Defendants deny the allegations in Paragraph 300 of the Complaint.

301.    Defendants deny the allegations in Paragraph 301 of the Complaint.

302.    Defendants deny the allegations in Paragraph 302 of the Complaint.

303.    Defendants deny the allegations in Paragraph 303 of the Complaint.

304.    Defendants deny the allegations in Paragraph 304 of the Complaint.

## COUNT IV:
### GILEAD'S WILLFUL INFRINGEMENT OF THE '423 PATENT
### BASED ON TRUVADA FOR PREP® AND DESCOVY® FOR PREP

305.    Defendants repeat and incorporate the admissions and denials in the preceding paragraphs as though fully set forth herein.

306.    Defendants deny that the '423 Patent was issued on June 2, 2015.  Defendants admit that the '423 Patent lists the United States of America as the assignee on its face.  Defendants deny

that the '423 Patent was validly issued.  The remainder of Paragraph 306 of the Complaint contains conclusions of law to which no response is required.

307.  Defendants deny the allegations in Paragraph 307 of the Complaint.

308.  Defendants deny the allegations in Paragraph 308 of the Complaint.

309.  Defendants deny the allegations in Paragraph 309 of the Complaint.

310.  Defendants deny the allegations in Paragraph 310 of the Complaint.

311.  Defendants deny the allegations in Paragraph 311 of the Complaint.

312.  Defendants deny the allegations in Paragraph 312 of the Complaint.

313.  Defendants deny the allegations in Paragraph 313 of the Complaint.

## RESPONSE TO PRAYER FOR RELIEF

The remainder of the Complaint recites a prayer for relief to which no response is required. To the extent any response is required, Defendants deny that the Government is entitled to any remedy or relief.

## AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or truth of any allegation in the Complaint, Defendants assert the following defenses:

## FIRST AFFIRMATIVE DEFENSE
## (FAILURE TO STATE A CLAIM FOR RELIEF)

1.  Plaintiff's Complaint fails to state a claim upon which relief can be granted.  To the extent Plaintiff's Complaint states any claim as to GSI, it fails to state a claim upon which relief can be granted as to GSIUC.

## SECOND AFFIRMATIVE DEFENSE
## (NON-INFRINGEMENT)

2. Defendants do not infringe and have not infringed (either directly, contributorily, or by inducement) any valid and enforceable claim of the '509, '333, '191, or '423 Patents, either literally or under the doctrine of equivalents.

## THIRD AFFIRMATIVE DEFENSE
## (INVALIDITY)

3. One or more claims of the '509, '333, '191, and '423 Patents are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. § 101 *et seq.*, including without limitation §§ 101, 102, 103, 112, and/or any judicially created doctrine of invalidity, including obviousness-type double patenting.

## FOURTH AFFIRMATIVE DEFENSE
## (UNCLEAN HANDS)

4. The claims of the Patents-in-Suit are unenforceable against Defendants because of the equitable doctrine of unclean hands.

5. For example, the Government has demonstrated unclean hands through its encouragement of both the public use and the prescription of Truvada® for PrEP purposes—including in CDC guidelines published even before the Truvada® PrEP indication had been approved by the FDA in 2012. For example, the CDC's January 28, 2011 guidelines—issued more than one year before the FDA's approval of the PrEP indication for Truvada®—identified "[p]rescrib[ing] 1 tablet of Truvada® (TDF [300 mg] plus FTC [200 mg]) daily" as part of "[b]eginning [a] PrEP medication regimen." Ex. A (January 28, 2011 Interim Guidance) at 68. Furthermore, the Government requested that GSI provide TDF/FTC for use in preclinical and clinical studies concerning PrEP, and the Government (including the FDA) actively encouraged GSI to seek FDA approval for the PrEP indication for Truvada®. The Government's promotion

of the use of Truvada® for the indication that it now alleges infringes the Patents-in-Suit bars the Government under the doctrine of unclean hands from recovering royalties on sales of Truvada®.

6.      Furthermore, the Government has demonstrated unclean hands because it breached its obligations under at least four Material Transfer Agreements by failing to provide GSI with prompt notice of the alleged inventions or the patent applications that resulted in the Patents-in-Suit.   Had the Government performed its contractual obligation under those agreements to promptly notify GSI of the purported invention(s) described in the applications that led to the HHS Patents, GSI would have had the opportunity to consider its options, including providing CDC and/or the PTO with information showing why any such patent would be invalid..   Furthermore, the Government has demonstrated unclean hands because its applications for the HHS Patents violated the clear terms of a Clinical Trial Agreement with GSI.   That agreement expressly provided that "CDC agrees not to seek patent protection in connection with any inventions that derive from the use of the Study Drug" in a clinical trial that, on information and belief, formed the basis for the Government's decisions concerning the prosecution of the applications leading to the HHS Patents.

7.      Throughout its history and continuing through today, GSI has collaborated in good faith with CDC on various research studies relating to the use of antiretroviral agents for prevention of HIV-1.  As part of these collaborations, Gilead scientists have shared their significant expertise in the field of HIV with CDC researchers, including by providing ideas and guidance, and Gilead has provided CDC with millions of dollars of pharmaceuticals—at no cost to CDC—to further the scientific community's efforts to end the HIV epidemic.  During these collaborations, GSI and the Government, acting through the CDC, entered into at least four

material transfer agreements related to the research that resulted in the alleged inventions described in the HHS Patents.

8.       On June 21, 2004, GSI and the Government, acting through the CDC, entered into a material transfer agreement bearing CDC Reference Number NCHSTP-V043072 (the "'072 MTA," Ex. B).

9.       Under the '072 MTA, GSI provided significant quantities of two GSI drugs, tenofovir ("TFV") and TDF, to CDC at no cost to be used in HIV-1 research conducted at CDC. Specifically, GSI provided the material to be used by CDC in a study that generally involved administering TDF to male Rhesus macaques either daily or weekly and exposing the macaques to simian-human immunodeficiency virus ("SHIV"), a relative of HIV-1, either weekly or shortly after the treatment dose via a low-dose rectal challenge model.  The MTA also discussed an in vitro study using tenofovir.

10.      In exchange for the drugs that GSI supplied under the '072 MTA, among other things, CDC "agree[d] to promptly notify" GSI of "any Inventions" under the '072 MTA, which the '072 MTA defined as "any inventions, discoveries and ideas that are made, conceived or reduced to practice."  Ex. B ('072 MTA) § 8.  The U.S. Public Health Service ("PHS") likewise agreed "to give serious and reasonable consideration to [GSI's] request for a non-exclusive or exclusive license on commercially reasonable terms under PHS's intellectual property rights in or to any Inventions."  *Id.*

11.      GSI performed its obligations under the '072 MTA and delivered the TFV and TDF to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

12. On or around January 24, 2005, GSI and CDC executed an amendment to the '072 MTA whereby GSI would supply CDC with additional TDF at no cost.

13. GSI performed its obligations under the amendment to the '072 MTA and delivered the TDF to CDC in a timely manner. On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

14. On January 7, 2005, GSI and the Government, acting through CDC, entered into a material transfer agreement bearing CDC Reference Number NCHSTP-V053433 (the "'433 MTA," Ex. C).

15. Under the '433 MTA, GSI provided significant quantities of a GSI drug, TFV, to CDC at no cost to be used in HIV-1 research conducted at CDC. Specifically, GSI provided the material to be used by CDC in a study that generally involved "determin[ing] the effective concentration [of TFV] in mucosal tissues to prevent HIV-1/SHIV infection." Ex. C ('433 MTA) at 7. The '433 MTA expressly stated that the information generated from the study would "be used … in conjunction with [CDC's] PrEP work being conducted in non-human primates." *Id.*

16. The '433 MTA identified Thomas Folks as a co-investigator of the study described in the '433 MTA. Ex. C ('433 MTA) at 5. Thomas Folks is one of the individuals identified as an inventor on the face of the HHS Patents.

17. In exchange for the drugs that GSI supplied under the '433 MTA, among other things, CDC "agree[d] to promptly notify" GSI of "any Inventions" under the '433 MTA, which the '433 MTA defined as "any inventions, discoveries and ideas that are made, conceived or reduced to practice." Ex. C ('433 MTA) § 8. PHS likewise agreed "to give serious and reasonable consideration to [GSI's] request for a non-exclusive or exclusive license on

commercially reasonable terms under PHS's intellectual property rights in or to any Inventions." *Id.*

18.     GSI performed its obligations under the '433 MTA and delivered the TFV to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

19.     On January 31, 2005, GSI and the Government, acting through CDC, entered into a material transfer agreement bearing CDC Reference Number NCHSTP-V053471 (the "'471 MTA," Ex. D).

20.     Under the '471 MTA, GSI provided significant quantities of a GSI drug, FTC, to CDC at no cost to be used in HIV-1 research conducted at CDC.  Specifically, GSI provided the material to be used by CDC in a study that generally involved administering a combination consisting of TFV and FTC to female Rhesus macaques daily and exposing the macaques to SHIV weekly via a low-dose vaginal challenge model.

21.     In exchange for the drugs that GSI supplied under the '471 MTA, among other things, CDC "agree[d] to promptly notify" GSI of "any Inventions" under the '471 MTA, which the '471 MTA defined as "any inventions, discoveries and ideas that are made, conceived or reduced to practice."  Ex. D ('471 MTA) § 8.  PHS likewise agreed "to give serious and reasonable consideration to [GSI's] request for a non-exclusive or exclusive license on commercially reasonable terms under PHS's intellectual property rights in or to any Inventions." *Id.*

22.     GSI performed its obligations under the '471 MTA and delivered the FTC to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

23.     On information and belief, in or around February 2006, GSI and CDC executed a first amendment to the '471 MTA whereby GSI would supply CDC with additional FTC at no cost.

24.     GSI performed its obligations under the first amendment to the '471 MTA and delivered the FTC to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

25.     On or about March 6, 2006, GSI and CDC executed a second amendment to the '471 MTA whereby GSI would supply CDC with additional TDF at no cost.

26.     GSI performed its obligations under the second amendment to the '471 MTA and delivered the TDF to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

27.     On April 25, 2005, GSI and the Government, acting through CDC, entered into a material transfer agreement bearing CDC Reference Number NCHSTP-V053649 (the "'649 MTA," Ex. E).

28.     Under the '649 MTA, GSI provided significant quantities of a GSI drug, TFV (which was described in the '649 MTA by its alternative names, PMPA and (R)-9-(2-phosphonylmethoxypropyl)adenine), to CDC at no cost to be used in HIV-1 research conducted at CDC.  Specifically, GSI provided the material to be used by CDC in a study that involved, among other things, administering a combination consisting of TFV and FTC to Rhesus macaques and exposing the macaques to SHIV via a low-dose rectal challenge model.

29.     In exchange for the drugs that GSI supplied under the '649 MTA, among other things, CDC "agree[d] to promptly notify" GSI of "any Inventions" under the '649 MTA, which the '649 MTA defined as "any inventions, discoveries and ideas that are made, conceived or

reduced to practice."  Ex. E ('649 MTA) § 8.  PHS likewise agreed "to give serious and reasonable consideration to [GSI's] request for a non-exclusive or exclusive license on commercially reasonable terms under PHS's intellectual property rights in or to any Inventions." *Id.*

30.    GSI performed its obligations under the '649 MTA and delivered the FTV to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

31.    Between April 30, 2008, and August 4, 2014, GSI and CDC executed five amendments to the '649 MTA whereby GSI would supply CDC with additional medication at no cost.

32.    GSI performed its obligations under the amendments to the '649 MTA and delivered the medication to CDC in a timely manner.  On information and belief, CDC used these GSI-provided materials in the course of its HIV research.

33.    On February 3, 2006, CDC filed U.S. Provisional Patent Application No. 60/764,811 (the "'811 Provisional," Ex. F), with the U.S. Patent and Trademark Office ("PTO") related to purported inventions that CDC made in the course of the research conducted under the '072 MTA, '433 MTA, the '471 MTA, and/or the '649 MTA (collectively, the "MTAs") and using the medications that GSI provided under the MTAs.  On January 31, 2007, CDC filed U.S. non-provisional patent Application No. 11/669,547 (the "'547 Application," Ex. G), claiming priority to the '811 Provisional.  The '509 Patent issued from the '547 Application on June 2, 2015, and the remaining HHS Patents have since issued and claim priority to the same provisional and non-provisional applications.  On information and belief, the HHS Patents are

owned by the Government, represented by the U.S. Department of Health and Human Services
("HHS").

34.     The '811 Provisional described the results of a study in which a group of six
Rhesus macaques were injected subcutaneously with 22 mg/kg TFV and 20 mg/kg FTC, which
is another GSI drug, once daily.  Ex. F ('811 Provisional) at 6.  The macaques were also
subjected to weekly rectal exposures with a low dose of SHIV.  The study found that the
subcutaneous TFV/FTC combination provides a high level of protection against repeated virus
challenges; the authors therefore concluded that "chemoprophylaxis with potent antiretrovirals is
an effective strategy for preventing sexual HIV transmission." *Id.*  A presentation slide
submitted as part of the '811 Provisional reported that "Macaque models show that tenofovir
[alone] can provide substantial protection against … mucosal virus exposures," like the rectal
exposures used in the study.  *Id.* at 8.  On information and belief, the studies reported in the '811
Provisional were performed by CDC researchers.

35.     The '547 Application disclosed several studies in the originally filed version of its
specification.  In one of those studies, a group of six macaques were given oral doses of a
combination of TDF (22 mg/kg) and FTC (20 mg/kg) once daily.  The macaques were also
subjected to weekly rectal exposures with a low dose of SHIV.  The study found that the oral
TDF/FTC combination reduced infection in these macaques 7.8-fold versus an untreated control
group.  Ex. G ('547 Application) at [0040]-[0042].

36.     On information and belief, the alleged discoveries and ideas and any purported
inventions disclosed in the '811 Provisional and/or the '547 Application were made, conceived,
or reduced to practice as a result of the studies described in the MTAs—*i.e.*, the studies for
which GSI provided significant quantities of its proprietary drugs to CDC free of charge.  *See,*

*e.g.*, Compl. ¶ 121 ("The earliest MTA ***related to the research leading to the Patents-in-Suit***
was signed in December 2004 by Dr. Heneine, and later by Dr. Mick Hitchcock, Gilead's then
Vice President of Medical Affairs, in response to Dr. Heneine's email request for a transfer of
FTC to CDC." (emphasis added)); *id.* ¶ 120 ("Under several MTAs with CDC, signed during the
period from 2004 to 2008, Gilead provided the FTC, TDF, and tenofovir used in CDC's
research."); *id.* ¶ 122 ("Ultimately, several additional MTAs were signed relating to transfers of
drugs used in CDC's patented research.").

37.     Furthermore, GSI and the Government, acting through CDC, also entered into a
Clinical Trial Agreement ("CTA") with an effective date of November 18, 2004.  Ex. S.  This
agreement set forth the terms under which GSI would provide antiviral products free of charge
for a clinical trial about HIV prevention in Botswana.  The Government agreed, among other
things, "to put the results of the Trial, patentable or otherwise, in the public domain for all to use
without obligation or compensation to CDC."  "For clarity," the CTA provided, "CDC agrees not
to seek patent protection in connection with any inventions that derive from the use of the Study
Drug in the Trial."  In compliance with its obligations under the CTA, GSI provided to CDC
compounds and placebos at no cost.  On information and belief, CDC utilized the compounds
that GSI provided in the Botswana trial contemplated by the CTA.  On information and belief,
CDC relied on information derived from the Botswana clinical trial to make decisions
concerning the prosecution of the '547 Application.

38.     In spite of the express terms of the MTAs requiring CDC to "promptly notify"
Gilead of any claimed "Inventions" arising out of the research conducted under the MTAs and
the clear term of the CTA expressly providing that "CDC agrees not to seek patent protection in
connection with any inventions that derive from the use of the Study Drug in the Trial," CDC not

only filed patent applications seeking patent protection for purported "Inventions" derived from the use of the compounds Gilead supplied under the MTAs and CTA, but also failed to disclose to Gilead the purported invention(s) claimed in the '811 Provisional, the '547 Application, and in the later applications that resulted in the HHS Patents.  Instead, CDC and the Government waited several years—until October 2014 at the earliest—to provide the contractually required notice to GSI, and another two years, until March 11, 2016, to assert that Gilead required a license under the HHS Patents in order to continue marketing Truvada® for PrEP.

39.     In the interim, in 2012, and with the encouragement and support of the Government (including the FDA), GSI obtained approval from the FDA to market Truvada®, which contains TDF and FTC—the medications that GSI provided to CDC under the MTAs— for HIV-1 PrEP.  By the time that the Government first communicated with GSI concerning the purported invention(s) described in the '811 Provisional or the '547 Application in October 2014, GSI had already invested substantial amounts in educating at-risk patient populations about the potential benefits of Truvada® for PrEP, and some of those at-risk patient populations had already come to rely on Truvada® for prophylaxis to attempt to minimize their potential for contracting HIV-1.

40.     Had CDC fulfilled its contractual obligations to promptly notify GSI of the purported invention(s) described in the '811 Provisional and in the applications that resulted in the HHS Patents, GSI would have had the opportunity to consider its options, including providing CDC and/or the PTO with information showing why any such patent would be invalid.

41.     Even after 2006, because of the Government's continuing failure to promptly notify GSI of the purported invention(s) described in the '811 Provisional, the '547 Application, and in the later applications that resulted in the HHS Patents, GSI was further denied the

opportunity to consider its options, including: providing CDC and/or the PTO with information showing why any such patent would be invalid; changing its application for FDA approval to market Truvada® for PrEP; or indicating the role of GSI scientists in the work that led to the alleged inventions before developing and marketing Truvada® for PrEP and Descovy® for PrEP.

42.     Because the Government failed to fulfill its contractual obligations to GSI under the MTAs and the CTA, the Government brings its infringement claims against GSI with unclean hands, and the HHS patents are therefore unenforceable against Defendants.

43.     To the extent the Government contends that this affirmative defense is an equitable defense from which it is immune, the Government has waived this immunity at least because a) the Government has acted in a proprietary capacity, not in a sovereign capacity, by obtaining and asserting patent rights in the same manner and for the same purpose as a private party (i.e., enforcing a right to exclude Defendants from practicing the claimed inventions unless payment is made in the form of a royalty), and b) the Government has engaged in affirmative misconduct (e.g., obtaining the HHS Patents in breach of the MTAs and CTA).  Moreover, such immunity would result in serious injustice to Defendants at least because it would deprive Defendants of the benefits of the contracts that the Government executed, including the MTAs and CTA.

**FIFTH AFFIRMATIVE DEFENSE**
**(INEQUITABLE CONDUCT)**

44.     The claims of the Patents-in-Suit are unenforceable because of the doctrine of inequitable conduct.

45.     Specifically, during prosecution of the HHS Patents, the Government failed to provide material information to the Patent Office relating to the inventiveness of the claimed

inventions.  On information and belief, these omissions were knowing and willful, made with an intent to deceive the Patent Office.

46.  On August 21, 2019, GSI filed a Petition for *Inter Partes* Review of claims 1-18 of the '509 Patent before the Patent Trial and Appeal Board, *see* Ex. H, Petition, Case No. IPR2019-01453 (P.T.A.B. Aug. 21, 2019), and a Petition for *Inter Partes* Review of claims 1-17 of the '333 Patent before the Patent Trial and Appeal Board, *see* Ex. I, Petition, Case No. IPR2019-01454 (P.T.A.B. Aug. 21, 2019) (the "IPR Petitions").  These Petitions are incorporated by reference into these affirmative defenses as if fully set forth herein.

47.  Among the prior art asserted in the IPR Petitions were the CDC's own Post-Exposure Prophylaxis guidelines ("CDC-PEP," Ex. J), which were published and made available to the public on January 21, 2005, in Volume 54, No. RR-2 of the CDC periodical *Morbidity and Mortality Weekly Report Recommendations and Reports* (MMWR-RR).  The CDC-PEP publication identified five authors affiliated with the CDC (including the first named author, Dr. Dawn K. Smith), as well as three authors affiliated with the National Institutes of Health, one author affiliated with the FDA, and two authors affiliated with the Health Resources and Services Administration.  Ex. J (CDC-PEP) at 1.  Furthermore, two of the named inventors of the four HHS Patents, Robert Janssen and Ronald Otten, were identified as "federal consultants" for the CDC-PEP guidelines.  *Id.* at 20.

48.  CDC-PEP describes a regimen of daily administrations of combinations of antiretroviral agents for an extended period following an HIV exposure to prevent an HIV infection.  CDC-PEP identifies TDF+FTC as one of two "preferred" backbone combinations to use in post-exposure prophylaxis ("PEP"), and notes that Truvada® is an oral formulation containing 300 mg of TDF and 200 mg of FTC.  Ex. J (CDC-PEP) at 8, 9 tbl.2, 10.

49.     The January 21, 2005 publication date of CDC-PEP preceded the critical date of February 3, 2005—one year before the earliest priority date claimed by the '509 Patent or '333 Patent.  Therefore, CDC-PEP constitutes prior art to both the '509 Patent and '333 Patent under 35 U.S.C. § 102(b).

50.     By virtue of the CDC's publication of CDC-PEP, that document was in the CDC's possession prior to the CDC's filing of the '811 Provisional on February 3, 2006, or the filing of the '547 Application on January 31, 2007—the applications that together led to the issuance of each of the HHS Patents, including the '509 Patent and '333 Patent.

51.     On information and belief, the Government was aware of the CDC-PEP reference during the prosecution of the '509 Patent and '333 Patent, including by virtue of its possession and publication of that reference on or before January 21, 2005.  As evidence thereof, and as noted above, two of the named inventors of the four HHS Patents, Robert Janssen and Ronald Otten, were identified as "federal consultants" for the CDC-PEP guidelines and were therefore aware of that document and the findings therein.

52.     However, during prosecution of the '509 Patent and '333 Patent, the Government did not disclose the CDC-PEP reference to the Patent Office, notwithstanding the duty to disclose material prior art, and notwithstanding the named inventors' oaths concerning inventorship.  Nor did the examiner consider that reference during her evaluation of the applications leading to issuance of those patents.

53.     As set forth in the IPR Petitions, which are incorporated herein by reference, claims 12-18 of the '509 Patent and claims 12-17 of the '333 Patent are anticipated by the CDC-PEP reference under 35 U.S.C. § 102(b).  Similarly, and as set forth in the aforementioned IPR

Petitions, the prior art—including CDC-PEP—also renders all challenged claims of the '509 Patent and '333 Patent obvious under 35 U.S.C. § 103.

54.     Unlike claim 1 of the '509 Patent, which specifies administration "prior to an exposure" to an immunodeficiency retrovirus, claim 12 and dependent claims 14-18 of the '509 Patent did not specify administration prior to an actual or potential exposure.

55.     Unlike claim 1 of the '333 Patent, which specifies administration "prior to the exposure" to an immunodeficiency retrovirus, claim 12 and dependent claims 14-17 of the '333 Patent did not specify administration prior to an actual or potential exposure.

56.     On December 2, 2019—after GSI filed its Petition in Case No. IPR2019-01453—the Government disclaimed claims 12 and 14-18 of the '509 Patent.  Ex. K (Disclaimer in Patent Under 37 C.F.R. § 1.321(a), U.S. Patent No. 9,044,509).

57.     Likewise, on December 2, 2019, after GSI filed its Petition in Case No. IPR2019-01454, the Government disclaimed claims 12 and 14-17 of the '333 Patent.  Ex. L (Disclaimer in Patent Under 37 C.F.R. § 1.321(a), U.S. Patent No. 9,579.333).

58.     On information and belief, the Government's disclaimer of claims 12 and 14-18 of the '509 Patent and claims 12 and 14-17 of the '333 Patent was prompted by its recognition that CDC-PEP anticipated each of these claims.

59.     The Government also did not disclose the CDC-PEP reference in its original filings on January 13, 2017 for Application No. 15,406,344, which later issued as the '191 Patent.  Application No. 15,406,344, as originally filed, include at least one independent claim directed to the use of FTC and TFV or a TFV prodrug for PEP (original claim 12), but the Government failed to disclose CDC-PEP with its January 2017 filing.  *See* Ex. M (Application No. 15406344, filed Jan. 13, 2017) at 23 (claim 12); *id.* at 32-36 (initial Information Disclosure

Statement).  The Government eventually disclosed CDC-PEP to the examiner during that prosecution on March 7, 2017, but did not alert the examiner to its materiality.  *See* Ex. N (subsequent Information Disclosure Statement, filed March 7, 2017).  The examiner subsequently relied upon CDC-PEP in issuing a non-final rejection of claims 1-19 for obviousness under 35 U.S.C. § 103(a).  Ex. O (Aug. 8, 2017 Non-Final Rejection) at 4-5, ¶¶ 5-10 (relying on "Smith et al.," *i.e.*, CDC-PEP).  Rather than overcome that rejection directly, the Government canceled several claims, added several claims, and simply amended the remaining claims "to correspond with the claims of U.S. Patent No. 9,044,509."  Ex. P (Amendment and Response) at 7.  The amended claims included independent claim 12 (issued as claim 13), to which the Government included the limitation that the claimed combination must be "administered prior to a potential exposure of the human to the human immunodeficiency retrovirus."  *Id.* at 3.

60.    On information and belief, the Government's failure to disclose the CDC-PEP reference materially affected the prosecution of the '509 and '333 Patents because at least some claims of those patents would not have been allowed if the CDP-PEP reference had been disclosed during prosecution.  This materiality is evidenced by the fact that CDC-PEP anticipates and/or renders obvious all claims of the '509 and '333 Patents, including for the reasons set forth in GSI's IPR Petitions relating to those patents, which are incorporated by reference into these affirmative defenses as if set forth fully herein.  *See* Ex. H, Petition, Case No. IPR2019-01453 (P.T.A.B. Aug. 21, 2019) ('509 Patent); Ex. I, Petition, Case No. IPR2019-01454 (P.T.A.B. Aug. 21, 2019) ('333 Patent).  This materiality is also evidenced by the Government's subsequent disclaimer of claims 12 and 14-18 of the '509 Patent and claims 12 and 14-17 of the '333 Patent after the CDC-PEP was asserted as prior art in GSI's IPR Petitions.

61.     Furthermore, the materiality of the CDC-PEP reference is also supported by the record in the subsequent prosecution of the '191 Patent.  After the Government's belated disclosure of CDC-PEP during the prosecution of the '191 Patent, the examiner rejected claims in reliance on that reference, noting that CDC-PEP disclosed the use of Truvada® for PEP purposes and that it would have been obvious to treat uninfected individuals "who are exposed to or at risk of exposure to HIV" with Truvada®.  Ex. O (Aug. 8, 2017 Non-Final Rejection) at 5-6, ¶ 9.  This rejection prompted an amendment to include an explicit limitation confining claim 12 (allowed as claim 13) to pre-exposure administration.  Ex. P (Amendment and Response) at 3.

62.     Furthermore, individuals with a duty to disclose material information during prosecution—including the named inventors and prosecuting attorneys—failed to disclose the CDC-PEP reference to the examiner during prosecution of the '509 and '333 Patents.  On information and belief, at least some of these individuals failed to disclose this reference despite knowing of that reference and its materiality.  On information and belief, the withholding of the CDC-PEP reference by those individuals was done with the intent to deceive the Patent Office.  This intent is supported by the but-for materiality of the CDC-PEP reference to the prosecution of the '509 and '333 Patents; the individuals' possession and knowledge of that reference, including based on the involvement of at least two of the named inventors, Robert Janssen and Ronald Otten; and the individuals' knowledge of that reference's materiality to the inventiveness of the pending claims.  The individuals' knowledge and intent is further supported by the Government's subsequent, belated disclosure of this reference during its prosecution of the '191 Patent.

63.     The Government's failure to disclose the CDC-PEP reference during the prosecution of the '509 and '333 Patents constitutes inequitable conduct, rendering all claims of the '509 Patent and '333 Patent unenforceable.

64.     The Government's inequitable conduct during the prosecution of the '509 and '333 Patents also constitutes inequitable conduct with respect to the '191 and '423 Patents, which are continuations of the '509 and '333 Patents.  As confirmed by the examiner's findings during prosecution, as well as the Government's terminal disclaimers, the allowed claims of the '191 and '423 Patents are not patentably distinct from those of the '509 and '333 Patents. Furthermore, in allowing the claims of the '191 and '429 Patents, the examiner relied substantially on the previous allowance of the claims of the '509 and '333 Patents.

65.     During the prosecution of the '191 and '423 Patents, the Government did not cure its earlier inequitable conduct.  The Government did not disclose the CDC-PEP reference with the initial application for the '191 Patent and disclosed it only later during prosecution.  *Compare* Ex. M at 32-36 (initial Information Disclosure Statement for '191 application), *with* Ex. N (subsequent Information Disclosure Statement, filed March 7, 2017).  During the prosecution of the '191 and '423 Patents, the Government provided only a bare disclosure of CDC-PEP and did not alert the examiner to the materiality of the CDC-PEP reference.  When the examiner relied on her prior allowance of the claims of the '509 Patent to support the patentability of the '191 and '423 Patents, *see, e.g.*, Ex. Q ('191 Notice of Allowance) at 2, ¶ 5, and found the claims of the '191 Patent to be "not patentably distinct" from those in the '509 or '333 Patents, Ex. O (Aug. 8, 2017 Non-Final Rejection) at 3, ¶¶ 2-3, the Government did not alert the examiner to the fact that the Government had not disclosed the material CDC-PEP reference during the prosecution of the '509 and '333 Patents.  On the contrary, in amending the claims for the '191

Patent, the Government noted that its amendments were made "to correspond to with the claims of U.S. Patent No. 9,044,509." Ex. P (Amendment and Response) at 7. Similarly, after the examiner noted that the claims of the '423 Patent were "not patentably distinct" from those in the parent applications and were "allowable over prior art for reasons as set forth in [the] parent applications," Ex. R (Jan. 23, 2019 Non-Final Rejection) at 3-4, ¶¶ 3-5, the Government did not alert the examiner to the fact that the CDC-PEP reference was not disclosed during the prosecution of the '509 or '333 Patents.

66.     The Government's subsequent disclaimer of claims 12 and 14-18 of the '509 Patent and claims 12 and 14-17 of the '333 Patent cannot cure its inequitable conduct during prosecution. The Government's subsequent disclosure of the CDC-PEP reference during prosecution of the '191 and '423 Patents also cannot cure its inequitable conduct with respect to any of the HHS Patents.

67.     To the extent the Government contends that this affirmative defense is an equitable defense from which it is immune, the Government has waived this immunity at least because a) the Government has acted in a proprietary capacity, not in a sovereign capacity, by obtaining and asserting patent rights in the same manner and for the same purpose as a private party (i.e., enforcing a right to exclude Defendants from practicing the claimed inventions unless payment is made in the form of a royalty), and b) the Government has engaged in affirmative misconduct (e.g., obtaining patent claims in violation of its duty of disclosure to the Patent Office). Moreover, such immunity would result in serious injustice to Defendants at least because it would cause Defendants to incur substantial costs to defend against the Government's infringement allegations for otherwise-unenforceable patents that the Government obtained because of a violation of its duty of disclosure to the Patent Office.

## SIXTH AFFIRMATIVE DEFENSE
## (DERIVATION)

68.     The Patents-in-Suit are invalid because the alleged invention(s) were derived and/or misappropriated from the true inventor(s).

## SEVENTH AFFIRMATIVE DEFENSE
## (SAFE HARBOR)

69.     Defendants are exempt from liability under the safe harbor of 35 U.S.C. § 271(e)(1), at least to the extent the Government claims that uses related to the clinical trials to obtain FDA approval of Descovy® for PrEP are acts of infringement.

## EIGHTH AFFIRMATIVE DEFENSE
## (ACQUIESCENCE AND/OR ESTOPPEL)

70.     The Government's Complaint, and each of its purported causes of action, is barred in whole or in part by the doctrines of acquiescence and/or estoppel.

71.     As set forth above, the Government has encouraged both the public use and the prescription of Truvada® for PrEP purposes—including in CDC guidelines published even before the PrEP indication had been approved by the FDA in 2012.  For example, the CDC's January 28, 2011 guidelines—issued more than one year before the FDA's approval of the PrEP indication for Truvada®—identified "[p]rescrib[ing] 1 tablet of Truvada® (TDF [300 mg] plus FTC [200 mg]) daily" as part of "[b]eginning [a] PrEP medication regimen."  Ex. A (January 28, 2011 Interim Guidance) at 68.  Furthermore, the Government requested that GSI provide TDF/FTC for use in preclinical and clinical studies concerning PrEP, and the Government (including the FDA) actively encouraged GSI to seek FDA approval for the PrEP indication for Truvada®.  The Government's promotion of the use of Truvada® for the indication that it now alleges infringes the Patents-in-Suit indicates that its Complaint, and each of its purported causes of action, is barred in whole or in part by the of acquiescence and/or estoppel.

72.     To the extent the Government contends that this affirmative defense is an equitable defense from which it is immune, the Government has waived this immunity at least because a) the Government has acted in a proprietary capacity, not in a sovereign capacity, by obtaining and asserting patent rights in the same manner and for the same purpose as a private party (i.e., enforcing a right to exclude Defendants from practicing the claimed inventions unless payment is made in the form of a royalty), and b) the Government has engaged in affirmative misconduct (e.g., obtaining the HHS Patents and encouraging the public to use the accused products in a manner that the Government alleges infringes the HHS Patents).  Moreover, such immunity would result in serious injustice to Defendants at least because it would expose Defendants to potential liability as a direct result of GSI's efforts to work with the Government to mitigate the HIV crisis and promote public health, and because it would expose Defendants to potential liability for GSI's promotion of the use of its products in the same manner that the Government itself has promoted them in the CDC's PrEP guidelines.

### NINTH AFFIRMATIVE DEFENSE
### (IMPLIED WAIVER)

73.     The Government's Complaint, and each of its purported causes of action, is barred in whole or in part by the equitable doctrine of implied waiver.

74.     For example, the Government has demonstrated implied waiver by seeking patent protection for the use of Truvada® for PrEP purposes, failing to disclose to Defendants that the Government was seeking such patent protection, and encouraging GSI to market Truvada® for PrEP purposes.

75.     The Government filed the '811 Provisional (Ex. F) on February 3, 2006, followed by the '547 Application (Ex. G) on January 31, 2007, which claimed priority to the '811 Provisional.  The '509 Patent issued from the '547 Application on June 2, 2015, and the

remaining HHS Patents have since issued and claim priority to the same provisional and nonprovisional applications.  The Government alleges that the administration of Truvada® for PrEP purposes infringes the issued claims of the HHS Patents and that Defendants induce infringement of the HHS Patents through sales of Truvada® for PrEP purposes.  *E.g.*, Compl. ¶¶ 282-283, 285, 291-293, 299-301, 307-308, 310.

76.    However, the Government failed to provide adequate or timely notice to Defendants that the Government had sought patent protection for the subject matter claimed in the HHS Patents.  The CDC and the Government waited several years—until October 2014 at the earliest—to provide notice to either Defendant concerning the existence of the HHS Patents.  *See* Aff. Defenses ¶ 38.  The Government's failure to provide such notice violated the terms of several MTAs between GSI and the CDC.  *See id.* ¶¶ 6-42 (incorporated herein by reference).

77.    Despite this lack of notice to Defendants, the Government extensively encouraged both the public use and the prescription of Truvada® for PrEP purposes—including in CDC guidelines published even before the Truvada® PrEP indication had been approved by the FDA in 2012.  For example, the CDC's January 28, 2011 guidelines—issued more than one year before the FDA's approval of the PrEP indication for Truvada®—identified "[p]rescrib[ing] 1 tablet of Truvada® (TDF [300 mg] plus FTC [200 mg]) daily" as part of "[b]eginning [a] PrEP medication regimen."  Ex. A (January 28, 2011 Interim Guidance) at 68.  Furthermore, the Government requested that GSI provide TDF/FTC for use in preclinical and clinical studies concerning PrEP. Furthermore, the Government (including the FDA) actively encouraged GSI to seek FDA approval for the PrEP indication for Truvada®, which was approved in August 2012.

78.    The Government's conduct—including its failure to provide timely notice to Defendants of the applications that resulted in the HHS Patents, its promotion of the use of

Truvada® for the indication that it now alleges infringes the Patents-in-Suit, and its encouragement of GSI to seek FDA approval for the for the PrEP indication for Truvada®—is "so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365 (Fed. Cir. 2018) (quoting *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011)) (internal quotation mark omitted).  For this reason, the Government is barred under the doctrine of implied waiver from enforcing the HHS Patents against Gilead.

79.     To the extent the Government contends that this affirmative defense is an equitable defense from which it is immune, the Government has waived this immunity at least because a) the Government has acted in a proprietary capacity, not in a sovereign capacity, by obtaining and asserting patent rights in the same manner and for the same purpose as a private party (i.e., enforcing a right to exclude Defendants from practicing the claimed inventions unless payment is made in the form of a royalty), and b) the Government has engaged in affirmative misconduct (e.g., obtaining the HHS Patents and encouraging GSI to engage in actions that the Government alleges would infringe their claims without disclosing the existence of the HHS Patents to GSI).  Moreover, such immunity would result in serious injustice to Defendants at least because it would expose Defendants to potential liability as a direct result of GSI's efforts to work with the Government to mitigate the HIV crisis and promote public health.

## TENTH AFFIRMATIVE DEFENSE
### (NO WILLFULNESS)

80.     Defendants have not willfully infringed any claim of the Patents-in-Suit.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(NO EXCEPTIONAL CASE)**

81.     Defendants' actions in defending this case do not give rise to an exceptional case under 35 U.S.C. § 285.

**TWELFTH AFFIRMATIVE DEFENSE**
**(NO RECOVERY OF COSTS)**

82.     The Government is barred by 35 U.S.C. § 288 from recovering any costs associated with this action.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(FAILURE TO MITIGATE)**

83.     The Government has failed to mitigate the harm it claims to have sustained, if any.

84.     To the extent the Government contends that this affirmative defense is an equitable defense from which it is immune, the Government has waived this immunity at least because a) the Government has acted in a proprietary capacity, not in a sovereign capacity, by obtaining and asserting patent rights in the same manner and for the same purpose as a private party (i.e., enforcing a right to exclude Defendants from practicing the claimed inventions unless payment is made in the form of a royalty), and b) the Government has engaged in affirmative misconduct (e.g., obtaining the HHS Patents in violation of the CTA and without providing the disclosure required by the MTAs and first disclosing them only years after encouraging GSI to undertake the actions that it now contends to be infringing).  Moreover, such immunity would result in serious injustice to Defendants at least because it would expose Defendants to greater potential liability as a direct result of GSI's efforts to work with the Government to mitigate the HIV crisis and promote public health.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(NO STANDING)**

85.     The Government lacks standing to assert one or more of the Patents-in-Suit.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(NO CONSTITUTIONAL AUTHORITY)**

86.     The Government lacks authority under the United States Constitution, including the Intellectual Property Clause thereof (art. I, § 8, cl. 8), to own or assert the four Patents-in-Suit.

## RESERVATION OF DEFENSES

As Defendants' investigation is ongoing and discovery has not yet been completed, Defendants are without complete information regarding the existence or non-existence of other facts or acts that would constitute a defense to the purported causes of action in the Government's Complaint.  Accordingly, Defendants reserve the right to assert any other defenses that discovery may reveal.

## GSI'S SECOND AMENDED COUNTERCLAIMS

Without admitting any of the Government's allegations other than those expressly admitted herein, and without prejudice of the rights of Defendant/Counterclaim-Plaintiff Gilead Sciences, Inc. ("GSI") to plead additional Counterclaims as the facts of the matter warrant, Defendant/Counterclaim-Plaintiff GSI hereby asserts the following Counterclaims against the Government. Defendants contend that Defendant Gilead Sciences Ireland UC is not a proper party to this action; however, if Gilead Sciences Ireland UC is deemed to be a proper party or otherwise remains in this action, Gilead Sciences Ireland UC reserves the right to bring or seek to bring counterclaims on its own behalf at a later stage in the case.

For its Counterclaims against the Government, Defendant/Counterclaim-Plaintiff GSI states as follows:

### THE PARTIES

1.    Counterclaim-Plaintiff Gilead Sciences, Inc. ("GSI") is a corporation organized under the laws of the State of Delaware, having its principal place of business at 333 Lakeside Drive, Foster City, California 94404.

2.    Counterclaim-Defendant alleges in its Complaint that it is acting on behalf of the Department of Health and Human Services (HHS) and is headquartered at 200 Independence Avenue, S.W., Washington, D.C. 20201.

### JURISDICTION & VENUE

3.    Defendant/Counterclaim-Plaintiff GSI brings these Counterclaims under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, for a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that U.S. Patent Nos. 9,044,509 (the "'509 Patent"), 9,579,333 (the "'333 Patent"), 9,937,191 (the "'191 Patent"), and 10,335,423 (the "'423 Patent") (collectively, the "HHS

Patents") have not been infringed and are not being infringed by Defendant/Counterclaim-Plaintiff GSI, that the HHS Patents are invalid, and that the HHS Patents are unenforceable.

4.      This Court has subject matter jurisdiction over Defendant's Counterclaims under 28 U.S.C. §§ 1331 and 1338.   The Government's sovereign immunity does not bar GSI's counterclaims.  *See, e.g.*, *U.S. Dep't of Health & Human Servs. v. Mylan Pharms., Inc.*, No. 10-cv-5956-WHW, 2011 WL 13238650 (D.N.J. July 13, 2011) (holding that because "Defendants' counterclaims [for declaratory judgment of noninfringement and invalidity] are … of the same kind or nature as the Government's claims, as the declaratory judgment sought by defendants is a mirror-image of the judgment sought by the Government," *id.* at *3, the federal government "is subject to adjudication of defendants' compulsory counterclaims properly sounding in recoupment," *id.* at *4); *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1343-1344, 1349 & n.6 (Fed. Cir. 2011) (holding that 5 U.S.C. § 702 "waives sovereign immunity for non-monetary claims against federal agencies," *id.* at 1344, including "declaratory judgment claims under the Patent Act," *id.* at 1349).

5.      The Government waived its sovereign immunity to Gilead's counterclaims by bringing this action.  Gilead's counterclaims are compelled by Federal Rule of Civil Procedure 13(a) and are therefore adverse claims that have arisen out of the same transaction which gave rise to the Government's suit.  Gilead's counterclaims arise from the same transactions that gave rise to the Government's suit, seek relief of the same kind or nature as the Government's suit (i.e., a finding on whether the claims of the HHS Patents are valid and infringed), and do not seek an amount of relief that is in excess of the Government's claims (i.e., because they seek only declaratory relief); accordingly, Gilead's counterclaims are also proper recoupment claims that may be asserted against the Government, notwithstanding its general sovereign immunity.

6.     The Government has also expressly and unequivocally waived its sovereign immunity through 5 U.S.C. § 702, which provides that an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed . . . on the ground that it is against the United States."  Gilead's counterclaims are within the scope of § 702's waiver because they seek only declaratory relief, not money damages; because HHS, CDC, and/or their employees acted unlawfully in their official capacities in obtaining the HHS Patents, which claim subject matter that is not patentable; and because HHS and/or its employees acted unlawfully in their official capacities in asserting that Gilead infringes the claims of the HHS Patents and demanding that Gilead license the HHS Patents.

7.     This Court has personal jurisdiction over Plaintiff/Counterclaim-Defendant. Plaintiff/Counterclaim-Defendant has subjected itself to personal jurisdiction by maintaining its lawsuit against Defendant/Counterclaim-Plaintiff GSI in this District.

8.     Venue in this case is proper in this District by virtue of the Government's filing of the Complaint in this District, which gave rise to these Counterclaims.  The Government contends in its Complaint that venue is proper in this District.

**THE HHS PATENTS**

9.     The '509 Patent, titled "Inhibition of HIV Infection through Chemoprophylaxis," issued on June 2, 2015.  The Government alleges that it owns the '509 Patent.  The earliest possible priority date for the '509 Patent is February 3, 2006.  The Government alleges that the '509 Patent expires on May 12, 2031.

10.    The '333 Patent, titled "Inhibition of HIV Infection through Chemoprophylaxis," issued on February 28, 2017.  The Government alleges that it owns the '333 Patent.  The earliest

possible priority date for the '333 Patent is February 3, 2006.  The Government alleges that the '333 Patent expires on January 31, 2027.

11.    The '191 Patent, titled "Inhibition of HIV Infection through Chemoprophylaxis," issued on April 10, 2018.  The Government alleges that it owns the '191 Patent.  The earliest possible priority date for the '191 Patent is February 3, 2006.  The Government alleges that the '191 Patent expires on January 31, 2027.

12.    The '423 Patent, titled "Inhibition of HIV Infection through Chemoprophylaxis," issued on July 2, 2019.  The Government alleges that it owns the '423 Patent.  The earliest possible priority date for the '423 Patent is February 3, 2006.  The Government alleges that the '423 Patent expires on January 31, 2027.

## FACTUAL BACKGROUND

13.    GSI is the holder of New Drug Application ("NDA") No. 21-752, which relates to tablets containing emtricitabine ("FTC") and tenofovir disoproxil fumarate ("TDF").  On August 2, 2004, the United States Food and Drug Administration ("FDA") approved the use of the tablets described in NDA No. 21-752 for the treatment of HIV-1 infection in adults.  These tablets are prescribed and sold in the United States under the trademark Truvada®.  Truvada® was originally available in one dosage form: 200 mg FTC and 300 mg TDF.

14.    On July 16, 2012, FDA approved Truvada® for use in combination with safer sex practices for pre-exposure prophylaxis ("PrEP") to reduce the risk of sexually acquired human immunodeficiency virus 1 ("HIV-1") in adults at high risk.  GSI promotes this indication under the trademark Truvada for PrEP®.  Only the original dosage form of Truvada®, 200 mg FTC and 300 mg TDF, is indicated for use in Truvada for PrEP®.

15.     GSI is also the holder of NDA No. 208215, which relates to tablets containing FTC and TAF.  On April 4, 2016, FDA approved the use of the tablets described in NDA No. 208215 for the treatment of HIV-1 infection in adults and pediatric patients 12 years of age or older.  These tablets are prescribed and sold in the United States under the trademark Descovy®.  Descovy® is available in one dosage form: 200 mg FTC and 25 mg TAF.

16.     On October 3, 2019, FDA approved Descovy® for use in at-risk adults and adolescents weighing at least 35 kg for PrEP to reduce the risk of HIV-1 infection from sexual acquisition, excluding individuals at risk from receptive vaginal sex, and provided that individuals must have a negative HIV-1 test immediately prior to initiating Descovy® for HIV-1 PrEP.  GSI promotes this indication under the trademark Descovy for PrEP®.

17.     In its Complaint, the Government asserts that Defendants have induced infringement of certain claims of the HHS Patents by, among other things, selling Truvada® and instructing doctors and patients on how to administer Truvada® for PrEP.  The Government further asserts that Defendants have induced infringement of certain claims of the '509 Patent and the '423 Patent by, among other things, selling Descovy® and instructing doctors and patients on how to administer Descovy® for PrEP.

18.     The HHS Patents are invalid and/or have not been and will not be infringed by Defendants, either directly or indirectly, literally or under the doctrine of equivalents.

## INVALIDITY OF THE HHS PATENTS

19.     Each of the claims of the HHS Patents is invalid at least because:

- The claimed invention was "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent," in contravention of 35 U.S.C. § 102(a) (pre-AIA),

and/or "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," in contravention of 35 U.S.C. § 102(b) (pre-AIA);

- "[T]he differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains," in contravention of 35 U.S.C. § 103 (pre-AIA); and

- The specifications of the HHS Patents do not "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same," in contravention of 35 U.S.C. § 112 (pre-AIA).

20.     Each of the claims of the HHS Patents is invalid under the prior public use provisions of 35 U.S.C. §§ 102(a) and/or 102(b) because GSI's Truvada® medication had been publicly used for PrEP before the inventions of the HHS Patents and/or more than one year before the earliest priority date to which each claim of the HHS Patents is entitled.  This use was documented in, among other sources, contemporaneous media reports, including but not limited to:

- Marilyn Chase, *Trials Will Test Whether AIDS Drug Can Also Prevent HIV*, Wall St. J., Dec. 4, 2003, B1 (Ex. T);

- *"It's OK, I'm on the AIDS Pill*," Wired, Feb. 26, 2004 (Ex. U);

- Daniel Costello, *AIDS Pill as Party Drug?*, L.A. Times, Dec. 19, 2005, F1 (Ex. V); and

- Jon Cohen, *Protect or Disinhibit?*, N.Y. Times Mag., Jan. 22, 2006, at 30 (Ex. W).

Moreover, in a November 23, 2010 article about the announcement of the iPrEx trial results, Reuters reported that Dr. Anthony Fauci, the director of the U.S. National Institute of Allergy and Infectious Diseases (a division of HHS), "said some people were already getting Truvada 'off label' from their doctors to prevent HIV." Maggie Fox, *Once-Daily Pill Helps Prevent HIV Infection in Men*, Reuters, Nov. 23, 2010 (Ex. X).

21.     Each of the claims of the HHS Patents is also invalid as obvious. For example, as of the time of the alleged inventions of the HHS Patents, it was widely known that:

- Tenofovir and TDF were both effective for PrEP in animal models of HIV-1 infection (*see, e.g.*, Che-Chung Tsai et al., *Prevention of SIV Infection in Macaques by (R)-9-(2-phosphonylmethoxypropyl)adenine*, 270 Science 1197 (Nov. 17, 1995), Compl. (D.I. 1) Ex. 21, which is incorporated here by reference; Koen Van Rompay, *Oral Tenofovir DF Protects Infant Macaques Against Infection Following Repeated Low-Dose Oral Exposure to Virulent Simian Immunodeficiency Virus*, Abstract, XV Int'l Conference on AIDS (July 11-16, 2004) (Ex. Y));

- Tenofovir and TDF were both effective to prevent the transmission of HIV-1 from mother to child in animal models of HIV-1 infection (*see, e.g.*, Koen K.A. Van Rompay et al., *Administration of 9-[2-(Phosphonomethoxy)propyl]adenine (PMPA) for Prevention of Perinatal Simian Immunodeficiency Virus Infection in Rhesus Macaques*, 14 AIDS Research & Human Retroviruses 761 (1998), Compl. (D.I. 1) Ex. 24, which is incorporated by reference here; Koen K.A. Van Rompay et al.,

*Topical Administration of Low-Dose Tenofovir Disoproxil Fumarate to Protect Infant Macaques against Multiple Oral Exposures of Low Doses of Simian Immunodeficiency Virus*, 186 J. Infectious Diseases 1508 (2002) (Ex. Z));

- TDF was safe and effective, in combination with other medications, for HIV-1 treatment (*see, e.g.*, Package Insert, Viread® (2005) (Ex. AA));

- FTC was safe and effective, in combination with other medications, for HIV-1 treatment, and had very few potential side effects (*see, e.g.*, Package Insert, Emtriva® (2003) (Ex. BB));

- Viread®, which contains TDF alone as an active ingredient, was being used and prescribed off-label for PrEP (*see, e.g.*, *supra* ¶ 20);

- Truvada® was a fixed-dose combination of TDF and FTC that was safe and effective, in combination with other medications, for HIV-1 treatment in humans (*see, e.g.*, Package Insert, Truvada® (2004) (Ex. CC)); and

- Truvada® was safe, effective, and recommended by the CDC for HIV-1 post-exposure prophylaxis ("PEP") (*see, e.g.*, Centers for Disease Control & Prevention, *Updated U.S. Public Health Service Guidelines for the Management of Occupational Exposures to HIV and Recommendations for Postexposure Prophylaxis*, 54 Morbidity & Morality Weekly Report RR-9, at 14 (Sept. 30, 2005) (Ex. DD); Centers for Disease Control & Prevention, *Antiretroviral Postexposure Prophylaxis After Sexual, Injection-Drug Use, or Other Nonoccupational Exposure to HIV in the United States: Recommendations from the U.S. Department of Health and Human Services*, 54 Morbidity & Morality Weekly Report RR-2, at 10 (Jan. 21, 2005) (Ex. J);

International Patent Publication No. WO 2004/064845 A1 (published Aug. 5, 2004) (Ex. EE);

- The use of TDF in combination with FTC was known to have synergistic antiviral efficacy (*see, e.g.*, Package Insert, Truvada® (2004) (Ex. CC)); and

- The use of combinations of antiretrovirals would slow or prevent the development of HIV-1 resistance to antiretrovirals (*see, e.g.*, Centers for Disease Control & Prevention, *Updated U.S. Public Health Service Guidelines for the Management of Occupational Exposures to HIV and Recommendations for Postexposure Prophylaxis*, 54 Morbidity & Morality Weekly Report RR-9 (Sept. 30, 2005) (Ex. DD); Centers for Disease Control & Prevention, *Antiretroviral Postexposure Prophylaxis After Sexual, Injection-Drug Use, or Other Nonoccupational Exposure to HIV in the United States: Recommendations from the U.S. Department of Health and Human Services*, 54 Morbidity & Morality Weekly Report RR-2 (Jan. 21, 2005) (Ex. J); Angela M. Caliendo & Martin S. Hirsch, *Combination Therapy for Infection Due to Human Immunodeficiency Virus Type 1*, 18 AIDS Commentary 516 (1993) (Ex. FF).

A person of ordinary skill in the art of the HHS Patents, knowing some or all of these facts, would have been motivated to use Truvada® for PrEP in the manner claimed in the HHS Patents and would have had a reasonable expectation of success in doing so.

22.     The claims of the HHS Patents are also invalid for failure to comply with the written-description requirement of 35 U.S.C. § 112.  To distinguish its claims from the prior art, the Government has contended that the claims of the HHS Patents "'demand[] efficacy' by requiring the particular primate host, which received the claimed combination of emtricitabine

and tenofovir (or a tenofovir prodrug) prior to exposure, be HIV negative after exposure." *See, e.g.*, Patent Owner's Preliminary Response ("POPR") at 31, *Gilead Scis. v. United States*, IPR No. 2019-01453 (Dec. 5, 2019) (relating to the '509 Patent); *see also* POPR at 31, *Gilead Scis. v. United States*, IPR No. 2019-01454 (Dec. 5, 2019) (relating to the '333 Patent); POPR at 29, *Gilead Scis. v. United States*, IPR No. 2019-01455 (Nov. 8, 2019) (relating to the '191 Patent); POPR at 31, *Gilead Scis. v. United States*, IPR No. 2019-01456 (Nov. 8, 2019) (relating to the '423 Patent).  The disclosure of the HHS Patents, however, does not demonstrate that the inventors were in possession of a method that had such broadly established efficacy.

23.     For example, the HHS Patents disclose efficacy data only for studies using rectal exposure to SHIV, but none of the claims of the HHS Patents is limited to preexposure prophylaxis for only rectal exposures to an immunodeficiency retrovirus.  The HHS Patents therefore do not show that the inventors were in possession of the full scope of the claimed invention in a way that would meet the high efficacy standard the Government has contended these claims require—i.e., that the claims "demand[] efficacy."  Indeed, in describing their own PrEP studies in 2006, three of the inventors of the HHS Patents wrote: "We . . . cannot extrapolate from these results of a rectal transmission study to estimate the efficacy of TDF for vaginal or parenteral HIV exposures.  The physiological profile of transmission differs according to the route of exposure . . . ."  Shambavi Subbarao et al., *Chemoprophylaxis with Tenofovir Disoproxil Fumarate Provided Partial Protection against Infection with Simian Human Immunodeficiency Virus in Macaques Given Multiple Virus Challenges*, 194 J. Infectious Diseases 904, 910 (2006) (Compl. (D.I. 1) Ex. 27) (citing a 1996 article by other CDC authors to support this statement).

24. Claim 13 of the '509 Patent and all claims of the '423 Patent are also invalid for failure to comply with the written-description requirement of 35 U.S.C. § 112 because they claim methods of preexposure prophylaxis for immunodeficiency retroviruses using unspecified "tenofovir ester" or "tenofovir prodrug" compounds other than TDF. By the time of the alleged inventions, it was well known in the art that different esters or prodrugs of tenofovir could have different efficacy. The HHS Patents, however, disclose efficacy data only for studies using tenofovir (administered subcutaneously) and TDF. To the extent a person of ordinary skill in the art would have understood the claims of the HHS Patents to have the efficacy limitation that the Government contends is present, such a person would not have understood the inventors of the HHS Patents to have been in possession of methods of preexposure prophylaxis for immunodeficiency retroviruses using any tenofovir ester or tenofovir prodrug other than TDF.

## NON-INFRINGEMENT OF THE HHS PATENTS

25. GSI also does not infringe any claim of the HHS Patents, either directly or indirectly. The Government bears the burden of proving infringement by GSI, and it is unable to meet that burden.

26. Each of the claims of the HHS Patents requires administering a combination of medications to a human or primate host. GSI does not practice this claim limitation; accordingly, GSI does not directly infringe any claim of the HHS Patents under 35 U.S.C. § 271(a). Indeed, the Government's Complaint does not allege that GSI directly infringes any claim of the HHS Patents.

27. As noted above, the Government has contended that the claims of the HHS Patents "'demand[] efficacy' by requiring the particular primate host, which received the claimed combination of emtricitabine and tenofovir (or a tenofovir prodrug) prior to exposure, be HIV

– 101 –

negative after exposure." *See, e.g.*, Patent Owner's Preliminary Response ("POPR") at 31,

*Gilead Scis. v. United States*, IPR No. 2019-01453 (Dec. 5, 2019) (relating to the '509 Patent);

*see also* POPR at 31, *Gilead Scis. v. United States*, IPR No. 2019-01454 (Dec. 5, 2019) (relating

to the '333 Patent); POPR at 29, *Gilead Scis. v. United States*, IPR No. 2019-01455 (Nov. 8,

2019) (relating to the '191 Patent); POPR at 31, *Gilead Scis. v. United States*, IPR No. 2019-

01456 (Nov. 8, 2019) (relating to the '423 Patent).  To the extent that is so, the Government has

not alleged and has not shown that any specific individual has practiced any of the methods

claimed in the HHS Patents.  Because the Government has not shown any act of direct

infringement, the Government necessarily cannot prove that GSI induces infringement of any

claim of the HHS Patents.

       28.    Moreover, each claim of the HHS Patents requires either that the administered

combination "protect[] the primate host from infection" or "inhibit[] the establishment of the

self-replicating infection" from an immunodeficiency virus.  Thus, to the extent the claims of the

HHS Patents "demand[] efficacy," as the Government has contended, each claim necessarily

requires that the primate host be exposed to an immunodeficiency virus.  The package inserts for

Truvada® and Descovy®, however, do not encourage exposure to an immunodeficiency virus;

indeed, both instruct that the medications should be used in combination with other safer sex

practices to reduce the risk of exposure to HIV.  Truvada Package Insert, May 2018 (Compl.

(D.I. 1) Ex. 83, incorporated here by reference), at 1-3; Descovy Package Insert, Oct. 2019

(Compl. (D.I. 1) Ex. 91, incorporated here by reference), at 6.  GSI therefore does not encourage

others to practice the "protecting" and "inhibiting" limitations.  Moreover, the Government is

unable to meet its burden of proving that any individual arguably induced by GSI in fact

practiced the "protecting" and "inhibiting" limitations of the HHS Patents.

29.     GSI also does not induce others to infringe claim 13 of the '509 Patent by marketing Descovy® for PrEP.  Claim 13 depends from now-disclaimed independent claim 12, which recites "administering to the uninfected human a combination comprising: i. a pharmaceutically effective amount of emtricitabine; and ii. a pharmaceutically effective amount of tenofovir or tenofovir ester."  Descovy® is a fixed-dose combination of emtricitabine and tenofovir alafenamide.  Tenofovir alafenamide is a chemically distinct entity from tenofovir and is not a tenofovir ester.  The use of Descovy® for PrEP therefore does not literally infringe claim 13 of the '509 Patent.  Moreover, the use of tenofovir alafenamide as part of a PrEP regimen is not insubstantially different from the use of tenofovir or a tenofovir ester as part of a PrEP regimen; the use of Descovy® for PrEP therefore does not infringe claim 13 of the '509 Patent under the doctrine of equivalents.

## <u>COUNT I:</u>
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,044,509

30.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

31.     The Government has alleged that it is the owner of all right, title, and interest in the '509 Patent.

32.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '509 Patent.

33.     Counterclaim-Plaintiff GSI has not infringed, and does not infringe, directly or indirectly, any valid or enforceable claim of the '509 Patent.

34.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

35.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that Counterclaim-Plaintiff GSI has not and will not infringe, directly or indirectly, any valid and enforceable claim of the '509 Patent.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**COUNT II:**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 9,044,509**

36.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

37.     The Government has alleged that it is the owner of all right, title, and interest in the '509 Patent.

38.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '509 Patent.

39.     One or more claims of the '509 Patent are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. § 101 *et seq.*, including without limitation §§ 102, 103, and 112, as set out above.

40.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

41.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that one or more claims of the '509 Patent are invalid.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**COUNT III:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
**OF U.S. PATENT NO. 9,579,333**

42.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

43.     The Government has alleged that it is the owner of all right, title, and interest in the '333 Patent.

44.     A case or controversy exists because the Government has alleged that Defendants have infringed and will infringe one or more claims of the '333 Patent.

45.     Counterclaim-Plaintiff GSI has not infringed, and does not infringe, directly or indirectly, any valid or enforceable claim of the '333 Patent.

46.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

47.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that Counterclaim-Plaintiff GSI has not and will not infringe, directly or indirectly, any valid and enforceable claim of the '333 Patent.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**COUNT IV:**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 9,579,333**

48.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

49.     The Government has alleged that it is the owner of all right, title, and interest in the '333 Patent.

50.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '333 Patent.

51.     One or more claims of the '333 Patent are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. § 101 *et seq.*, including without limitation §§ 102, 103, and 112, as set out above.

52.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

53.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that one or more claims of the '333 Patent are invalid.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

## <u>COUNT V</u>:
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF U.S. PATENT NO. 9,937,191

54.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

55.     The Government has alleged that it is the owner of all right, title, and interest in the '191 Patent.

56.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '191 Patent.

57.     Counterclaim-Plaintiff GSI has not infringed, and does not infringe, directly or indirectly, any valid or enforceable claim of the '191 Patent.

58.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

59.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that Counterclaim-Plaintiff GSI has not and will not infringe, directly or indirectly, any valid and enforceable claim of the '191 Patent.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**COUNT VI:**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 9,937,191**

60.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

61.     The Government has alleged that it is the owner of all right, title, and interest in the '191 Patent.

62.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '191 Patent.

63.     One or more claims of the '191 Patent are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. § 101 *et seq.*, including without limitation §§ 102, 103, and 112, as set out above.

64.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

65.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that one or more claims of the '191 Patent are invalid.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

## COUNT VII:
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### OF U.S. PATENT NO. 10,335,423

66.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

67.     The Government has alleged that it is the owner of all right, title, and interest in the '423 Patent.

68.     A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '423 Patent.

69.     Counterclaim-Plaintiff GSI has not infringed, and does not infringe, directly or indirectly, any valid or enforceable claim of the '423 Patent.

70.     The controversy between the parties is amenable to specific relief through a decree of conclusive character.

71.     Counterclaim-Plaintiff GSI is entitled to a judicial declaration that Counterclaim-Plaintiff GSI has not and will not infringe, directly or indirectly, any valid and enforceable claim of the '423 Patent.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

## COUNT VIII:
### DECLARATORY JUDGMENT OF INVALIDITY
### OF U.S. PATENT NO. 10,335,423

72.     Counterclaim-Plaintiff GSI restates and incorporates by reference the allegations in paragraphs 1-29 above as if fully set forth herein.

73.     The Government has alleged that it is the owner of all right, title, and interest in the '423 Patent.

74.    A case or controversy exists because the Government has alleged that Counterclaim-Plaintiff GSI has infringed and will infringe one or more claims of the '423 Patent.

75.    One or more claims of the '423 Patent are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. § 101 *et seq.*, including without limitation §§ 102, 103, and 112, as set out above.

76.    The controversy between the parties is amenable to specific relief through a decree of conclusive character.

77.    Counterclaim-Plaintiff GSI is entitled to a judicial declaration that one or more claims of the '423 Patent are invalid.  Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff GSI respectfully requests that this Court enter judgment in its favor against the Government and grant the following relief:

(a)    Adjudge and decree that the Government be denied all forms of relief requested in its Complaint;

(b)    Dismiss the Complaint in its entirety with prejudice;

(c)    Declare that Counterclaim-Plaintiff GSI has not, does not, and will not infringe any valid and enforceable claim of U.S. Patent Nos. 9,044,509, 9,579,333, 9,937,191, or 10,335,423;

(d)    Declare that one or more claims of U.S. Patent Nos. 9,044,509, 9,579,333, 9,937,191, and 10,335,423 are invalid;

(e)     Declare that this is an exceptional case in favor of Counterclaim-Plaintiff GSI and award Counterclaim-Plaintiff its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(f)     Award Counterclaim-Plaintiff GSI costs and expenses; and

(g)     Award any and all such other relief as the Court determines to be just and proper.

Dated: May 29, 2020

*Of Counsel:*

Ronald C. Machen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

David B. Bassett (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

Vinita C. Ferrera (*pro hac vice*)
Emily R. Whelan (*pro hac vice*)
George P. Varghese (*pro hac vice*)
Timothy A. Cook (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
P.O. Box 551
Wilmington, DE 19801
Tel: (302) 651-7700
cottrell@rlf.com
farnan@rlf.com
ewing@rlf.com

*Counsel for Defendants Gilead Sciences,
Inc. & Gilead Sciences Ireland UC*