UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>*Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br>*Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND UC,<br>*Defendant.* | C.A. No. 1:19-cv-02103-MN-CJB<br><br>**FILED UNDER SEAL** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE**
**REGARDING DISCOVERY DISPUTE**

LAURA D. HATCHER (DE Bar No. 5098)
Assistant United States Attorney
SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:    (302) 573-6277
Fax:    (302) 573-6220
*Laura.hatcher@usdoj.gov*
*Shamoor.anis@usdoj.gov*


*Attorneys for Plaintiff United States*

DAVID C. WEISS
United States Attorney

MICHAEL GRANSTON
Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director

PATRICK C. HOLVEY
Trial Attorney
Department of Justice
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
Tel:    (202) 307-0341
Fax:    (202) 307-0345

*Attorneys for Plaintiff United States*

**CONTAINS RESTRICTED INFORMATION—Subject to Protective Order**

Dear Judge Burke,

According to the Court's Order (D.I. 261), Plaintiff United States of America (Government) outlines the following discovery disputes with Defendants Gilead Sciences, Inc. (GSI) and Gilead Sciences Ireland UC (GSIUC) (collectively, Gilead).

**First, the Court should order GSIUC to designate a witness to testify on topics 4, 5, 6, 23, 33, 35 and 54.**   GSIUC sought to avoid its discovery obligations by refusing to produce *documents* responsive to the Government's Requests for Production, which caused the Government to seek relief from the Court last month.   The Court ordered GSIUC to produce documents in response to the Government's production requests. D.I. 247. With the close of fact discovery quickly approaching, GSIUC is still producing documents (as of yesterday) in response to the Court's order, and GSIUC continues to refuse to designate a witness to testify on numerous 30(b)(6) topics.   Having already ordered GSIUC to comply with its document production discovery obligations, the Court should likewise order GSIUC to comply with its discovery obligations by designating a witness to testify regarding the ordered documents and core issues of this dispute.

Topics 4, 5, 6, and 23 relate to the use and promotion of the accused products and GSIUC's role in such use and promotion.  *See* D.I. 195 at A2-A3, A7.  For these topics, GSIUC does not assert that it lacks non-privileged information.  Since the last dispute over GSIUC's failure to comply with its discovery obligations, the Government has secured additional testimony surrounding the relevance of GSIUC to this action.  One GSIUC witnesses testified that (a) GSIUC has given its affirmative permission to GSI to use GSIUC's trademark to market Descovy for PrEP in the United States (Ex. A at 128:10-130:6) and (b) that the FDA must approve all marketing and promotional materials that contain GSIUC's mark DESCOVY FOR PREP because it makes a positive claim about Descovy (*id.* at 232:25-233:12).  The Government is entitled to testimony from GSUIC regarding the labeling of Descovy for PrEP, the use of Descovy for PrEP in accordance with the label, any communication with the FDA regarding the use of the Descovy for PrEP trademark, and the corresponding prosecution of the Descovy for PrEP trademark.  Such testimony falls squarely within topics 4, 5, 6, and 23, and GSIUC is obligated to provide a witness to testify as to GSIUC's involvement in manufacturing GSI products, their use, and promotion via GSIUC's trademarks.

Topics 33 and 35 relate to GSIUC's knowledge of certain patents and patent applications, and communications with the Government regarding the patents-in-suit.  *See* D.I. 195 at A9-A10. This subject matter is also clearly relevant and reflect proper topics for discovery.  GSIUC's refusal to designate a witness to provide any testimony, therefore, is improper.

Topic 54 relates to work by GSIUC to manufacture, import, market, distribute, label, or sell Truvada and Descovy for PrEP in the U.S.  *Id.* at A13.  In light of GSIUC's labeling activities and ownership of the Descovy for PrEP trademark, the Government is entitled to testimony relating to this topic.

The Court should order GSIUC to designate a witness to provide testimony relating to topics 4, 5, 6, 23, 33, 35 and 54.  This is necessary to avoid Gilead's attempt to force the Government to accept Gilead's already rejected argument that GSIUC should not be a party in this action.  As the holder of the Descovy for PrEP trademark and the manufacturer of accused products, the Government is entitled to explore the GSIUC's knowledge and coordination of activities with GSI through FRCP 30(b)(6).

CONTAINS RESTRICTED INFORMATION—Subject to Protective Order

**Second, the Court should order Gilead to produce a non-apex witness knowledgeable about Mr. O'Day's statements and topics 44-45.** Gilead previously invoked the "apex" doctrine to avoid the deposition of Gilead's CEO, Mr. Daniel O'Day, despite significant evidence concerning his personal knowledge of his own sworn testimony to the U.S. House of Representatives on May 16, 2009.  *See* D.I. 233; D.I. 251; D.I. 247 (granting protective order). Last month, Gilead told this Court that the Government must seek testimony from alternative witnesses before seeking to depose Mr. O'Day.  The Government has attempted to do so; however, Gilead has refused to provide any alternative witnesses.

On January 7, the Government took the deposition of Mr. Gregg Alton—the interim CEO of Gilead who immediately preceded Mr. O'Day and remained with Gilead after Mr. O'Day joined.  Mr. Alton admitted to having had a small role in preparing Mr. O'Day for his congressional testimony and he was present at the hearing.  *See* Ex. B at 37:8-21.  The Government asked Mr. Alton for the basis of Mr. O'Day's testimony that "We believe the CDC patents are invalid" and Gilead's counsel objected on the ground that the question "[c]alls for speculation."  *See id*. at 38:15-39:3.  Further, Mr. Alton did not know the basis for Mr. O'Day's statement.  *See id*. at 39:6-7.  Upon further questioning into the bases for other statements by Mr. O'Day, Mr. Alton could not shed any light on them and ultimately agreed that, for the Government "to know what Mr. O'Day was saying, we would have to ask Mr. O'Day."  *See id*. at 53:3-8.

Mr. Alton's testimony was clear as to who the Government should ask about Mr. O'Day's statements—Mr. O'Day himself.  It is difficult to imagine any less speculative source for the Government to elicit testimony regarding his statements.  Gilead has refused to provide a witness to testify about Mr. O'Day's testimony and statements to Congress.  This is the minimum needed to prevent Gilead from manipulating the Court's protective order, D.I. 247, into a blanket refusal to provide any witness concerning Mr. O'Day's Congressional testimony.  Yet, this is precisely what Gilead is doing, as reflected in Gilead's refusal to designate a witness to address topics 44 and 45 that are specifically directed to the Congressional testimony.  The Government respectfully requests that the Court order Gilead to identify one or more witnesses to testify regarding the content of Mr. O'Day's statements to Congress.

**Third, the Court should order GSI to designate a witness to testify on Topics 19, 23, and 46.**  Topic 19 relates to Gilead's characterizations of the use of the Accused Products "for PrEP."  *See* D.I. 195 at A6.  Gilead's refusal to designate a witness for this topic is grounded in the mistaken belief that this topic seeks Gilead's legal contentions. Gilead, however, misconstrues topic 19 as a contention topic merely because it contains words that coincide with well-recognized secondary considerations.  The topic does not call for Gilead's contentions about the Patents-in-Suit or any of Gilead's legal contentions.  Rather, the topic calls for testimony about Gilead's knowledge as to the characterizations of the Accused Products and the factual bases for these characterizations.  Gilead produced documents using the terms referenced in the topic and implicating these concepts.  Gilead should not be permitted to avoid providing deposition testimony regarding topic 19 simply because the topic (and Gilead) use terminology that overlaps with secondary considerations.

Topic 23 concerns the preparation and prosecution of trademarks describing the use of the accused products for PrEP.  *Id.* at A7.  Gilead's refusal to provide a witness to testify regarding this topic is meritless.  The trademarks listed in topic 23 feature prominently in the Governments infringement contentions and are plainly meant to be promotional.  Also, the use of such marks must be approved by the FDA pursuant to Ms. Koomey's testimony concerning marketing and

CONTAINS RESTRICTED INFORMATION—Subject to Protective Order

promotional materials that contain the mark DESCOVY FOR PREP. Ex. A at 232:25-233:12. The Government is entitled to testimony from GSI regarding the preparation, filing, and prosecution of its trademarks promoting the accused products for what the Government has alleged is an infringing use.

For Topic 46, Gilead initially designated Ms. Vazquez for a narrowed version of the topic (the execution of the MTA signatures for each of the relevant MTAs and Gilead's compliance with its obligations under those MTAs) and the witness was not prepared to testify beyond the signature on the relevant documents and Gilead's shipment of materials. *See, e.g.*, Ex. C at 57:9-60:8; 61:10-62:21; 63:22-65:2. Gilead has now designated Jim Rooney to testify regarding yet another small portion of topic 46 "as it relates to approval of the listed MTAs." Ex. D at 1. Gilead already agreed to provide a witness for topic 46 in its November 22 Objections and Responses (see Ex. E at 78-80). Fact discovery is nearly at an end and the Government is entitled to a witness that will testify to the full scope of the topic regarding the MTAs and Gilead's general knowledge regarding them.

**Fourth, the Court should order Gilead to produce documents relating to the considerations and setting of the original price of Truvada.** During the last discovery dispute, the Government requested that the Court order Gilead to produce documents related to the initial retail and wholesale pricing of Truvada when it was launched as an HIV treatment in 2004. *See* D.I. 233. Since this last dispute, the Government has collected additional evidence demonstrating good cause for the production of the requested documents from this time frame. Mr. Alton testified that (a) all pricing decisions at Gilead occur at the CEO level (*see* Ex. B at 168:2-170:4; 176:9-14); and (b) that to understand the price of the accused products today, one needs to look at how the prices were originally set (*see id*. at 115:22-116:23). Moreover, Mr. Alton testified that Gilead could not have a different price for selling Truvada for treatment or selling Truvada for PrEP. *See id*. at 113:21-114:9. Mr. Alton's testimony provides good cause to require Gilead to produce documents regarding the setting of Truvada's price upon launch in 2004. The Government respectfully requests that the Court reconsider its prior ruling (D.I. 247) in light of this newly obtained evidence.

Respectfully submitted,

*/s/ Walter W. Brown*
WALTER W. BROWN

cc:  Gilead's counsel (via CM/ECF & Email)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff & Counterclaim-Defendant, | |
| v. | |
| GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC, | C.A. No. 19-02103-MN-CJB |
| Defendants & Counterclaim-Plaintiff. | |

**[PROPOSED] ORDER**

At Wilmington, this _____ day of _____, 2022, the Court, having considered Plaintiff United States of America Motion to Compel the production of certain documents and designation of witnesses for certain Rule 30(b)(6) topics and any briefing and argument associated therewith;

IT IS HEREBY ORDERED that, no later than February 14, 2022, Defendant GSIUC is required to designate and produce a witness to testify regarding Plaintiff's 30(b)(6) Topic Nos. 4, 5, 6, 23, 33, 35 and 54.

IT IS FURTHER that, no later than February 14, 2022, Defendant GSI is required to designate and produce a witness to testify regarding Plaintiff's 30(b)(6) Topic Nos. 19, 23, and 46.

IT IS FURTHER that, no later than February 14, 2022, Defendant GSI is required to designate and produce a witness to testify regarding Plaintiff's 30(b)(6) Topic Nos. 44 and 45.

**CONTAINS RESTRICTED INFORMATION—Subject to Protective Order**

IT IS FURTHER ORDERED that, no later than February 14, 2022, Defendants are required to produce documents responsive to Plaintiff's Request for Production No. 222 dating back to when Truvada® was launched as a HIV-treatment in 2004.

 

 

_____
The Honorable Christopher J. Burke
United States Magistrate Judge

# Exhibit A

Deposition Transcript of Melissa Koomey (excerpts)

EXHIBIT REDACTED
IN ITS ENTIRETY

# Exhibit B

Deposition Transcript of Greg Alton (excerpts)

EXHIBIT REDACTED
IN ITS ENTIRETY

# Exhibit C

Deposition Transcript of Martha Vazquez (excerpts)

1                UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF DELAWARE

3    _____

4    THE UNITED STATES OF AMERICA,        )
                                          )
5                                         )
       Plaintiff-Counterclaim Defendant, )
6                                         )
         v.                               ) Civil No.
7                                         ) 1:19-cv-02103-MN
      GILEAD SCIENCES, INC.,              )
8                                         )
       Defendant-Counterclaim Plaintiff, )
9                                         )
      AND GILEAD SCIENCES IRELAND UC,     )
10                                        )
                                          )
11                    Defendant.          )
     _____)

12

13                    CONFIDENTIAL

14          VIDEOTAPED 30(b)(6) DEPOSITION OF

15     Gilead Sciences, by and through its Designated

16                  Representative,

17                  MARTHA VAZQUEZ

18         San Francisco, California 94111

19            Tuesday, December 7, 2021

20

21   Reported Stenographically by:
     MARY J. GOFF
22   CSR No. 13427
     Job No. 203253
23   PAGES 1-134

24

25

Confidential

Page 2

```
 1
 2
 3
 4        VIDEOTAPED 30(b)(6) DEPOSITION of MARTHA
 5   VAZQUEZ, Volume I, taken on behalf of
 6   Plaintiff-Counterclaim Defendant, the United States
 7   of America, at WilmerHale, One Front Street,
 8   Suite 3500, San Francisco, California 94111,
 9   beginning at 9:38 a.m. and ending at 1:20 p.m., on
10   Tuesday, December 7, 2021, before MARY J. GOFF,
11   California Certified Shorthand Reporter No. 13427.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1   APPEARANCES:
 2   For Plaintiff-Counterclaim Defendant
 3        THE UNITED STATES OF AMERICA
 4        U.S. Department of Justice
 5        1100 L Street NW
 6        Washington, D.C. 20005
 7        BY:  AMANDA KELLY, ESQ.
 8   ~and~
 9        U.S. Department of Health
10        and Human Services
11        233 N. Michigan Avenue
12        Chicago, Illinois 60601
13        BY:  ANDY MILLER, ESQ. (HHS)
14             MICHAEL IMBACUAN, ESQ. (HHS)
15             LENA YUEH, ESQ. (HHS)
16        (Imbacuan and Yueh appeared via phone.)
17   ~and~
18        Knobbe Martens
19        BY:  ANDREW MORRELL, Ph.D., Esq.
20        1717 Pennsylvania Avenue N.W.
21        Washington, D.C. 20006
22
23
24
25
```

Page 4

```
 1   APPEARANCES (continued):
 2   For Defendant-Counterclaim Plaintiff
 3        GILEAD SCIENCES, INC.
 4        WilmerHale
 5        BY:  GEORGE VARGHESE, ESQ.
 6             BENJAMIN CONERY, ESQ.
 7             JULIUS JEFFERSON, Ph.D., ESQ.
 8        Attorneys at Law
 9        60 State Street
10        Boston, Massachusetts 02109
11
12
13
14
15
16
17
18   ALSO PRESENT:  Janice Ye, Gilead senior counsel
19   Videographer:  Christopher Throm
20
21
22
23
24
25
```

Page 5

```
 1
 2                     INDEX
 3   WITNESS                          EXAMINATION
 4   MARTHA VAZQUEZ
 5   Volume I
 6
 7                ATTORNEY KELLY            8
 8                ATTORNEY VARGHESE        124
 9
10   NUMBER        DESCRIPTION           PAGE
11   Exhibit 1  Notice of Deposition       14
12
13   Exhibit 2  Material Transfer Agreement   42
               Process, Martha Vazquez
14             October 8, 2008
               GILDDE00990462-69
15
16   Exhibit 3  4-27-04 email string         53
               Proposed MTA
17             US_02250251-55
18   Exhibit 4  Public Health Service MTA    57
               US_02252938-42
19
20   Exhibit 5  MTA-Amendment                61
               CDC and Prevention
21             CDC Ref. NCHSTP-V043072-01
               US_02515000
22
23
24
25
```

1  sticker up here because there's a lot of text.
2    Q    (BY ATTORNEY KELLY) A document bearing
3  Bates Nos. US_02250251 through 255.  Okay.
4         Do you want to look that over quickly?
5  Okay.  Ms. Vazquez, now that you have had an
6  opportunity to review this document, do you
7  recognize this document at all?
8    A    I don't.
9    Q    Okay.  Have you ever seen this document
10 before?
11   A    No.
12   Q    Okay.  I'm going to walk you through some
13 of this.  And you do understand that you are here to
14 testify on behalf of Gilead Sciences regarding
15 communications related to the MTAs in this case; is
16 that correct?
17   A    Correct.
18   Q    Okay.  Do you recognize this as a
19 communication related to an MTA in this case?
20        ATTORNEY VARGHESE:  We're going to object
21 to that characterization of why she is here to
22 testify.  If you want to go off the record to talk
23 about it --
24        ATTORNEY KELLY:  Okay.  No, that's fine.
25   Q    (BY ATTORNEY KELLY) I guess you understand

1  that you are a 30(b)(6) witness here today?
2    A    Yes.
3    Q    Okay.  And a corporate witness.  Okay.
4        ATTORNEY VARGHESE:  I think we should go
5  going off the record and discuss this briefly.
6        ATTORNEY KELLY:  You and I?
7        ATTORNEY VARGHESE:  Yep.
8        ATTORNEY KELLY:  Okay.
9        THE VIDEOGRAPHER:  The time is 10:40 a.m.
10 We are now going back off the record.
11        (A break was taken from 10:40 a.m. to
12 10:57 a.m.)
13        THE VIDEOGRAPHER:  The time is 10:57 a.m.
14 We are now going back on the record.
15   Q    (BY ATTORNEY KELLY) Ms. Vazquez.  I just
16 wanted to state on the record that it's our
17 understanding that --
18        THE COURT STENOGRAPHER:  Do you have your
19 mic on?
20        ATTORNEY KELLY:  No, I don't.  Sorry.
21        I just wanted to state on the record that
22 it's our understanding that you have been designated
23 to testify only as to the execution and signature
24 and compliance with the MTAs at issue in this case
25 and that Gilead Sciences will be putting up

1  additional witnesses regarding other parts of
2  Topic 46.  And with that, I'll just continue to ask
3  questions.
4    Q    (BY ATTORNEY KELLY) Do you recognize this
5  document at all?
6    A    Which document are you talking about?
7    Q    I'm sorry.  Exhibit 3, the one that you
8  reviewed right before --
9    A    No --
10   Q    You --
11   A    -- I don't.
12   Q    -- went on break?  Okay.
13        And can you see, though, by looking at it,
14 that it is a discussion of language in an MTA?
15        ATTORNEY VARGHESE:  Objection, calls for
16 speculation.
17   Q    (BY ATTORNEY KELLY) You can answer, to the
18 extent you can.
19   A    Yes, I can see that.
20   Q    Okay.  Do you recognize any of the names
21 that were emailing regarding this MTA?
22   A    I recognize Adela.
23   Q    Okay.  And who was Adela?
24   A    She was counsel.
25   Q    Okay.  And did you ever work with Adela on

1  MTAs?
2    A    No.
3    Q    Okay.  If Adela had to work on an MTA,
4  would she communicate directly with Mick Hitchcock
5  then?
6        ATTORNEY VARGHESE:  Objection, calls for
7  speculation.
8    A    I don't know.
9    Q    (BY ATTORNEY KELLY) You don't know.  Okay.
10 Okay.  Okay.  I'm going to mark as Exhibit 4, a
11 document bearing Bates Nos. US_02252938 through 942.
12        (Exhibit 4 was marked for identification
13 and is attached to the transcript.)
14   Q    (BY ATTORNEY KELLY) Thank you.  Okay.  Do
15 you recognize this document at all?
16   A    It's a "Public Health Service Material
17 Transfer Agreement."
18   Q    Okay.  Have you ever seen this document
19 before?
20   A    Yes.
21   Q    Okay.  Do you recall working on this
22 document?
23   A    I don't.
24   Q    Okay.  If you turn to the last page,
25 you'll see a signature page.

Confidential

Page 58

1    A    I see.
2    Q    Okay.  Do you recall any of the names on
3 the signature page?
4    A    Mick Hitchcock --
5    Q    Okay.
6    A    -- my supervisor.
7    Q    Okay.  Do you recognize the name Janet
8 Collins?
9    A    I don't.
10   Q    Okay.  Do you recognize the name Shambavi
11 Subbarao?
12   A    I don't.
13   Q    Okay.  Have you ever seen this signature
14 page before?
15   A    Yes.
16   Q    Okay.  Do you recall working on executing
17 this signature page on this agreement?
18   A    I don't recall.
19   Q    Okay.  Do you know who executed this MTA?
20   A    I don't know.
21   Q    Okay.  Do you know anything about the
22 execution of this MTA?
23   A    I don't.
24   Q    Okay.  Do you know who would be
25 knowledgeable about executing this MTA?

Page 59

1    A    I don't.
2    Q    Okay.  Do you know who at Gilead sent this
3 to Janet Collins to sign?
4    A    I don't remember.
5    Q    Okay.  Do you recall ever corresponding
6 with Shambavi Subbarao to have this signed?
7    A    I don't remember.
8    Q    Okay.  Do you recall the name Shambavi
9 Subbarao at all?
10   A    I don't.
11   Q    Okay.  Do you remember executing an MTA
12 with the CDC in 2004?
13   A    I don't remember.
14   Q    Okay.  Do you recall Mick Hitch -- Mick
15 Hitchcock -- every time -- Mick Hitchcock executing
16 an MTA with the CDC in 2004?
17   A    I mean, the signature is there.  I don't
18 remember though.
19   Q    Okay.  So you can't verify any of these
20 signatures for us here -- sitting here today?
21   A    No.
22        ATTORNEY VARGHESE:  Objection.
23   Q    (BY ATTORNEY KELLY) Okay.  You don't
24 recognize any of these signature?
25        ATTORNEY VARGHESE:  Objection --

Page 60

1    A    I --
2        ATTORNEY VARGHESE:  -- objection,
3 mischaracterizes her testimony.
4        ATTORNEY KELLY:  Okay.
5    Q    (BY ATTORNEY KELLY) Is there any testimony
6 that you can provide regarding the execution of this
7 MTA sitting here today?
8    A    I don't.
9        ATTORNEY VARGHESE:  Objection, vague.
10   Q    (BY ATTORNEY KELLY) Can you -- can you
11 tell me when this was executed?
12   A    It says here that it was executed on
13 June 2004 -- June 21, 2004.
14   Q    Okay.  And do you know who at Gilead
15 executed this document on June 21, 2004?
16   A    Mick Hitchcock.
17   Q    Okay.  And do you know who reviewed it
18 before Mitch -- Mick Hitchcock?
19   A    I don't know.
20   Q    Okay.  So you don't have any knowledge of
21 the execution of this MTA?
22   A    I don't.
23   Q    Okay.  When did you last see this
24 document?
25   A    I think it was in 2004.

Page 61

1    Q    Okay.  And so you don't -- seeing it
2 doesn't refresh your recollection at all?
3    A    No.
4    Q    Okay.
5        ATTORNEY KELLY:  2515000.  Did I lose my
6 stickers?
7        THE COURT STENOGRAPHER:  Let me put the
8 numbers on there for you.
9        ATTORNEY KELLY:  Sorry.
10   Q    (BY ATTORNEY KELLY) Okay.  I'm going to
11 mark as Exhibit 5, a document bearing Bates
12 No. US_02515000.
13        (Exhibit 5 was marked for identification
14 and is attached to the transcript.)
15   Q    (BY ATTORNEY KELLY) Ms. Vazquez, do you
16 recognize this document?
17   A    I do.
18   Q    Okay.  And what is this document?
19   A    It's a Material Transfer Agreement
20 Amendment --
21   Q    Okay.
22   A    -- with the CDC.
23   Q    Okay.  And do you recall the execution of
24 this document?
25   A    I don't.

Confidential

Page 62

1    Q    Okay.  Do you know who executed this
2  document?
3    A    I -- it was Mick Hitchcock.  Hitchcock.
4    Q    Okay.  And do you know who coordinated
5  with CDC to finalize and execute this agreement?
6    A    I don't remember.
7    Q    Okay.  Other than recognizing the
8  signatures on the page, do you know any -- are you
9  aware of any other circumstances regarding the
10 execution of this document?
11   A    I don't.
12   Q    Okay.  Do you recall who Shambavi Subbarao
13 is?
14   A    I don't.
15   Q    Okay.  And you don't recall coordinating
16 with Shambavi Subbarao regarding the MTAs?
17   A    Correct.
18   Q    Okay.  And you don't recall executing this
19 document?
20   A    Correct.
21   Q    Okay.
22        ATTORNEY KELLY:  Do you want -- I guess,
23 the next MTA.
24   Q    (BY ATTORNEY KELLY) Okay.  I'm marking as
25 Exhibit 6, a document bearing U.S. Bates Nos.

Page 63

1  02515008 through 012.
2        (Exhibit 6 was marked for identification
3  and is attached to the transcript.)
4    Q    (BY ATTORNEY KELLY) Do you recognize this
5  document?
6    A    I do.
7    Q    Okay.  And what is this document?
8    A    It's a "Public Health Service Material
9  Transfer Agreement."
10   Q    Okay.  And do you recall working on this
11 Public Health Service Material Transfer Agreement?
12   A    I do.
13   Q    Okay.  And what do you recall regarding
14 working on this Material Transfer Agreement?
15   A    Just working on sending the powder.
16   Q    Sending the powder.  Okay.
17        And what powder were you sending?
18   A    Okay.  Emtricitabine, FTC.
19   Q    Okay.  And do you recall who you were
20 sending it to?
21   A    Yes.  It was Walid Heneine.
22   Q    Okay.  And do you remember when you
23 started sending it to Walid Heneine?
24   A    I don't.
25   Q    Okay.  And do you recall how much you were

Page 64

1  sending to him?
2    A    I would send the specified amount on the
3  contract to 50 grams.
4    Q    Okay.  So 50 grams.
5        And do you recall how often you were
6  sending it?
7    A    I don't.
8    Q    Okay.  Do you recall working on the
9  execution of this document?
10   A    Just the -- just the back and forth of,
11 you know, whatever -- you know, they signed; we
12 signed.  That was the extent.
13   Q    Okay.  Were you involved in the execution
14 of this document?
15   A    No.
16   Q    Okay.  Do you know who was?
17   A    I don't.
18   Q    Okay.  And do you know if Mick Hitchcock
19 was the one who reviewed this document?
20   A    I don't know that.
21   Q    Okay.  Do you know if he was the one that
22 approved this document?
23   A    He signed it.
24   Q    Okay.  So he was the one who executed it?
25   A    Yes.

Page 65

1    Q    Do you recall coordinating that?
2    A    Yes.
3    Q    Okay.  Okay.  I'm going to mark as
4  Exhibit 7, a document bearing Bates
5  No. GILDDE00338821.
6        (Exhibit 7 was marked for identification
7  and is attached to the transcript.)
8    Q    (BY ATTORNEY KELLY) Okay.  Do you recall
9  this document?
10   A    I don't.
11   Q    Okay.  Do you recognize that this was an
12 email that was sent to you?
13   A    I do.
14   Q    Okay.  Regarding MTAs with CT -- CDC?
15   A    I'm sorry?  Can you re --
16   Q    I'm sorry.  And this was sent to you as an
17 email, and it was sent to you regarding MTAs with
18 the Center for Disease Control?
19   A    It wasn't sent to me.
20   Q    Okay.  At the top where it says "Message,"
21 there's a "CC" line.
22   A    Oh, yes, I see it.
23   Q    All right.  And I think you're one, two,
24 three -- fourth in the "CC" line?
25   A    Correct.

Confidential

Page 66

1    Q    Okay.  And that -- you recognize that to
2  be yourself?
3    A    Yes.
4    Q    Okay.
5    A    Sorry.  I didn't --
6    Q    Right.  So you don't recognize this
7  document --
8    A    I don't.
9    Q    -- at all?  Okay.
10        And you can see it says:
11            Hi, Walid.  I will ask Martha
12        Vazquez, who manages the MTAs, to
13        see if this additional material can
14        be covered with the current
15        agreements.  Stephen.
16        Correct?
17    A    Correct.
18    Q    Okay.  And who is Stephen?
19    A    Stephen was -- Smith was reporting to Jim
20  Rooney.
21    Q    Okay.  And what was his role?
22    A    I don't remember.
23    Q    Okay.  And do you have an understanding of
24  what Stephen was asking you to do here?
25    A    Yes.

Page 67

1    Q    And what was he asking you to do?
2    A    He was going to ask if the MTA covered the
3  new compound.
4    Q    Okay.  And do you have a recollection of
5  -- of executing this agreement or sending compounds
6  related to this agreement?
7    A    I sent many -- many compounds to
8  Dr. Walid.
9    Q    Okay.  So you don't recall anything
10  related to this particular --
11    A    I don't.
12        ATTORNEY VARGHESE:  Objection.
13    Q    (BY ATTORNEY KELLY) Okay.  And you don't
14  recognize this document at all sitting here today?
15    A    I'm sorry.  Can you repeat that?
16    Q    You don't recognize this document at all?
17    A    No.
18    Q    Okay.  And so you have no knowledge, if --
19  I guess if you go to the second email, you have no
20  knowledge of the -- the 200-gram Shambavi recently
21  received, it says, on the first page, if you go to
22  the second email?
23    A    The one from Walid?
24    Q    The second email from the top.  It says:
25            Stephen, thank you for the

Page 68

1        follow-up.  The 200 grams Shambavi
2        recently received will cover mainly
3        a new study of vaginal challenge.
4        You don't have any recollection or
5  knowledge of sending that 200 grams to Shambavi?
6    A    Correct.
7    Q    Okay.  Okay.  Okay.  Yeah.  I'm going to
8  mark as Exhibit 8, GILDDE00343411.
9        (Exhibit 8 was marked for identification
10  and is attached to the transcript.)
11    Q    (BY ATTORNEY KELLY) Do you recognize this
12  document?
13    A    I do.
14    Q    Okay.  And what is it?
15    A    It's a "Public Health Service Material
16  Transfer Agreement."
17    Q    Okay.  Do you recognize this particular
18  agreement?
19    A    I don't.
20    Q    Okay.  Do you recognize that these
21  agreements have different numbers at the top?
22    A    Correct.
23    Q    Okay.  Do you recall the 649?  You can see
24  up at the top -- it says "NCHSTP-V053649."
25        Do you recall working -- I'm going to call

Page 69

1  that the "649 MTA."
2        Does that make sense to you?
3    A    Yes.
4    Q    Okay.  Do you recall working on the
5  649 MTA at all?
6    A    No.
7    Q    Okay.  Do you recall executing this -- the
8  649 agreement at all?
9    A    I don't recall.
10    Q    Okay.  Do you know who executed the
11  649 MTA?
12    A    I would guess Mick Hitchcock.
13    Q    Okay.  Okay.  And do you recall -- you
14  said you sent a drug to Dr. Heneine under multiple
15  MTAs; is that correct?
16    A    Correct.
17    Q    Okay.  Do you recall -- do you have any
18  specific recollection of providing a drug to him
19  under the 649 MTA?
20    A    No.  Because this -- this is not the
21  typical compounds that I would send him.
22    Q    Okay.  So you didn't send him the PMPA?
23    A    I would have sent to regular PMPA, not the
24  phospho whatever --
25    Q    Okay.

Confidential

1    A    -- phospho...
2    Q    Okay.  So this says
3  "phosphonylmethoxypropyl adenine, powder form,"
4  right?
5         It says 420 grams of PMPA.
6         So did you send PMPA to Dr. Heneine?
7    A    Yes.  But it would be just the
8  regular PMPA, I would say, not -- not with a
9  adenine.
10   Q    Okay.  So you would just see it listed
11  as PMPA, but you don't have any personal knowledge
12  of what "PMPA" stands for; is that correct?
13   A    Correct.
14   Q    Okay.  But you don't have any recollection
15  of sending Dr. Heneine --
16   A    Not the 420 grams, no.
17   Q    Okay.  I'm going to mark as Exhibit 9,
18  GILDDE00343397.  All right.  Please be patient.
19  There's a lot of single pages in folders.  I'm going
20  to mark this as Exhibit 10, GILDDE00343397.  Oh, I'm
21  sorry.  It's Exhibit 9.  There we go.
22         (Exhibit 9 was marked for identification
23  and is attached to the transcript.)
24   Q    (BY ATTORNEY KELLY) Ms. Vazquez, do you
25  recognize this document at all?

1    A    I do.
2    Q    Do you recognize the name --
3    A    Yes, Michael Hitchcock or Mick.
4    Q    Okay.  Do you recognize the name Kevin
5  Fenton at all?
6    A    I don't.
7    Q    Okay.  And do you recognize the name
8  Salvatore Butera at all?
9    A    I don't.
10   Q    Okay.  Do you ever remember executing an
11  MTA with Mr. Butera?
12   A    No.
13   Q    Okay.  So you have no knowledge of
14  executing MTAs with Mr. Butera?
15   A    No.
16   Q    Okay.  Do you recall ever providing CDC
17  with any drugs under an MTA executed with
18  Mr. Butera?
19   A    I don't.
20   Q    Okay.  So you have no knowledge of
21  providing 20 grams of GS7340 to Mr. Butera or under
22  an MTA executed by Mr. Butera?
23   A    No, I don't.
24   Q    Okay.  This is the last one.  I did it
25  again.  Okay.  I'm marking as Exhibit 10,

1  US_02544178.
2         (Exhibit 10 was marked for identification
3  and is attached to the transcript.)
4    Q    (BY ATTORNEY KELLY) Have you ever seen
5  Exhibit 10?
6    A    Yes.
7    Q    Okay.  And what is this?
8    A    It's a "Material Transfer Agreement
9  Amendment."
10   Q    Okay.  And do you have any knowledge of
11  executing an amendment to MTA 649?
12   A    I do.
13   Q    Okay.  And what do you recall about
14  executing an amendment to MTA 649?
15   A    I had -- had Lori Lehman sign -- sign off
16  on it.
17   Q    Okay.  And you recall having Lori
18  Lehman --
19   A    Excuse me?
20   Q    You recall having Lori Lehman sign off on
21  this?
22   A    I do.
23   Q    Okay.  And do you recall that because that
24  was unusual and you usually had Mick do it?
25   A    No.  By this time she had -- she was --

1  that was her job --
2    Q    Okay.
3    A    -- to sign off on it.
4    Q    Okay.
5    A    Mick had retired at that point in time.
6    Q    Gotcha.  So you recall this because you
7  remember having Lori Lehman -- is that correct --
8    A    Yeah.
9    Q    -- yeah -- sign it?
10         And do you recall having Salvatore Butera
11  execute this agreement?
12   A    I don't remember, but it says here that he
13  did.
14   Q    Okay.  And you can see here where it says
15  "Research Material."  At No. 1 at the top, it talks
16  about 120 grams of a drug called tenofovir and
17  100 grams of a drug called emtricitabine.
18         Do you have any knowledge of sending those
19  compounds to Dr. Heneine?
20   A    I do.
21   Q    Okay.  So for this one you do -- you sent
22  100 grams of tenofovir disoproxil fumarate to him
23  and 100 -- I'm sorry -- 120 grams of tenofovir,
24  100 grams of emtricitabine, and 100 grams of
25  tenofovir disoproxil fumarate?

# Exhibit D

December 14, 2021 email of Mr. Tim Cook

**Holvey, Patrick C. (CIV)**

| | |
|---|---|
| **From:** | Cook, Tim <Tim.Cook@wilmerhale.com> |
| **Sent:** | Tuesday, December 14, 2021 11:21 AM |
| **To:** | Brown, Walter (CIV); Ewing, Alexandra M.; Holvey, Patrick C. (CIV); Hatcher, Laura (USADE); Anis, Shamoor (USADE); Sternhell, Philip C. (CIV); Kelly, Amanda K. (CIV); Rosato, Carrie E. (CIV); Docket, PrEP (CIV) |
| **Cc:** | cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation; Tanner, Matthew D. (CIV); Bae, Sosun (CIV) |
| **Subject:** | [EXTERNAL] RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6) |

Counsel,

We write to provide additional designations in response to the government's 30(b)(6) notice to GSI:

- GSI designates **Jim Rooney** to testify in response to the government's topics 2, 27, 28, 29, 30, 32, and 43, as restated in GSI's responses and subject to GSI's objections, and topic 46, as restated in GSI's responses and subject to GSI's objections, as it relates to approval of the listed MTAs.  Dr. Rooney's deposition has already been scheduled for January 18, 2022.

- GSI designates **Sukeethi Seetharaman** to testify in response to the government's topic 48, as restated in GSI's responses and subject to GSI's objections.  Ms. Seetharaman is available to be deposed on January 12, 2022, at one of WilmerHale's Bay Area offices.  Please confirm that the government will proceed on this date.  We will follow up with the exact location.

GSI reserves the right to modify these 30(b)(6) designations upon reasonable notice to the government.

Best,
Tim

**Timothy A. Cook | WilmerHale**
(617) 526-6005

---

**From:** Cook, Tim <Tim.Cook@wilmerhale.com>
**Sent:** Tuesday, December 7, 2021 8:46 PM
**To:** Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>; Ewing, Alexandra M. <Ewing@rlf.com>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <Laura.Hatcher@usdoj.gov>; Anis, Shamoor (USADE) <Shamoor.Anis@usdoj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>; Tanner, Matthew D. (CIV) <Matthew.D.Tanner@usdoj.gov>; Bae, Sosun (CIV) <Sosun.Bae@usdoj.gov>
**Subject:** RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

Wally,

We have several updates on depositions of Gilead's witnesses, as well as additional 30(b)(6) designations:

1. **Manish Bisaria.** ███████████████████████████████████████, so December 14 is no longer possible for his deposition.  Mr. Bisaria is available on January 20, 2022, in our Palo Alto office.  Please let us know if this works for the government.

2. **Declan Hickey.**  We are still working to find dates that work for Mr. Hickey in January, but we wanted to follow up on the part of your request about whether GSIUC would consider a remote deposition.  GSIUC will agree to the government's request to conduct the deposition remotely if the deposition is completed within normal business hours in Ireland (either by starting at 9am GMT or by agreeing to a hard stop at 6pm GMT) and if Mr. Hickey is permitted (at his discretion) to have his counsel with him in person at the deposition.  These accommodations are appropriate because the government, not the witness or GSIUC, is requesting the remote deposition, and because the deposition of GSIUC would need to take place in Ireland if it were conducted in person.  Please confirm that the government agrees—if so, we will propose modifications to our usual stipulation.  We will also send Mr. Hickey's availability when we have it.

3. **Bill Lee.**  Dr. Lee, who is now a retired third party, is not available on January 14, which is the date in the government's deposition notice.  He is available on January 18, 2022.  We expect that he will be available at our firm's San Francisco office, but there is a chance that the birth of a grandchild will require him to be deposed at our firm's Denver office.  We will let you know as soon as we have confirmed the location, but please let us know if the date is acceptable.

   Moreover, GSI designates Bill Lee to testify in response to the government's topics 33 and 34, as these topics are restated in GSI's responses and subject to GSI's objections.

4. **Sonja Tong.**  GSI designates Sonja Tong to testify in response to the government's topics 4 and 5, as these topics are restated in GSI's responses and subject to GSI's objections, and to the government's topic 3, as restated in GSI's responses and subject to GSI's objections, as it relates to labeling.  Ms. Tong is available to be deposed on January 21, 2022, likely at our firm's Palo Alto office.  Ms. Tong, however, reserves the right to request a remote deposition; if she does, we will let you know by early January.  Please confirm that the government will proceed on January 21.

5. **Melissa Koomey.**  GSI designates Melissa Koomey to testify in response to the government's topics 7, 8, 22, and 42, as restated in GSI's responses and subject to GSI's objections.  Ms. Koomey is available to be deposed on January 6, 2022, at 9am EST.  Ms. Koomey requests a remote deposition.  Ms. Koomey is located in the Toronto area but will stipulate to the administration of the oath using the same form of stipulation that we have used for other remote depositions.  Please confirm that the government agrees and will proceed on this date.

GSI reserves the right to modify these 30(b)(6) designations upon reasonable notice to the government.

Best,
Tim

Timothy A. Cook | WilmerHale
(617) 526-6005

---

**From:** Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>
**Sent:** Friday, December 3, 2021 7:16 PM
**To:** Cook, Tim <Tim.Cook@wilmerhale.com>; Ewing, Alexandra M. <Ewing@rlf.com>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <Laura.Hatcher@usdoj.gov>; Anis, Shamoor (USADE) <Shamoor.Anis@usdoj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>; Tanner, Matthew D. (CIV) <Matthew.D.Tanner@usdoj.gov>; Bae, Sosun (CIV) <Sosun.Bae@usdoj.gov>
**Subject:** RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

---

**EXTERNAL SENDER**

---

Tim,

I wanted to address some of the deposition issues you raised before next week.

Regarding the Miller depositions, we are confirming both Madeline Miller for 1/14 and Michael Miller for 1/7.  I apologize for the confusion; I was trying to address Madeline Miller deposition in my email, but neglected to confirm the Michael Miller date as well.

Regarding the location of the Folks deposition, your proposal is acceptable to us.  Let us know when you confirm the location.  We can also confirm that the depositions of Tara Kirby (Dec. 15) and Carl Dieffenbach (Dec. 17) will be held at WilmerHale's Washington, DC offices.

Regarding the Conant deposition, we were not aware that the date had been set, but nonetheless Government counsel will be attending that deposition along with the Avery Goldstein deposition on December 14.

We expect to have additional information on outstanding scheduling issues early next week.

Regards,

Wally

Walter W. Brown
Senior Litigation Counsel
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W.
Room 8504
Washington, D.C. 20005
Telephone:  (202) 307-0341
Facsimile:  (202) 307-0345
Email:  walter.brown2@usdoj.gov

**From:** Cook, Tim <Tim.Cook@wilmerhale.com>
**Sent:** Friday, December 03, 2021 9:38 AM
**To:** Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>; Ewing, Alexandra M. <Ewing@rlf.com>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <lhatcher@usa.doj.gov>; Anis, Shamoor (USADE) <SAnis@usa.doj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>; Tanner, Matthew D. (CIV) <Matthew.D.Tanner@usdoj.gov>; Bae, Sosun (CIV) <Sosun.Bae@usdoj.gov>
**Subject:** [EXTERNAL] RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

Wally,

Thanks for your understanding on Mr. Bisaria's deposition, and we look forward to hearing from you about the alternative date.

Thanks also for confirming the Luetgens, Attard, and Miller depositions.  To be clear, is the government confirming the date we offered for Madeline Miller (1/14), Michael Miller (1/7), or both?

We will follow up separately about Mr. Hickey's later availability.

January 4 works for us for Dr. Folks's deposition.  We will try to make arrangements at the same hotel we discussed in October and will let you know when the space is confirmed.  Please also let us know when Drs. Heneine, Garcia-Lerma, and Grant are available to be deposed—from our call on Monday, we understood that the government was expecting to provide their availability this week.

As for third-party depositions, the depositions of Avery Goldstein and Marcus Conant will proceed as indicated in the subpoenas.  Dates have not been set for depositions of Dinsmore, Weston Gould, or Mylan, but we will let you know when they are.  And as you already know, the Klarquist/Siegel deposition is scheduled for December 10, subject to reaching agreement among all parties on a remote deposition stipulation.  (Relatedly, please let us know today if the draft stipulation that Kevin Yurkerwich sent on November 18 is acceptable— the draft is still subject to review by Klarquist, and the deposition is next Friday.)

Aside from documents produced by DOJ (which we assume do not need to be reproduced), we have received documents in response to a subpoena only from Klarquist.  We understand that Klarquist has been coordinating with DOJ on its response, but we will reproduce what Klarquist served shortly.

Best,
Tim


**Timothy A. Cook | WilmerHale**
(617) 526-6005

**From:** Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>
**Sent:** Thursday, December 2, 2021 8:00 PM
**To:** Cook, Tim <Tim.Cook@wilmerhale.com>; Ewing, Alexandra M. <Ewing@rlf.com>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <Laura.Hatcher@usdoj.gov>; Anis, Shamoor (USADE) <Shamoor.Anis@usdoj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>; Tanner, Matthew D. (CIV) <Matthew.D.Tanner@usdoj.gov>; Bae, Sosun (CIV) <Sosun.Bae@usdoj.gov>
**Subject:** RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

**EXTERNAL SENDER**

Tim,

Thank you for providing Gilead's first set of Rule 30(b)(6) witness designations.

The previously scheduled Vazquez and Parthasarathy depositions will go forward on the present schedule, with the added designations. We are considering the alternative date for the Bisaria deposition, which we will address later, but certainly are amenable to changing the date in light of ██████████████████.

We are also prepared to move forward on the Luetgens, Attard, and Miller depositions on the dates proposed. We will also likely serve fact deposition notices for these witnesses, though we are not seeking more than a total of 7 hours with any of these individuals.

We are unable, however, to agree to the Hickey deposition proposed to take place in Ireland on December 14 (less than two weeks from today). First, the Government would like to resolve the GSIUC document issues prior to such a deposition; at present, GSIUC has produced only two custodial documents. Second, we are exploring whether any DOJ (or other) restrictions would prevent our travel to Ireland for a deposition, including any COVID-related restrictions (as Ireland has been designated a Level 4 country). In that vein, please provide alternative dates for this deposition as well as Gilead's position on whether the deposition can been held remotely.

Also, the Government is also proposing that Dr. Folks' deposition be held on January 4 in the San Antonio area. Let me know if this date is amenable to Gilead.

Finally, update us as to any additional third-party depositions that are being scheduled. I am not aware, for example, of any scheduled dates for the Dinsmore and Mylan depositions. We have also not received any documents from Gilead that it may have obtained from third-party subpoenas, which would be responsive to Government RFP No. 254 (served on October 4). Please update us on that issue as well.

Regards,

Wally

Walter W. Brown
Senior Litigation Counsel
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W.

Room 8504
Washington, D.C. 20005
Telephone: (202) 307-0341
Facsimile: (202) 307-0345
Email: walter.brown2@usdoj.gov

---

**From:** Cook, Tim <Tim.Cook@wilmerhale.com>
**Sent:** Tuesday, November 30, 2021 10:27 AM
**To:** Ewing, Alexandra M. <Ewing@rlf.com>; Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <lhatcher@usa.doj.gov>; Anis, Shamoor (USADE) <SAnis@usa.doj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>
**Subject:** [EXTERNAL] RE: United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

Counsel,

We write to provide Defendants' first set of designations in response to the government's 30(b)(6) notices:

- GSI designates **Martha Vazquez** to testify in response to the government's topic 46, as restated in GSI's responses and subject to GSI's objections, as it relates to GSI's execution of and compliance with the MTAs. Ms. Vazquez's deposition has already been scheduled for December 7, 2021.

- GSI designates **Manish Bisaria** to testify in response to the government's topic 9, as restated in GSI's responses and subject to GSI's objections, and topic 13, as restated in GSI's responses and subject to GSI's objections, as it relates to sales volume and revenue. Mr. Bisaria's deposition has already been scheduled for December 8, 2021.

- GSI designates **Kavitha Parthasarathy** to testify in response to the government's topic 11, as restated in GSI's responses and subject to GSI's objections, and topic 13, as restated in GSI's responses and subject to GSI's objections, as it relates to demand volume and market share. Ms. Parthasarathy's deposition has already been scheduled for December 9, 2021.

- GSIUC designates **Declan Hickey** to testify in response to the government's topics 42 and 53, as these topics are restated in GSIUC's responses and subject to GSIUC's objections. Mr. Hickey is available to be deposed on December 14, 2021, at a location to be determined near Carrigtwohill, Ireland. GSIUC reiterates that the government's continued assertion of claims against it is objectively baseless, and GSIUC intends to seek its fees and costs for this deposition if it takes place. Please let us know by this Thursday, December 2, 2021, if the government will proceed on this date.

- GSI designates **Jennifer Luetgens** to testify in response to the government's topics 15, 16, 17, and 18, as these topics are restated in GSI's responses and subject to GSI's objections. Ms. Luetgens is available to be deposed on December 17, 2021 at WilmerHale's Palo Alto office. Please let us know by this Thursday, December 2, 2021, if the government will proceed on this date. In addition, Ms.

Luetgens has asked that only necessary individuals be in the room and that everyone follow strict COVID precautions, including 6-foot distancing and wearing masks.

- GSI designates **Stefania Attard** to testify in response to the government's topic 31, as restated in GSI's responses and subject to GSI's objections.  Ms. Attard is available to be deposed on January 11, 2022 at WilmerHale's Palo Alto office.  Please confirm that the government will proceed on this date.

- GSI designates **Madeline Miller** to testify in response to the government's topic 47, as restated in GSI's responses and subject to GSI's objections.  Dr. Miller is available to be deposed on January 14, 2022 at WilmerHale's San Francisco office.  Please confirm that the government will proceed on this date.

We will provide designations for other topics, along with witness availability, on a rolling basis.

Best,
Tim


**Timothy A. Cook | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6005 (t)
+1 617 526 5000 (f)
https://www.wilmerhale.com/en/people/tim-cook

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** Ewing, Alexandra M. <Ewing@rlf.com>
**Sent:** Monday, November 22, 2021 5:18 PM
**To:** Brown, Walter (CIV) <Walter.Brown2@usdoj.gov>; Holvey, Patrick C. (CIV) <Patrick.C.Holvey@usdoj.gov>; Hatcher, Laura (USADE) <Laura.Hatcher@usdoj.gov>; Anis, Shamoor (USADE) <Shamoor.Anis@usdoj.gov>; Sternhell, Philip C. (CIV) <Philip.C.Sternhell@usdoj.gov>; Kelly, Amanda K. (CIV) <Amanda.K.Kelly@usdoj.gov>; Rosato, Carrie E. (CIV) <Carrie.E.Rosato@usdoj.gov>; Docket, PrEP (CIV) <PrEP.Docket@usdoj.gov>
**Cc:** cottrell@rlf.com; farnan@rlf.com; Schoenbaum, Griffin A. <Schoenbaum@rlf.com>; WH Gilead - HHS Patent Litigation <WHGilead-HHSPatentLitigation@wilmerhale.com>
**Subject:** United States of America v. Gilead Sciences, Inc. & Gilead Sciences Ireland UC, C.A. No. 19-02103-MN: Objections & Responses to Plaintiff's Notices of Deposition Under Fed. R. Civ. P. 30(b)(6)

**EXTERNAL SENDER**


Counsel,

Attached please find:

(1)  Objections & Responses to Plaintiff's Notice of Deposition of Gilead Sciences, Inc. Under Fed. R. Civ. P. 30(b)(6); and

(2)  Objections & Responses to Plaintiff's Notice of Deposition of Gilead Sciences Ireland UC Under Fed. R. Civ. P. 30(b)(6).

Best,
Ally

Alexandra M. Ewing
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7898 (direct dial)
Ewing@rlf.com

---

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

---

# Exhibit E

Gilead Sciences, Inc., Objections and Responses to
the United States' 30(b)(6) Deposition Notice

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---

UNITED STATES OF AMERICA,

　　*Plaintiff & Counterclaim-Defendant*,

　　　　　v.

GILEAD SCIENCES, INC. and
GILEAD SCIENCES IRELAND UC,

　　*Defendants & Counterclaim-Plaintiff*.

C.A. No. 19-02103-MN

---

**OBJECTIONS & RESPONSES TO PLAINTIFF'S NOTICE OF**
**DEPOSITION OF GILEAD SCIENCES, INC. UNDER FED. R. CIV. P. 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the applicable

Local Rules of Civil Practice and Procedure for the District of Delaware, Gilead Sciences, Inc.

("GSI") objects and responds to the Notice of Deposition pursuant to Rule 30(b)(6) to GSI,

served by Plaintiff United States of America (the "Government" or "Plaintiff") and dated

November 1, 2021 (the "Notice").

## GENERAL OBJECTIONS

GSI incorporates each of the following General Objections into its responses to each of

the Topics, whether or not each such General Objection is expressly referred to in GSI's

response to a specific Topic.

1.　　　　GSI objects to the date and location of the deposition contained in the notice as

unduly burdensome, particularly because GSI's principal place of business is not located in or

near Washington, D.C.  GSI is willing to meet and confer with the government regarding the

date, place, time, and format of any depositions taken in response to the Notice.

2.      GSI objects to the Notice, and to the Definitions, Instructions, and Topics contained therein, to the extent it seeks to impose a burden on GSI greater than or inconsistent with that required by the Federal Rules of Civil Procedure, including Rule 30(b)(6), the Local Rules, or any other relevant rule, statute, regulation, or precedent.

3.      GSI objects to the Notice to the extent that it suggests that the deposition of any GSI designee "will continue day to day until complete with adjournments as to time and place that may be necessary."  GSI will not produce any witness for a deposition of longer than seven hours or greater than one day.  *See* Fed. R. Civ. P. 30(d)(1); D.I. 27, ¶ 8(e)(i).

4.      GSI objects to Defendants' incorporation by reference of the Definitions set forth in the Government's Corrected First Set of Requests for Production of Documents and Things (Nos. 1-182) and the Government's Second Set of Requests for Production of Documents and Things (Nos. 183-250).  Many of these documents containing contradictory definitions. *Compare* Notice at 1 ("Defendant Gilead Sciences, Inc. (hereinafter, Gilead or Defendant)"), *with* Pl.'s Corrected 1st Set of Requests for Prod. of Docs. & Things, Def'n ¶ 2 ("'Gilead' … refers, collectively or singly, to Gilead Sciences, Inc. (GSI), Gilead Sciences Ireland UC (GSIUC), and any and all predecessors, successors, divisions, subsidiaries, subcontractors, franchisees, assigns, or joint ventures thereof, together with any and all parent or affiliated companies, corporations, or other legal entities, whether foreign or domestic, and all past or present officers, directors, employees, agents, attorneys, lobbyists, representatives, and all other persons acting or purporting to act or that have acted or purported to act on behalf of any of the foregoing.").  Moreover, requiring each designee to review multiple documents to locate definitions presents an undue burden.  GSI interprets the terms in each Topic to have their plain and ordinary meaning unless expressly defined in the Notice itself.

– 2 –

5.      GSI objects to each Topic to the extent that it seeks information that GSI is precluded from disclosing under legal obligations of any kind, including foreign or domestic privacy laws.  Except as set forth in GSI's specific responses below, GSI is not currently aware of such obligations that would affect their ability to respond to the Topics, but GSI expressly reserves the right to object and withhold testimony on this basis should GSI become aware of such obligations.

6.      Any statement by GSI that it will designate a witness is made without waiving or intending to waive any objections as to relevancy, materiality, privilege, or admissibility of any information in this or any subsequent proceeding or at the trial of this or any other action, on any ground.

7.      GSI reserves the right to object to any specific deposition question at the time of examination.  Objections as to the relevance, foundation, or admissibility of any information are expressly reserved.

8.      Any statement by GSI that it will designate a witness to testify to the Topics contained in the Notice does not constitute an admission to the relevance or admissibility of any Topic or a representation that GSI has any knowledge or information relating to a given Topic.

9.      GSI objects to the Notice and the Topics contained therein to the extent they call for testimony protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common interest privilege, or any other applicable privilege or immunity.  GSI intends to and does claim all such protections and privileges.  No person will be designated to testify concerning such privileged information, and no documents subject to such privilege will be produced.  The inadvertent disclosure by GSI of information

protected from disclosure by any privilege or doctrine shall not constitute a waiver by GSI of such objections or protections.

10.    GSI objects to the Notice and the Topics contained therein to the extent they are overly broad, unreasonably burdensome, or seek discovery of information that is not relevant to any party's claims or defenses or not proportional to the needs of this case.

11.    GSI objects to the Notice and the Topics contained therein to the extent it is premature and/or to the extent it conflicts with the Scheduling Order entered by the Court or seeks information that is properly the subject of expert testimony.

12.    GSI objects to the Notice to the extent that any Topic seeks duplicative information already requested by, and more appropriately obtained through, other discovery mechanisms, including requests for production and interrogatories.

13.    GSI objects to the Notice to the extent that any Topic is not limited to any reasonable time period.

14.    GSI objects to the Notice to the extent that any Topic is not geographically limited to the United States.

15.    GSI objects to the Notice to the extent that any Topic calls for a witness or witnesses to testify as to a legal conclusion.

16.    GSI objects to the Notice to the extent that any Topic calls for a witness or witnesses to testify as to GSI's contentions in this action.  *See, e.g.*, *Guest Tek Interactive Entm't, Ltd. v. Nomadix, Inc.*, C.A. No. 18-1394-RGA (D. Del. Dec. 18, 2020) (D.I. 212); *Intellectual Ventures II LLC v. Symantec Corp.*, C.A. 13-440-LPS (D. Del. June 12, 2015), Tr. at 37-38; *Sanofi-Aventis, U.S. LLC v. Eli Lilly & Co.*, C.A. 14-113-RGA-MPT (D. Del. Feb. 26, 2015), Tr. at 87; *Axiohm IPS Inc. v. Epson Am., Inc.*, C.A. No. 00-420-SLR (D. Del. Mar. 28, 2001), Tr. at

– 4 –

4; *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No. CV 15-137-LPS, 2016 WL 6305981, at *2 (D. Del. Sept. 29, 2016) (denying request to compel party to put forward a witness to testify on "de facto contention deposition categories" that are "more properly the subject of expert testimony").

17.     GSI objects to the Notice and the Topics to the extent they call for testimony on matters that are not within GSI's possession, custody, or control and thereby seek to avoid the requirements of Federal Rule of Civil Procedure 45.

18.     GSI reserves the right to revise, correct, add to, supplement, modify, or clarify their testimony as to any Topic pursuant to Federal Rule of Civil Procedure 26(a) in any manner it deems appropriate.  These responses are made without prejudice to GSI's right to present at trial additional evidence or witnesses as may be discovered or produced.

19.     GSI objects to the Notice to the extent it seeks to require GSI to produce one or more witnesses to testify concerning Topics that pertain to documents or information beyond what GSI is able to locate upon a reasonable search of its own files and from a reasonable inquiry of its present employees.

20.     GSI objects to examination on Topics that seek information that already is possessed by or known by the government, that is publicly available, or that is in the sole possession of any third party.

21.     GSI objects to the definition of "Agreement Form" in the Notice.  GSI interprets this term in the Topics to refer to published documents having the title "Agreement Form for Initiating Emtricitabine/Tenofovir Disoproxil Fumarate 200 mg/300 mg for HIV-1 Pre-exposure Prophylaxis (PrEP)" and having substantially the same form and content as the document produced by GSI with the Bates number GILDDE00267952.

22.     GSI objects to the definition of "Training Guide for Healthcare Providers" in the Notice.  GSI interprets this term in the Topics to refer to published documents having the title "Emtricitabine/Tenofovir Disoproxil Fumarate 200 mg/300 mg for HIV-1 Pre-exposure Prophylaxis (PrEP) Training Guide for Healthcare Providers" and having substantially the same form and content as the document produced by GSI with the Bates numbers GILDDE00268598-GILDDE00268608.

## OBJECTIONS AND RESPONSES TO SPECIFIC TOPICS

**Topic No. 1:**

> Gilead's decision to seek or not seek a PrEP indication for the Accused Products, including any decision to discontinue any PrEP indication for an Accused Product, and all information used or considered in making these decisions such as scientific, sales, market, or clinical research used or considered.

**GSI's Response to Topic No. 1:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, to the extent the request seeks testimony about "all information used or considered in making these decisions such as scientific, sales, market, or clinical research used or considered," it is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the phrase "used or considered in making these decisions."  Moreover, GSI objects to this Topic as calling for a

– 6 –

subjective judgment about whether information was "considered."  As such, this Topic is vague and ambiguous.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether certain information was "used or considered" by GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's decision to seek or not seek a PrEP indication for the Accused Products, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 2:**

> The research, development, testing, and analysis performed by or on behalf of Gilead concerning PrEP or the PrEP indications for the Accused Products.

**GSI's Response to Topic No. 2:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  GSI has performed substantial "research, development, testing, and analysis performed by or on behalf of Gilead concerning PrEP or the PrEP indications for the Accused Products" over the course of

more than two decades; accordingly, this Topic it is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "on behalf of" and "concerning."  Moreover, GSI objects to this Topic as calling for a subjective judgment about whether research, development, testing, or analysis was performed "on behalf of" GSI and whether it "concern[ed]" PrEP or the PrEP indications for the Accused Products.  As such, this Topic is vague and ambiguous.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether research, development, testing, or analysis was performed "on behalf of" GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information

related to GSI's general knowledge of GSI's research, development, testing, and analysis

concerning PrEP or the PrEP indications for the Accused Products, to the extent that such

information exists; is in GSI's possession, custody, or control; and can be located with a

reasonable search.

**Topic No. 3:**

> Gilead's regulatory filings concerning the PrEP indication for the
> Accused Products or any efficacy supplement regarding the use of
> the Accused Products for PrEP from December 14, 2011 through
> June 23, 2020, the preparation and contents of such filings, the
> decision-making process behind such filings, communications with
> regulatory agencies (including the FDA) regarding such filings,
> and the identities of individuals involved in such filings.

**GSI's Response to Topic No. 3:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, the filings and communications covered by this Topic are voluminous, and much of the

information contained in the filings is not relevant to the claims and defenses in this case;

accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate

designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  For example, GSI's communications with "regulatory agencies" outside the United States

are not relevant to the claims and defenses in this case, nor are GSI's communications with

regulatory agencies other than the FDA within the United States.

GSI objects to this Topic as vague and ambiguous, including the terms "concerning," "involved in," and "decision-making process behind such filings."  Moreover, GSI objects to this Topic as calling for a subjective judgment about whether information "concern[ed]" "the PrEP indication for the Accused Products or any efficacy supplement regarding the use of the Accused Products for PrEP."  As such, this Topic is vague and ambiguous.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's efficacy supplements regarding the use of the Accused Products for PrEP in the United States—and about a reasonable number of specific such filings that the Government identifies in writing at least 14 days in advance of the deposition—to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 4:**

> All discussions of PrEP contained in each of Gilead's Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers for the Accused Products from July 16, 2011 through June 23, 2020 including, but not limited to, the dosage form, drug amounts, and route of administration for the use of the Accused Products for PrEP; the use of the Accused Products for PrEP, including any regimen for PrEP; management during the use of the Accused Products for PrEP; instructions concerning safer sex practices before and during the use of the Accused Products for PrEP; the testing of individuals for HIV before initiation of and during the use of the Accused Products for PrEP; as well as the reasons for including this information in these Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers; and any amendments made by Gilead to each of the aforementioned Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers, and all drafts or iterations thereof.

**GSI's Response to Topic No. 4:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, PrEP is discussed in the documents recited in this topic in many different contexts, and to the extent that Topic seeks detailed testimony about "[a]ll discussions" of PrEP in the documents, it is not sufficiently particularized to enable GSI to prepare a corporate designee. Likewise, to the extent this Topic seeks testimony about "all drafts or iterations" of the recited documents, it is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. For example, "discussions of PrEP" in versions of the documents recited in this Topic that were not used after June 2, 2015—the date that the first Patent-in-Suit issued—are not relevant to the parties' claims or defenses.

– 11 –

GSI objects to this Topic as vague and ambiguous, including the terms "any regimen for PrEP," "management during the use of the Accused Products for PrEP," "before and during the use of the Accused Products for PrEP," and "before initiation of and during the use of the Accused Products for PrEP." Moreover, GSI objects to this Topic as calling for a subjective judgment about whether particular information was among the "reasons for including this information in" the recited documents. As such, this Topic is vague and ambiguous.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the discussions of PrEP contained in Gilead's Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers for the Accused Products from June 2, 2015, through June 23, 2020, for Truvada® and from October 3, 2019, through June 23, 2020, for Descovy®—and about a reasonable number of specific such Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers that the Government identifies in writing at least 14 days in advance of the deposition—to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 5:**

> Any communications between Gilead and the FDA concerning the
> Labels, Medication Guides, Agreement Forms, and Training
> Guides for Healthcare Providers, and any amendments made by
> Gilead to each of the Labels, Medication Guides, Agreement
> Forms, and Training Guides for Healthcare Providers as a result of
> communications with the FDA.

**GSI's Response to Topic No. 5:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, GSI has had extensive communications with FDA about the labels for Truvada® and

Descovy®, much of which does not relate to the claims or defenses in this case; accordingly, this

Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  For example, GSI's communications with FDA about the Truvada® and Descovy® labels

prior to the products' approval for HIV treatment are not relevant to any claim or defense in this

case.

GSI objects to this Topic as vague and ambiguous to the extent it requires a subjective

judgment about whether an amendment was made "as a result of communications with the

FDA."

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of communications between Gilead and the FDA concerning the Labels, Medication Guides, Agreement Forms, and Training Guides for Healthcare Providers and any amendments thereto—and about a reasonable number of specific communications or amendments that the Government identifies in writing at least 14 days in advance of the deposition—to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 6:**

> The preparation and contents of any brochure, report, meeting, briefing package, study plan, and/or presentation, including drafts of the same, prepared by or on behalf of Gilead that discusses the use of an Accused Product for PrEP.

**GSI's Response to Topic No. 6:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. This Topic seeks testimony on the "preparation and contents" of "any brochure, report, meeting, briefing package, study plan, and/or presentation, including drafts" that discusses the use of two of GSI's products for PrEP. This captures an immense volume of documents—it captures, and seeks detailed testimony about, essentially all documents (and drafts) generated in the course of

two areas of GSI's business.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous.  Moreover, GSI objects to this Topic as calling for a subjective judgment about whether a document was prepared "on behalf of" GSI.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a document was prepared "on behalf of" GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.  However, subject to and without waiving the foregoing General and Specific Objections, GSI is willing to provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the preparation and contents of a reasonable number of brochures, reports, meetings, briefing

packages, study plans, and/or presentations, prepared by GSI that discusses the use of an

Accused Product for PrEP (to the extent that such information exists; is in GSI's possession,

custody, or control; and can be located with a reasonable search) if the government identifies the

brochures, reports, meetings, briefing packages, study plans, and/or presentations in advance of

the deposition.  GSI is unable to determine who the designee should be until the government

identifies the documents on which it seeks testimony; accordingly, GSI requests that the

government identify the document no later than 14 days before the first deposition of a GSI

employee is scheduled.

**Topic No. 7:**

> All non-identical marketing, promotional, safety information
> (including but not limited to information for adults or adolescents
> who do not have HIV) and fact sheets, checklists for prescribers, or
> educational materials relating to the use of the Accused Products
> for PrEP, including drafts or iterations thereof, all communications
> with regulatory agencies (including the FDA) regarding such
> materials, Gilead's efforts to provide such materials to healthcare
> providers or patients, and the identities of all individuals involved
> in the preparation or selection of such materials, including all
> marketing and promotional materials identified in Gilead's
> responses to Plaintiff's Interrogatory No. 7.

**GSI's Response to Topic No. 7:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic seeks testimony about every document (including "drafts or iterations")

generated in a significant part of GSI's business.  It also seeks testimony about "all

communications" with regulatory agencies about such documents and all "efforts to provide such

materials to healthcare providers or patients," again capturing an excessive volume of

communications.  This Topic also seeks detailed testimony on "all marketing and promotional

materials identified in Gilead's responses to Plaintiff's Interrogatory No. 7," which cites more than 800 documents.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.  For example, the government identified only about 13 documents falling within the scope of this Topic in its October 30, 2020 initial infringement contentions, yet it seeks testimony on a set of documents that is many times larger than that.  Many of the documents recited in this Topic also have no relation to the government's claims or defenses, such as communications with "regulatory agencies" outside the United States.

GSI objects to this Topic as vague and ambiguous, including the terms "non-identical, "educational materials relating to the use of the Accused Products for PrEP," and "Gilead's efforts to provide such materials to healthcare providers or patients."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information

related to GSI's general knowledge of the marketing of Truvada® and Descovy® for PrEP in the

United States since the approval of their respective PrEP indications—and about a reasonable

number of specific marketing materials that the Government identifies in writing at least 14 days

in advance of the deposition—to the extent that such information exists; is in GSI's possession,

custody, or control; and can be located with a reasonable search.

**Topic No. 8:**

> Gilead's promotion and efforts to promote the sale or use of the
> Accused Products for PrEP, all changes to these promotions or
> efforts, and the reasons for any change.

**GSI's Response to Topic No. 8:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, to the extent this Topic requests testimony about "all changes to these promotions or

efforts, and the reasons for any change," it captures an enormous volume of potentially

responsive information, including information about routine, day-to-day decisions made by

individual sales representatives.  Accordingly, this Topic is not sufficiently particularized to

enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.

GSI objects to this Topic as vague and ambiguous, including the terms "efforts to

promote" and "changes to these promotions or efforts."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether particular actions constitute "promotion."

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's promotion and efforts to promote the sale or use of Truvada® and Descovy® for PrEP in the United States since the approval of their respective PrEP indications, including about changes to such promotion or efforts and the reasons for such changes—and about a reasonable number of specific changes to such promotion or efforts that the Government identifies in writing at least 14 days in advance of the deposition—to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 9:**

> The amount of money spent by Gilead to promote the use of an
> Accused Product for any approved indication, including but not

limited to the use of an Accused Product for PrEP in the United States.

**GSI's Response to Topic No. 9:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic is not limited to particular indications, uses, time periods, or geographies; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case, particularly to the extent it seeks testimony regarding the amount of money spent by GSI to promote the Accused Products for any use other than PrEP or to promote the Accused Products prior to issuance of the first Patent-in-Suit on June 2, 2015, or outside the United States.

GSI objects to this Topic as vague and ambiguous, including the term "amount of money spent to promote the use," which calling for a subjective judgment about whether certain expenditures were "to promote" a particular use versus use of the product generally and whether certain activities, such as educational activities, are activities "to promote" use.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether certain activities constitute "promotion."

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's marketing expenditures for Truvada® and Descovy® in the United States from June 2, 2015, to present, including GSI's marketing expenditures for Truvada® and Descovy® for PrEP in the United States over that period, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 10:**

> *[Intentionally Omitted]*

**GSI's Response to Topic No. 10:**

No response to this Topic is required.

**Topic No. 11:**

> Any study, analysis, survey, or investigation by or for Gilead of
> any projected, expected, or potential sales, market share, or market
> information for the use of the Accused Products according to any
> of their indications, including any comparison of sales, market
> share, or market information for each indication.

**GSI's Response to Topic No. 11:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, to the extent this Topic seeks testimony on "[a]ny" study, analysis, survey, or

investigation, it potentially seeks testimony about voluminous calculations.  Moreover, this Topic fails to identify any particular element of any such "study, analysis, survey, or investigation," despite such studies frequently involving complex and diverse types of calculations.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case, particularly to the extent it seeks testimony regarding any "study, analysis, survey, or investigation" covering only periods prior to issuance of the first Patent-in-Suit on June 2, 2015, or geographies outside the United States.

GSI objects to this Topic as vague and ambiguous, including the terms "for Gilead," "for the use of the Accused Products according to any of their indications," and "any comparison of sales, market share, or market information for each indication."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a "study, analysis, survey, or investigation" was performed "for Gilead," which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of its near- and mid-range forecasts of Truvada® and Descovy® demand volume and market share in the United States, including its forecasts of Truvada® and Descovy® demand volume and market share for PrEP in the United States, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  If the government intends to seek particularized testimony about any specific forecast or document in response to this Topic, GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 12:**

> *[Intentionally Omitted]*

**GSI's Response to Topic No. 12:**

No response to this Topic is required.

**Topic No. 13:**

> Gilead's knowledge, estimates, and/or calculations of sales and
> market share for the use of each of the Accused Products for PrEP
> in the U.S., including: prescription estimates (and the data
> underlying such prescription estimates), gross and net sale
> estimates, profit and loss estimates (and the data underlying such
> profit and loss estimates), any growth or decline in sales and
> factors contributing to the same, costs (including research and
> development costs), pricing, gross and net profits, revenues,
> market share, market definition, sales and profit projections,
> consumer profiles, and physician or managed care surveys; any

information or documents identified in Gilead's responses to
Plaintiff's Interrogatory No. 4; and any statements made by or on
behalf of Gilead concerning the aforementioned knowledge,
estimates, and/or calculations during earnings calls, and the
manner in which Gilead arrived at the aforementioned estimates
and/or calculations.

**GSI's Response to Topic No. 13:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  This

138-word, single-sentence Topic covers a vast range of different financial and sales metrics and

information about sales and seeks information that cannot possibly be known by a single

corporate designee.  Accordingly, this Topic is not sufficiently particularized to enable GSI to

prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous.  Indeed, as written, this compound

Topic is essentially incomprehensible.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case, for example, to the extent this Topic seeks information about the sales of Truvada® prior to

the issuance of the first Patent-in-Suit on June 2, 2015, or Descovy® prior to the approval of its

PrEP indication on October 3, 2019.

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether statements were made "on behalf of Gilead," which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of (i) its estimates of the U.S. demand volume, sales volume, revenue, and market share of Truvada® for PrEP from June 2, 2015 to present and of Descovy® for PrEP from October 3, 2019 to present and (ii) its near- and mid-range forecasts of Truvada® and Descovy® demand volume, sales volume, revenue, and market share for PrEP in the United States, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 14:**

> *[Intentionally Omitted]*

**GSI's Response to Topic No. 14:**

No response to this Topic is required.

**Topic No. 15:**

> Any study, analysis, survey, or investigation by or for Gilead
> regarding the use of the Accused Products for PrEP, including but

not limited to the number or percentage of individuals using the
Accused Products for PrEP that have contact with HIV or that
engage in activity that could result in contact with HIV.

**GSI's Response to Topic No. 15:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic seeks testimony on "[a]ny study, analysis, survey, or investigation" about

the recited subject matter but fails to identify, with specificity, any such study that has actually

been performed.  Accordingly, this Topic is not sufficiently particularized to enable GSI to

prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case, particularly to the extent that it is not limited to the period for with the government is

seeking damages or to the United States.

GSI objects to this Topic as vague and ambiguous, including the terms "for Gilead,"

"regarding the use of the Accused Products for PrEP," "individuals using the Accused Products

for PrEP that have contact with HIV," and "individuals … that engage in activity that could

result in contact with HIV."

GSI objects to this Topic as improperly seeking party contentions through deposition to

the extent this Topic seeks testimony about whether particular uses of the Accused Products for

PrEP practice the claim limitations as construed by the Court.  *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a "study, analysis, survey, or investigation" was performed "for Gilead," which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of behavioral studies performed by GSI regarding the activities of patients who are taking the Accused Products for PrEP, to the extent that such studies exist and such information is in GSI's possession, custody, or control and can be located with a reasonable search.  If the government intends to seek particularized testimony about any specific study or document in response to this Topic, GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 16:**

> Any Gilead effort or instruction intended to reduce the risk of HIV infection amongst patients using the Accused Products for PrEP in the U.S., including but not limited to efforts or instructions concerning safer sex practices, Gilead's knowledge, estimates,

and/or calculations concerning the result of such efforts or
instructions, and the reasons for Gilead's efforts or instruction.

**GSI's Response to Topic No. 16:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic seeks testimony on "[a]ny Gilead effort or instruction" about the recited

subject matter and "knowledge, estimates, and/or calculations concerning the result of such

efforts or instructions" but fails to identify, with specificity, an actual effort or instruction that it

seeks testimony about or any such "estimate[]" or "calculation[]" that actually exists.

Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate

designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case, particularly to the extent that it is not limited to the period for with the government is

seeking damages.

GSI objects to this Topic as vague and ambiguous, including the terms "intended to

reduce the risk of HIV infection amongst patients using the Accused Products for PrEP" and

"safer sex practices."  Moreover, GSI objects to this Topic as calling for a subjective judgment

about whether particular information constitutes a "reason[] for Gilead's efforts or instruction."

GSI objects to this Topic as improperly seeking party contentions through deposition to

the extent this Topic seeks testimony about whether particular uses of the Accused Products for

PrEP practice the claim limitations as construed by the Court.  *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a "study, analysis, survey, or investigation" was performed "for Gilead," which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

GSI objects to this Topic as duplicative of at least Topic Nos. 4 and 7 to the extent it seeks information regarding "[a]ny Gilead effort or instruction intended to reduce the risk of HIV infection amongst patients using the Accused Products for PrEP in the U.S., including but not limited to efforts or instructions concerning safer sex practices."  GSI will not separately designate a witness to testify about this information in response to Topic No. 16 but will provide testimony concerning this information in response to Topic Nos. 4 and 7, subject to the objections and responses contained herein.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of behavioral studies performed by GSI regarding the activities of patients who are taking the Accused Products for PrEP, to the extent that such

studies exist and such information is in GSI's possession, custody, or control and can be located with a reasonable search.  If the government intends to seek particularized testimony about any specific study or document in response to this Topic, GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 17:**

> Gilead's knowledge, estimates, and/or calculations of patients using the Accused Products for PrEP in the U.S. that are exposed or are potentially exposed to HIV, any changes concerning the aforementioned estimates and/or calculations, and the manner in which Gilead arrived at the aforementioned estimates and/or calculations.

**GSI's Response to Topic No. 17:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic seeks testimony on "estimates, and/or calculations of patients using the Accused Products for PrEP in the U.S. that are exposed or are potentially exposed to HIV" but fails to identify, with specificity, any such estimates or calculations that actually exist.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case, particularly to the extent that it is not limited to the period for with the government is seeking damages.

GSI objects to this Topic as vague and ambiguous, including the terms "estimates, and/or calculations of patients using the Accused Products for PrEP in the U.S." and "that are exposed or are potentially exposed to HIV."

GSI objects to this Topic as improperly seeking party contentions through deposition to the extent this Topic seeks testimony about whether particular uses of the Accused Products for PrEP practice the claim limitations as construed by the Court.  *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of behavioral studies performed by GSI regarding the activities of patients who are taking the Accused Products for PrEP, to the extent that such studies exist and such information is in GSI's possession, custody, or control and can be located with a reasonable search.  If the government intends to seek particularized testimony about any specific study or document in response to this Topic, GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 18:**

> Gilead's knowledge, estimates, and/or calculations of patients
> using the Accused Products for PrEP in the U.S. to remain HIV
> negative or uninfected, including the types of testing that provide
> evidence of HIV negative status or uninfected status, including but
> not limited to serological tests or polymerase chain reaction tests,
> the prevalence of such testing as evidence of HIV negative or
> uninfected status, and the frequency of such testing as evidence of
> HIV negative or uninfected status.

**GSI's Response to Topic No. 18:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, the information sought in the "including" clause of this Topic is not a subset of the information sought in the first clause of this Topic. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case, particularly to the extent that it is not limited to the period for which the government is seeking damages.

GSI objects to this Topic as vague and ambiguous, including the terms "estimates, and/or calculations of patients using the Accused Products for PrEP in the U.S. to remain HIV negative or uninfected," "types of testing," and "prevalence of such testing as evidence of HIV negative or uninfected status."

GSI objects to this Topic as improperly seeking party contentions through deposition to the extent this Topic seeks testimony about whether particular uses of the Accused Products for PrEP practice the claim limitations as construed by the Court. *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.  In particular, GSI cannot provide testimony regarding the intent of specific users of the Accused Products for PrEP.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of behavioral studies performed by GSI regarding the activities of patients who are taking the Accused Products for PrEP, to the extent that such studies exist and such information is in GSI's possession, custody, or control and can be located with a reasonable search.  If the government intends to seek particularized testimony about any specific study or document in response to this Topic, GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 19:**

> Gilead's knowledge of factual information bearing on any
> commercial success, unexpected result or outcome, long-felt but
> unmet need, industry praise, teaching away, failure of Gilead or

– 33 –

others, copying by Gilead or others, and/or skepticism by Gilead or
others regarding the use of the Accused Products for PrEP.

**GSI's Response to Topic No. 19:**

GSI objects to this Topic as improperly seeking party contentions through deposition.
*See* General Objection No. 16.  This Topic is an improper contention topic because whether
particular "factual information bear[s] on" any secondary consideration of non-obviousness
requires both the formation of legal conclusions and the recitation of GSI's invalidity
contentions.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails
to describe with reasonable particularity the matters on which examination is requested.  For
example, this Topic fails to identify the facts that it seeks and instead simply seeks to define its
scope as facts "bearing on" a legal issue; accordingly, this Topic is not sufficiently particularized
to enable GSI to prepare a corporate designee.

To the extent this Topic seeks testimony about facts related to the secondary
considerations of non-obviousness that no party has asserted in this case, GSI objects to this
Topic to the extent that it seeks information that is not relevant to the claims or defenses of any
party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence,
or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the term "bearing on,"
which requires a subjective judgment about whether particular information "bear[s] on" a
particular legal issue.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for
example, regarding whether a particular fact "bear[s] on" a particular secondary consideration of
non-obviousness.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 20:**

> Gilead's knowledge of factual information bearing on any secondary considerations (also known as objective indicia) the Government asserts supports the non-obviousness of the Patents-in-Suit, including but not limited to factual information bearing on commercial success, unexpected results, long-felt but unmet need, industry praise, teaching away, failure of others, copying, and/or skepticism regarding the alleged invention(s) claimed in the Patents-in-Suit, as well as factual information bearing on any alleged nexus between any such secondary considerations and the subject matter claimed in any of the Patents-in-Suit.

**GSI's Response to Topic No. 20:**

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.  This Topic is an improper contention topic because whether particular "factual information bear[s] on" any secondary consideration of non-obviousness requires both the formation of legal conclusions and the recitation of GSI's invalidity contentions.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic fails to identify the facts that it seeks and instead simply seeks to define its scope as facts "bearing on" a legal issue. Moreover, this Topic seeks testimony that is defined by what "the Government asserts" without defining, with specificity, what the government asserts. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

To the extent this Topic seeks testimony about facts related to the secondary considerations of non-obviousness that no party has asserted in this case, GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the term "bearing on," which requires a subjective judgment about whether particular information "bear[s] on" a particular legal issue.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular fact "bear[s] on" a particular secondary consideration of non-obviousness.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 21:**

> All facts relating to Gilead's preparation, filing, and prosecution of any U.S. or foreign applications or patents relating to PrEP, any decision by Gilead concerning the pursuit of such applications or patents, and any patent or patent application assigned or licensed to Gilead that refers to PrEP.

**GSI's Response to Topic No. 21:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. The mere fact that a patent application refers to PrEP does not make it relevant to this case, nor does it make discovery into the "preparation, filing, and prosecution" of the application proportional to the needs of this case. Moreover, GSI has not asserted a claim of patent infringement in this case.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, PrEP has been known since at least the 1990s and has been discussed in a very large number of patent filings. This Topic seeks testimony on "[a]ll facts" related to all such filings

without identifying any specific filing; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the terms "facts relating to," "relating to PrEP," "concerning the pursuit of such applications," and "refers to PrEP."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding the scope of the disclosure in unrelated patent applications.

To the extent this Topic seeks testimony regarding the disclosure of prior art asserted by Defendants in this action, GSI objects to this Topic as improperly seeking party contentions through deposition, *see* General Objection No. 16, and GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 22:**

> Gilead's decision to seek trademarks relating to PrEP including, without limitation, TRUVADA FOR PREP (U.S. Reg. No. 5,358,262), EMTRICITABINE 200 MG / TENOFOVIR DISOPROXIL FUMARATE 300 MG TABLETS FOR PREP

PRE-EXPOSURE PROPHYLAXIS (Registration No. 5,623,246), DESCOVY FOR PREP (U.S. Ser. No. 88,266,226), and DESCOVY EMTRICITABINE 200 MG / TENOFOVIR ALAFENAMIDE 25MG TABLETS FOR PREP PRE-EXPOSURE PROPHYLAXIS (Serial No. 88,615,918), as well as any valuation, costs, and expenses relating to such trademarks, and any consummated or unconsummated license to such trademarks, and the use of such trademarks to promote the use of the Accused Products for PrEP.

**GSI's Response to Topic No. 22:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic seeks testimony regarding an unbounded set of "trademarks relating to PrEP," without limitation to specific time periods, products, or jurisdictions; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, "Gilead's decision to seek trademarks relating to PrEP," "any valuation, costs, and expenses relating to such trademarks, and any consummated or unconsummated license to such trademarks" are not relevant to any claim or defense in this action.

GSI objects to this Topic as vague and ambiguous, including the terms "decision to seek," "trademarks relating to PrEP," "valuation, costs, and expenses relating to such trademarks," and "consummated or unconsummated licenses."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity, particularly with respect to GSI's decision to seek such trademarks.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a license is "consummated" or encompasses the recited trademarks and whether a particular trademark has been "used" and whether such use constitutes "promotion."

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.  In particular, GSI objects to this Topic to the extent it seeks testimony about GSI's "decision to seek … DESCOVY FOR PREP (U.S. Ser. No. 88,266,226), and DESCOVY EMTRICITABINE 200 MG / TENOFOVIR ALAFENAMIDE 25MG TABLETS FOR PREP PRE-EXPOSURE PROPHYLAXIS (Serial No. 88,615,918)" because these trademarks were sought and obtained by a different entity.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the use of the trademarks bearing U.S. Registration Nos. 5,358,262, 5,623,246 and U.S. Serial Nos. 88,266,226 and 88,615,918 in the United States since June 2, 2015, to promote the use of Truvada® or Descovy® for PrEP, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 23:**

> Gilead's preparation, filing, and prosecution of trademarks relating to PrEP including, without limitation, TRUVADA FOR PREP (U.S. Reg. No. 5,358,262), EMTRICITABINE 200 MG / TENOFOVIR DISOPROXIL FUMARATE 300 MG TABLETS FOR PREP PRE-EXPOSURE PROPHYLAXIS (Registration No. 5,623,246), DESCOVY FOR PREP (U.S. Ser. No. 88,266,226),

and DESCOVY EMTRICITABINE 200 MG / TENOFOVIR
ALAFENAMIDE 25MG TABLETS FOR PREP PRE-
EXPOSURE PROPHYLAXIS (Serial No. 88,615,918).

**GSI's Response to Topic No. 23:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails
to describe with reasonable particularity the matters on which examination is requested.  For
example, this Topic seeks testimony regarding an unbounded set of "trademarks relating to
PrEP," without limitation to specific time periods, products, or jurisdictions; accordingly, this
Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the
claims or defenses of any party to this litigation, not reasonably calculated to lead to the
discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the
case.  In particular, "Gilead's preparation, filing, and prosecution of trademarks relating to PrEP"
is not relevant to any claim or defense in this action.

GSI objects to this Topic as vague and ambiguous, including the term "preparation."

GSI objects to this Topic to the extent that it seeks information protected from disclosure
by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or
immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession,
custody, or control.  In particular, GSI objects to this Topic to the extent it seeks testimony about
GSI's "preparation, filing, and prosecution of … DESCOVY FOR PREP (U.S. Ser. No.
88,266,226), and DESCOVY EMTRICITABINE 200 MG / TENOFOVIR ALAFENAMIDE
25MG TABLETS FOR PREP PRE-EXPOSURE PROPHYLAXIS (Serial No. 88,615,918)"
because these trademarks were sought and obtained by a different entity.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 24:**

> All writings, publications, abstracts, papers, articles, memoranda, reports, speeches, or presentations (whether published or not) authored, co-authored, or given by or for Gilead concerning the Accused Products, tenofovir, TDF, TAF, or FTC for PrEP.

**GSI's Response to Topic No. 24:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  This Topic seeks testimony on "[a]ll writings, publications, abstracts, papers, articles, memoranda, reports, speeches, or presentations (whether published or not)" that "concerning the Accused Products, tenofovir, TDF, TAF, or FTC for PrEP."  This captures an immense volume of documents—it captures, and seeks detailed testimony about, essentially all documents (and drafts) generated in the course of GSI's work with several of its products.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous.  Moreover, GSI objects to this Topic as calling for a subjective judgment about whether a document was "authored, co-authored, or given … for" GSI.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a document was "authored, co-authored, or given … for" GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.  However, subject to and without waiving the foregoing General and Specific Objections, GSI is willing to provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of a reasonable number of writings, publications, abstracts, papers, articles, memoranda, reports, speeches, or presentations authored, co-authored, or given by or for GSI concerning the Accused Products, tenofovir, TDF, TAF, or FTC for PrEP (to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search) if the government identifies the writings, publications, abstracts, papers, articles, memoranda, reports, speeches, or presentations in advance of the deposition.  GSI is unable to determine who the designee should be until the government identifies the documents on which it seeks testimony; accordingly, GSI requests that the government identify the document no later than 14 days before the first deposition of a GSI employee is scheduled.

**Topic No. 25:**

> Gilead's characterizations of nucleoside reverse transcriptase
> inhibitors (NRTIs), nucleotide reverse transcriptase inhibitors
> (NtRTIs), and/or any prodrugs of NRTIs/NtRTIs as an ester, as
> containing an ester, as being an esterified form of a metabolite, or
> otherwise referring to or characterizing the NRTI/ NtRTIs as an
> ester or prodrug.

**GSI's Response to Topic No. 25:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case. It is undisputed that both Accused Products contain a "tenofovir prodrug" and that

Truvada® contains a "tenofovir ester," as those terms are used in the Asserted Claims. In view of

the Court's construction of the term "tenofovir ester," the government has no good-faith basis to

assert that Descovy® contains a "tenofovir ester," as explained in Defendants' October 20, 2021

letter to the government, which is incorporated herein by reference. Moreover, "Gilead's

characterizations" of particular compounds is not relevant to infringement or validity of the

asserted claims, which is evaluated from the perspective of a person of ordinary skill in the art

and not by reference to GSI's internal characterizations, to the extent there were any.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline

for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested. For

example, it seeks testimony about any "characterizations" of any of several broad classes of

compounds; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a

corporate designee.

GSI objects to this Topic as vague and ambiguous, including the terms "characterizations" and "otherwise referring to or characterizing."

GSI objects to this Topic as improperly seeking party contentions through deposition to the extent it seeks GSI's contentions regarding whether TAF is a "tenofovir ester" as the Court has construed that term. *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 26:**

> Gilead's knowledge, statements, or disclosures regarding the *in vitro* or *in vivo* conversion of TDF or TAF to tenofovir, the mechanism for such conversions, and the purpose and function of any phosphonester or phosphonamidate bond in TDF or TAF.

**GSI's Response to Topic No. 26:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. It is undisputed that both Accused Products contain a "tenofovir prodrug" and that Truvada® contains a "tenofovir ester," as those terms are used in the Asserted Claims. In view of the Court's construction of the term "tenofovir ester," the government has no good-faith basis to assert that Descovy® contains a "tenofovir ester," as explained in Defendants' October 20, 2021 letter to the government, which is incorporated herein by reference. Moreover, "Gilead's

knowledge, statements, or disclosures" of the recited subject matter is not relevant to infringement or validity of the asserted claims, which is evaluated from the perspective of a person of ordinary skill in the art and not by reference to GSI's "Gilead's knowledge, statements, or disclosures."

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.

GSI objects to this Topic as vague and ambiguous, including the terms "*in vitro* or *in vivo* conversion" and "the purpose and function of any phosphonester or phosphonamidate bond."

GSI objects to this Topic as improperly seeking party contentions through deposition to the extent it seeks GSI's contentions regarding whether TAF is a "tenofovir ester" as the Court has construed that term.  *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 27:**

> Gilead's monitoring of the Federal Register, its awareness of the
> Federal Register, including 79 FR 59277, and any changes to
> Gilead's monitoring of the Federal Register from 2007 to present.

**GSI's Response to Topic No. 27:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, it seeks testimony regarding "Gilead's monitoring of the Federal Register" without

specifying the purposes of such monitoring.  Likewise, to the extent it is seeking GSI's

"awareness" of every entry contained in the *Federal Register*—a multivolume publication with

tens of thousands of pages—over a 14-year time period, GSI simply cannot prepare a witness to

provide such testimony.  Accordingly, this Topic is not sufficiently particularized to enable GSI

to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  The only *Federal Register* entry that has been identified by any party as relevant to this

action is the entry at 79 Fed. Reg. 59,277.  GSI will not designate a witness to testify concerning

its "awareness" of any other entry.

GSI objects to this Topic as vague and ambiguous, including the terms "monitoring,"

"awareness of the Federal Register," and "changes to Gilead's monitoring."

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information held by a particular individual is sufficient to constitute "awareness" by GSI.

To the extent this Topic seeks testimony on whether information held by a particular individual is sufficient to constitute "awareness" by GSI, GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's first awareness of the *Federal Register* entry having the citation 79 Fed. Reg. 59,277, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 28:**

> Gilead's communication with the Government regarding the manuscript that was published as J. Gerardo García-Lerma et al., *Prevention of Rectal SHIV Transmission in Macaques by Daily or Intermittent Prophylaxis with Emtricitabine and Tenofovir*, 5 PLoS Medicine e28 (2008), as well as Gilead's review or knowledge of the manuscript, including drafts thereof and any versions of this manuscript.

**GSI's Response to Topic No. 28:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, it seeks testimony about "Gilead's communication with the Government regarding the [recited] manuscript," but it fails to identify the individuals who may have been involved in or

– 48 –

the timeframe of the communications; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "knowledge of the manuscript."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information held by a particular individual is sufficient to constitute "knowledge" by GSI.

To the extent this Topic seeks testimony on whether information held by a particular individual is sufficient to constitute "knowledge" by GSI, GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's communication with the government about, and GSI's review of, the manuscript that was published as J. Gerardo García-Lerma et al., *Prevention*

*of Rectal SHIV Transmission in Macaques by Daily or Intermittent Prophylaxis with*

*Emtricitabine and Tenofovir*, 5 PLoS Medicine e28 (2008), including drafts thereof and any

versions of this manuscript, to the extent that such information exists; is in GSI's possession,

custody, or control; and can be located with a reasonable search.

**Topic No. 29:**

> The circumstance(s) by which and the date(s) on which Gilead first
> became aware of any of the Patents-in-Suit, any application or
> foreign counterpart of any of the Patents-in-Suit, or any publication
> of an application relating to any of the aforementioned documents,
> including, but not limited to U.S. Provisional Application No.
> 60/764,811; U.S. Patent Application No. 11/669,547, U.S. Patent
> Publication No. US20070265227, or U.S. Patent No. 9,044,509;
> U.S. Patent Application No. 14/679,887, U.S. Patent Publication
> No. US2015/0272972, or U.S. Patent No. 9,579,333; U.S. Patent
> Application No. 15/913,750, U.S. Patent Publication No.
> US2018/0193366, or U.S. Patent No. 10,335,423; International
> Patent Application No. PCT/US2007/002926 or International
> Publication No. WO2007/092326; European Patent Application
> No. 07763090.3 or European Patent No. 2015753; or patent
> application(s) having the title "Inhibition of HIV Infection through
> Chemoprophylaxis."

**GSI's Response to Topic No. 29:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, to the extent this Topic seeks information about "any publication of an application

relating to any of the [recited] documents," this Topic fails to adequately define its boundaries;

accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate

designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

– 50 –

case.  For example, to the extent this Topic seeks information related to GSI's first awareness of

the Patents-in-Suit issued after the '509 Patent, such information is not relevant because GSI has

stated that "for the purposes of this action, GSI will not contest that it had actual or constructive

knowledge of the '333 Patent as of February 28, 2017; the '191 Patent as of April 10, 2018; and

the '423 Patent as of July 2, 2019."  Defs.' 2d Suppl. Objs. & Resps. to Pl.'s Interrog. Nos. 1-4 &

6-9, at 155 (Feb. 18, 2021).

GSI objects to this Topic as vague and ambiguous, including the term "any publication of

an application relating to any of the aforementioned documents."

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for

example, regarding whether information held by a particular individual is sufficient to constitute

"aware[ness]" by GSI.

To the extent this Topic seeks testimony on whether information held by a particular

individual is sufficient to constitute "aware[ness]" by GSI, GSI objects to this Topic as

improperly seeking party contentions through deposition.  *See* General Objection No. 16.  GSI

will not designate a witness to testify concerning its contentions regarding whether certain facts

establish that GSI had corporate "aware[ness]" of the applications, publications, and patents

recited in this Topic.

GSI objects to this Topic to the extent it seeks information not within GSI's possession,

custody, or control.

– 51 –

Subject to and without waiving the foregoing General and Specific Objections, GSI will

provide one or more designees to testify concerning relevant, non-privileged factual information

related to GSI's general knowledge of (1) the receipt of emails from Laura T. Prestia by Drs.

Linda Higgins and Jay Parrish on October 23, 2014 and (2) the receipt of an email from Tara

Kirby by Dr. Jay Parrish on March 11, 2016, to the extent that such information exists; is in

GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 30:**

> Any correspondence, attachments, or disclosures between either
> the Government or a Named Inventor and Gilead that included a
> reference to, or related to, U.S. Provisional Application No.
> 60/764,811; U.S. Patent Application No. 11/669,547, U.S. Patent
> Publication No. US20070265227, or U.S. Patent No. 9,044,509;
> U.S. Patent Application No. 14/679,887, U.S. Patent Publication
> No. US2015/0272972, or U.S. Patent No. 9,579,333; U.S. Patent
> Application No. 15/913,750, U.S. Patent Publication No.
> US2018/0193366, or U.S. Patent No. 10,335,423; International
> Patent Application No. PCT/US2007/002926 or International
> Publication No. WO2007/092326; the title "Inhibition of HIV
> Infection through Chemoprophylaxis;" European Patent
> Application No. 07763090.3 or European Patent No. 2015753;
> patent application(s) having the title "Inhibition of HIV Infection
> through Chemoprophylaxis;" or referred to a "patent application
> related to methods for HIV prophylaxis."

**GSI's Response to Topic No. 30:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic seeks information about "[a]ny correspondence, attachments, or disclosures

between either the Government or a Named Inventor and Gilead that included a reference to, or

related to," certain documents but fails to identify any specific "correspondence, attachments, or

disclosures," which is information that is necessarily within the government's possession.

Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. For example, GSI will not designate a witness to testify concerning the portions of this Topic relating to U.S. Patent Application No. 14/679,887, U.S. Patent Publication No. US2015/0272972, U.S. Patent No. 9,579,333, U.S. Patent Application No. 15/913,750, U.S. Patent Publication No. US2018/0193366, or U.S. Patent No. 10,335,423 because, as stated in GSI's Second Amended & Supplemental Response to Interrogatory No. 8, "for the purposes of this action, GSI will not contest that it had actual or constructive knowledge of the '333 Patent as of February 28, 2017; the '191 Patent as of April 10, 2018; and the '423 Patent as of July 2, 2019." Defs.' 2d Suppl. Objs. & Resps. to Pl.'s Interrog. Nos. 1-4 & 6-9, at 155 (Feb. 18, 2021).

GSI objects to this Topic as vague and ambiguous, including the term "included a reference to, or related to."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information held by a particular individual is sufficient to constitute knowledge by GSI.

To the extent this Topic seeks testimony on whether information held by a particular individual is sufficient to constitute knowledge by GSI, GSI objects to this Topic as improperly

seeking party contentions through deposition.  *See* General Objection No. 16.  GSI will not designate a witness to testify concerning its contentions regarding whether certain facts establish that GSI had corporate knowledge of the applications, publications, and patents recited in this Topic.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge (1) of correspondence, attachments, or disclosures prior to October 23, 2014 between either the Government or a Named Inventor, on the one hand, and GSI, on the other hand, that included a reference to any of U.S. Provisional Application No. 60/764,811, U.S. Patent Application No. 11/669,547, U.S. Patent Publication No. US20070265227, International Patent Application No. PCT/US2007/002926, or International Publication No. WO2007/092326, European Patent Application No. 07763090.3, European Patent No. 2015753, or patent application(s) having the title "Inhibition of HIV Infection through Chemoprophylaxis" and (2) of correspondence, attachments, or disclosures prior to March 11, 2016 between either the Government or a Named Inventor, on the one hand, and GSI, on the other hand, that included a reference to any U.S. Patent No. 9,044,509, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  If the government is aware of and seeks testimony about any specific "correspondence, attachments, or disclosures," GSI requests that the government identify the document in writing at least 14 days in advance of the deposition.

**Topic No. 31:**

> The Employee Confidential Information and Inventions Agreement
> between inventor Robert Janssen and Gilead Sciences, Inc. bearing
> Bates numbers GILDDE00892506-GILDDE00892515, including
> the storage, access, and dissemination of this agreement within
> Gilead.

**GSI's Response to Topic No. 31:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.

GSI objects to this Topic as vague and ambiguous, including the terms "storage, access,

and dissemination."

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession,

custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will

provide one or more designees to testify concerning relevant, non-privileged factual information

related to GSI's general knowledge of the storage, access, and dissemination within GSI of the

Employee Confidential Information and Inventions Agreement between Robert Janssen and GSI

bearing Bates numbers GILDDE00892506-GILDDE00892515, to the extent that such

information exists; is in GSI's possession, custody, or control; and can be located with a

reasonable search.

**Topic No. 32:**

> All applications for employment and/or employment records
> Gilead possesses concerning any Named Inventor, including Dr.
> Janssen and Dr. Heneine.

**GSI's Response to Topic No. 32:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "applications for employment and/or employment records Gilead possesses" and "concerning."  GSI interprets this Topic to refer to applications for employment at GSI submitted by Dr. Janssen or Dr. Heneine and employment records from Dr. Janssen's employment at GSI.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of Dr. Robert Janssen's application for employment with GSI and his GSI employment records and, to the extent any such application was received, Dr.

Walid Heneine's application for employment with GSI, to the extent that such information

exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 33:**

> Gilead's knowledge of Dr. Walid Heneine's patents, patent
> applications, and pending patent applications, including but not
> limited to Patent Application Serial No. 60/764,811, the
> circumstances relating to Gilead's awareness of the
> aforementioned patents, patent applications, and pending patent
> applications, and communications between Dr. Walid Heneine and
> Gilead concerning a seminar titled "HIV Prevention by
> Antiretroviral Prophylaxis," including the date and contents of this
> seminar.

**GSI's Response to Topic No. 33:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic is not limited to the Patents-in-Suit or the applications from which they

issued but seeks testimony concerning "Dr. Walid Heneine's patents, patent applications, and

pending patent applications" generally; accordingly, this Topic is not sufficiently particularized

to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.

GSI objects to this Topic as vague and ambiguous, including the terms "of Dr. Walid

Heneine's patents, patent applications, and pending patent applications" and "circumstances

relating to Gilead's awareness."

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information is sufficient to constitute "knowledge" or "awareness" by GSI, which requires legal conclusions regarding corporate agency.

To the extent this Topic seeks GSI's contentions about whether information is sufficient to constitute "knowledge" or "awareness" by GSI, GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of Dr. Walid Heneine's presentation at GSI on or around September 24, 2008 titled "HIV Prevention by Antiretroviral Prophylaxis," to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 34:**

> The provision of Dr. Walid Heneine's CV to Susan Edl in 2008 and to Dr. William Lee in 2010, including the reasons relating to the provision of the CV to Gilead at the aforementioned times, any review of Dr. Heneine's CV by Gilead, and all factual information bearing on Gilead's notice and/or awareness of, and any subsequent steps taken by Gilead in view of the disclosure of, Patent Application Serial No. 60/764,811 titled "Inhibition of HIV Invention through Chemoprophylaxis" as listed in the CV that Dr. Heneine provided to Ms. Edl and Dr. Lee.

**GSI's Response to Topic No. 34:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic seeks testimony on "including the reasons relating to the provision of the CV to Gilead at the aforementioned times," which seeks information that is, at least in part, known only to the individual that provided the documents and not to GSI.  Moreover, this Topic seeks "all factual information bearing on Gilead's notice and/or awareness of" the recited provisional application without identifying the specific factual information about which the government is seeking testimony.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "reasons relating to the provision of the CV to Gilead," "review of Dr. Heneine's CV by Gilead," "all factual information bearing on Gilead's notice and/or awareness of … Patent Application Serial No. 60/764,811."

GSI objects to this Topic as lacking foundation to the extent that it states that "Dr. Walid Heneine's CV" contained a "disclosure of" the recited provisional application.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information is sufficient to constitute "notice and/or awareness" by GSI, which requires legal conclusions regarding corporate agency.

To the extent this Topic seeks GSI contentions regarding whether information is sufficient to constitute "notice and/or awareness" by GSI, GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the provision of Dr. Walid Heneine's CV to Susan Edl in 2008 and to Dr. William Lee in 2010, including the reasons relating to the provision of the CV to Ms. Edl and Dr. Lee at the aforementioned times and any review of the versions of Dr. Heneine's CV provided to Ms. Edl or Dr. Lee by GSI employees, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 35:**

> All communications between Gilead and the Government relating
> to the Patents-in-Suit and any correspondence or documents
> prepared by Gilead regarding the Patents-in-Suit.

**GSI's Response to Topic No. 35:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the government necessarily has "[a]ll communications between Gilead and the Government relating to the Patents-in-Suit" because the government was a party to the communications; it is unduly burdensome and not proportional to the needs of this case for the government to seek corporate testimony from GSI about information that the government already

– 60 –

has.  Moreover, such communications arose in the context of potential settlement negotiations and are not admissible pursuant to Federal Rule of Evidence 408—indeed, the government itself marked the communications as inadmissible pursuant to Rule 408.  And to the extent this Topic seeks testimony regarding "documents prepared by Gilead regarding the Patents-in-Suit" that were not included in correspondence with the government, it seeks testimony about documents that are entirely protected by at least the attorney-client privilege and the work-product doctrine.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic fails to identify, with specificity, the communications, correspondence, or documents about which the government seeks testimony.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the terms "relating to the Patents-in-Suit" and "regarding the Patents-in-Suit."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular document was "prepared by Gilead," which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness

to testify concerning this Topic.

**Topic No. 36:**

> All information Gilead has provided or has considered providing to
> the USPTO relating to the patentability of the asserted claims of
> the Patents-in-Suit since its knowledge of any of the following:
> U.S. Provisional Application No. 60/764,811; U.S. Patent
> Application No. 11/669,547, U.S. Patent Publication No.
> US20070265227, or U.S. Patent No. 9,044,509; U.S. Patent
> Application No. 14/679,887, U.S. Patent Publication No.
> US2015/0272972, or U.S. Patent No. 9,579,333; U.S. Patent
> Application No. 15/913,750, U.S. Patent Publication No.
> US2018/0193366, or U.S. Patent No. 10,335,423; International
> Patent Application No. PCT/US2007/002926 or International
> Publication No. WO2007/092326, European Patent Application
> No. 07763090.3 or European Patent No. 2015753, any decisions as
> to whether to provide such information, and all information used or
> considered in making these decisions.

**GSI's Response to Topic No. 36:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  To the extent this Topic seeks testimony regarding "information Gilead has provided … to

the USPTO relating to the patentability of the asserted claims of the Patents-in-Suit," this Topic

seeks information that is a matter of public record—the prosecution histories of the Patents-in-

Suit reflect all such information, and it would be unduly burdensome and not proportional to the

needs of this case for GSI to prepare a witness to provide testimony for the government

regarding the contents of a public government file.  Moreover, to the extent this Topic seeks

testimony regarding either "information Gilead … has considered providing to the USPTO

relating to the patentability of the asserted claims of the Patents-in-Suit" but did not actually

provide, or testimony regarding GSI's "decisions as to whether to provide [information that it has provided to the USPTO], and all information used or considered in making these decisions," it seeks testimony about documents that are entirely protected by at least the attorney-client privilege and the work-product doctrine.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.

GSI objects to this Topic as vague and ambiguous, including the terms "considered providing," "relating to the patentability of the asserted claims of the Patents-in-Suit," "decisions as to whether to provide such information," and "information used or considered in making these decisions."

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether information is "relat[ed] to the patentability of the asserted claims of the Patents-in-Suit" or whether information is sufficient to constitute "knowledge" by GSI of the recited patents or patent applications, which requires legal conclusions regarding corporate agency.

To the extent this Topic seeks testimony regarding whether information is "relat[ed] to the patentability of the asserted claims of the Patents-in-Suit" or whether information is sufficient to constitute "knowledge" by GSI of the recited patents or patent applications, GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 37:**

> Gilead's knowledge of factual information bearing on attempts by Gilead to design around the asserted claims of the Patents-in-Suit including, but not limited to, any decision or communications with regulatory agencies (including the FDA) concerning the amendment of the Labels or Medication Guides for the Accused Products in view of the Patents-in-Suit.

**GSI's Response to Topic No. 37:**

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16. This Topic is an improper contention topic because whether particular "factual information bear[s] on" and attempts "to design around the asserted claims of the Patents-in-Suit" requires both the formation of legal conclusions and the recitation of GSI's contentions regarding the scope of the asserted claims.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic fails to identify the facts that it seeks and instead simply seeks to define its scope as facts "bearing on" a legal issue; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. GSI has provided, and will continue to provide, its contentions in response to the

government's interrogatories and according to the schedule for contention disclosures set by the Court.  A witness's ability to recall those contentions during a deposition is simply not relevant to any claim or defense.

GSI objects to this Topic as vague and ambiguous, including the term "bearing on," which requires a subjective judgment about whether particular information "bear[s] on" a particular legal issue.  Moreover, GSI objects to this Topic as vague and ambiguous, including the terms "design around," "concerning," and "in view of the Patents-in-Suit."

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding the scope of the asserted claims.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 38:**

> The factual information bearing on Gilead's assertions, if any, that
> the asserted claims of the Patents-in-Suit are invalid or

unenforceable or that the Government is prohibited from owning
or asserting any of the Patents-in-Suit.

**GSI's Response to Topic No. 38:**

GSI objects to this Topic as improperly seeking party contentions through deposition.

*See* General Objection No. 16.  This Topic is an improper contention topic because whether

particular "factual information bear[s] on" GSI's contentions regarding invalidity,

unenforceability, and the government authority requires both the formation of legal conclusions

and the recitation of GSI's contentions.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic fails to identify the facts that it seeks and instead simply seeks to define its

scope as facts "bearing on" a legal issue; accordingly, this Topic is not sufficiently particularized

to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  GSI has provided, and will continue to provide, its contentions in response to the

government's interrogatories and according to the schedule for contention disclosures set by the

Court.  A witness's ability to recall those contentions during a deposition is simply not relevant

to any claim or defense.

GSI objects to this Topic as vague and ambiguous, including the term "bearing on."

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for

example, regarding whether a particular fact "bear[s] on" a particular legal issue.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 39:**

> The factual information bearing on Gilead's assertions, if any, that it does not infringe any asserted claim of the Patents-in-Suit, including factual information bearing on the efforts Gilead has undertaken to determine whether or not it infringes any asserted claim.

**GSI's Response to Topic No. 39:**

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.  This Topic is an improper contention topic because whether particular "factual information bear[s] on" GSI's contentions regarding non-infringement requires both the formation of legal conclusions and the recitation of GSI's contentions.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic fails to identify the facts that it seeks and instead simply seeks to define its scope as facts "bearing on" a legal issue; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.  GSI has provided, and will continue to provide, its contentions in response to the government's interrogatories and according to the schedule for contention disclosures set by the Court.  A witness's ability to recall those contentions during a deposition is simply not relevant to any claim or defense.

GSI objects to this Topic as vague and ambiguous, including the term "bearing on," which requires a subjective judgment about whether particular information "bear[s] on" a particular legal issue.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular fact "bear[s] on" GSI's non-infringement.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 40:**

> All valuations, assessments, analyses and/or opinions regarding the Patents-in-Suit, including all opinions reflected in GILDDE00893250.

**GSI's Response to Topic No. 40:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For

– 68 –

example, this Topic fails to identify any specific non-privileged "valuations, assessments, analyses and/or opinions" performed by or for GSI; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  GSI is unaware of any non-privileged "valuations, assessments, analyses and/or opinions regarding the Patents-in-Suit" performed by or for GSI; accordingly, this Topic seeks testimony about documents that are entirely protected by at least the attorney-client privilege and the work-product doctrine.

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16.

GSI objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.  In particular, the "opinions reflected in GILDDE00893250" are contained within an analyst report attributed to "Morgan Stanley/Harrison," GILDDE00893250-GILDDE00893264, at GILDDE00893251—they are not opinions attributed to GSI or prepared for GSI.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 41:**

> Any considerations by Gilead to seek or take a license under the Patents-in-Suit and all communications or discussions regarding such a license, including all communications and discussions related to those reflected in US_00004729 to US_00005032.

**GSI's Response to Topic No. 41:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the government necessarily has "[a]ll communications" between Gilead and the government "regarding such a license" because the government was a party to the communications; it is unduly burdensome and not proportional to the needs of this case for the government to seek corporate testimony from GSI about information that the government already has. Moreover, such communications arose in the context of potential settlement negotiations and are not admissible pursuant to Federal Rule of Evidence 408—indeed, the government itself marked the communications as inadmissible pursuant to Rule 408. And to the extent this Topic seeks testimony regarding other "considerations" or "communications and discussions" that were not included in correspondence with the government, it seeks testimony about documents that are entirely protected by at least the attorney-client privilege and the work-product doctrine.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic fails to identify, with specificity, which communications, correspondence, or documents within the hundreds of pages identified in the Bates range US_00004729 to

– 70 –

US_00005032, which the government seeks testimony.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the terms "considerations by Gilead" and "communications or discussions regarding such a license."  Moreover, GSI objects to this Topic as vague and ambiguous because the specific "communications and discussions" about which it seeks testimony—i.e., "those reflected in US_00004729 to US_00005032"—are not complete communications because these documents appear to contain Freedom of Information Act redactions.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 42:**

> The roles and responsibilities of each Gilead entity in the manufacturing, sale, distribution, prescription, research, analysis,

testing, marketing, and regulatory submissions for PrEP
indications for the Accused Products.

**GSI's Response to Topic No. 42:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic does not identify the specific information related to the "roles and

responsibilities" that it is seeking; accordingly, this Topic is not sufficiently particularized to

enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  In particular, the "roles and responsibilities" of entities other than the named Defendants

are not relevant to any claim or defense in this litigation.  Moreover, even for the named

Defendants, their respective "roles and responsibilities" in the "prescription, research, analysis,

[and] testing" of the Accused Products is not relevant to any claim or defense.  And the roles of

the named Defendants in the manufacturing, sale, distribution, marketing, and regulatory

submissions for Truvada® prior to June 2, 2015 (i.e., the issuance of the first Patent-in-Suit) and

for Descovy® prior to October 3, 2019 (i.e., the first marketing of Descovy® for PrEP in the

United States) are not relevant to any claim or defense, nor are the activities of either named

Defendants relating to the manufacturing, sale, distribution, marketing, and regulatory

submissions for Truvada® or Descovy® for use outside the United States.

GSI objects to this Topic as vague and ambiguous, including the terms "roles and

responsibilities," "prescription," "analysis," and "testing."

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's roles and responsibilities in the manufacturing, sale, distribution, marketing, and regulatory submissions for Truvada® that may be sold for PrEP in the United States from June 2, 2015, to present and for Descovy® that may be sold for PrEP in the United States from October 3, 2019 to present, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 43:**

>     Gilead's communications and relationships, past and present, with
>     the Named Inventors during their employment at CDC.

**GSI's Response to Topic No. 43:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic seeks non-specific testimony about any communications and relationships between GSI, which has thousands of employees, and the Named Inventors, without identifying the specific communications or nature of the communications about which the government is seeking testimony. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the term "relationships."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular communication was on behalf of GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's relationships with the Named Inventors during their employment at CDC to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  GSI will not, and cannot, prepare a witness to testify concerning each and every communication between a GSI employee and the Named Inventors during their employment at CDC; however, GSI will consider providing testimony concerning a reasonable number of specific communications that the Government identifies in writing at least 14 days in advance of the deposition.

**Topic No. 44:**

> All bases for Gilead CEO Daniel O'Day's statement in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed

it as an invention," but nonetheless Gilead has "chosen not to challenge those patents because we value our collaborative relationship with the agency."

**GSI's Response to Topic No. 44:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the May 16, 2019 testimony of Gilead's CEO before the United States House Committee on Oversight and Reform is not relevant to any claim or defense in this action. GSI will not designate a witness to provide testimony about its prior testimony. Moreover, the timing of GSI's decision to "challenge" the asserted patents after they issued is not relevant to any claim or defense in this litigation.

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16. The bases for Mr. O'Day's testimony that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed it as an invention" are contained within GSI's invalidity contentions. GSI will not designate a witness to memorize and recite invalidity contentions that GSI has provided to the government in response to the government's interrogatories and according to the schedule for exchange of invalidity contentions set in the Scheduling Order. To the extent this Topic seeks some or all of the bases for GSI's invalidity contentions, GSI also objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. In particular, any bases for Mr. O'Day's testimony that GSI had "chosen not to challenge [the asserted] patents because we value our collaborative relationship with the agency"

– 75 –

beyond those apparent from the statement itself reflect communications with GSI's attorneys and are protected from disclosure by at least the attorney-client privilege.  Mr. O'Day did not join GSI until March 2019, which was just two months before the testimony recited in this Topic, so any information known by Mr. O'Day regarding events before March 2019 was necessarily obtained via privileged attorney-client communications.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, it vaguely seeks all "bases" for statements, which requires a subjective determination of whether a particular fact is a basis for the statements or merely informs or corroborates them.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the term "bases."

GSI objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 45:**

> All bases for Gilead CEO Daniel O'Day's statements in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 (i) that "there was no additional increase to the price [of Truvada®] as a result of the additional indication [the PrEP Indication]"; (ii) that Gilead considers "the access limitations that might be created by setting that price [of Truvada for PrEP®], and we anticipate that in advance"; and (iii) that "[w]hen we set the price for Truvada originally, we took into

> account a variety of things, including the impact upon the
> healthcare system . . . ."

**GSI's Response to Topic No. 45:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the May 16, 2019 testimony of Gilead's CEO before the United States House Committee on Oversight and Reform is not relevant to any claim or defense in this action. GSI will not designate a witness to provide testimony about its prior testimony. Moreover, the underlying information sought by this Topic—i.e., information related to how GSI set the price of Truvada® many years before the first Patent-in-Suit issued—is not relevant to any claim or defense in this litigation.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Mr. O'Day did not join GSI until March 2019, which was just two months before the testimony recited in this Topic, so any information known by Mr. O'Day regarding events before March 2019 was necessarily obtained via privileged attorney-client communications.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, it vaguely seeks all "bases" for statements, which requires a subjective determination of whether a particular fact is a basis for the statements or merely informs or corroborates them. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the term "bases."

GSI objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 46:**

> All MTAs between the Department of Health and Human Services (HHS), including Operating Divisions of HHS such as CDC and NIH, and Gilead relating to HIV research and amendments thereto, all communications between HHS and Gilead regarding these MTAs, all communications within Gilead regarding these MTAs, and all communications regarding compliance with these MTAs.

**GSI's Response to Topic No. 46:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic does not identify any specific MTA agreements.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.  To the extent the government seeks testimony regarding agreements other than those that have been expressly identified in the pleadings in this action, the government must identify those agreements so GSI can make any appropriate objections and, if GSI agrees to designee a witness to testify about a particular agreement, so GSI can identify and prepare an appropriate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "relating to HIV research," "amendments thereto," "regarding these MTAs," and "compliance with these MTAs."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular set of facts constitutes an "amendment[]" to an MTA and whether particular actions were taken as part of "compliance with these MTAs," which necessarily requires a legal determination about the scope of GSI's obligations under the MTAs.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the '072, '433, '471, and '649 MTAs (as defined in Defendants' 30(b)(6) Deposition Notice to the Government), the amendments thereto, GSI's communications with HHS related thereto, GSI's internal communications related thereto, and GSI's compliance with its obligations under these MTAs and amendments, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  Moreover, GSI will consider providing testimony concerning a reasonable

number of specific communications that the government identifies in writing at least 14 days in advance of the deposition.  GSI will also consider providing testimony concerning a reasonable number of other specific MTAs that the government identifies in writing at least 14 days in advance of the deposition.

**Topic No. 47:**

> All CTAs between the Department of Health and Human Services (HHS), including Operating Divisions of HHS such as CDC and NIH, and Gilead relating to HIV research and amendments thereto, all communications between HHS and Gilead regarding these CTAs, all communications within Gilead regarding these CTAs, and all communications regarding compliance with these CTAs.

**GSI's Response to Topic No. 47:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic does not identify any specific CTA agreements.  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.  To the extent the government seeks testimony regarding agreements other than those that have been expressly identified in the pleadings in this action, the government must identify those agreements so GSI can make any appropriate objections and, if GSI agrees to designee a witness to testify about a particular agreement, so GSI can identify and prepare an appropriate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the terms "relating to HIV research," "amendments thereto," "regarding these CTAs," and "compliance with these CTAs."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular set of facts constitutes an "amendment[]" to a CTA and whether particular actions were taken as part of "compliance with these CTAs," which necessarily requires a legal determination about the scope of GSI's obligations under the CTAs.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of the CDC 4323 and Botswana CTAs (as defined in Defendants' 30(b)(6) Deposition Notice to the Government), the amendments thereto, GSI's communications with HHS related thereto, GSI's internal communications related thereto, and GSI's compliance with its obligations under these CTAs and amendments, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  Moreover, GSI will consider providing testimony concerning a reasonable number of specific communications that the government identifies in writing at least 14 days in advance of the deposition.  GSI will also consider providing testimony concerning a reasonable number of other specific CTAs that the government identifies in writing at least 14 days in advance of the deposition.

**Topic No. 48:**

> Gilead's process for monitoring publications, applications, and/or
> patents relating to the technical field and/or marketplace of
> Gilead's pharmaceutical products) or use of such products,
> including but not limited to, (i) the maintenance of any repository
> or library of such information that was in effect from 2007 to
> present and (ii) the use of patent search services identified in
> Gilead's response to Interrogatory No. 9 from 2007 to present.

**GSI's Response to Topic No. 48:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, this Topic generally seeks testimony regarding GSI's monitoring of the literature—a

major function for an innovator pharmaceutical company—over a 15-year period; accordingly,

this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  The only period in which GSI disputes having had knowledge of one of the issued Patents-

in-Suit is the approximately 9-month period between June 2, 2015, when the first Patent-in-Suit

issued, and March 11, 2016.  *See* Defs.' 2d Suppl. Objs. & Resps. to Pl.'s Interrog. Nos. 1-4 & 6-

9, at 154-55 (Feb. 18, 2021).  Accordingly, GSI's patent monitoring practices for the vast

majority of the period for which this Topic seeks testimony are not relevant.

GSI objects to this Topic as vague and ambiguous, including the terms "process for

monitoring" and "patents relating to the technical field and/or marketplace of Gilead's

pharmaceutical products)."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's practices for monitoring publications, patent applications, and/or patent publications relating to HIV from 2007 to present, to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.

**Topic No. 49:**

> Gilead's search for and collection of the documents produced by it in this action in response to the Government's first and second requests for production.

**GSI's Response to Topic No. 49:**

GSI objects to this Topic to the extent that it fails to describe with reasonable particularity the matters on which examination is requested and is unduly burdensome and overly broad.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  *See, e.g.*, *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 363-64 (N.D. Tex. 2013) (denying

motion to compel 30(b)(6) testimony on "'non-merits' based discovery," such as "Defendant's

document retention policies," "Defendant's efforts in responding to Plaintiff's discovery," or

"Defendant's efforts . . . to preserve documents and electronic information relevant to the

anticipated suit"); *see also Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL

697663, at *14 (D. Md. Feb. 21, 2017) (granting protective order on 30(b)(6) topic directed to

document retention policies); *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-

cv-2706 (MJD/LIB), 2014 WL 10714011, at *14-15 (D. Minn. Dec. 5, 2014) (in denying

plaintiff's request for a Rule 30(b)(6) deposition that would address, in part, the defendant's

"efforts to collect and produce" responsive documents and exclude documents from production

for purported lack of relevancy, the court rejected this topic as "discovery on discovery" without

some showing that this information "is relevant to—or may lead to the discovery of information

relevant to—any claim or defense at issue in the present case" and noting that the requested

information "treads dangerously close to encroaching on attorney work product privilege").  In

particular, GSI's search for and collection of "the documents produced by it in this action" is not

relevant to any claim or defense in this action and not proportional to the needs of this case

because the documents that are the subject of this Topic have, in fact, been produced to the

government.

       GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.

       GSI objects to this Topic because it is impermissible under Section 1(d)(iii) of the

Delaware Default Standard, which provides that "[a]ctivities undertaken in compliance with the

duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B)."

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 50:**

Gilead's document retention and destruction policies.

**GSI's Response to Topic No. 50:**

GSI objects to this Topic to the extent that it fails to describe with reasonable particularity the matters on which examination is requested and is unduly burdensome and overly broad. In particular, GSI objects to this Topic to the extent it is not limit to any particular time period and does not specify any particular types of documents that are the subject of this Topic; accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. *See, e.g.*, *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 363-64 (N.D. Tex. 2013) (denying motion to compel 30(b)(6) testimony on "'non-merits' based discovery, such as "Defendant's document retention policies," "Defendant's efforts in responding to Plaintiff's discovery," or "Defendant's efforts . . . to preserve documents and electronic information relevant to the anticipated suit"); *see also Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *14 (D. Md. Feb. 21, 2017) (granting protective order on 30(b)(6) topic directed to document retention policies).

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic because it is impermissible under Section 1(d)(iii) of the Delaware Default Standard, which provides that "[a]ctivities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B)."

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 51:**

> The authenticity and status as business records of all documents
> produced by Gilead in this litigation.

**GSI's Response to Topic No. 51:**

GSI objects to this Topic to the extent that it fails to describe with reasonable particularity the matters on which examination is requested and is unduly burdensome and overly broad.  In particular, GSI has produced over 195,000 documents, comprising more than 2.6 million pages, in this litigation.  These documents were collected from a multitude of different sources and originated over the course of more than two decades.  It is simply not possible for any witness to testify regarding "[t]he authenticity and status as business records of all [such] documents."  Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSIUC objects to this Topic to the extent that it seeks or requires legal conclusions.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.  GSI is willing to meet and confer to discuss a general, bilateral procedure for obtaining authentication and/or business-record admissions or stipulations for documents produced in this litigation.

**Topic No. 52:**

*[Intentionally Omitted]*

**GSI's Response to Topic No. 52:**

No response to this Topic is required.

Dated: November 22, 2021

OF COUNSEL:

Ronald C. Machen
Charles T. Cox Jr.
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

David B. Bassett
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

Vinita C. Ferrera
Emily R. Whelan
George P. Varghese
Timothy A. Cook
Jonathan A. Cox
Stephanie Lin
Benjamin Conery
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*/s/ Alexandra M. Ewing*
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel: (302) 651-7700
cottrell@rlf.com
farnan@rlf.com
ewing@rlf.com

*Counsel for Defendant Gilead Sciences, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2021, I caused true and correct copies of the

foregoing document to be served on the following counsel in the manner indicated:

| | |
|---|---|
| **VIA E-MAIL** | **VIA E-MAIL** |
| Laura D. Hatcher | Walter W. Brown |
| Shamoor Anis | Philip Charles Sternhell |
| U.S. Attorney's Office | Patrick C. Holvey |
| Hercules Building | Amanda K. Kelly |
| 1313 N. Market Street | U.S. Department of Justice |
| P.O. Box 2046 | Civil Division, Commercial Litigation |
| Wilmington, DE 19801 | Branch, IP Section |
| 302-573-6277 | 1100 L Street, N.W. |
| Email: laura.hatcher@usdoj.gov | Washington, D.C. 20530 |
| Email: shamoor.anis@usdoj.gov | 202-307-0341 |
| | Email: walter.brown2@usdoj.gov |
| | Email: philip.c.sternhell@usdoj.gov |
| | Email: patrick.c.holvey@usdoj.gov |
| | Email: amanda.k.kelly@usdoj.gov |
| | Email: PrEP.Docket@usdoj.gov |

*/s/ Alexandra M. Ewing*
Alexandra M. Ewing (#6407)
ewing@rlf.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THE UNITED STATES OF AMERICA,
*Plaintiff–Counterclaim Defendant*,

v.

GILEAD SCIENCES, INC.,
*Defendant–Counterclaim Plaintiff,*

AND GILEAD SCIENCES IRELAND
UC,
*Defendant*.

C.A. No. 1:19-cv-02103-MN-CJB

**CERTIFICATE OF SERVICE**

I, Kimberly Rechner, an employee with the United States Attorney's Office for the District

of Delaware, hereby certify that on January 18, 2022, I caused to file under seal:

**Letter to the Honorable Christopher J. Burke**

via CM/ECF.  I further certify a copy of the foregoing was sent via email to the following:

Ronald C. Machen
Charles T. Cox Jr.
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Ronald.Machen@wilmerhale.com
Charlie.Cox@wilmerhale.com

David B. Bassett
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
David.Bassett@wilmerhale.com

Vinita C. Ferrera
Emily R. Whelan
George P. Varghese
Timothy A. Cook
Jonathan A. Cox
Stephanie Lin
Benjamin Conery
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Vinita.Ferrera@wilmerhale.com
Emily.Whelan@wilmerhale.com
George.Varghese@wilmerhale.com
Tim.Cook@wilmerhale.com
Jonathan.Cox@wilmerhale.com
Stephanie.Lin@wilmerhale.com
Ben.Conery@wilmerhale.com

Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON &FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel: (302) 651-7700
cottrell@rlf.com
farnan@rlf.com
ewing@rlf.com

*Counsel for Defendants Gilead Sciences,*
*Inc. & Gilead Sciences Ireland UC*

/s/ Kimberly Rechner
Kimberly Rechner
Legal Assistant