# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *Plaintiff & Counterclaim-Defendant*, v. GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC, *Defendants & Counterclaim-Plaintiff.* | C.A. No. 19-02103-MN-CJB  **Redacted Public Version** |

**DEFENDANTS GILEAD SCIENCES, INC. AND GILEAD SCIENCES IRELAND UC'S
LETTER IN OPPOSITION TO THE GOVERNMENT'S MOTION TO COMPEL**

Dear Judge Burke:

Defendants Gilead Sciences, Inc. ("GSI") and Gilead Sciences Ireland UC ("GSIUC") respectfully request that the government's motion (D.I. 273, "Mot.") be denied. The motion both fails on the merits and fails to show good cause to reopen discovery, which closed on January 21, 2022. Indeed, the government's brief fails even to mention the good cause standard that governs its motion for out-of-time discovery.

*First*, the government's motion is now moot as it relates to topics 4, 5, 33, 35, and 54 to GSIUC and topics 19 and 46 to GSI. The government did not confer with Defendants about most of these topics (and many others in its brief) before filing its motion. Rather, it insisted on adding these issues when Defendants contacted the Court to request a conference about the government's own refusal to provide 30(b)(6) witnesses, and it then declined Defendants' requests to confer about the topics before opening briefs were due. Exs. D at 1 & E at 1. GSIUC had told the government that it was not aware of non-privileged information responsive to topics 4, 5, 33, 35, and 54 other than information that was encompassed by other topics on which GSIUC had previously designated a witness. Yet, to avoid unnecessary disputes, GSIUC designated a witness to testify on these five topics, Ex. D at 1, and the government spent more than six hours deposing him last Friday. For topic 46 to GSI, GSI designated a witness to testify about the full scope of the topic not addressed by Ms. Vazquez on January 14, 2021, Ex. E at 3, and that witness's deposition was underway when the government filed its brief. The witness confirmed that he was prepared to testify about topic 46. Ex. F at 30:23-31:7. And for topic 19 to GSI, the government has withdrawn its motion. Any dispute about these topics is resolved.

*Second*, the Court should deny the government's motion for topic 6 to GSIUC because the topic is exceptionally overbroad.[1] Rule 30(b)(6) requires topics to "describe with reasonable particularity the matters for examination"; however, the government's topic 6 seeks testimony on *all* documents concerning an entire segment of GSIUC's business, i.e., on "[t]he preparation and contents of *any* brochure, report, meeting, briefing package, study plan, and/or presentation, *including drafts* of the same, prepared by or on behalf of Gilead that discusses the use of an Accused Product for PrEP." Ex. A at A3 (emphasis added). GSIUC sells the accused products for PrEP in many jurisdictions outside the United States, including Europe. Ex. H at 5-7. Those sales are irrelevant to the government's claims because the products are labelled differently from the U.S. products (as required by the laws of the jurisdictions in which they are sold) and are not used in the United States (and therefore cannot induce infringement any asserted claim). GSIUC thus has thousands of irrelevant documents (and many more drafts) responsive to this topic, and it is impossible—and far disproportionate to the needs of this case—to prepare a witness to testify about the "preparation and contents" of each of them. Defendants told the government this[2] and offered to designate a witness if the government would identify the

---

[1] The government suggests that GSIUC is "attempt[ing] to force the Government to accept Gilead's already rejected argument that GSIUC should not be a party in this action." Mot. at 1. Not so. GSIUC has repeatedly told the government that "GSIUC is not limiting the discovery that the government may take on those grounds." Ex. E at 1-2; Ex. G at 1.

[2] Much of the parties' discussion of this topic was in the context of the parallel topic that the government served on GSI, which the government did not pursue after GSI's objection. The government has not explained why it abandoned this topic for GSI, which is the Defendant that

1

materials from Gilead's sizeable production on which it sought testimony, but the government never did so. Ex. E at 2 ("If you identify a reasonable number of specific documents for which you want testimony—or even a specific category of documents—we will consider it, and we may well be able to reach agreement…."). Because fact discovery is now closed and all GSIUC witnesses have already been deposed, the Court should deny the government's motion.

**Third**, **the Court should deny the government's motion for topic 23 to GSI and GSIUC because the topic seeks irrelevant and privileged information.** Topic 23 calls for testimony about "Gilead's preparation, filing, and prosecution of trademarks relating to PrEP." But this is not a trademark case—it is a patent case. The government's final infringement contentions allege that Defendants' "ownership and use" of certain trademarks in connection with the accused products is an act of inducement. Ex. I at 18, 22-23. Accordingly, in response to the government's Topic 22, both Defendants have *already* provided 30(b)(6) testimony about the ownership and use of these trademarks to promote PrEP in the United States over the alleged infringement periods. Exs. J at 2 & K at 2. But the "preparation, filing, and prosecution" of these trademarks has nothing to do with the government's inducement claims—its final infringement contentions focus on the *use* of the marks, not their prosecution, so only their use could possibly be relevant. Moreover, Gilead's trademark prosecution was performed entirely by Gilead's legal counsel, so any information beyond the public record is privileged.[3] The Court should therefore deny the government's motion for Topic 23 for both Defendants.

**Fourth**, **the Court should deny the government's motion for topics 44 and 45 to GSI because they seek privileged communications.** Both topics seek "[a]ll bases" for certain statements made by Gilead's then-new CEO during his testimony before the House Oversight Committee. As Gilead has repeatedly told the government, Mr. O'Day's testimony was based entirely on communications and memoranda prepared by Gilead's in-house counsel and outside counsel. Gupte Decl. (Ex. L) ¶ 4; *cf.* Cox Decl. (D.I. 242-1, Ex. A) ¶ 9. To the extent these topics seek testimony about those materials—which the government has made clear in meet and confers they do—they seek testimony about only privileged communications.

Moreover, even to the extent these topics are deemed to seek information beyond just Mr. O'Day's privileged preparation materials (which, based on their plain language, they do not), they are still improper. The statements in Topic 44 relate to Mr. O'Day's understanding of Gilead's invalidity position and its decision not to challenge the validity of the patents at the time, which was obviously based on privileged communications with Gilead's counsel. The statements in Topic 45 relate to pricing information that pre-dates the Delaware Default Standard's six-year limitation. *Cf.* D.I. 247 (denying motion to compel production of related documents). But despite that limitation, the government sought and received extensive testimony on these issues from current and former Gilead executives. Ex. M at 33-37, 51-60, 113-116, 155-176; Ex. N at 122-124; Ex. O at 37-55, 69-70. And as the government stated during the last discovery conference, it knew Gilead's position on these topics months ago and

---

markets the accused products in the United States, but not for GSIUC. The government did not meet and confer with Defendants about this topic as it relates to GSIUC before filing its motion.

[3] Defendants raised these objections in their November 22, 2021 responses to the government's 30(b)(6) notices. Gov't Ex. E at 40-42 (GSI); Ex. C at 42-43 (GSIUC). Yet, the government did not seek a conference about this dispute until exactly two weeks before the close of fact discovery on January 7, 2022.

"chose" not to file a motion.[4]  Ex. P at 35:11-36:17.  There is no basis to reopen fact discovery for testimony on these topics after the government admittedly delayed raising these disputes.

*Fifth*, **the Court should deny the government's motion about pricing documents because it is the same motion the Court denied last month.**  The government seeks production of documents related to a pricing decision from 11 years before the first patent-in-suit issued and 15 years before the government filed suit.  Last month, the Court denied this *same* request because the Court's Default Standard "sets a presumption that discovery from six years or more before the case's filing will not be permitted" and "the Government [did] not provide enough information to establish the requisite good cause."  D.I. 247.  The government did not file objections to that order.  It now asks the Court to "reconsider its prior ruling" based on "newly obtained evidence," Mot. at 3, but the government still does not explain how such old information could be relevant to this case.  And the testimony the government cites—which just establishes the self-evident point that an initial pricing decision for Truvada® was made when the product launched in 2004—does not provide any basis for the Court to change its prior order.  More than 7 months ago, Gilead produced documents showing the price from Truvada® in each quarter from its 2004 launch to present[5] (and identified these documents for the government before the last hearing, Ex. Q at 5), so there is no new evidence to justify reconsideration.

Moreover, even though the 2004 pricing decision is not relevant to any issue in the case, the government has taken extensive testimony about it.  Truvada® is a single pill that combines two active ingredients, both of which were sold as stand-alone products in 2004 (i.e., Viread® and Emtriva®, which is also called emtricitabine).  Gilead's General Counsel from 2004 testified that "the original price for Truvada was set based on the cost – the price of Viread and the price of emtricitabine, which are the two components of Truvada, and we went one plus one.  We just added up the two prices and came up with the price of Truvada."  Ex. M at 116:3-9.  The documents that Gilead has produced that show all historical prices of its HIV drugs by quarter corroborate this testimony.  There is no need for production of further documents—after the close of discovery—about a simple calculation made 11 years before the first patent issued.

*Finally*, **the Court should deny the government's motion in its entirety because the government cannot show good cause to reopen fact discovery.**  Because fact discovery closed on January 21, 2022, D.I. 27, ¶ 8(a), the government must show not only entitlement to the relief it seeks on the merits, but also good cause to modify the schedule.  Fed. R. Civ. P. 16(b)(4).  It cannot do so.  As explained above, the government has known Defendants' positions on these issues for months, but the government chose not to raise them with the Court until the end of discovery.  The government's delay provides an independent reason to deny its motion in its entirety.  D.I. 212, Nov. 9, 2021 Tr. 20:20-23 (Court warning the government, in a hearing about its delays litigating this case, that "if you come to me at the end of discovery and say oh, Your Honor, we didn't get documents, I'm going to tell you that's too bad, it wasn't timely raised").

---

[4] Again, GSI raised these objections in its November 22, 2021 responses to the government's 30(b)(6) notices, Gov't Ex. E at 74-78, but the government did not seek a conference about this dispute until exactly two weeks before the close of fact discovery on January 7, 2022.

[5] Because this information is in large Excel files that contain voluminous confidential data, Defendants have not filed the documents with this brief but will do so if the Court desires.

        Respectfully,

        */s/ Frederick L. Cottrell, III*

        Frederick L. Cottrell, III (#2555)

cc:    Clerk of Court (via hand delivery; w/attachments)
       All Counsel of Record (via electronic mail; w/attachments)

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2022, I caused true and correct copies of the foregoing document to be served on the following counsel in the manner indicated:

<table>
<tr><td>

**VIA E-MAIL**
Laura D. Hatcher
Shamoor Anis
U.S. Attorney's Office
Hercules Building
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19801
302-573-6277
Email: laura.hatcher@usdoj.gov
Email: shamoor.anis@usdoj.gov

</td><td>

**VIA E-MAIL**
Walter W. Brown
Philip Charles Sternhell
Patrick C. Holvey
Amanda K. Kelly
Carrie E. Rosato
Lucy Grace D. Noyola
Matthew David Tanner
Sosun Bae
Conrad J. Dewitte, Jr.
U.S. Department of Justice
Civil Division, Commercial Litigation
Branch, IP Section
1100 L Street, N.W.
Washington, D.C. 20530
202-307-0341
Email: walter.brown2@usdoj.gov
Email: philip.c.sternhell@usdoj.gov
Email: patrick.c.holvey@usdoj.gov
Email: amanda.k.kelly@usdoj.gov
Email: carrie.e.rosato@usdoj.gov
Email: lucy.grace.d.noyola@usdoj.gov
Email: matthew.d.tanner@usdoj.gov
Email: sosun.bae@usdoj.gov
Email: conrad.dewitte@usdoj.gov
Email: PrEP.Docket@usdoj.gov

</td></tr>
</table>

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com