UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>    *Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br>    *Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND UC,<br>    *Defendant*. | C.A. No. 1:19-cv-02103-MN-CJB |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE OPPOSING DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER TO QUASH THE DEPOSITION NOTICE OF MR. DANIEL O'DAY (D.I. 232)**

LAURA D. HATCHER (DE Bar No. 5098)
Assistant United States Attorney
SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:   (302) 573-6277
Fax:   (302) 573-6220
*Laura.hatcher@usdoj.gov*
*Shamoor.anis@usdoj.gov*


*Attorneys for Plaintiff United States*

DAVID C. WEISS
United States Attorney

SARAH HARRINGTON
Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director

AMANDA K. KELLY
CARRIE E. ROSATO
PATRICK C. HOLVEY
Trial Attorney
Department of Justice
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
Tel:   (202) 307-0341
*Attorneys for Plaintiff United States*

Dear Judge Burke,

According to the Court's Order (D.I. 226), Plaintiff United States of America (Government) hereby opposes the request (D.I. 233) by Defendants GSI and GSIUC (Gilead) for a protective order to quash the deposition notice of Gilead's CEO, Mr. Daniel O'Day.

Gilead invokes the "apex" doctrine seeking to prevent Mr. O'Day's deposition, D.I. 233 at 2-3, but "this is far from a trivial case. Enough is at stake to justify the deposition of an apex witness …." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). The "apex" doctrine applies only when "those at the top of the company, … at the 'apex,' really don't have personal knowledge … that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court." *In re Tylenol (Acetaminophen) Mktg. Sales Practices & Prods. Liab. Litig.*, 2014 WL 3035791, at *2 (E.D. Pa 2014). Courts consider two factors when deciding if the deposition of a high-ranking corporate officer should proceed: "(1) whether the corporate officer possesses superior or unique information relevant to the issues being litigated; and (2) whether the information cannot be obtained by a less intrusive method, such as deposing lower-ranking employees or interrogatories. *In re: Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 16CV07321MASLHG, 2021 WL 3140030, at *8 (D.N.J. July 7, 2021). Regardless, "a party who seeks a protective order to preclude certain discovery, including a deposition, bears **heavy burden** of persuasion." *In re Lincoln Nat'l COI Litig.*, No. 16-CV-6605-GJP, 2019 WL 7581176, at *1 (E.D. Pa. Dec. 5, 2019) (emphasis added). Indeed, "[i]t is rare for a court to issue a protective order that prohibits a deposition." *In re Tylenol*, 2014 WL 3035791, at *2 (quotation omitted).

***First, Mr. O'Day has personal and unique knowledge relevant to this case.*** The Government's impetus for deposing Mr. O'Day centers on ***his*** sworn testimony that ***he*** provided to the Committee on Oversight and Reform of the U.S. House of Representatives on May 16, 2019. *See* D.I. 1 at ¶¶ 151-52, 241-43. In that testimony, Mr. O'Day addressed a number of topics directly relevant to validity, willful infringement, and damages issues in this litigation, including:

- That Gilead "believe[s] the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with [CDC]." D.I. 233, Ex. E. at 14.
- That "there was no additional increase to the price [of Truvada for PrEP®] as a result of the additional indication [the PrEP Indication]." *Id.* at 31.
- What was considered in setting the price for Truvada originally in 2004. *Id*. at 46.

Mr. O'Day's knowledge concerning this testimony is ***personal*** because it involves ***his own*** testimony. His knowledge is ***unique*** because he alone provided the testimony. It is difficult to accept Gilead's contention that Mr. O'Day has no unique knowledge of statements he himself made to Congress. *See* D.I. 233 at 2-3. Indeed, his testimony indicates that he was intimately familiar with, and involved in, executive representations regarding the validity of, and decision to challenge, the asserted patents, as well as pricing of the accused Truvada® and Descovy® products during the time period leading up to this litigation. His testimony is crucial to understanding the status of the parties' negotiations from Mr. O'Day's and Gilead's perspectives, as his statements form part of the Government's allegations of willful infringement. *See* Ex. A at 66-67; Ex. B at 35-37.[1] Accordingly, his statements are undoubtably ***relevant***.

---

[1] This also distinguishes Mr. O'Day's knowledge of issues in this case as compared to Dr. Anthony Fauci. Dr. Fauci has little personal knowledge of issues involved in this litigation. Despite this

1

Gilead claims that Mr. O'Day lacks "any personal or unique knowledge of the issues in this litigation." *See* D.I. 232 at 3. This unsubstantiated claim does not preclude Mr. O'Day's deposition. The Government is entitled to test his knowledge via deposition. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009) ("A witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge…."). It is noteworthy that Gilead has not come forward with a declaration from Mr. O'Day attesting to Gilead's claim. *Cf. In re Jevic*, 526 B.R. at 556 (affirming decision precluding depositions of co-CEOs where, *inter alia*, the co-CEOs provided declarations denying any involvement with the disputed issues).

Gilead incorrectly states that "[n]early all of the relevant events occurred many years ago." D.I. 233 at 1. As a preliminary matter, relevant events are ongoing because Gilead continues to willfully infringe the asserted patents by promoting Truvada for PrEP and Descovy for PrEP. *See also Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1307 (Fed. Cir. 2011) ("Relevant secondary considerations often are not manifest even until well after the issuance of a patent."). Furthermore, on May 16, 2019, Mr. O'Day represented to Congress that Gilead had "chosen not to challenge" the Government's asserted patents. D.I. 233, Ex. E. at 14. Just three months later, Mr. O'Day and Gilead contradicted that representation by filing four unsuccessful IPR petitions challenging the validity of the Government's asserted patents. Mr. O'Day's testimony, coupled with the subsequent challenge to the Government's patents, are akin to "a strategic shift" in Gilead's mentality "at precisely the [relevant] time" that should justify his deposition, *see Apple Inc.*, 282 F.R.D. at 265 (ordering the deposition of Samsung Electronics Co.'s CEO), rather than a mere high-level statement "of a business executive voicing the need to remain competitive," as Gilead avers. *See* D.I. 233 at 3 (quoting *Apple Inc.*, 282 F.R.D. at 265-66).

The other cases cited in Gilead's letter are inapposite. *See* D.I. 233 at 2. For example, in *British Telcomms. PLC v. IAC/Interactivecorp.*, C.A. 18-366, 2020 WL 1043974, at *8 (D. Del. 2020), this court denied the deposition of a *former* CEO where the party had already consented to a deposition of its *current* CEO. Here, Gilead has not consented to the deposition of its current CEO, Mr. O'Day. In *U.S. ex rel. Galmines*, 2015 WL 4973626, at *2, the court denied the deposition of a former CEO where, *inter alia*, there was no showing as to how the former CEO's statement "ties to any material matter in dispute." Here, Mr. O'Day's statements relate to the disputed issues of validity, willful infringement, and damages.

***Second, there are no alternative sources of information to Mr. O'Day.*** Defendants assert that the Government should first exhaust other methods of discovery before considering whether Mr. O'Day might be deposed. *See* D.I. 233 at 3. This assertion is disingenuous, given that Defendants have failed to cooperate in providing the very discovery they now demand should have already taken place. For example, the Government served Rule 30(b)(6) deposition topic no. 44, which seeks a Gilead corporate witness to testify regarding "[a]ll bases for Gilead CEO Daniel O'Day's statement in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 that … Gilead has 'chosen not to challenge those patents because we value our collaborative relationship with the agency.'" D.I. 194 at A11; D.I. 195 at A11. Gilead responded that it "will not designate a witness to testify concerning this Topic." Ex. C at 76; Ex.

---

clear distinction, Gilead attempts to leave open the possibility for Dr. Fauci to be deposed while foreclosing the Government's ability to depose Mr. O'Day. *See* D.I. 232 at 3, n.4.

2

D at 81. The Government also propounded interrogatory no. 22 relating to this topic. *See* Ex. E at 8. Gilead stated it "will not respond to this Interrogatory." Ex. F at 44.

Similarly, the Government served Rule 30(b)(6) deposition topic no. 45 seeking testimony concerning "[a]ll bases for Gilead CEO Daniel O'Day's statements in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 (i) that "there was no additional increase to the price [of Truvada®] as a result of the additional indication [the PrEP Indication]." D.I. 194 at A11; D.I. 195 at A11. Gilead responded that it "will not designate a witness to testify concerning this Topic." Ex. C at 78; Ex. D at 83. The Government also propounded interrogatory no. 21 relating to this topic. *See* Ex. E at 7. Gilead responded "that Mr. O'Day's congressional testimony is not a proper subject for discovery," *see* Ex. F at 41, is "not relevant to the claims and defenses in this action," *id.* at 39, and asserted that "discovery from Mr. O'Day is improper and unnecessary." *Id.* at 40.

The Government also served Requests for Production seeking documents relating to Gilead CEO Daniel O'Day's testimony. *See* Ex. G. at RFP Nos. 261-262; Ex. H. at RFP No. 131. Gilead refused to produce responsive documents, stating that "sufficient" other information not directly related to Mr. O'Day's testimony regarding, for example, pricing information was already produced in Gilead's view. Ex. I at 12, 13. Gilead also refused to produce documents from Mr. O'Day's custodial files[2] as well as any Board of Directors or Executive Committee documents relating to relevant subject matter. *See* Ex. J at 4, n.2.

Gilead asserts that the Government should stage its discovery on Mr. O'Day's testimony by first "attempting to depose lower level employees." D.I. 233 at 3 (quoting *First Fidelity Bancorp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, C.A. 90-1866, 1992 WL 46881, at *4 (E.D. Pa 1992); *id.* (citing *VLSI Tech. LLC v. Intel Corp.*, C.A. 18-966-CFC-CJB (2019)). Gilead's staged approach is inappropriate here, where the executive has unique or personal knowledge. *See Minter*, 258 F.R.D. at 127. Moreover, Gilead has not offered any lower level employees with equivalent knowledge; it has not even identified any alternative witness, such as a Rule 30(b)(1) witness, who could have the same information and knowledge about Mr. O'Day's Congressional testimony. To the extent that alternative sources of information exist, Gilead has not provided them despite repeated Government inquiries. Thus, Gilead's wait-and-see approach is both inappropriate and impractical in view of the January 21, 2022, deadline for Gilead to complete its fact discovery obligations.

Finally, the Government disagrees with Gilead's intimations that notice of Mr. O'Day's deposition was unduly delayed. *See* D.I. 233 at 1. As noted above, the Government highlighted Mr. O'Day's congressional testimony in the complaint that was filed in November of 2019. He was listed in the Government's July 31, 2020 Rule 26(a) initial disclosures as an individual "likely [to] have discoverable information that the Government may use to support its claims or defenses or otherwise oppose Gilead's claims or defenses." Ex. K at 2, 7. The Government informed Gilead of its intention to depose Mr. O'Day on October 21, 2021, almost exactly three months before the close of fact discovery. The Government noticed Mr. O'Day's deposition on November 9, 2021. *See* D.I. 205.

Based on the foregoing, Gilead has not carried its heavy burden to demonstrate that the deposition notice of Mr. O'Day should be quashed. Gilead's motion should be denied.

---

[2] Gilead has only produced thirteen total emails to or from Mr. O'Day in its entire production.

3

Respectfully submitted,

*/s/Walter W. Brown*
WALTER W. BROWN

cc:  Gilead's counsel (via CM/ECF & Email)