# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA,
    *Plaintiff–Counterclaim Defendant*,

v.

GILEAD SCIENCES, INC.
    *Defendant–Counterclaim Plaintiff,*

AND GILEAD SCIENCES IRELAND UC,
    *Defendant.*

Civil  No. 1:19-02103-MN

**CONTAINS RESTRICTED INFORMATION PURSUANT TO STIPULATED PROTECTIVE ORDER [D.I. 48]**

## PLAINTIFF'S FIFTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1, 2, 3, 4, 14, 17)

The Government's Objections and Responses to Defendant's First Set of Interrogatories contains RESTRICTED INFORMTION as defined in the Stipulated Protective Order [D.I. 48].

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterclaim-Defendant United States (the Government) hereby provides its Fifth Supplemental Response to Defendant and Counterclaim-Plaintiff Gilead Sciences, Inc.'s and Defendant Gilead Sciences Ireland UC's (collectively, Gilead or Defendants) First Set of Interrogatories (Nos. 3, 4, 8, 9, and 11), served on the Government on August 13, 2020.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The following Objections to Definitions and Instructions apply to all instructions, definitions, and interrogatories, whether or not an objection is referred to specifically in the answer to any particular interrogatory. In addition to these objections, the Government has also stated

Discovery is ongoing and the Government reserves the right to amend, modify, supplement, or change its response to this interrogatory.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14

The Government maintains its objections and maintains that it has no knowledge of any invalidating prior use of the claimed PrEP regimens and no knowledge of any prior use of the subject matter of the Patents-in-Suit.

The Government states only that it has produced the following documents containing surveys that were conducted by CDC that anecdotally describe individuals taking anti-viral medications, none of which were identified as tenofovir or tenofovir with emtricitabine, none of which were confirmed to have been administered prior to an exposure or a potential exposure, and none of which were to an individual confirmed to have an HIV negative status and none of which were confirmed to protect an individual.

In addition, pursuant to Federal Rule of Civil Procedure 33(d), the information sought by this interrogatory may be determined by examining documents produced by the Government in this case, including US_US_00387483-US_00387581, and the burden of deriving the information sought by this interrogatory from those documents would be substantially the same for Gilead as for the Government Discovery is ongoing and the Government reserves the right to amend, modify, supplement, or change its response to this interrogatory.

Discovery is ongoing and the Government reserves the right to amend, modify, supplement, or change its response to this interrogatory.

## INTERROGATORY NO. 17:

Separately, for each asserted claim of the Patents-in-Suit, state the factual and legal bases for any contention that Defendants have engaged in willful infringement.

**RESPONSE TO INTERROGATORY NO. 17:**

The Government incorporates by reference its Objections to Definitions and Instructions as if set forth in full herein. The Government objects to this interrogatory to the extent it seeks information protected by attorney/client privilege, the work product immunity, or any other applicable claim of privilege or immunity. The Government objects to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses. *See In re Convergent Techs.,* 108 F.R.D. at 337. For example, the interrogatory seeks "the factual and legal bases for any contention" and is not limited to the Government's claims or contentions. There is no requirement that requires the Government to marshal all available proof in response to an interrogatory. Courts do not require responding parties to "write . . . a portrait of their trial" or "write a book" in response to a contention interrogatory. *See, e.g., Roberts*, 130 F.R.D. at 427. The Government objects to this interrogatory as premature to the extent it seeks expert testimony prior to the deadlines set forth in the Scheduling Order, the Local Rules, and the Federal Rules. The Government objects to this interrogatory to the extent it requires formulation of a legal conclusion or opinion. The Government objects to this interrogatory on the grounds that it contains multiple discrete subparts within the meaning of Federal Rule of Civil Procedure 33(a)(1) and therefore constitutes multiple interrogatories as reflected by Gilead's requested response be "[s]eparately, for each asserted claim of the Patents-in-Suit." The Government objects to this interrogatory as vague and ambiguous, particularly with respect to the phrase "any contention that Defendants have engaged in willful infringement."

Subject to and without waving the Objections to Definitions and Instructions or Specific objections asserted, and to the extent the Government understands this interrogatory, the Government answers the unobjectionable scope of this interrogatory as follows: Information

responsive to this interrogatory is provided at, for example, page 3 of the Government's Disclosures Under Paragraph 7(a) of the Scheduling Order [D.I. 27] and the Complaint [D.I. 1], including ¶¶ 249–313, which are hereby incorporated by reference herein. Additional details of Gilead's infringement will be provided pursuant to the Scheduling Order [D.I. 27] and are incorporated by reference herein.

Discovery is ongoing and the Government reserves the right to amend, modify, supplement, or change its response to this interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

The Government incorporates by reference its Objections to Definitions and Instructions as if set forth in full herein. The Government objects to this interrogatory to the extent it seeks information protected by attorney/client privilege, the work product immunity, or any other applicable claim of privilege or immunity. The Government objects to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses. *See In re Convergent Techs.*, 108 F.R.D. at 337. For example, the interrogatory seeks "the factual and legal bases for any contention" and is not limited to the Government's claims or contentions. There is no requirement that requires the Government to marshal all available proof in response to an interrogatory. Courts do not require responding parties to "write . . . a portrait of their trial" or "write a book" in response to a contention interrogatory. *See, e.g., Roberts*, 130 F.R.D. at 427. The Government objects to this interrogatory as premature to the extent it seeks expert testimony prior to the deadlines set forth in the Scheduling Order, the Local Rules, and the Federal Rules. The Government objects to this interrogatory to the extent it requires formulation of a legal conclusion or opinion. The Government objects to this interrogatory on the grounds that it contains multiple discrete subparts within the meaning of Federal Rule of Civil Procedure 33(a)(1) and therefore constitutes multiple

interrogatories as reflected by Gilead's requested response be "[s]eparately, for each asserted claim of the Patents-in-Suit." The Government objects to this interrogatory as vague and ambiguous, particularly with respect to the phrase "any contention that Defendants have engaged in willful infringement."

Subject to and without waving the Objections to Definitions and Instructions or Specific objections asserted, and to the extent the Government understands this interrogatory, the Government answers the unobjectionable scope of this interrogatory as follows: Information responsive to this interrogatory is provided at, for example, page 3 of the Government's Disclosures Under Paragraph 7(a) of the Scheduling Order [D.I. 27] and the Complaint [D.I. 1], including ¶¶ 249–313, which are hereby incorporated by reference herein. Additional details of Gilead's infringement will be provided pursuant to the Scheduling Order [D.I. 27] and are incorporated by reference herein.

Gilead had notice of the Application No. 11/669,547 ("the '547 Application") which issued as the '509 Patent at least as early as August 6, 2008. On that date, Steve Krawczyk, Director, Patent Liaison for GSI, emailed a Derwent Alert which covered the time period from August 2007 to October 2007 a number of Gilead employees[2]. GILDDE01209435. This patent search report lists both the international application, WO2007092326, and the '547 Application. This alert

---

[2]  Allan Kutzenco <allan.kutzenco@gilead.com>, Bill Baker <bill.baker@gilead.com>, Bill Lee <bill.lee@gilead.com>, Choung Kim <choung.kim@gilead.com>, Christopher Sheng <christopher.sheng@gilead.com>, Damian Mccoll <damian.mccoll@gilead.com>, Grushenka Wolfgang <grushenka.wolfgang@gilead.com>, Haolun Jin <haolun.jin@gilead.com>, John Link <john.link@gilead.com>, John Ward <john.ward@gilead.com>, John Wolf <john.wolf@gilead.com>, Larry Melvin <larry.melvin@gilead.com>, Lianhong Xu <lianhong.xu@gilead.com>, Lori Lehman <lori.lehman@gilead.com>, Manoj Desai <manoj.desai@gilead.com>, Mary McGrath <mary.mcgrath@gilead.com>, Matthew Wright <matthew.wright@gilead.com>, Randall Halcomb <randall.halcomb@gilead.com>, Richard Mackman <richard.mackman@gilead.com>, Roman Sakowicz <roman.sakowicz@gilead.com>, Romas Geleziunas <romas.geleziunas@gilead.com>, Steve Bondy <steve.bondy@gilead.com>, Sukeerthi Seetharaman <sukeerthi.seetharaman@gilead.com>, Swami Swaminathan <swami.swaminathan@gilead.com>, Tomas Cihlar <tomas.cihlar@gilead.com>, Weidong Zhong <weidong.zhong@gilead.com>, Will Watkins <will.watkins@gilead.com>, William Delaney william.delaney@gilead.com  We note that because Gilead uses "@gilead.com" for employees at GSI and GSIUC, (an additional demonstration of GSI and GSIUC's close coordination) it is not clear whether any of the employees are GSIUC employees, but possible.

further provides the filing date of the '547 Application, lists the named inventors (including Dr. Robert Janssen), pictures both emtricitabine and tenofovir, lists The Department of Health and Human Services as the patent owner, and describes a method of taking both emtricitabine and tenofovir in combination, prior to exposure, to prevent infection by an immunodeficiency retrovirus, such as HIV-1. This patent search report was emailed directly to custodian Dr. William Lee, Executive Vice President, Research. Additionally, the European Patent Bulletin published on January 21, 2009, and it listed the WO 2007/092326, a direct reference to the '547 Application, and the filing date of the '547 Application.

On information and belief, Gilead had notice that the '547 Application issued as the '509 Patent when it issued in January 2015. The Government intends to supplement this response with additional evidence as discovery is ongoing, and we believe there are production deficiencies regarding patent alert searches which should have disclosed the issuance of the '509 Patent to Gilead.

Because Gilead knew of the '547 Application and the '509 Patent, its infringement was willful, as its infringement was either known or was so obvious it should have been known. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 503 F. Supp. 3d 156, 172 (D. Del. 2020) ("To prevail on a claim of willful infringement, then, a patentee must prove that the infringer acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'") (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct 1923, 1930 (2016)).

Gilead possessed knowledge of the patent and the infringement from many sources, including from Dr. Robert Janssen, not only from his disclosure of the patented research and

application for a patent on that research on his Employee Confidential Information and Inventions Agreement, but also from his employment by Gilead in a position where his knowledge of the patented research and the application was relevant to the nature and scope of his duties to Gilead and material to the same. *See* GILDDE00456424–26 (offering Dr. Janssen the position of "Vice President, Medical Affairs, reporting directly to" Dr. Norbert Bischofberger, Executive Vice President, R&D and Chief Scientific Officer); *see also* GILDDE00456428–438 (outlining Dr. Janssen's many responsibilities as both a manager and employee of Gilead). *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 107 (3d Cir. 2009) ("to justify imputation, the knowledge must also be material--i.e., important or significant--to the employee's duties to the employer.") (citing Restatement (Second) of Agency § 272 cmt. a ("The principal is affected by the agent's knowledge whenever the knowledge is of importance in the act which the agent is authorized to perform.")).

Additionally, Mr. O'Day testified before Congress that he understood "the use patents on PrEP granted to the CDC" to "claim[]" the "invention" of "[u]sing Truvada for PrEP." Mr. O'Day testified that this use was "well-known in the scientific community." 116th Cong. 14. Accordingly, Gilead understood that the use of Truvada for PrEP was claimed by the HHS Patents and implied that this understanding existed at all times, preceding and including the issuance of the '509 Patent.

And Gilead has admitted that the Government contacted Gilead in 2014 and "demanded a license." LTR Cook to Brown (1/20/2021) at 3 ("the government contacted Gilead to demand that Gilead take a license to the family of the Patents-in-Suit as early as October 2014.") While Mr. Cook's letter references "the government's complaint" and D.I. ¶ 234 for context on this sentence, *id*. the Complaint's ¶ 234 only states that "NIH/OTT emailed [Gilead personnel], giving

them notice of CDC's patented technology."   Gilead apparently understands this email to have demanded a license for the patented invention.

Gilead engaged in disingenuous licensing negotiations and insincere testimony under oath to the United States Congress. "[C]laims for willful infringement [] based on . . . conduct that occurred during the parties' licensing negotiations through a period of about three years" can support a finding of "egregious conduct under *Halo*." *Finjan, Inc. v. SonicWall*, Inc., No. 17-cv-04467-BLF, 2018 U.S. Dist. LEXIS 83546, at *14 (N.D. Cal. May 16, 2018). Gilead testified under oath in 2019 to the United States Congress that "[w]e believe the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with the agency."[3]   However, Gilead states that it anticipated litigation prior to that, as early as 2017. Further, at the time of the hearing, Gilead was actively preparing four IPRs that were filed only three months after that sworn testimony. *See* GILDCFC00000004 (invoice from Sidley Austen for "services rendered through August 31, 2019 re: CDC Patent Issues Relating to Truvada"). As filed, the IPRs include evidence of Gilead preparing them beginning in the late 2017 to 2018 time frame. For example, the Coates declaration (Ex. 1129) was executed on February 2, 2018, and Jeffrey Kushan, an attorney for Sidley Austen, was emailing purported potential prior art references in February of 2018. *See* Exhibit 1142.   And this was only after Gilead continuously ignored earlier emails from Laura Prestia in 2014 and Dr. Tara Kirby in 2016 when they were seeking to license their patents.   *See* GILDCFC00000019 (WilmerHale invoice for "NIH Matter" dated July 2016). Gilead's awareness that the claims of the Patents-in-Suit

---

[3] *HIV Prevention Drug: Billions in Corporate Profits After Millions in Taxpayer Investments: Hearing Before the H. Comm. on Oversight and Reform*, 116th Cong. 14 (May 16, 2019) (statement of Dr. Robert M. Grant, Professor of Medicine, University of California, San Francisco), https://www.govinfo.gov/content/pkg/CHRG-116hhrg36660/pdf/CHRG-116hhrg36660.pdf [https://perma.cc/M5KY-YPFP]

covered the use of Truvada for PrEP®, and refusal to take a license, and then further representation that it would not challenge the Patents-in-Suit, all while it was preparing to file its IPRs, all evidence willful infringement.

Discovery is ongoing and the Government reserves the right to amend, modify, supplement, or change its response to this interrogatory.

# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>*Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.<br>*Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND UC,<br>*Defendant*. | Civil No. 1:19-02103-MN |

**PLAINTIFF'S FINAL CLAIM CHARTS ON INFRINGEMENT BY GILEAD**

Plaintiff and Counterclaim-Defendant United States (the Government) hereby provides the following Final Claim Charts on Infringement by Defendant and Counterclaim-Plaintiff Gilead Sciences, Inc. (Gilead Sciences) and Defendant Gilead Sciences Ireland UC (GSIUC) (collectively, Gilead or Defendants) regarding U.S. Patent Nos. 9,044,509 (the "'509 Patent"), 9,579,333 (the "'333 Patent"), 9,937,191 (the "'191 Patent"), and 10,335,423 (the "'423 Patent") (collectively, the "Patents-in-Suit") with respect to Gilead's Truvada® and Descovy® products when administered as pre-exposure prophylaxis ("PrEP") regimens. The Government incorporates by reference the allegations set forth in its Complaint, including but not limited to: ¶¶ 244-279 describing the Government's efforts to license the Patents-in-Suit to Gilead, Gilead's acquisition of the trademarks related to use of Descovy for PrEP® and Truvada for PrEP®; ¶¶ 128-134 and 233-240 concerning Gilead's notice of the Patents-in-Suit; ¶¶ 176-178 and 255 regarding the number of patients using Truvada for PrEP® and the Government's allegations of willful infringement and willful inducement of infringement; and ¶¶ 280-313 which include the Government's Counts I-IV for willful infringement and willful inducement of infringement of the Patents-in-Suit. The Government further incorporates by reference the Government's Initial Claim

1

Gilead knew or should have known as early as 2014 that the applications for the Patents-in-Suit existed and that they covered the use of Truvada for PrEP at least because the October 2014 email from Laura Prestia expressly relayed this information to Gilead. Gilead knew or reasonably should have known that the '547 application, which was disclosed in the Federal Register entry that the October 2014 email provided a link to, issued as the '509 patent on June 2, 2015 and had earlier been published as U.S. 2007/0265227 on November 15, 2007, because this information was publicly and readily available and easily obtainable. Gilead knew or should have known that the use of Truvada for PrEP® and Descovy for PrEP® in accordance with and as directed by Gilead's package inserts and training guides that accompany Gilead's Truvada® and Descovy® products would cause physicians to prescribe and patients to use Gilead's products in a manner that directly infringes the asserted claims. In addition, by reviewing the claims of the publicly available '509 patent, Gilead could have easily confirmed —what it already knew from the October 2014 email— that the '509 patent had claims directed to Truvada for PrEP®. Gilead's repeated refusal to license the Patents-in-Suit for its Truvada for PrEP® after it received the October 2014 email demonstrates that Gilead had and continues to have the specific intent to induce acts constituting direct infringement of the asserted claims of the Patents-in-Suit. This is further evidenced by the active steps Gilead has taken and continues to take to direct, encourage, recommend, promote, and induce acts of direct infringement of those claims.

Because Gilead knew of the '547 Application and the '509 Patent, its infringement was willful, as its infringement was either known or was so obvious it should have been known. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 503 F. Supp. 3d 156, 172 (D. Del. 2020) ("To prevail on a claim of willful infringement, then, a patentee must prove that the infringer acted despite a risk of infringement that was 'either known or so obvious that it should have been known

to the accused infringer.'") (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct 1923, 1930 (2016)).

Gilead possessed knowledge of the patent and the infringement from many sources, including from Dr. Robert Janssen, not only from his disclosure of the patented research and application for a patent on that research on his Employee Confidential Information and Inventions Agreement, but also from his employment by Gilead in a position where his knowledge of the patented research and the application was relevant to the nature and scope of his duties to Gilead and material to the same.  *See* GILDDE00456424–26 (offering Dr. Janssen the position of "Vice President, Medical Affairs, reporting directly to" Dr. Norbert Bischofberger, Executive Vice President, R&D and Chief Scientific Officer); *see also* GILDDE00456428–438 (outlining Dr. Janssen's many responsibilities as both a manager and employee of Gilead).  *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 107 (3d Cir. 2009) ("to justify imputation, the knowledge must also be material--i.e., important or significant--to the employee's duties to the employer.") (citing Restatement (Second) of Agency § 272 cmt. a ("The principal is affected by the agent's knowledge whenever the knowledge is of importance in the act which the agent is authorized to perform.")).

Additionally, Mr. O'Day testified before Congress that he understood "the use patents on PrEP granted to the CDC" to "claim[]" the "invention" of "[u]sing Truvada for PrEP."  Mr. O'Day testified that this use was "well-known in the scientific community."  116th Cong. 14. Accordingly, Gilead understood that the use of Truvada for PrEP was claimed by the HHS Patents and implied that this understanding existed at all times, preceding and including the issuance of the '509 Patent.

And Gilead has admitted that the Government contacted Gilead in 2014 and "demanded a license."  LTR Cook to Brown (1/20/2021) at 3 ("the government contacted Gilead to demand that Gilead take a license to the family of the Patents-in-Suit as early as October 2014.")  While Mr.

Cook's letter references "the government's complaint" and D.I. ¶ 234 for context on this sentence, *id.*, the Complaint's ¶ 234 only states that "NIH/OTT emailed [Gilead personnel], giving them notice of CDC's patented technology." Gilead apparently understands this email to have demanded a license for the patented invention.

Gilead engaged in disingenuous licensing negotiations and insincere testimony under oath to the United States Congress. "[C]laims for willful infringement [] based on . . . conduct that occurred during the parties' licensing negotiations through a period of about three years" can support a finding of "egregious conduct under *Halo*." *Finjan, Inc. v. SonicWall*, Inc., No. 17-cv-04467-BLF, 2018 U.S. Dist. LEXIS 83546, at *14 (N.D. Cal. May 16, 2018). Gilead testified under oath in 2019 to the United States Congress that "[w]e believe the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with the agency."[2][1] However, Gilead states that it anticipated litigation prior to that, as early as 2017. Further, at the time of the hearing, Gilead was actively preparing four IPRs that were filed only three months after that sworn testimony. *See* GILDCFC00000004 (invoice from Sidley Austen for "services rendered through August 31, 2019 re: CDC Patent Issues Relating to Truvada"). As filed, the IPRs include evidence of Gilead preparing them beginning in the late 2017 to 2018 time frame. For example, the Coates declaration (Ex. 1129) was executed on February 2, 2018, and Jeffrey Kushan, an attorney for Sidley Austen, was emailing purported potential prior art references in February of 2018. *See* Exhibit 1142. And this was only after Gilead continuously ignored earlier emails from Laura Prestia in 2014 and Dr. Tara Kirby in

---

[1] *HIV Prevention Drug: Billions in Corporate Profits After Millions in Taxpayer Investments: Hearing Before the H. Comm. on Oversight and Reform*, 116th Cong. 14 (May 14, 2019) (statement of Dr. Robert M. Grant, Professor of Medicine, University of California, San Francisco), https://www.govinfo.gov/content/pkg/CHRG-116hhrg36660/pdf/CHRG-116hhrg36660.pdf [https://perma.cc/M5KY-YPFP]

2016 when they were seeking to license their patents. *See* GILDCFC00000019 (WilmerHale invoice for "NIH Matter" dated Juley 2016). Gilead's awareness that the claims of the Patents-in-Suit covered the use of Truvada for PrEP®, and refusal to take a license, and then further representation that it would not challenge the Patents-in-Suit, all while it was preparing to file its IPRs, all evidence willful infringement.

Further and additional details on how the use of Gilead's Truvada® and Descovy® products for PrEP infringe the claims of the Patents-in-Suit are provided in the Claim Charts attached hereto as Exhibits A-F. Discovery is ongoing at this time, and the Government provides these Claim Charts based on information presently known to the Government. The Government reserves the right to supplement and/or amend these Claim Charts to incorporate further information that it may discover during litigation. For example, Gilead has refused search for or produce any documents related to the right, title, licensing, or use of its Truvada for PrEP® and Descovy for PrEP® trademarks. Gilead has also stated that it will not produce its labels and regulatory files past July 16, 2012, which would likely provide additional evidence of infringement. The Government maintains that it is entitled to this discovery and reserves the right to further supplement its Claim Charts and infringement allegations generally based on this evidence when produced and other evidence as discovered during litigation. In addition, Gilead has not yet completed production of other evidence it initially refused to produce and then consented to, such as its research on the use of Truvada® or Descovy® for PrEP and any research that Gilead has done on the compliance with the label instructions.

The Government also reserves the right to respond with additional information or evidence to any arguments or evidence that Gilead may present in support of the argument Gilead articulates in itsThird Amended Answer that it does not induce infringement because the package inserts for

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff & Counterclaim-Defendant*, | C.A. No. 19-02103-MN |
| v. | |
| GILEAD SCIENCES, INC. and
GILEAD SCIENCES IRELAND UC, | |
| *Defendants & Counterclaim-Plaintiff*. | |

**OBJECTIONS & RESPONSES TO PLAINTIFF'S NOTICE OF
DEPOSITION OF GILEAD SCIENCES, INC. UNDER FED. R. CIV. P. 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the applicable

Local Rules of Civil Practice and Procedure for the District of Delaware, Gilead Sciences, Inc.

("GSI") objects and responds to the Notice of Deposition pursuant to Rule 30(b)(6) to GSI,

served by Plaintiff United States of America (the "Government" or "Plaintiff") and dated

November 1, 2021 (the "Notice").

## GENERAL OBJECTIONS

GSI incorporates each of the following General Objections into its responses to each of

the Topics, whether or not each such General Objection is expressly referred to in GSI's

response to a specific Topic.

1.      GSI objects to the date and location of the deposition contained in the notice as

unduly burdensome, particularly because GSI's principal place of business is not located in or

near Washington, D.C.  GSI is willing to meet and confer with the government regarding the

date, place, time, and format of any depositions taken in response to the Notice.

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case.

GSI objects to this Topic as vague and ambiguous, including the term "relationships."

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.

GSI objects to this Topic to the extent that it seeks or requires legal conclusions, for example, regarding whether a particular communication was on behalf of GSI, which requires legal conclusions regarding corporate agency.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Subject to and without waiving the foregoing General and Specific Objections, GSI will provide one or more designees to testify concerning relevant, non-privileged factual information related to GSI's general knowledge of GSI's relationships with the Named Inventors during their employment at CDC to the extent that such information exists; is in GSI's possession, custody, or control; and can be located with a reasonable search.  GSI will not, and cannot, prepare a witness to testify concerning each and every communication between a GSI employee and the Named Inventors during their employment at CDC; however, GSI will consider providing testimony concerning a reasonable number of specific communications that the Government identifies in writing at least 14 days in advance of the deposition.

**Topic No. 44:**

All bases for Gilead CEO Daniel O'Day's statement in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed

it as an invention," but nonetheless Gilead has "chosen not to challenge those patents because we value our collaborative relationship with the agency."

**GSI's Response to Topic No. 44:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the May 16, 2019 testimony of Gilead's CEO before the United States House Committee on Oversight and Reform is not relevant to any claim or defense in this action. GSI will not designate a witness to provide testimony about its prior testimony. Moreover, the timing of GSI's decision to "challenge" the asserted patents after they issued is not relevant to any claim or defense in this litigation.

GSI objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 16. The bases for Mr. O'Day's testimony that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed it as an invention" are contained within GSI's invalidity contentions. GSI will not designate a witness to memorize and recite invalidity contentions that GSI has provided to the government in response to the government's interrogatories and according to the schedule for exchange of invalidity contentions set in the Scheduling Order. To the extent this Topic seeks some or all of the bases for GSI's invalidity contentions, GSI also objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSI objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. In particular, any bases for Mr. O'Day's testimony that GSI had "chosen not to challenge [the asserted] patents because we value our collaborative relationship with the agency"

– 75 –

beyond those apparent from the statement itself reflect communications with GSI's attorneys and are protected from disclosure by at least the attorney-client privilege. Mr. O'Day did not join GSI until March 2019, which was just two months before the testimony recited in this Topic, so any information known by Mr. O'Day regarding events before March 2019 was necessarily obtained via privileged attorney-client communications.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, it vaguely seeks all "bases" for statements, which requires a subjective determination of whether a particular fact is a basis for the statements or merely informs or corroborates them. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee.

GSI objects to this Topic as vague and ambiguous, including the term "bases."

GSI objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 45:**

All bases for Gilead CEO Daniel O'Day's statements in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 (i) that "there was no additional increase to the price [of Truvada®] as a result of the additional indication [the PrEP Indication]"; (ii) that Gilead considers "the access limitations that might be created by setting that price [of Truvada for PrEP®], and we anticipate that in advance"; and (iii) that "[w]hen we set the price for Truvada originally, we took into

account a variety of things, including the impact upon the
healthcare system . . . ."

**GSI's Response to Topic No. 45:**

GSI objects to this Topic to the extent that it seeks information that is not relevant to the

claims or defenses of any party to this litigation, not reasonably calculated to lead to the

discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  In particular, the May 16, 2019 testimony of Gilead's CEO before the United States House

Committee on Oversight and Reform is not relevant to any claim or defense in this action.  GSI

will not designate a witness to provide testimony about its prior testimony.  Moreover, the

underlying information sought by this Topic—i.e., information related to how GSI set the price

of Truvada® many years before the first Patent-in-Suit issued—is not relevant to any claim or

defense in this litigation.

GSI objects to this Topic to the extent that it seeks information protected from disclosure

by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or

immunity.  Mr. O'Day did not join GSI until March 2019, which was just two months before the

testimony recited in this Topic, so any information known by Mr. O'Day regarding events before

March 2019 was necessarily obtained via privileged attorney-client communications.

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails

to describe with reasonable particularity the matters on which examination is requested.  For

example, it vaguely seeks all "bases" for statements, which requires a subjective determination

of whether a particular fact is a basis for the statements or merely informs or corroborates them.

Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate

designee.

GSI objects to this Topic as vague and ambiguous, including the term "bases."

GSI objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSI objects to this Topic to the extent it seeks information not within GSI's possession, custody, or control.

GSI also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSI will not designate a witness to testify concerning this Topic.

**Topic No. 46:**

> All MTAs between the Department of Health and Human Services (HHS), including Operating Divisions of HHS such as CDC and NIH, and Gilead relating to HIV research and amendments thereto, all communications between HHS and Gilead regarding these MTAs, all communications within Gilead regarding these MTAs, and all communications regarding compliance with these MTAs.

**GSI's Response to Topic No. 46:**

GSI objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested. For example, this Topic does not identify any specific MTA agreements. Accordingly, this Topic is not sufficiently particularized to enable GSI to prepare a corporate designee. To the extent the government seeks testimony regarding agreements other than those that have been expressly identified in the pleadings in this action, the government must identify those agreements so GSI can make any appropriate objections and, if GSI agrees to designee a witness to testify about a particular agreement, so GSI can identify and prepare an appropriate designee.

GSI objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff & Counterclaim-Defendant*, | C.A. No. 19-02103-MN |
| v. | |
| GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC, | |
| *Defendants & Counterclaim-Plaintiff.* | |

**OBJECTIONS & RESPONSES TO PLAINTIFF'S NOTICE OF
DEPOSITION OF GILEAD SCIENCES IRELAND UC UNDER FED. R. CIV. P. 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the applicable

Local Rules of Civil Practice and Procedure for the District of Delaware, Gilead Sciences Ireland

UC ("GSIUC") objects and responds to the Notice of Deposition pursuant to Rule 30(b)(6) to

GSIUC, served by Plaintiff United States of America (the "Government" or "Plaintiff") and

dated November 1, 2021 (the "Notice").

**GENERAL OBJECTIONS**

GSIUC incorporates each of the following General Objections into its responses to each

of the Topics, whether or not each such General Objection is expressly referred to in GSIUC's

response to a specific Topic.

1.       GSIUC objects to the Notice because, as explained in GSIUC's October 29, 2021

letter to the Government, the Government has no good-faith basis to pursue its claims against

GSIUC in this action.  The only affirmative inducing acts that the Government has alleged

against GSIUC were alleged on information and belief.  GSIUC has produced documents and a

**Topic No. 44:**

> All bases for Gilead CEO Daniel O'Day's statement in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed it as an invention," but nonetheless Gilead has "chosen not to challenge those patents because we value our collaborative relationship with the agency."

**GSIUC's Response to Topic No. 44**

GSIUC objects to this Topic as unduly burdensome and not proportional to the needs of this case because, as explained in General Objection No. 1 above, the Government has no good-faith basis to pursue claims against GSIUC. More than two years into this litigation, the Government has not identified a single affirmative inducing act taken by GSIUC. Moreover, GSIUC has produced documents and a verified interrogatory response expressly contradicting the factual allegations that the government pleaded on "information and belief" to support its claims against GSIUC.

GSIUC objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the case. In particular, the May 16, 2019 testimony of GSI's CEO before the United States House Committee on Oversight and Reform is not relevant to any claim or defense in this action. GSIUC will not designate a witness to provide testimony about its prior testimony. Moreover, the timing of Gilead's decision to "challenge" the asserted patents after they issued is not relevant to any claim or defense in this litigation.

GSIUC objects to this Topic as improperly seeking party contentions through deposition. *See* General Objection No. 17. The bases for Mr. O'Day's testimony that "[u]sing Truvada for PrEP was well known in the scientific community, long before CDC claimed it as an invention"

are contained within GSIUC's invalidity contentions.  GSIUC will not designate a witness to memorize and recite invalidity contentions that GSIUC has provided to the government in response to the government's interrogatories and according to the schedule for exchange of invalidity contentions set in the Scheduling Order.  To the extent this Topic seeks some or all of the bases for GSIUC's invalidity contentions, GSIUC also objects to this Topic to the extent that it seeks expert opinions prior to the deadline for disclosing such opinions in the Scheduling Order.

GSIUC objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  In particular, any bases for Mr. O'Day's testimony that Gilead had "chosen not to challenge [the asserted] patents because we value our collaborative relationship with the agency" beyond those apparent from the statement itself reflect communications with attorneys and are protected from disclosure by at least the attorney-client privilege.  Mr. O'Day did not join GSI until March 2019, which was just two months before the testimony recited in this Topic, so any information known by Mr. O'Day regarding events before March 2019 was necessarily obtained via privileged attorney-client communications.

GSIUC objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, it vaguely seeks all "bases" for statements, which requires a subjective determination of whether a particular fact is a basis for the statements or merely informs or corroborates them.  Accordingly, this Topic is not sufficiently particularized to enable GSIUC to prepare a corporate designee.

GSIUC objects to this Topic as vague and ambiguous, including the term "bases."

GSIUC objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSIUC objects to this Topic to the extent it seeks information not within GSIUC's possession, custody, or control.

Based on the foregoing General and Specific Objections, GSIUC will not designate a witness to testify concerning this Topic.

**Topic No. 45:**

All bases for Gilead CEO Daniel O'Day's statements in his testimony before the United States House Committee on Oversight and Reform on May 16, 2019 (i) that "there was no additional increase to the price [of Truvada®] as a result of the additional indication [the PrEP Indication]"; (ii) that Gilead considers "the access limitations that might be created by setting that price [of Truvada for PrEP®], and we anticipate that in advance"; and (iii) that "[w]hen we set the price for Truvada originally, we took into account a variety of things, including the impact upon the healthcare system . . . ."

**GSIUC's Response to Topic No. 45**

GSIUC objects to this Topic as unduly burdensome and not proportional to the needs of this case because, as explained in General Objection No. 1 above, the Government has no good-faith basis to pursue claims against GSIUC. More than two years into this litigation, the Government has not identified a single affirmative inducing act taken by GSIUC. Moreover, GSIUC has produced documents and a verified interrogatory response expressly contradicting the factual allegations that the government pleaded on "information and belief" to support its claims against GSIUC.

GSIUC objects to this Topic to the extent that it seeks information that is not relevant to the claims or defenses of any party to this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or seeks discovery that is not proportional to the needs of the

case.  In particular, the May 16, 2019 testimony of GSI's CEO before the United States House Committee on Oversight and Reform is not relevant to any claim or defense in this action. GSIUC will not designate a witness to provide testimony about its prior testimony.  Moreover, the underlying information sought by this Topic—i.e., information related to how GSI set the price of Truvada® many years before the first Patent-in-Suit issued—is not relevant to any claim or defense in this litigation.

GSIUC objects to this Topic to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  Mr. O'Day did not join GSI until March 2019, which was just two months before the testimony recited in this Topic, so any information known by Mr. O'Day regarding events before March 2019 was necessarily obtained via privileged attorney-client communications.

GSIUC objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, it vaguely seeks all "bases" for statements, which requires a subjective determination of whether a particular fact is a basis for the statements or merely informs or corroborates them. Accordingly, this Topic is not sufficiently particularized to enable GSIUC to prepare a corporate designee.

GSIUC objects to this Topic as vague and ambiguous, including the term "bases."

GSIUC objects to this Topic as lacking foundation to the extent it selectively quotes and mischaracterizes the referenced testimony.

GSIUC objects to this Topic to the extent it seeks information not within GSIUC's possession, custody, or control.

GSIUC also objects to this Topic to the extent it seeks testimony concerning information subject to confidentiality obligations to third parties.

Based on the foregoing General and Specific Objections, GSIUC will not designate a witness to testify concerning this Topic.

**Topic No. 46:**

> All MTAs between the Department of Health and Human Services (HHS), including Operating Divisions of HHS such as CDC and NIH, and Gilead relating to HIV research and amendments thereto, all communications between HHS and Gilead regarding these MTAs, all communications within Gilead regarding these MTAs, and all communications regarding compliance with these MTAs.

**GSIUC's Response to Topic No. 46**

GSIUC objects to this Topic as unduly burdensome and not proportional to the needs of this case because, as explained in General Objection No. 1 above, the Government has no good-faith basis to pursue claims against GSIUC.  More than two years into this litigation, the Government has not identified a single affirmative inducing act taken by GSIUC.  Moreover, GSIUC has produced documents and a verified interrogatory response expressly contradicting the factual allegations that the government pleaded on "information and belief" to support its claims against GSIUC.

GSIUC objects to this Topic as unduly burdensome and overly broad to the extent that it fails to describe with reasonable particularity the matters on which examination is requested.  For example, this Topic does not identify any specific MTA agreements.  Accordingly, this Topic is not sufficiently particularized to enable GSIUC to prepare a corporate designee.  To the extent the government seeks testimony regarding agreements other than those that have been expressly identified in the pleadings in this action, the government must identify those agreements so GSIUC can make any appropriate objections.

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>*Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.<br>*Defendant–Counterclaim Plaintiff*,<br><br>AND GILEAD SCIENCES IRELAND UC,<br>*Defendant*. | Civil No. 1:19-02103-MN<br><br>**Contains RESTRICTED INFORMATION-Subject to Protective Order** |

## PLAINTIFF'S THIRD SET OF INTERROGATORIES (NOS. 19-28)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterclaim-Defendant United States (the Government) requests that Defendant and Counterclaim-Plaintiff Gilead Sciences, Inc. and Defendant Gilead Sciences Ireland UC (collectively, Gilead or Defendants) answer in writing and under oath the following interrogatories (Nos. 19-28) within 30 days from the date of service.  The Answers shall be served on all counsel of record.

## DEFINITIONS AND INSTRUCTIONS

1.     The Definitions set forth in Plaintiff's Corrected First Set of Requests for Production of Documents and Things are incorporated herein by reference.

2.      "Identify" refers to:

a.   In the context of a natural Person, to provide the person's (i) full name; (ii) present or last known residential address and telephone number; (iii) present or last known business address and telephone number; and (iv) present or last known place of employment and job description. If the natural person was

**Interrogatory No. 20:**

For each pricing of Truvada® by Gilead, beginning with the initial pricing of Truvada® in 2004, please describe in detail for each pricing (initial pricing, subsequent increases in pricing, subsequent decreases in pricing, etc.) how the pricing determinations were made, by whom, and what considerations and bases were considered by those individuals at every relevant time for each pricing.  Your answer should discuss whether the addition of the PrEP use indication following FDA approval in 2012 factored into the Truvada® pricing in 2012 or any subsequent pricing and how Gilead determined in 2012 that the price for Truvada for the PrEP use indication should be set at the same price as the original treatment use indication as well as how Gilead determined each later pricing change for Truvada®.

**Interrogatory No. 21:**

Identify all factors Gilead considers in pricing Truvada®.  Your response should include all of the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives' Committee on Oversight and Reform on May 16, 2019 during which Mr. O'Day, addressed the pricing of Truvada and the factors Gilead considered in pricing Truvada including his statement that "[the] potentially most important [factor] is exactly to your point. What are the access limitations that might be created by setting that price, and we anticipate that in advance" and that "[w]hen we set the price for Truvada originally, we took into account a variety of things, including the impact upon the healthcare system."

**Interrogatory No. 22:**

Identify all bases for the testimony by Gilead's CEO, Mr. Daniel O'Day, on May 16, 2019 to the U.S. House of Representatives' Committee on Oversight and Reform that "[w]e believe the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with the agency."  Your answer should discuss in detail Gilead's retention of Sidley Austin LLP for Gilead's eventual IPR petitions (IPR2019-01453, -01454, 01455, and 1456) prior to Mr. O'Day's statement, and which Gilead personnel, including Gilead's senior management, were aware that Sidley Austin LLP was preparing these IPRs prior to Mr. O'Day's testimony, *see, e.g.* IPR2019-01453 Ex. 1103 (Szekeres Declaration, executed 2/20/2018).

**Interrogatory No. 23:**

Identify every category of costs Gilead incurred, the amount of each cost, and the bases for those costs (including for example, whether the cost reflects a market price, standard cost, internal accounting, etc., and how the cost was calculated) relating to any research submitted by Gilead in support of the 2012 FDA approval of the Truvada for PrEP® use indication.  Your should include the center, office or organization that incurred the cost; the date when the cost was incurred; and whether the cost was accounted for on cash or accrual basis.

**Interrogatory No. 24:**

Identify every category of costs Gilead incurred, the amount of each cost, and the bases for those costs (including for example, whether the cost is a market price, standard cost, internal accounting, etc., and how the cost was calculated) relating to any PrEP research Gilead asserts it

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

UNITED STATES OF AMERICA,

    *Plaintiff & Counterclaim-Defendant*,

    v.

GILEAD SCIENCES, INC. and
GILEAD SCIENCES IRELAND UC,

    *Defendants & Counterclaim-Plaintiff.*

C.A. No. 19-02103-MN

**Contains Pages Marked as
RESTRICTED INFORMATION—
Subject to Protective Order**

---

### DEFENDANTS' OBJECTIONS & RESPONSES
### TO PLAINTIFF'S INTERROGATORY NOS. 19-28

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Gilead Sciences, Inc. ("GSI") and Gilead Sciences Ireland UC ("GSIUC") (collectively, "Defendants") hereby serve their objections and responses to Plaintiff United States of America's (the "Government" or "Plaintiff") Interrogatory Nos. 19-28, served on October 5, 2021.

### GENERAL OBJECTIONS

Defendants herein incorporate by reference each of the General Objections set forth in Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories, dated October 21, 2020. Defendants incorporate each of those General Objections into their responses for each Interrogatory, regardless of whether Defendants expressly refer to each General Objection in Defendants' response to a specific Interrogatory.

– 1 –

CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 21:**

Identify all factors Gilead considers in pricing Truvada®. Your response should include all of the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives' Committee on Oversight and Reform on May 16, 2019 during which Mr. O'Day, addressed the pricing of Truvada and the factors Gilead considered in pricing Truvada including his statement that "[the] potentially most important [factor] is exactly to your point. What are the access limitations that might be created by setting that price, and we anticipate thatin advance" and that "[w]hen we set the price for Truvada originally, we took into account a variety of things, including the impact upon the healthcare system."

**Response to Interrogatory No. 21:**

In addition to the General Objections set forth above and incorporated here, Defendants object to this Interrogatory as overly broad, unduly burdensome, seeking irrelevant information, and/or not proportional to the needs of the case, including to the extent that it seeks "all factors Gilead considers in pricing Truvada®" and asks Defendants to provide "all of the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives' Committee on Oversight and Reform on May 16, 2019." Despite Gilead's many repeated requests, the Government has not explained the relevance of the detailed pricing information that the government seeks. Ltr. Gilead to Gov't at 3, 14 (Sep. 25, 2020); Ltr. Gilead to Gov't at 5-6 (Jan. 8, 2021); Ltr. Gilead to Gov't at 24 (Mar. 25, 2021); Ltr. Gilead to Gov't at 8 (Oct. 20, 2021). The Government has not identified how the information is relevant to its novel, unsupported "economic harm" theory or to a reasonable royalty analysis under the *Georgia Pacific* factors and a hypothetical negotiation in or after 2015. *See* Ltr. Gilead to Gov't (Oct. 20, 2021). The Government has not justified the burden of searching for information that is more than a decade old and predates the earliest alleged damages period by over five years.

Defendants also object to this Interrogatory to the extent it is unlimited in time and therefore seeks information beyond that which is discoverable under the Delaware Default Standard for Discovery, ¶ 4(e), including information prior to November 6, 2013 (i.e., six years

– 38 –

CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER

before the filing of the government's complaint).  On the basis of these objections, Defendants

will not conduct a search for information responsive to this Interrogatory beyond what is

contained in documents that Defendants have already produced in this litigation.  Gilead's

current database for financial information has been in place since 2011, so Gilead has already

produced the pricing information that has been maintained in the ordinary course of business.

The burden of searching for the information the government seeks prior to 2011 is not

proportional to the needs of the case given the information Gilead has already produced.

Defendants remain willing to meet and confer about any additional information requested by this

Interrogatory if the government provides a specific and detailed explanation of the relevance of

this information, legal authority recognizing the relevance of such information, and an

explanation of the government's position of why good cause exists to deviate from the six-year

limitation established in the Default Standard, as Defendants have previously requested.

Defendants also object to this Interrogatory to the extent it seeks information beyond that

which is discoverable under the Delaware Default Standard for Discovery, ¶ 4(e), including

information prior to November 6, 2013.

Moreover, "the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S.

House of Representatives' Committee on Oversight and Reform on May 16, 2019 during which

Mr. O'Day, addressed the pricing of Truvada and the factors Gilead considered in pricing

Truvada" are not relevant to the claims and defenses in this action.  This subpart of the

Interrogatory also plainly seeks communications from counsel that are protected by at least the

attorney-client privilege.  Defendants will not specifically search for identify the specific

information used by Mr. O'Day to prepare for his congressional testimony in responding to this

Interrogatory.  *Cf.* Ltr. from Gilead to Government (Nov. 18, 2021) (objecting to government's

CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER

30(b)(1) deposition notice to Mr. O'Day and explaining, in detail, why discovery from Mr. O'Day is improper and unnecessary).

Defendants also object to this Interrogatory as vague and ambiguous, particularly to the extent it seeks information regarding "how the pricing determinations were made, by whom, and what considerations and bases were considered by those individuals at every relevant time for each pricing."

Defendants also object to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity. Defendants further object to this Interrogatory as premature and untimely, as expert discovery has yet to begin, and Defendants' investigation of the facts relevant to this action is ongoing.

Defendants also object to this Interrogatory because it contains multiple discrete subparts, each of which constitutes an individual Interrogatory in accordance with Rule 33(a)(1) and Local Rule 26.1(a) because, e.g., it requests, (1) "all factors Gilead considers in pricing Truvada®" and (2) "all of the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives' Committee on Oversight and Reform on May 16, 2019." Accordingly, Defendants' reserve their rights to decline to answer subsequent interrogatories that exceed the limitation of the number of interrogatories allowed by the Federal Rules of Civil Procedure and the Court's Scheduling Order (D.I. 27).

Subject to the foregoing General and Specific Objections, Defendants respond as follows:

The burden of deriving the information sought by this interrogatory from would be substantially the same for the government as for the Defendants, and Defendants direct the government, pursuant to Rule 33(d), to GILDDE00527062; GILDDE00531558;

**CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER**

GILDDE00536598.  Defendants maintain their objection that Mr. O'Day's congressional testimony is not a proper subject for discovery; however, Defendants note that they have produced in this litigation the materials that Gilead produced to Congress in connection with that testimony (i.e., GILDDE00523405-GILDDE00549209, which Gilead produced on April 16, 2021).

Defendants' investigation of the facts relevant to this action is ongoing, and Defendants reserve the right to supplement this response upon receipt of additional information obtained through fact and expert discovery and in accordance with the Court's Scheduling Order (D.I. 27).

CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 22:**

Identify all bases for the testimony by Gilead's CEO, Mr. Daniel O'Day, on May 16, 2019 to the U.S. House of Representatives' Committee on Oversight and Reform that "[w]e believe the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with the agency." Your answer should discuss in detail Gilead's retention of Sidley Austin LLP for Gilead's eventual IPR petitions (IPR2019-01453, - 01454, 01455, and 1456) prior to Mr. O'Day's statement, and which Gilead personnel, including Gilead's senior management, were aware that Sidley Austin LLP was preparing these IPRs prior to Mr. O'Day's testimony, *see, e.g.* IPR2019-01453 Ex. 1103 (Szekeres Declaration, executed 2/20/2018).

**Response to Interrogatory No. 22:**

In addition to the General Objections set forth above and incorporated here, Defendants object to this Interrogatory as overly broad, unduly burdensome, seeking irrelevant information, and/or not proportional to the needs of the case, including to the extent that it seeks "all bases for the testimony by Gilead's CEO, Mr. Daniel O'Day, on May 16, 2019 to the U.S. House of Representatives' Committee on Oversight and Reform" about the quoted statement and information about "Gilead's retention of Sidley Austin LLP for Gilead's eventual IPR petitions (IPR2019-01453, - 01454, 01455, and 1456) prior to Mr. O'Day's statement, and which Gilead personnel, including Gilead's senior management, were aware that Sidley Austin LLP was preparing these IPRs prior to Mr. O'Day's testimony."  "[T]he bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives' Committee on Oversight and Reform on May 16, 2019 that '[w]e believe the CDC patents are invalid'" are not relevant because Defendants have already provided their initial invalidity contentions and will supplement them in accordance with the Scheduling Order in this action.  *See* Defs.' 1st Am. Initial Invalidity Contentions (Feb. 3, 2021).  Moreover, Mr. O'Day's understanding of the invalidity of the Patents-in-Suit was based entirely on communications with counsel and is therefore protected from disclosure by at least the attorney-client privilege.  Likewise, "the bases for the testimony of Gilead's CEO, Mr. Daniel O'Day, to the U.S. House of Representatives'

CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER

Committee on Oversight and Reform on May 16, 2019 that … we've chosen not to challenge those patents because we value our collaborative relationship with the agency" are also based entirely on communications with counsel and are therefore protected from disclosure by at least the attorney-client privilege.  On the bases of these objections, Defendants will not provide a response to the first sentence of this Interrogatory.

Defendants object to the second sentence of this Interrogatory because it is not directed to the same subject matter as the first.  *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter"—singular—"that may be inquired into under Rule 26(b).").  Moreover, Defendants object to this part of the Interrogatory as overly broad, unduly burdensome, seeking irrelevant information, and/or not proportional to the needs of the case.  "Gilead's retention of Sidley Austin LLP for Gilead's eventual IPR petitions (IPR2019-01453, - 01454, 01455, and 1456) prior to Mr. O'Day's statement, and which Gilead personnel, including Gilead's senior management, were aware that Sidley Austin LLP was preparing these IPRs prior to Mr. O'Day's testimony" is also not relevant to any claim or defense in this action.  The content of any communications between Gilead and Sidley Austin LLP about whether to file an IPR petition is also protected from disclosure by at least the attorney-client privilege and the work-product doctrine.  On the bases of these objections, Defendants will not provide a response to the second sentence of this Interrogatory.

To the extent not already addressed in the preceding objections, Defendants object to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

**CONTAINS RESTRICTED INFORMATION—SUBJECT TO PROTECTIVE ORDER**

Defendants also object to this Interrogatory as vague and ambiguous, particularly to the extent it seeks information regarding "all bases" for Mr. O'Day's testimony and uses the ambiguous phrases "Gilead personnel," "Gilead's senior management," and "preparing these IPRs."

Defendants also object to this Interrogatory because it contains multiple discrete subparts, each of which constitutes an individual Interrogatory in accordance with Rule 33(a)(1) and Local Rule 26.1(a) because, e.g., it requests, (1) "all bases for the testimony by Gilead's CEO, Mr. Daniel O'Day, on May 16, 2019 to the U.S. House of Representatives' Committee on Oversight and Reform that '[w]e believe the CDC patents are invalid, but we've chosen not to challenge those patents because we value our collaborative relationship with the agency'" and (2) "Gilead's retention of Sidley Austin LLP for Gilead's eventual IPR petitions (IPR2019-01453, -01454, 01455, and 1456) prior to Mr. O'Day's statement, and which Gilead personnel, including Gilead's senior management, were aware that Sidley Austin LLP was preparing these IPRs prior to Mr. O'Day's testimony."  Accordingly, Defendants reserve their rights to decline to answer subsequent interrogatories that exceed the limitation of the number of interrogatories allowed by the Federal Rules of Civil Procedure and the Court's Scheduling Order (D.I. 27).

In view of the foregoing General and Specific Objections, Defendants will not respond to this Interrogatory. Defendants' positions regarding the invalidity of the Patents-in-Suit have been, and will continue to be, set out in Defendants' invalidity contentions as required by the Scheduling Order.

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>        *Plaintiff–Counterclaim Defendant*,<br><br>        v.<br><br>GILEAD SCIENCES, INC.<br>        *Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND<br>UC,<br>        *Defendant*. | Civil No. 1:19-cv-02103-MN |

## PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff United States of America (Government or United States) submits this Third Set of Requests for Production of Documents and Things (Nos. 251-265) to Gilead Sciences, Inc. and Gilead Sciences Ireland UC (collectively, Gilead) to produce the following documents and things within the possession, custody or control of Gilead or its counsel within thirty (30) days of service, in accordance with the Definitions and Instructions below.  Documents should be produced to:  Walter W. Brown, Commercial Litigation Branch, U.S. Department of Justice, 1100 L Street, N.W., Room 8504, Washington, D.C. 20005, walter.brown2@usdoj.gov.

## DEFINITIONS

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in these requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1

Prophylaxis (PrEP) and the Needs of At-Risk Californians," Center for HIV Identification, Prevention and Treatment Services (November 2004), including Greg Szekeres, Thomas J. Coates, PhD, Simon Frost, DPhil, Arleen Leibowitz, PhD, and Steven Shoptaw, PhD, regarding the Patents-in-Suit.

**REQUEST NO. 260:**  All documents supporting Defendants' position that Defendants have not willfully infringed any asserted claim of the Patents-in-Suit, including but not limited to all documents supporting the factual bases for Defendants' Tenth Affirmative Defense of No Willfulness.

**REQUEST NO. 261:**  Documents supporting and underlying all of Gilead CEO Daniel O'Day's statements before the House Oversight Committee in May 2019 that the pricing of Truvada® was based on "four things," including "[t]he third and potentially most important . . . . [w]hat are the access limitations that might be created by setting that price[?]."  HIV Prevention Drug: Billions in Corporate Profits After Millions in Taxpayer Investments: Hearing Before the H. Comm. on Oversight and Reform, 116th Cong. 31 (2019) [hereinafter   H.   Comm.   Hearing]   (testimony   of   Mr.   Daniel   O'Day), https://www.govinfo.gov/content/pkg/CHRG-116hhrg36660/pdf/CHRG-116hhrg36660.pdf [https://perma.cc/M5KY-YPFP].

**REQUEST NO. 262:**  Documents supporting and underlying Gilead CEO Daniel O'Day's statements before the House Oversight Committee in May 2019 that "the there was no additional increase to the price [of Truvada®] as a result of the additional [PrEP] indication."  H. Comm. Hearing at 31 (statement of Mr. Daniel O'Day).

**REQUEST NO. 263:**  All agendas, meeting presentation materials, meeting minutes and similar documents relating to meetings of the Gilead Board of Directors or Gilead's Executive

# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA,
    *Plaintiff–Counterclaim Defendant*,

    v.

GILEAD SCIENCES, INC.
    *Defendant–Counterclaim Plaintiff,*

AND GILEAD SCIENCES IRELAND
UC,
    *Defendant*.

Civil No. 1:19-cv-02103-MN

## **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff United States of America (Government or United States) submits this First Set of Requests for Production of Documents and Things to Gilead Sciences, Inc. and Gilead Sciences Ireland UC (collectively, Gilead) to produce the following documents and things within the possession, custody or control of Gilead or its counsel within thirty (30) days of service, in accordance with the Definitions and Instructions below.  Documents should be produced to:  Walter W. Brown, Commercial Litigation Branch, U.S. Department of Justice, 1100 L Street, N.W., Room 8504, Washington, D.C. 20005, walter.brown2@usdoj.gov.

## **DEFINITIONS**

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in these requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

**REQUEST NO. 122:** All documents supporting or refuting Gilead's assertion that TAF is not a tenofovir ester or Gilead's assertion that TAF is not a tenofovir prodrug within the scope of the Patents-in-Suit.

**REQUEST NO. 123:** Documents sufficient to identify any tenofovir esters and/or tenofovir prodrugs developed or researched by Gilead.

**REQUEST NO. 124:** Documents sufficient to identify any esters developed or researched by Gilead.

**REQUEST NO. 125:** All documents and things that Gilead contends support any allegation regarding the level of ordinary skill in the art for each claim of the Patents-in-Suit, and all documents that refute or tend to refute any such allegation.

**REQUEST NO. 126:** All infringement, non-infringement, validity, invalidity, enforceability, or unenforceability analyses of any of the Patents-in-Suit, including opinions of counsel.

**REQUEST NO. 127:** All analyses, tests, studies, or investigations of whether Gilead infringes any claim of the Patents-in-Suit.

**REQUEST NO. 128:** All analyses or evaluations of the value of any of the Patents-in-Suit.

**REQUEST NO. 129:** All documents relating to Gilead's policies, practices, or guidelines relating to the patent rights of others, including the analysis of patents to ensure Gilead does not infringe any claim of such patents.

**REQUEST NO. 130:** All documents relating to when and how Gilead first became aware of each of the Patents-in-Suit, including what action, if any, Gilead took upon learning of the Patents-in-Suit.

**REQUEST NO. 131:** All documents constituting or relating to Gilead's action in response to its awareness of the Patents-in-Suit, including any communication with Congress or testimony

28

provided to Congress, any decision or opinion by Gilead to file suit, not to file suit, or to delay filing suit against the Government, including any litigation or administrative proceeding relating to the Patents-in-Suit.

**REQUEST NO. 132:** All documents relating to when and how Gilead first became aware of the publications referenced in Paragraphs 129–133 of the Government's Complaint (D.I. 1).

**REQUEST NO. 133:** All documents relating to any alleged Prior Art to the Patents-in-Suit.

**REQUEST NO. 134:** All English language patents or publications on which Gilead intends to rely for any purpose in this lawsuit including any alleged Prior Art.

**REQUEST NO. 135:** Any foreign patents or publications, including all English translations thereof, on which Gilead intends to rely for any purpose in this lawsuit including any alleged Prior Art.

**REQUEST NO. 136:** All documents that Gilead contends support any allegation relating to the prior conception or reduction to practice of the subject matter claimed in any of the Patents-in-Suit, and all documents that refute or tend to refute any such allegation.

**REQUEST NO. 137:** All documents, including patents, printed publications, and any alleged Prior Art, that Gilead contends support, either solely or in combination, any allegation that any of the claims of the Patents-in-Suit are invalid, including all documents relating to any investigation or analysis thereof, and all documents that refute or tend to refute any such allegation.

**REQUEST NO. 138:** All communications within or between Gilead and any third party regarding Prior Art to the Patents-in-Suit, and all documents relating to any Prior Art search, investigation, and/or analysis of the Patents-in-Suit and the Prior Art itself.

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff & Counterclaim-Defendant, | |
| v. | C.A. No. 19-02103-MN |
| GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC, | |
| Defendants & Counterclaim-Plaintiff. | |

### DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 251-265)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Delaware Default Standard, Defendants Gilead Sciences, Inc. ("GSI") and Gilead Sciences Ireland UC ("GSIUC") (collectively, "Defendants") hereby respond to Plaintiff United States of America's ("Plaintiff") Third Set of Requests for Production of Documents and Things (Nos. 251-265), served on October 4, 2021.

Defendants will make reasonable efforts to respond to the Requests, subject to their objections, as Defendants understand and interpret each Request.  If Plaintiff subsequently asserts an interpretation of any Request that differs from Defendants' interpretation, Defendants reserve the right to supplement or amend their objections and responses.

None of Defendants' objections or responses is an admission regarding the existence, relevance, or admissibility of any documents or things, or to the truth or accuracy of any statement or characterization contained in any Request.

Subject to and without waiving the foregoing objections, Defendants will produce non-privileged, responsive documents relating to Defendants' position that Defendants have not willfully infringed any asserted claim of the Patents-in-Suit, to the extent that such documents exist, are within Defendants' possession, custody, or control, and are located after a reasonable search.

**REQUEST NO. 261:**

**Documents supporting and underlying all of Gilead CEO Daniel O'Day's statements before the House Oversight Committee in May 2019 that the pricing of Truvada® was based on "four things," including "[t]he third and potentially most important. . . . [w]hat are the access limitations that might be created by setting that price[?]." HIV Prevention Drug: Billions in Corporate Profits After Millions in Taxpayer Investments: Hearing Before the H. Comm. on Oversight and Reform, 116th Cong. 31 (2019) [hereinafter H. Comm. Hearing] (testimony of Mr. Daniel O'Day), https://www.govinfo.gov/content/pkg/CHRG-116hhrg36660/pdf/CHRG-116hhrg36660.pdf [https://perma.cc/M5KY-YPFP].**

**RESPONSE TO REQUEST NO. 261:**

In addition to the General Objections set forth above and incorporated here, Defendants object to this request to the extent that it seeks documents that are protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

Defendants object to this request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the request seeks documents that have no relationship to the asserted claims of the Patents-in-Suit, the accused products, or the issues in this litigation.

Defendants object to this request as unduly burdensome to the extent it seeks production of documents in the public domain or otherwise equally accessible to Plaintiff as to Defendants.

11

Defendants object to this request to the extent that it seeks documents or things that are not within Defendants' possession, custody, or control.

Defendants also object to this request to the extent it seeks information beyond that which is discoverable under the Delaware Default Standard for Discovery, ¶ 4(e), including information prior to November 6, 2013.

Defendants further object that this request is cumulative and duplicative of other Requests served by Plaintiff, including at least Requests Nos. 21 and 113. Defendants have already produced non-privileged, responsive documents sufficient to show historical profitability of Truvada® and Descovy® since 2011, which included detailed pricing information and all information regarding pricing that was provided to Congress in connection with Mr. O'Day's testimony, that were located after a reasonable search.

In view of the forgoing objections, Defendants will not search for or produce additional documents responsive to this request.

**REQUEST NO. 262:**

**Documents supporting and underlying Gilead CEO Daniel O'Day's statements before the House Oversight Committee in May 2019 that "the there was no additional increase to the price [of Truvada®] as a result of the additional [PrEP] indication." H. Comm. Hearing at 31 (statement of Mr. Daniel O'Day).**

**RESPONSE TO REQUEST NO. 262:**

In addition to the General Objections set forth above and incorporated here, Defendants object to this request to the extent that it seeks documents that are protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

12

Defendants object to this request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the request seeks documents that have no relationship to the asserted claims of the Patents-in-Suit, the accused products, or the issues in this litigation.

Defendants object to this request as unduly burdensome to the extent it seeks production of documents in the public domain or otherwise equally accessible to Plaintiff as to Defendants.

Defendants object to this request to the extent that it seeks documents or things that are not within Defendants' possession, custody, or control.

Defendants object to this request to the extent it seeks information beyond that which is discoverable under the Delaware Default Standard for Discovery, ¶ 4(e), including information prior to November 6, 2013.

Defendants further object that this request is cumulative and duplicative of other Requests served by Plaintiff, including at least Requests Nos. 21 and 113. Defendants have already produced non-privileged, responsive documents sufficient to show historical profitability of Truvada® and Descovy® since 2011, which included detailed pricing information and all information regarding pricing that was provided to Congress in connection with Mr. O'Day's testimony, that were located after a reasonable search.

In view of the forgoing objections, Defendants will not search for or produce additional documents responsive to this request.

**REQUEST NO. 263:**

**All agendas, meeting presentation materials, meeting minutes and similar documents relating to meetings of the Gilead Board of Directors or Gilead's Executive Committee (EC) that discussed pricing of Truvada for PrEP®, Descovy for PrEP®, or the Patents in-Suit from 2007 to present.**

# EXHIBIT J

WILMERHALE

November 24, 2021

David B. Bassett

+1 212 230 8858 (t)
+1 212 230 8888 (f)
david.bassett@wilmerhale.com

*Via Electronic Mail*

Walter W. Brown
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Walter.Brown2@usdoj.com

Re: ***United States v. Gilead Sciences, Inc.*,**
**C.A. No. 19-2103-MN (D. Del.)**

Wally:

We write in response to the government's November 22, 2021 letter ("Ltr.") regarding Gilead's document productions.

We categorically disagree with your allegation that Gilead's document production is deficient. As we noted in our last letter about this issue, the government appears to be dusting off vague complaints about Gilead's productions after many months of silence in a transparent attempt to obfuscate the government's own egregious discovery violations. The government raised absolutely no complaints about the specific content of Gilead's productions in the 7 months between March 9, 2021, and October 6, 2021—the night before the parties were to contact the Court about the government's deficient productions. We responded to your October 6 letter two weeks later, on October 20, 2021, as you requested. The government did not write to us again for more than a month. Your most recent letter characterizes these alleged disputes as about "highly relevant documents" and demands "immediate production" (Ltr. at 1), but this characterization seems dubious, at best, in light of the government's extreme lack of diligence in pursuing these alleged issues. Moreover, the rhetoric in your most recent letter that mischaracterizes Gilead's positions—"defiant," "unsustainable," "unreasonable"—obviously seems intended for an audience other than us and does not make your demands appear any less dubious. And despite declaring an "impasse" 10 separate times and demanding a "final meet and confer," your letter ignores that we have ***never*** met and conferred about many of the purported disputes that you raise (e.g., at least the issues raised in sections I, III, and VI of your letter).

As explained below, we remain willing to meet and confer about the government's alleged concerns, as we also expressed in our October 20, 2021 letter. Nonetheless, we must respond to certain elements of your letter, as we do below. Given the transparently pretextual nature of the government's complaints and the late stage of fact discovery (and your demand for a response in less than two days in the week of Thanksgiving), we have limited our response to

WilmerHale

your main points; however, again, we categorically disagree that there are deficiencies in Gilead's production, and we are willing to discuss any specific issue that you do not believe is addressed below in a meet and confer.

*First*, the government seeks additional "[d]ocuments recording Dr. Janssen's employment with Gilead." Ltr. at 1. We have produced Dr. Janssen's employment file. Your letter ignores that one of the documents that Gilead produced many months ago is a scan of Dr. Janssen's *entire* HR file as stored in the ordinary course of business. We are willing to re-produce the file with breaks between each document if that would resolve this dispute, but the fact remains that the government has *all* the pages from Dr. Janssen's HR file and has had them for many months. Moreover, after we received your October 6, 2021 letter (after months of the government's silence about any alleged issues in Gilead's production), we again searched for additional documents related to Dr. Janssen's employment. We located a small number of additional files, such as calendar invitations for his interview meetings, and we produced those files on November 23, 2021. In light of these unequivocal representations, if there is still something that you believe exists and is not in our production, please let us know what it is and we will search for it.

*Second*, the government again baselessly suggests that Gilead is withholding "patent search alerts and disclosures provided to Gilead." Ltr. at 2. But as we stated in our last letter, we have conducted a reasonable search for all the requested patent alerts, and we have produced the alerts that are responsive to the government's requests. We are not aware of *any* responsive patent alerts from *any* of the periods identified in your October 6, 2021 letter that have not been produced—indeed, we re-confirmed this after receiving your October 6, 2021 letter. Your November 22 letter further states that "Gilead must produce a witness in response to the Government's Rule 30(b)(6) notices to address these alerts, and why they were only received in certain time periods." Ltr. at 2. But as you must know from the response to the government's 30(b)(6) notice that we served before you sent your November 22 letter, Gilead has *agreed* (subject to its objections) to produce a witness in response to the government's Topic No. 48, which addresses this issue.

*Third*, the government has still failed to identify any authority requiring Gilead to do a full ESI collection and search-term-based review from ten "additional Gilead custodians," which is what we understand the government to be seeking. The Delaware Default Standard, which governs this case, requires that complete search-term reviews only be done over ESI held by "[t]he 10 custodians most likely to have discoverable information in their possession, custody or control." ESI R. 3(a). Gilead did that, and the government did not object (and still has not objected) to Gilead's selection of its top 10 custodians.[1] To the extent we have identified

---

[1] We note that in the briefing for the last discovery conference, the government incorrectly represented to the Court that the government searched 11 custodians beyond this requirement "at Gilead's request." D.I. 203 at 2. This is mistaken—Gilead never requested that the government collect and search documents from more than the 10 custodians required by the Delaware Default Standard. On July 31, 2020, the government disclosed ten ESI custodians—all of whom were CDC scientists involved in the research and development that resulted in the asserted

WILMERHALE

relevant, non-duplicative information held by the "additional" individuals identified in the government's letters, we have produced it.  But nothing requires Gilead to do a complete ESI collection and search-term-based review from these additional custodians, and Gilead will not do

---

patents.  The government did not disclose any custodians from FDA who were likely to have information relevant to Gilead's affirmative defenses.  Gilead objected to the *selection* of ESI custodians in the government's Rule 3 disclosures, but Gilead never objected to the *number* of ESI custodians.  We expressly clarified this for the government in our March 25, 2021 letter:

> The government's February 19 letter mischaracterizes Gilead's position by stating that "Mr. Cook states in his letter that the Government should agree to add three additional custodians and 'any of the undisclosed other individuals from whom the government intends to collect and produce documents.'  2021-01-20 Ltr. Cook to Gov't at 4."  This sentence of Gilead's January 20 letter stated, in full: "Please *either* amend the government's ESI Rule 3 disclosures to add these three individuals (and any of the undisclosed other individuals from whom the government intends to collect and produce documents) *or* explain why—when considering the full scope of the claims and defenses in this case, including Gilead's unenforceability defenses—the government does not believe that these three individuals are among the '[t]he 10 custodians most likely to have discoverable information in their possession, custody or control.'"  The former approach would obviously resolve this dispute, but as we have repeatedly stated (in letters the government quotes, Gov't Ltr. at 17), it is not required by the rules.  But as the portion of our January 20 letter that the government omitted notes, if the government intends to limit its custodial searches to the minimum number of custodians required by the rules, it must explain its decision to exclude from its ten custodians the three individuals most likely to have information specifically relevant to Gilead's defenses.

Ltr. from Gilead to Gov't at 15 n.10 (Mar. 25, 2021).  We also explained this distinction to the government orally in at least our April 5, 2021 meet and confer.  On May 7, 2021, the government *volunteered* to add additional FDA custodians to respond to Gilead's document requests, Ltr. from Gov't to Gilead at 5 (May 7, 2021), including individuals that Gilead had never identified in the parties' correspondence.  Gilead did not object to the government's proposal to add custodians and use search terms to satisfy its discovery obligations, but the government's decision to add custodians beyond the 10 required by the Default Standard was the government's alone—Gilead did not request it.

WILMERHALE

it at this late stage of the case—particularly after the government was silent about this issue for 7 months.[2]

*Fourth*, your letter still fails to identify any reason that the government needs "agendas, presentations, and minutes from meetings of [Gilead's] Board of Directors and Executive Committee" (Ltr. at 4), nor does it attempt to justify why this request is proportional to the needs of this case. Your letter calls these documents "crucial," but it does not attempt to provide any justification for that characterization, nor does it identify any information that is likely to be in these documents that is not contained in other documents that Gilead has produced. And as your letter acknowledges, the government continues to insist that no information about entirely unrelated products can be redacted from these highly sensitive documents—that position alone increases the burden of this request and contributes to making it disproportionate to the needs of this case.[3]

---

[2] None of the arguments in the government's letter change this. First, if the government believed that individuals like Terrance Dahl, Daniel O'Day, or Traci Carrithers should have been among Gilead's ESI custodians, the time to raise that issue was when Gilead made its ESI disclosures *in July 2020*. The government did not do that—it first raised this issue in February and March 2021, abandoned it for 7 months, and resuscitated it in October 2021, the night before the parties were to discuss contacting the Court about the government's severely deficient productions. Second, as to Dr. Dahl, he is clearly not in the same position as Dr. Subbarao, as the government suggests. Ltr. at 3. Dr. Subbarao's study (and its limitations) was known to the inventors of the patents-in-suit, many of whom participated in Dr. Subbarao's study, and it was cited and discussed by the government during prosecution of the patents-in-suit as a basis for patentability. Dr. Dahl, by contrast, is simply a prior art inventor who is unaffiliated with the inventors and the patents-in-suit. (And, as you know, Gilead objected to the government's failure to include Dr. Subbarao among its top-10 ESI custodians in August 2020, but the government still has not suggested that Dr. Dahl should have been among Gilead's top 10 custodians. *See* Ltr. from Gilead to Gov't at 4 (Aug. 27, 2020).) Third, your letter still does not provide any justification for your request of a complete ESI search and production from Gilead's CEO, Mr. O'Day. And your letter mischaracterizes the record about the government's request to depose Mr. O'Day—your letter states that "[o]n November 18, Gilead represented for the first time that it would not present Mr. O'Day for deposition" (Ltr. at 3 n.3), but as you well know, Gilead immediately objected to this deposition when the government first raised it on our October 21, 2021 meet and confer. *See* Email from J. Cox to Counsel (Oct. 22, 2021). Despite that objection, the government proceeded with noticing the deposition without providing any justification of its request.

[3] We note that, despite the government's strenuous objections to the use of relevance and non-responsiveness redactions, the government has repeatedly applied them to its own documents. The government twice excerpted documents for "non-responsiveness" earlier in this case and produced full versions only after Gilead reminded the government that these omissions are inconsistent with a provision of the protective order that the government itself insisted upon. *See, e.g.*, Ltr. from Gilead to Gov't at 2 (Nov. 18, 2021); Ltr. from Gilead to Gov't at 7 (July 12,

# EXHIBIT K

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>    *Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.<br>    *Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND<br>UC,<br>    *Defendant*. | Civil No. 1:19-cv-02103-MN |

**PLAINTIFF THE UNITED STATES OF AMERICA'S**
**FEDERAL RULE OF CIVIL PROCEDURE 26(A)(1) INITIAL DISCLOSURES**

In accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure, the United States of America (United States or Government), acting on behalf of its Department of Health and Human Services (HHS), serves the following initial disclosures. The Government makes these initial disclosures on the basis of information currently available to it and may supplement or amend these disclosure under Rule 26(e) of the Federal Rules of Civil Procedure as the Government's own investigation and discovery into the facts and circumstances at issue in this litigation proceed.

The Government reserves the right to call any witnesses or rely on any documents or categories of documents any other party in the litigation may identify in its Rule 26(a)(1) disclosures or in discovery for any purpose, including for purposes of rebuttal.

In making these disclosures, the Government does not concede the relevance or admissibility of any document disclosed and does not waive its right to object to the admissibility of any such document on any grounds, including relevance. The Government makes these initial disclosures subject to all privileges, protections, and defenses of every kind available to the

Government, including, without limitation, the attorney-client privilege, the work-product doctrine, or the common-interest doctrine, none of which the Government waives.

Subject to the foregoing, the Government provides the following disclosures:

**A.    Identities of Individuals Likely to Have Knowledge of Discoverable Information That May Be Used to Support the Government's Claims or Defenses**

Based on the reasonable investigation conducted to date, the Government currently believes that the following individuals likely have discoverable information that the Government may use to support its claims or defenses or otherwise oppose Gilead's claims or defenses.

| Name | Subject Matter | Contact Information |
|---|---|---|
| Dr. Walid Heneine<br><br>*Chief, Laboratory Branch, NCHHSTP/DHAP, CDC* | Inventor on U.S. Patent Nos.  9,044,509, 9,579,333, 9,927,191, and 10,335,423 (together, the Patents-in-Suit). | Dr. Walid Heneine may be contacted through counsel at the Department of Justice.<br><br>WALTER W. BROWN<br>Senior Litigation Counsel<br>Department of Justice<br>Commercial Litigation<br>Branch Civil Division<br>U.S. Department of Justice<br>Washington, D.C.  20530<br>Telephone:  (202) 307-0341<br>Facsimile:  (202) 307-0345<br>Email: walter.brown2@usdoj.gov |
| Dr. Jose Gerardo Garcia-Lerma<br><br>*Team Lead, DDID/NCHHSTP/DHPSE, CDC* | Inventor on the Patents-in-Suit. | Dr. Jose Gerardo Garcia-Lerma may be contacted through counsel at the Department of Justice. |
| Dr. Ronald A. Otten<br><br>*Health Scientist, DDPHSS/OD, CDC* | Inventor on the Patents-in-Suit. | Dr. Ronald Otten may be contacted through counsel at the Department of Justice. |

| Dr. Howard Jaffe | Material transfer agreements with CDC; authorship of iPrex article in *New England Journal of Medicine* | Gilead |
| --- | --- | --- |
| Daniel O'Day | Pricing, marketing, cost, and sales of Gilead's PrEP products; movement of patients from Truvada for PrEP® to Descovy for PrEP® | Gilead |
| Dr. John F. Milligan | Pricing, marketing, cost, and sales of Gilead's PrEP products; Gilead's development efforts and investment in PrEP; Gilead's reliance on clinical trials sponsored or funded by Government or other parties. | Gilead |
| Dr. John C. Martin | Pricing, marketing, cost, and sales of Gilead's PrEP products; Gilead's development efforts and investment in PrEP; Gilead's reliance on clinical trials sponsored or funded by Government or other parties. | Gilead |
| Current or former employees or representatives of the Government, Gilead, or third parties who may be necessary for the admissibility or authentication of documents or evidence. | | |
| Individuals identified by Gilead in its 26(a)(1) initial disclosures. | | |