IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| v. | ) ) ) |
| GILEAD SCIENCES, INC., | ) C.A. No. 19-2103 (MN) |
| Defendant/Counterclaim Plaintiff, | ) ) ) |
| and GILEAD SCIENCES IRELAND UC, | ) ) |
| Defendant. | ) |

## ORDER AFTER PRETRIAL CONFERENCE

At Wilmington, this 28th day of April 2023, after a Pretrial Conference and upon consideration of the: (1) Proposed Pretrial Order (D.I. 433 & 434), (2) parties' motions for summary judgment (D.I. 344, 350 & 362), (3) parties' *Daubert* motions (D.I. 343 & 347) and (4) discussion at the April 24, 2023 Pretrial Conference (D.I. 447), IT IS HEREBY ORDERED that:

1. The Proposed Pretrial Order is ADOPTED as modified by any discussion at the Pretrial Conference. (*See* D.I. 447).

2. A six-day jury trial will begin on May 2, 2023, at 9:00 a.m. with jury selection.[1] Subsequent trial days will begin at 9:00 a.m. Each side should be prepared to present its case to the jury until 4:30 p.m. of each trial day, although the end of the jury trial day may, at the discretion of the Court, be earlier than 4:30 p.m. The bench trial will take place on May 4, May 8 and May

---

[1] Plaintiff is responsible for providing enough copies of the *voir dire* and a writing utensil for each member of the jury pool, which is estimated to be forty (40) people. Those must be delivered to the Clerk's office by NOON on May 1, 2023.

9, 2023 after the jury is dismissed for the day.  Each side should be prepared to present its case to the bench until 6:30 p.m. of each trial day.

3. The trial will be timed.  Each side is allowed up to fourteen (14) hours in the jury trial for its opening statement, its direct, cross-examination and redirect, of witnesses, closing arguments and argument of evidentiary issues and any other motions.  Each side is allowed up to six (6) hours in the bench trial its opening statement, its direct, cross-examination and redirect, of witnesses, closing arguments and argument of evidentiary issues and any other motions.  Each side shall reserve one (1) hour of its fourteen (14) hours for closing arguments before the jury as well as one (1) hour of its six (6) hours for closing arguments before the bench.[2]  Time during the trial day that does not neatly fit into one of those categories will be attributed to one side or the other as the Court deems appropriate.

4. There will be thirty minutes to forty-five minutes for lunch and a fifteen-minute break in the morning and in the afternoon each day.

5. Issues that need to be addressed will be taken up at 8:00 a.m. and at the end of the jury trial day or at such other time that the Court determines.  Issues – including objections to anticipated exhibits or demonstratives – must be brought to the attention of the Court's Judicial Administrator by 7:00 a.m. on the day on which the evidence objected to will be adduced.

6. For the reasons stated at the Pretrial Conference, 1) Plaintiff's Motion for Partial Summary Judgment (D.I. 350) is DENIED with respect to Sections[3] I and IV and Section II(A)(1)

---

[2] As discussed at the Pretrial Conference, the Court will determine whether the parties will give closing arguments for the bench trial either after post-trial briefing is complete or at the close of evidence.  (*See* D.I. 447 at 80:1-8).

[3] The section numbers refer to the sections in the respective briefs relating to each motion.

(the Executive Order 10096 issue); 2) Defendants' Cross-Motion for Summary Judgment (D.I. 362) is GRANTED; 3) Defendants' Motion for Summary Judgment (D.I. 344) is DENIED as moot with respect to Sections I and VI, GRANTED-IN-PART with respect to Section VIII (granted as to GSIUC's pre-suit inducement and denied as to GSIUS's post-suit inducement) and DENIED with respect to Sections II, IV, V, VII and IX; 4) Plaintiff's Motion to Exclude Expert Testimony (D.I. 343) is GRANTED-IN-PART with respect to Section II (Mr. Blakeslee's opinions regarding the clinical trial agreements), DENIED as moot with respect to Sections I, IV, V and VI and DENIED-IN-PART with respect Sections III and VII[4]; 5) Defendants' Motion to Exclude Opinions of Dr. DeForest McDuff (D.I. 347) is DENIED as moot with respect to Section II and DENIED with respect to all other issues; 6) Plaintiff's Motion *in Limine* No. 1 (D.I. 434, Ex. 9P.1) is GRANTED-IN-PART with respect to the Court of Federal Claims decision and the clinical trial agreements and DENIED-IN-PART with respect to the material transfer agreements[5]; 7) Plaintiff's Motion *in Limine* No. 2 (D.I. 434, Ex. 9P.2) is DENIED-IN-PART with respect to evidence related to the CDC and FDA encouraging Gilead to seek a PrEP indication; 8) Plaintiff's Motion *in Limine* No. 3 (D.I. 434, Ex. 9P.3) is DENIED; 9) Defendants' Motion *in Limine* No. 1 (D.I. 434, Ex. 9D.1) is GRANTED; 10) Defendants' Motion *in Limine* No. 2 (D.I. 434, Ex. 9D.2)

---

[4] As noted at the Pretrial Conference, to the extent that Mr. Stoll (Section III) offers opinions on whether Patent Office procedures are more "favorable," whether they would be "successful" or whether evidence is "material," Plaintiff may object at trial. (*See* D.I. 447 at 41:20-42:5). In addition, if Dr. Meyer testifies (Section VII) regarding issue of infringement, Plaintiff may object. (*See* D.I. 447 at 43:20-24).

[5] For clarification, Defendants may introduce evidence related to the material transfer agreements at trial to the extent that it relates to their argument that they did not have knowledge of infringement. Defendants, however, may not introduce the evidence to argue their unenforceability defenses before the jury. To the extent that this occurs, Plaintiff may object at trial.

is DENIED[6]; and 11) Defendants' Motion *in Limine* No. 3 (D.I. 434, Ex. 9D.3) is GRANTED-IN-PART with respect to the press releases and DENIED-IN-PART with respect to all other evidence specified.[7] (*See* D.I. 447 at 6:4-73:24).

7. During the Pretrial Conference, the Court reserved ruling on Sections II(A)(2), II(B) and III of Plaintiff's Motion for Summary Judgment (D.I. 350), Section III of Defendants' Motion for Summary Judgment (D.I. 344) and the portion of Plaintiff's Motion *in Limine* No. 2 regarding evidence of federal, state and local agency recommendations on PrEP usage (D.I. 434, Ex. 9P.2). (*See* D.I. 447). The Court considers each of these in turn.

8. First, Plaintiff moves for partial summary judgment on the grounds that Defendants cannot establish their license defense. (*See* D.I. 350 at 19-24). Plaintiff's Motion is GRANTED. Plaintiff argues that the named inventors assigned their rights, title and interest in the Asserted Patents[8] to the Government when they signed a written assignment in 2006 ("the 2006 Assignment").[9] Defendants counter that the 2006 Assignment did not assign rights to the Asserted Patents. Therefore, Defendants argue that when one of the named inventors, Dr. Janssen, licensed

---

[6] As discussed at the Pretrial Conference, Defendants may re-raise the issues raised by their Motion *in Limine* No. 2 at trial. (*See* D.I. 447 at 68:7-16).

[7] As discussed at the Pretrial Conference, if Plaintiff seeks to introduce the press releases for what it believes is a permissible reason, it must raise the issue with the Court before putting the evidence before the jury. (*See* D.I. 447 at 70:9-11). In addition, Defendants may re-raise the arguments presented in its Motion *in Limine* No. 3 if those issues arise at trial. (*See id.* at 72:1-11).

[8] U.S. Patent No. 9,044,509 ("the '509 Patent"), U.S. Patent No. 9,579,333 ("the '333 Patent"), U.S. Patent No. 9,937,191 ("the '191 Patent") and U.S. Patent No. 10,335,423 ("the '423 Patent").

[9] Plaintiff also argued that rights in the patented inventions vested in the Government under Executive Order 10096 regardless of whether there was a formal assignment. At the Pretrial Conference, the Court denied Plaintiff's Motion with respect to this issue. (*See* D.I. 447 at 6:23-7:20).

4

his "prior inventions" to Gilead in 2008 via Gilead's Confidential Information and Inventions Agreement ("the CIIA"), this agreement effectively licensed the patented inventions to Gilead. The question before the Court is thus whether the 2006 Assignment transferred rights to the Asserted Patents. The Court holds that it did.

9. In support of its argument, Defendants first contend that "[a]t most, the 2006 Assignment transferred rights to [Provisional Application No. 60/764,811 ("the Provisional Application")]" because the 2006 Assignment contains no language "that assigns rights beyond 'the invention.'" (D.I. 364 at 15). Defendants argue that the Provisional Application lacks written description for the claimed inventions and thus the "invention" named in the Provisional Application cannot be the same as that claimed in the Asserted Patents. (*Id.* at 15 n.11; *see also* D.I. 447 at 10:15-11:18). As Plaintiff points out, however, the language of the 2006 Assignment is broader than Defendants contend. The 2006 Assignment "includes assignment of all Letters Patent that may be granted on the invention . . . and any divisional, renewal, continuation in whole or in part, substitution, conversion, reexamination, reissue, prolongation or extension thereof; and the right to claim priority." (D.I. 350, Ex. 32 at GIL_BLAKESLEE00000162). The 2006 Assignment thus unambiguously assigns rights not only in the "invention" but also in related patents and patent applications, including continuations-in-part, which necessarily include new matter. The Government claimed the Provisional Application as a related application in the Asserted Patents. (*See* '509 Patent, '333 Patent, '191 Patent & '423 Patent). Defendants state that the Asserted Patents only relate to the Provisional Application by a claim of priority but cite only to the language of the 2006 Assignment itself as support. (D.I. 364 at 17 & 17 n.13). Absent any evidence to the contrary, the Court thus finds that the Asserted Patents, which purport to claim priority to the Provisional Application, are related applications such that the 2006 Assignment

assigned rights in the Asserted Patents to the Government. Therefore, Dr. Janssen did not convey rights in the Asserted Patents in 2008 when he signed Gilead's CIIA because he had no rights to convey. Plaintiff is entitled to summary judgment on Gilead's license defense.

10. In addition, Defendants request that the Court look to an assignment signed by the inventors in 2015 ("the 2015 Assignment") to interpret the 2006 Assignment. Defendants argue that the 2015 Assignment (filed with Application No. 11/669,547[10] ("the '547 Application")) contains language that suggests the Government believed the 2006 Assignment did not convey rights to the patented inventions. It is not clear that this is a case in which the Court can look beyond the four corners of the 2006 Assignment given that its language appears to unambiguously assign rights in all related patents (even apparently those that include new matter) and Defendants have failed to show that there is a reasonable interpretation that the Asserted Patents are unrelated. Furthermore, even if the language were ambiguous, it is unclear whether an agreement that post-dates the 2006 Assignment can inform the Court's interpretation of what the parties intended to assign in 2006. *See Dreni v. PrinterOn Am. Corp.,* 486 F. Supp. 3d 712, 727 (S.D.N.Y. 2020) (collecting cases indicating that extrinsic evidence post-dating contract formation should not inform contract interpretation). Regardless, the Court finds that the extrinsic evidence does not change its holding. First, the Government informed the Patent Office that the Government is the assignee of the '547 Application by virtue of the 2006 Assignment in 2014. (D.I. 350, Ex. 45). Second, although the 2015 Assignment contains some language suggesting that the Government was unsure that the 2006 Assignment conveyed rights in the '547 Application, the parties do not dispute that the Government routinely uses these pro forma assignments to ensure complete

---

[10] The '547 Application issued as the '509 Patent.

assignment of rights. (*See* D.I. 447 at 8:19-9:9 & 13:18-14:1). Therefore, the Court finds that the extrinsic evidence does not change its interpretation of the clear language of the 2006 Assignment.

11. Second, Plaintiff moves for partial summary judgment on the grounds that Defendants cannot show an invalidating prior public use by Dr. Conant. (*See* D.I. 350 at 24-25). Plaintiff's Motion is DENIED. Plaintiff contends that Defendants' argument is only supported by Dr. Conant's uncorroborated testimony that he prescribed Truvada for PrEP to at least three patients between 2004 and 2006. Defendants counter that his testimony is corroborated by several contemporaneous news articles in which he discusses these prescriptions.

12. Uninterested witnesses are subject to the corroboration requirement. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367-68 (Fed. Cir. 1999). "A rule of reason analysis is used to determine the sufficiency of corroboration, under which all pertinent evidence is examined in order to determine whether the inventor's story is credible." *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1301-02 (Fed. Cir. 2016) (quoting *Sandt Tech., Ltd v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001)) (internal quotation marks omitted). This analysis "does not require that every detail of the testimony be independently and conclusively supported by the corroborating evidence." *Id.* (quoting *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1348 (Fed. Cir. 2013)) (internal quotation marks omitted); *see also id.* ("[W]e have repeatedly rejected an element-wise attack on corroboration of oral testimony."). "Circumstantial evidence can be sufficient corroboration." *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1378 (Fed. Cir. 2018).

13. Plaintiff takes issue with the fact that the news articles that describe Dr. Conant prescribing Truvada for PrEP all post-date the filing date by around six months. The articles that predate the filing date describe Dr. Conant prescribing "tenofovir" for PrEP, which Plaintiff

contends refers to the drug Viread rather than Truvada.  Viread contains a prodrug of tenofovir called tenofovir disoproxil fumarate ("TDF"), and Truvada contains both TDF and emtricitabine.  (D.I. 447 at 14:13-15-4).  At the Pretrial Conference, Defendants stated that Dr. Conant would testify that he refers to both drugs as "tenofovir."  (D.I. 447 at 15:24-18:1).  In addition, Defendants stated that Dr. Conant will testify that he prescribed Viread up until it was no longer a drug in July or August of 2004, and then he began prescribing Truvada once it was approved.  (*Id.*).  Based on the totality of the evidence presented in Defendants' briefing and argument at the Pretrial Conference, the Court finds that Dr. Conant's testimony regarding the fact that he was prescribing Truvada for PrEP to at least three patients from 2004 to 2006 is sufficiently corroborated by the articles.  The Court reserves on the issue of whether Dr. Conant may testify about further details of these prescriptions (*e.g.*, details regarding specific patients) subject to a proffer of his testimony.  The proper scope of his testimony will be determined at trial.

14.     Turning to Defendants' Motion for Summary Judgment, Defendants argue that claim 13 of the '509 Patent is invalid for improper dependency.[11]  (*See* D.I. 345 at 11-12).  Defendants' Motion is GRANTED.  Defendants state that claim 13 covers methods in a "primate host," but it depends from claim 12, which covers methods in a "human."  ('509 Patent).  Defendants contend that, under the Patent's own definition, "primate host" is a broader category than "human," and thus claim 13 fails to properly narrow the scope of claim 12.  *See Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*, 457 F.3d 1284, 1291-92 (Fed. Cir. 2006) ("[A] violation of § 112, ¶ 4 renders a patent invalid.").  Plaintiff counters that one could read claim 13 to properly limit claim 12 by interpreting "primate host" in claim 13 as referring to only a human rather than the broader

---

[11]    Defendants' Motion raised the same argument with respect to claim 3 of the '509 Patent. (*See* D.I. 345 at 11).  Prior to the Pretrial Conference, the parties informed the Court that claim 3 (along with others) had been dropped.  (*See* D.I. 441).

category. (D.I. 367 at 13-14). The claim language, however, states "primate host," not "human." The '509 Patent defines "primate host" as including "a monkey, baboon, chimpanzee, gorilla, and a human." ('509 Patent at 4:18-19). Although there may be circumstances that would allow the Court to correct a possible clerical error in the '509 Patent, Plaintiff failed to request a correction during claim construction, has not requested a correction in its summary judgment briefing and does not argue under the standard for correction. (*See* D.I. 367 at 13-14); *see also Pavo Sols. LLC v. Kingston Tech. Co.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022) (describing the standard for when courts may correct clerical errors). Therefore, the Court will not correct the claim. Claim 13 of the '509 Patent is thus invalid for improper dependency.

15. Finally, in Plaintiff's Motion *in Limine* No. 2 Plaintiff moves to preclude Defendants from offering testimony or argument regarding their theories that they are not liable for inducing infringement based on (1) the CDC and FDA encouraging Gilead to seek a PrEP indication for Truvada and (2) federal, state and local agency recommendations on PrEP usage. (*See* D.I. 434, Ex. 9P.2). With respect to the evidence regarding CDC and FDA encouragement, the Court denied Plaintiff's motion at the Pretrial Conference. (*See* D.I. 447 at 60:4-9). For clarification, Defendants may introduce such evidence at trial to the extent that it relates to their argument that they did not have knowledge of infringement. Defendants, however, may not introduce the evidence to argue their unenforceability defenses before the jury. To the extent this occurs, Plaintiff may object at trial.

16. With respect to the government agency recommendations on PrEP usage, the Motion is GRANTED. Defendants argue this evidence is relevant to show (1) that there is no predicate direct infringement because alleged infringers had an implied license and (2) that Defendants did not intend to cause or actually cause infringement. As to Defendants' implied

license arguments, the only place in the Pretrial Order that implied license is mentioned is under Defendants' acquiescence or estoppel defense which will be tried before the bench. (*See* D.I. 434, Ex. 3P at 12; *see also* D.I. 447 at 62:3-15). Therefore, this evidence is not relevant to any issues presented to the jury regarding direct infringement. As to Defendants' arguments regarding intent and causation, the Court finds that any tangential relevance this evidence may have to inducement is far outweighed by the risk of prejudicing and confusing the jury.

17. As explained at the Pretrial Conference, the parties may not provide witness binders or physical copies of documents (demonstratives, deposition transcripts, etc.) to the Court, but the parties must provide witness binders to the witnesses. The parties shall provide electronic copies of ALL trial exhibits to the Courtroom Deputy and Judicial Administrator by NOON on May 1, 2023. The trial exhibits must be labeled with JTX, DTX or PTX prefixes with exhibit numbers, and the trial exhibits must be organized in a single folder. Additionally, no later than 7:30 a.m. each trial day, the parties shall provide to the Courtroom Deputy and Judicial Administrator electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination[12] of any witnesses expected to be called that day.

18. By no later than NOON on April 28, 2023, the parties shall submit a glossary of terms and names to the Court Reporter.

19. Any document that is used for impeachment that is not on the exhibit list will not be admitted into evidence.

20. Any trial logistics should be coordinated through the Courtroom Deputy.

---

[12] This includes any deposition transcripts or expert reports to be used with witnesses.

_____
The Honorable Maryellen Noreika
United States District Judge