## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA,

*Plaintiff & Counterclaim-Defendant*,

v.

GILEAD SCIENCES, INC.,
*Defendant–Counterclaim Plaintiff,*

AND GILEAD SCIENCES IRELAND UC,
*Defendant*.

C.A. No. 19-2103-MN

## [PROPOSED] FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

I.    GENERAL ..................................................................................................................1
      A.    INTRODUCTION ..............................................................................................1
      B.    CONSIDERATION OF EVIDENCE ................................................................2
      C.    BURDENS OF PROOF ......................................................................................3

II.   PATENT JURY INSTRUCTIONS .........................................................................6
      A.    THE PARTIES' CONTENTIONS .....................................................................6
      B.    SUMMARY OF PATENT ISSUES ..................................................................7
      C.    THE CLAIMS OF A PATENT ..........................................................................8
      D.    INFRINGEMENT – GENERALLY..................................................................10
      E.    DIRECT INFRINGEMENT ..............................................................................12
      F.    JOINT INFRINGEMENT ..................................................................................14
      G.    INDUCED INFRINGEMENT............................................................................16
      H.    INVALIDITY – GENERALLY .........................................................................20
      I.    PERSON OF ORDINARY SKILL IN THE ART.............................................21
      J.    PRIOR ART – GENERALLY ............................................................................23
      K.    EFFECTIVE FILING DATE OF THE ASSERTED PATENTS .........................24
      L.    DATE OF INVENTION ....................................................................................25
      M.    INVALIDITY – ANTICIPATION GENERALLY .............................................28
      N.    INVALIDITY – ANTICIPATION BY PRIOR PUBLIC
            KNOWLEDGE ..................................................................................................29
      O.    INVALIDITY – ANTICIPATION BY PRIOR PUBLIC USE ...........................31
      P.    INVALIDITY – OBVIOUSNESS......................................................................33
      Q.    INVALIDITY – LACK OF ENABLEMENT......................................................40
      R.    INVALIDITY –WRITTEN DESCRIPTION ......................................................43

III.  DAMAGES ..................................................................................................................45
      A.    DAMAGES – GENERALLY.............................................................................45
      B.    REASONABLE ROYALTY .............................................................................46
      C.    REASONABLE ROYALTY – FACTORS RELEVANT TO THE
            HYPOTHETICAL NEGOTIATION..................................................................47
      D.    REASONABLE ROYALTY – APPORTIONMENT .........................................50
      E.    REASONABLE ROYALTY – TIMING.............................................................52
      F.    REASONABLE ROYALTY – COMPARABLE LICENSE
            AGREEMENTS..................................................................................................53

IV.   DELIBERATIONS AND VERDICT .......................................................................54

A.      DELIBERATIONS AND VERDICT – INTRODUCTION ...................................54

B.      UNANIMOUS VERDICT ....................................................................................55

C.      DUTY TO DELIBERATE ....................................................................................56

D.      SOCIAL MEDIA .................................................................................................57

E.      COURT HAS NO OPINION ................................................................................58

**Introduction**

## I. <u>GENERAL</u>

### A. INTRODUCTION

Members of the jury, now is the time for me to instruct you about the law that you must follow in deciding this case. Please listen very carefully to everything I say. In following my instructions, you must follow all of them, including the ones that I gave you at the start of the case and the ones I have given during trial, and not single out some and ignore others. They are all important.

You will have a written copy of these instructions, as well as my preliminary instructions, with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by reminding you of the respective burdens in this case, and then I will instruct you concerning the positions of the parties and the law you will apply in this case. Then we will hear the closing arguments. After that, I will explain the rules that you must follow during your deliberations in the jury room.

**B.      CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### C.      BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."  I told you about these two standards of proof during my preliminary instructions to you, and I will now remind you what they mean.

This is a civil case in which [**GOVERNMENT PROPOSAL:** the United States][1] [**GILEAD PROPOSAL:** the government][2] is the owner of three patents, and it alleges that Gilead has induced others to infringe them.  The United States has the burden of proving infringement and the amount of monetary damages for any infringement by a preponderance of the evidence.  That means the United States has to produce evidence that, when considered in light of all of the

---

[1] [**GOVERNMENT POSITION:** "The United States" is merely a shortened version of the plaintiff's name as identified in the case caption and is the entity asserting the patents on HHS' behalf.  "The government," as proposed by Gilead, is neither neutral nor accurate in identifying the plaintiff.  Use of the term "the government" would be unduly prejudicial to the plaintiff because it evokes strong feelings for or against the government and may cause the jury to decide this case for reasons other than its merits.]

[2] [**GILEAD POSITION:** For the reasons set forth in the Proposed Final Jury Instructions of April 17, 2023 (D.I. 43 at 3 n.2), and the parties' joint letter of April 27, 2023, Gilead continues to object to the Court's use of the term "United States" to refer to the Plaintiff in this case because use of the term will unfairly prejudice the jury to decide this case based on national pride, emotion, and considerations other than the merits in this patent infringement trial.  By contrast, reference to the plaintiff as the "government," the "federal government," or "HHS" is neutral and accurate and does not carry such unfairly prejudicial connotations.  Gilead does not object to the Plaintiff referring to *itself* as the "United States"; Gilead's concern is with the **Court** doing so.  Indeed, during a recent civil antitrust trial, both the Court and government attorneys themselves repeatedly referred to the federal government plaintiff as just that—"the government."  *E.g.*, *United States v. U.S. Sugar Corp.*, C.A. No. 21-1644 (MN), D.I. 226 at 12, 23, 32, 225, 358, 360 (D. Del. May 5, 2022) (government attorney); *id.* at 5, 51 (the Court); *see also, e.g.*, *United States v. U.S. Sugar Corp.*, C.A. No. 21-1644 (MN), 2022 WL 4535621, at *1  (D. Del. Sept. 28, 2022) (repeatedly referring to the federal government as the "Government").  In order to simplify the presentation of these proposed instructions, Gilead has not repeated this objection throughout, but maintains it as to all instructions herein.]

**Burdens of Proof**

facts, leads you to believe that what the party claims is more likely true than not.  To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the United States' claims of induced infringement must make the scales tip somewhat on its side.

Gilead also contends that the United States' patents are invalid.  A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid.  Clear and convincing evidence means that it is highly probable that what Gilead seeks to prove is true.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement.

[**GILEAD PROPOSED ADDITION:** You should consider whether any evidence relating to invalidity was previously considered by the U.S. Patent and Trademark Office ("USPTO").

Where the USPTO did not previously have all the material facts before it, Gilead's burden to prove invalidity by clear and convincing evidence may be easier to sustain.][3, 4]

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden is a higher burden of proof that applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case. You should put it out of your mind.

---

[3] [**GILEAD POSITION:** Gilead believes such an instruction is helpful to the jury to understand their role as the factfinder and the burdens of proof in this matter. Such an instruction on the clear and convincing burden of proof was expressly approved by the Supreme Court in *Microsoft Corp v. i4i Ltd. P'ship*,:

> Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. ***And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain.*** In this respect, although we have no occasion to endorse any particular formulation, *we note that a jury instruction on the effect of new evidence can, and when requested, most often should, be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent.* When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.

564 U.S. 91, 110-11 (2011) (citation omitted) (emphasis added). The Court's granting of Gilead's motion *in limine* No. 1 regarding IPR and other proceedings does not diminish the importance of this instruction, which concerns the fact that certain prior art was not before the PTO examiner during *prosecution* of the government's patents.]

[4] [**GOVERNMENT POSITION**: Gilead's proposed addition is inappropriate in a general instruction concerning the burdens of proof and is inconsistent with the Court's general instructions. *See, e.g., Complete Genomics, Inc. v. Illumina, Inc.,* C.A. No. 19-970-MN, D.I. 404 at 2-3 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.); *Purewick Corp. v. Sage Prods., LLC,* C.A. No. 19-1508-MN, D.I. 314 at 10-11 (D. Del. Apr. 1, 2022) (Final Jury Instructions) (Noreika, J.). The Government proposes that a modified version of this instruction be included in the obviousness instruction. *See supra* at 34.]

II.       **PATENT JURY INSTRUCTIONS**

      A.       **THE PARTIES' CONTENTIONS**

This case was filed in November 2019 by the United States, alleging patent infringement against Gilead.  You have heard evidence regarding the three Asserted Patents in this case.  The United States is the owner of U.S. Patent Nos. 9,579,333; 9,937,191; and 10,335,423, which have been referred to as the '333, '191, and '423 patents, or the "Asserted Patents."  The United States alleges that Gilead has induced infringement of claim 13 of the '333 patent, claim 18 of the '191 patent, and claim 18 of the '423 patent.  The United States also alleges that it is entitled to damages for Gilead's infringement.  Gilead denies that they have induced infringement of the asserted claims of the Asserted Patents and contend that the asserted claims of the Asserted Patents are invalid on various grounds.

**B.      SUMMARY OF PATENT ISSUES**

You must decide the following issues in this case according to the instructions that I give you:

1. Whether the United States has proven by a preponderance of the evidence that one or more patients or physicians (either separately or jointly) directly infringed one or more of the asserted claims of the Asserted Patents;

2. Whether the United States has proven by a preponderance of the evidence that Gilead induced infringement of one or more of the asserted claims of the Asserted Patents;

3. Whether Gilead has proven by clear and convincing evidence that one or more of the asserted claims of the Asserted Patents are invalid;

If you decide that Gilead induced infringement of any claim of the Asserted Patents that is not invalid, then you will also need to decide what money damages should be awarded to compensate the United States for that induced infringement.

### C.      THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

In this case, the asserted patent claims are what are known as "method claims."  A method claim consists of one or more "steps."  Because a method constitutes a sequence of steps, the use of a method necessarily involves doing or performing each and every one of the recited steps.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is directly infringed, whether GSI or GSIUC induces infringement of that claim, and whether or not that claim is invalid.

Patent claims may exist in two forms, referred to as independent claims or dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the terms (also called "limitations") of the other claim or claims to which it refers, as well as the additional terms of the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.  For example, claim 13 of the '333 patent is a dependent claim.  To determine what dependent claim 13 of the '333 patent covers, the words of that claim and the words of independent claim 12 of the '333 patent must be read together.

**The Claims of a Patent**

It is my job as a judge to define the terms of the claims and instruct you about the meaning.  It is your role to apply my definitions to the issues that you are asked to decide.

In this case, I have determined the meaning of the following terms of the asserted claims of the United States' Asserted Patents:

**For All Three Asserted Patents:**

- the phrase "[a] process for inhibiting establishment of a human immunodeficiency virus self-replicating infection of human immunodeficiency virus infection in a human" means "a process for inhibiting establishment of a human immunodeficiency virus self-replicating infection in a human"

- The phrase "thereby inhibiting the establishment of the self-replicating infection with the immunodeficiency virus in the human" requires that "[t]he human remains negative for the immunodeficiency virus while receiving the administration."  Whether a host remains negative is based on both a serological and PCR assay if both tests are performed but the claims do not require unnecessary testing to be done.

- the phrase "prior to an [or the] exposure" requires an exposure, which means "contact between an immunodeficiency retrovirus and a host"

- the phrase "prior to [a] potential exposure" means "prior to engaging in activity that could result in an exposure"

You must accept my definitions of these words as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning in the field of the patents.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

### D.     INFRINGEMENT – GENERALLY

United States patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented method in the United States during the term of the patent.  Any person or company that has engaged in any of those acts without a license infringes the patent.

[**GOVERNMENT PROPOSAL:** Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement of one claim but no infringement of another.  In this case, there are two possible ways that a claim may be infringed. The two types are called: (1) direct infringement and (2) induced infringement.  Induced infringement is referred to as indirect infringement.  The United States alleges that one or more patients or physicians directly infringed the asserted claims of the Asserted Patents.  The United States alleges that Gilead indirectly infringed the asserted claims of the Asserted Patents by inducing infringement by patients or physicians.] [5]

[**GILEAD PROPOSAL:** Infringement is assessed on a claim-by-claim basis.  A claim of a patent may be infringed directly or indirectly.  As I will explain in more detail, direct infringement results if someone performs all steps of at least one claim of the patent.  Indirect infringement results if a defendant induces another to directly infringe a claim of a patent.  In this case, the United States alleges that GSI and GSIUC infringe the Asserted Patents indirectly

---

[5] [**GOVERNMENT POSITION:** The Government's proposed language is based on the Court's prior instructions, which provide an introduction to direct and induced infringement and the plaintiff's contentions.  *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 9 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.); *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 15 (D. Del. Apr. 1, 2022) (Final Jury Instructions) (Noreika, J.).  As explained at the end of this instruction, the subsequent instructions provide the requirements for direct and induced infringement, thus mitigating any alleged juror confusion.  In contrast, stating only some of the requirements for direct or induced infringement here, as Gilead proposes, is repetitive and potentially confusing to the jury.]

– 10 –

by inducing others to infringe.  In order to find GSI or GSIUC liable for indirect infringement, you must first find that a third party engaged in direct infringement.][6]

Thus, the United States bears the burden of proving by a preponderance of the evidence that each of the asserted claims of its asserted patents are infringed.  Therefore, you, the jury, must determine infringement for each patent and each claim separately.

I will now explain each type of infringement in more detail.

---

[6] **[GILEAD POSITION:** The government purports to base its instructions for infringement on the Court's instructions in *Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 (D. Del. May 5, 2022) and *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314  (D. Del. Apr. 1, 2022).  But in both *Complete Genomics* and *Purewick*, the alleged infringer was accused of ***both*** direct and indirect infringement.  Here, by contrast, GSI and GSIUC are only accused of indirect infringement.  The government's proposed instruction is likely to result in juror confusion by suggesting that GSI or GSIUC may be liable for infringement if the government proves either direct ***or*** indirect infringement.  For example, the jury instructions in *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, C.A. No. 14-878-LPS-CJB, D.I. 440 at 26-27 (D. Del. June 19, 2017) similarly make clear for the jury that "a finding of induced infringement requires a showing that someone has directly infringed."]

### E.    DIRECT INFRINGEMENT

With respect to Truvada, you must determine whether the United States has proven direct infringement of the asserted claims of the '333, '191, and '423 patents by patients or physicians (either separately or jointly).  With respect to Descovy, you must determine whether the United States has proven direct infringement of asserted claim 18 of the '423 patent by patients or physicians (either separately or jointly).

As I just told you, you must determine, separately for each asserted claim, whether or not there is infringement.  There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of any claims that depend from the independent claim were met, in order to determine whether the dependent claims have also been infringed.  Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

To determine direct infringement, you must compare the actions of a third party (such as a patient or physician) to each asserted claim of the Asserted Patents to determine whether those actions satisfy each and every one of the requirements of that claim.  A patent claim is infringed only if the actions of that third party meet each and every limitation in that patent claim.  If one or more steps recited in a claim was not performed, there is no infringement.  The presence of additional steps in an accused method beyond those claimed, however, does not avoid infringement, as long as every claimed step is performed.

You may find direct infringement based on one instance of the claimed method being performed by a patient or physician (either separately or jointly).  Proof of direct infringement may be based on circumstantial evidence.

**Direct Infringement**

One may directly infringe a patent unknowingly – that is, without knowledge that what one is doing is an infringement of the patent.  One can be a direct infringer of a patent even if that person believes in good faith that he is not infringing any patent or even if he does not know of the patent.

All steps of the method must be performed for there to be direct infringement of an asserted claim.  If any step of an asserted claim is not performed, there is no direct infringement.

## F.    JOINT INFRINGEMENT

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single actor.  Where more than one actor is involved in practicing the steps, you must determine whether the steps performed by one actor are attributable to another actor.  There are two situations where the steps performed by one actor are attributable to another actor: (1) the actors have formed a joint enterprise; or (2) one actor directs or controls the other actor's performance of the claim steps.

Here, in addition to alleging that both physicians and patients directly infringe the asserted claims of the Asserted Patents, the United States also alleges that physicians and patients jointly infringe the asserted claims of the Asserted Patents.

For direct infringement to be proved by a physician and patient jointly, the United States must prove by a preponderance of the evidence (1) that all steps of the claimed method were performed and (2) that the acts of the patient are attributable to the physician, either because the physician and the patient have formed a joint enterprise or because the physician directs or controls the acts of the patient.

To prove that a physician and a patient have formed a joint enterprise, the United States must prove four elements:

(a) there was an agreement, either express or implied between the physician and the patient;

(b) they shared a common purpose;

(c) they had a common financial interest; and

(d) each had an equal right of control in the enterprise.

[**GILEAD PROPOSED ADDITION:** You must find that the United States has proven all four of these elements by a preponderance of the evidence to establish that a patient and a physician have established a joint enterprise.]

To prove that a physician directed or controlled the acts of a patient, the United States must prove either that (1) the patient is the agent of the physician or is contractually obligated to the physician to carry out the claimed steps, or (2) the patient performed the claim step(s) because the physician conditioned participation in an activity or receipt of a benefit upon performance of a step or steps of the claimed method and established the manner or timing of that performance. [**GILEAD PROPOSED ADDITION:** You must find that the United States has proven either of these by a preponderance of the evidence to establish that a physician directed or controlled the acts of a patient.]

[**GILEAD PROPOSED ADDITION:** If you do not find either that: (1) a physician and a patient formed a joint enterprise; or (2) a physician directs or controls his/her patient's performance of the claim steps, then you may not attribute performance of claim steps by a patient to his/her physician.][7,8]

---

[7] [**GOVERNMENT POSITION:** The Government contends each of Gilead's three proposed additions is unnecessary because it is repetitive of other language in this instruction setting forth the burden of proof and the requirements for finding (or not finding) joint liability.  Repetitive language suggests a particular outcome for the jury to reach and thus is unduly prejudicial.]

[8] [**GILEAD POSITION:** Given the technical complexity and multiple standards argued by the government in support of its joint infringement theory, the additional language proposed by Gilead, which merely: (1) states that all four factors of the joint enterprise test must be met; (2) states the government's burden of proof regarding a finding of joint infringement; and (3) summarizes the two separate standards that the jury is being asked to apply, will assist in providing further clarity and avoiding jury confusion.]

### G.    INDUCED INFRINGEMENT

The United States alleges that Gilead is liable for actively inducing others to directly infringe the Asserted Patents.  A party actively induces patent infringement if it purposefully causes, urges, instructs, aids, or encourages another to infringe an asserted claim.  In order to find a party liable for induced infringement of an asserted claim, you must first find direct infringement of that claim.  If there is no direct infringement by anyone, there can be no induced infringement.  Inducing infringement cannot occur unintentionally.  [**GILEAD PROPOSED ADDITION:** An inducer must know that the activities it is inducing constitute patent infringement and must intend that the person being induced actually infringe the patent.  Merely describing an infringing use in instructions for a product is not the same as recommending, encouraging, or promoting an infringing use, or suggesting that an infringing use should be performed, and is insufficient to show intent to induce infringement.

In addition, if GSI or GSIUC believed in good faith that it was not aiding, instructing, or otherwise causing directly infringing acts by others, that the Asserted Patents were

unenforceable, or that it held a license to practice the Asserted Patents, then you may not find

that the Defendant induced infringement.][9, 10]

---

[9] [**GILEAD POSITION:**  The language requested by Gilead here will assist the jury in understanding the boundaries of the doctrine of induced infringement that it will necessarily be called upon to apply during its deliberations.  The language requested by Gilead in these sentences is directly based on Federal Circuit precedent.  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118-19 (Fed. Cir. 2022) ("The intent element requires 'knowledge that the induced acts constitute patent infringement,'…." (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011))); *Bio-Rad Labs., Inc. v. International Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021); *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015).

A good faith belief that one is either not inducing infringement of a patent, or a good faith belief that the accused activity is licensed and thus authorized by the patentee, is a defense to induced infringement.  *Roche Diagnostics, LLC*, 30 F.4th at 1118-19.  Contrary to the government's argument, the Supreme Court's decision in *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642-47 (2015), did not address a good faith belief in unenforceability.  To the contrary, it dealt specifically and ***only*** with whether a "defendant's belief regarding ***patent validity*** is a defense to a claim of induced infringement." *Id.* at 642.  Nowhere does *Commil* use the word "unenforceable" or "unenforceability" at all, and its reasoning does not foreclose reliance on a good-faith belief of unenforceability for at least four reasons.

First, a good-faith belief in unenforceability is more analogous to a good-faith belief in non-infringement. The Court in *Commil* distinguished infringement from invalidity on the grounds that "noninfringement and invalidity are listed as two separate defenses, see [35 U.S.C.] §§ 282(b)(1), (2)."  575 U.S. at 643.  Applying that distinction shows that unenforceability is closer to non-infringement because unenforceability is listed in § 282(b)(1) along with non-infringement, not in a separate provision like invalidity..  Second, *Commil* relied on practical considerations that distinguish invalidity from unenforceability.  The Court relied on the idea that "[e]very accused inducer would have an incentive to put forth a theory of invalidity and could likely come up with myriad arguments."  *Id.*  But that is not true of unenforceability because most accused infringers do not have a long-standing relationship including a series of contracts with the patentee or other grounds to assert unenforceability.]

[10] [**GOVERNMENT POSITION:** Gilead's additional language concerning knowledge and intent is redundant to the paragraph in this instruction setting forth the requirements of inducement; that paragraph already explains that "knowingly induced acts" requires intent and knowledge that the acts are infringing.

Gilead's additional language that "[m]erely describing an infringing use in instructions" inappropriately instructs the jury how to view certain evidence, particularly where the instructions already states that that aiding, instructing, or other acts require intent to cause infringement.

Gilead's additional language concerning a good faith belief is not supported by *Commil*.  The Supreme Court held that: "Invalidity is an affirmative defense that can preclude enforcement of a patent against otherwise infringing conduct.  An accused infringer can, of course, attempt to prove

Induced Infringement

To prove active inducement, the United States must prove by a preponderance of the evidence that each of GSI or GSIUC knowingly induced acts of direct infringement, meaning:

1. the party aided, instructed, or otherwise acted with the intent to cause acts by others that would constitute direct infringement of the patent claim(s);

2. the party was aware of the patent at that time, [**GOVERNMENT PROPOSED ADDITION:** or showed willful blindness to the existence of the patent][11]; and

3. the party knew, [**GOVERNMENT PROPOSED ADDITION:** or showed willful blindness][12], that the actions of the infringing party would directly infringe at least one claim of the patent. [**GILEAD PROPOSED ADDITION:** ; and

_____

that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability.  That is because invalidity is not a defense to infringement, it is a defense to liability.  And because of that fact, a belief as to invalidity cannot negate the scienter required for induced infringement."  575 U.S. at 644-45 (internal quotations and citations omitted); *see also id.* at 646 ("In the usual case, 'I thought it was legal' is no defense.  That concept mirrors this Court's holding that belief in invalidity will not negate the scienter required under § 271(b)."). The Supreme Court's rationale in *Commil* equally applies to Gilead's alleged belief in unenforceability or a license—and any associated belief in non-inducement.  Unenforceability and license are both affirmative defenses, and a belief that one's acts are legal does not negate the scienter required for induced infringement.]

[11] [**GILEAD POSITION:**  The government has not advanced a willfulness blindness theory in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[12] [**GILEAD POSITION:**  The government has not advanced a willfulness blindness theory in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

– 18 –

4.  the party actually caused the infringing party to carry out the acts of direct infringement.][13, 14]

[**GOVERNMENT PROPOSED ADDITION:** To find willful blindness, you must find that (1) the accused party subjectively believed that there is a high probability that a patent existed covering the accused method; and (2) took deliberate actions to avoid learning of the patent.][15]

[**GILEAD PROPOSED ADDITION:** The United States has accused both Gilead Sciences, Inc. and Gilead Sciences Ireland UC of induced infringement.  You must separately determine whether the United States has proven active inducement as to each of Gilead Sciences, Inc. and Gilead Sciences Ireland UC.][16]

---

[13] [**GILEAD POSITION:** The Federal Circuit has repeatedly held that causation is an element of induced infringement, which is a disputed issue in this case. *E.g.*, *Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *8 (Fed. Cir. Dec. 16, 2021) ("To prove induced infringement, Alpek was required to show not only that Polymetrix intended to cause, but also that Polymetrix did in fact cause, IVP to infringe the patents-in-suit."); *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("To prevail under a theory of indirect infringement, Dynacore must first prove that the defendants' actions led to direct infringement of the '732 Patent.")]

[14] [**GOVERNMENT POSITION:** Gilead's proposed addition is redundant to already-stated requirement that induced infringement requires a finding of direct infringement.  In addition, Gilead's cited cases are inapposite; *Alpek* involved a unique causation-by-contract theory, 2021 WL 5974163, at *8, and the quoted statement in *Dynacore* was made in the context of vicarious liability, not induced infringement, 363 F.3d at 1274.]

[15] [**GILEAD POSITION:**  The government has not advanced a willfulness blindness theory in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[16] [**GILEAD POSITION:** Explaining that the jury must determine whether any inducement of infringement occurred separately for each of GSI and GSIUC parallels both the evidence to be presented at trial as well as the format of both parties' proposed jury verdict forms.]

### H.      INVALIDITY – GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Gilead has proven that the asserted claims of the United States' patents are invalid.  As I previously told you, to prove that a claim of a patent is invalid, Gilead must persuade you by clear and convincing evidence.

Like infringement, you must determine whether each asserted claim of the Asserted Patents is invalid on a claim-by-claim basis.  As I instructed you earlier, there are independent claims and dependent claims in a patent.  A dependent claim recites all the requirements of its independent claim and adds additional requirements.  This means the scope of the dependent claim should be narrower than the scope of the independent claim from which it depends.

## I.   PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the named inventors' invention date.  Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the time of invention.  I will instruct you regarding the date of invention later on in these instructions.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1.  The levels of education and experience of the inventor and other persons actively working in the field;

2.  The types of problems encountered in the field;

3.  Prior art solutions to those problems;

4.  Rapidity with which innovations are made;

5.  The sophistication of the technology. [**GILEAD PROPOSED ADDITION:** ; and

6.  Simultaneous invention by others.][17, 18]

---

[17]  [**GILEAD POSITION:** The Federal Circuit has expressly held that "[s]imultaneous invention" "is evidence of the level of skill in the art." *Regents of the Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1295 (Fed. Cir. 2018).  Because Gilead intends to introduce such evidence at trial, instruction on the role that simultaneous or contemporaneous invention has in determining the level of skill is an appropriate instruction on the law for the jury.

The government below concedes that this is a correct factor under the law.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[18]  [**GOVERNMENT POSITION**: The appropriateness of this factor will depend on the extent of the evidence of simultaneous invention Gilead is able to introduce at trial as it relates to obviousness.  While simultaneous invention may be relevant in "some rare instances" to provide objective indicia of obviousness, *Geo. M. Martin Co. v. All Mech. Sys. Int'l*, 618 F.3d 1294, 1304

**Person of Ordinary Skill in the Art**

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

---

(Fed. Cir. 2010), "a single instance of simultaneous invention cannot alone support a finding of obviousness," *Exela Pharma Scis., LLC v. Eton Pharms., Inc.*, No. CV 20-365 (MN), 2022 WL 3278735, at *29 (D. Del. Aug. 8, 2022) (Noreika, J.).]

### J.      PRIOR ART – GENERALLY

In order for someone to be entitled to a patent, the claimed invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art is considered in determining whether the asserted claims are invalid as anticipated (that is, not "new") or invalid as obvious.  Prior art may include items that were publicly known or that were used or offered for sale, or documents such as publications or patents, known as "prior art references," that disclosed the claimed invention or elements of the claimed invention.

### K.     EFFECTIVE FILING DATE OF THE ASSERTED PATENTS

The inventors of the Asserted Patents filed a "provisional" patent application on February 3, 2006.  They later filed a "nonprovisional" application on January 31, 2007.  The United States contends that the effective filing date is the date on which the provisional application was filed, which is February 3, 2006.  Gilead contends that the effective filing date is no earlier than the date on which the United States filed the nonprovisional application, which is January 31, 2007.  For purposes of analyzing certain questions of invalidity, you may need to determine whether the effective filing date of the Asserted Patents is February 3, 2006, or January 31, 2007.

The United States may rely on the filing date of the provisional application to establish the effective filing date if the provisional application taught a person of ordinary skill in the art to make and use the claimed invention of the Asserted Patents, and to do so without undue experimentation.  The disclosure in the provisional application must also reasonably convey to those of ordinary skill in the art that, as of the date of the provisional application (February 3, 2006), the inventors were in possession of the invention claimed in the patent.

If you determine that the United States has shown by a preponderance of the evidence that the asserted claims of the Asserted Patents are entitled to the filing date of the provisional application, then Gilead must prove by clear and convincing evidence that the United States is not entitled to the benefit of the earlier filing date.

If you find that the United States is entitled to an effective filing date of when the provisional application was filed, then February 3, 2006 is the effective filing date of the Asserted Patents for purposes of validity.  Otherwise, January 31, 2007 is the effective filing date of the Asserted Patents.

## L.    DATE OF INVENTION

The date of invention is either when the invention was reduced to practice or when the invention was conceived, provided the inventors were diligent in reducing the invention to practice.  I may sometimes refer to the date of the invention as the time the invention was made.

The United States contends that the invention date was when the invention claimed by the Asserted Patents was conceived.  Gilead contends the invention date was when the invention was reduced to practice.

Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception requires a showing that the inventor possessed every feature recited in the claims, and that every limitation of the claimed invention was known to the inventor at the time of the alleged conception.

[**GILEAD PROPOSED ADDITION:** Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to make and use the invention without extensive research or experimentation.  Conception may be proven when each of the elements of a claim are shown in complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.  Therefore, the United States must present evidence

sufficient to show on a claim-by-claim basis, that the complete invention was conceived on or before the alleged date of conception.][19, 20]

Diligence means working continuously, though not necessarily every day. The diligence must be reasonably continuous diligence. Periods of inactivity within the critical period do not prevent a claim of reasonable diligence. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence. That being said, the period during which diligence is required must be accounted for by either affirmative acts or acceptable excuses. The diligence inquiry is to determine whether the invention was abandoned or unreasonably delayed.

A claimed method is reduced to practice when all of its elements are successfully performed and has been shown that it will work for its intended purpose, or when it is fully described in a patent application filed with the Patent Office.

---

[19] [**GILEAD POSITION:** Gilead's proposed addition is well-supported by Federal Circuit caselaw and past District of Delaware jury instructions, and will assist jurors in understanding when an invention is fully conceived. *University of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften e.V.*, 734 F.3d 1315, 1323 (Fed. Cir. 2013) ("Conception is … the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice. Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.") (quotation marks and citation omitted); *Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017) ("Conception requires more than a general goal or research plan; it requires a definite and permanent, specific, settled idea, namely, the idea defined by the claim at issue.") (citation omitted); *BridgeStone Am. Tire Ops., LLC v. Schrader-Bridgeport Int'l, Inc.*, No. 13-763-GMS, D.I. 254 at 39 (D. Del. June 10, 2015) (Jury Instructions) (Sleet, J.) ("[Plaintiff] must present evidence sufficient to show on a claim-by-claim basis, with corroborating evidence, that the complete invention was conceived on or before the alleged date of conception.").

[20] [**GOVERNMENT POSITION**: Gilead's proposed addition is redundant to the previous paragraph, which is consistent with the Court's prior instruction on conception. *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 21 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.).]

**Date of Invention**

The oral testimony of the inventors is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice.  An inventor's testimony concerning conception, diligence and reduction to practice of an invention must be corroborated by independent evidence.  Evidence of diligence includes development efforts and work of non-inventors.

To prove a date as the date of invention, the United States must produce evidence to prove that, for each asserted claim, the invention was conceived by that date and the named inventors were diligent in reducing the invention to practice after that date.

In the absence of evidence establishing an earlier date of invention, the date of invention is the same as the effective filing date.  I previously instructed you on how to determine the effective filing date.

### M.   INVALIDITY – ANTICIPATION GENERALLY

An invention must be new relative to the prior art to be entitled to patent protection under the U.S. patent laws.  If an invention is not new, it is said to be anticipated.

[**GOVERNMENT PROPOSAL:** To anticipate a claim, each element in the claim must be presented in a single item of prior art or in a prior invention by another and arranged or combined in the same way as recited in the claim.  I will now describe the different types of anticipation at issue in this case.][21]

[**GILEAD PROPOSAL:** Prior art that may anticipate a claimed invention includes:

(1) patents and printed publications;

(2) prior public knowledge;

(3) a public prior use;

(4) prior conception by another that was communicated to the named inventors; and

(5) a prior invention by another that was not abandoned, suppressed, or concealed.

For a claimed invention to be anticipated by a patent or a printed publication, a single particular prior art reference must include each step of the claim, arranged or combined in the same way as recited in the claim.][22]

---

[21] [**GOVERNMENT POSITION**: The Government's proposed instruction is adapted from and consistent with the Court's prior instruction on anticipation generally.  *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 20 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.).  As the proposed instruction states, subsequent instructions will identify the types of anticipation for the jury to consider and need not be repeated at the outset.]

[22] [**GILEAD POSITION:** The government's requested language fails to outline for the jury the several types of anticipation that it will need to consider as part of its deliberations.  The government's language is also doctrinally incorrect in view of the issue of anticipation by public knowledge and public use at issue in this litigation.  *See Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 587 (Fed. Cir. 2004) ("[T]he 'known . . . by others' provision does not require the anticipating public knowledge to be disclosed in a written document, much less, a single written document." (omission in original) (citing *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000)).]

## N.   INVALIDITY – ANTICIPATION BY PRIOR PUBLIC KNOWLEDGE

An asserted claim is invalid if the invention defined in that claim was publicly known by others in the United States before the named inventors' date of invention.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid because the claimed invention was known by Dr. Robert Grant and/or Dr. Marcus Conant, and made available to the public in the United States before the named inventors' date of invention by Dr. Robert Grant.  Gilead also contends that the claimed invention was made available to the public in the United States before the named inventors' date of invention by Dr. John Kaldor.

To prove public knowledge of a particular claim, Gilead must prove by clear and convincing evidence that a publicly known method in the United States met all of the elements of the asserted claim.

[**GOVERNMENT PROPOSAL:** For an invention to be publicly known, knowledge of the invention must be accessible to the public upon reasonable inquiry.  The public knowledge of the invention must teach one of ordinary skill in the art how to make or carry out the invention without undue experimentation, but the invention does not need to have been reduced to practice. In determining accessibility to the public, you may consider the existence of relevant confidentiality agreements and the degree to which they were honored.][23]

---

[23] [**GOVERNMENT POSITION:** The Government's proposed language is consistent with caselaw and the Court's prior instruction on this issue.  *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 964 (Fed. Cir. 2020) ("This court has uniformly interpreted the 'known or used' prong of § 102(a) to mean 'knowledge or use which is accessible to the public.'"); *id.* at 965 ("Prior knowledge or use that is not accessible to the public 'upon reasonable inquiry' . . . confers no benefit on the public, and thus does not suffice as a defense under § 102(a)." (internal citation omitted)); *id.* ("[B]oth the existence of relevant confidentiality agreements and the degree to which they were honored are evidence of whether prior knowledge and use were accessible to the public but are not necessarily conclusive."); *St. Jude Med. v. Volcano Corp.*, C.A. No. 10-631-RGA, D.I. 431 at 12-13 (D. Del. Oct. 19, 2012) (Final Jury Instructions) (Andrews, J.).  Gilead's proposed language also contains extraneous language reframing the law in a conclusory manner.]

[**GILEAD PROPOSAL:** Anticipation by public knowledge requires that information must be accessible to the public upon reasonable inquiry.  The public knowledge of the method must teach one of ordinary skill in the art how to make or carry out the invention without undue experimentation, but it does not need to have been reduced to practice, i.e., actually have been carried out.  Prior knowledge by a single person is sufficient to invalidate a claim.

If you find that Gilead has proven by clear and convincing evidence that the subject matter covered by any asserted claim(s) was publicly known by persons other than the named inventors in the United States before the date of invention by the named inventors, then you must find that those claim(s) are invalid.][24]

---

[24] [**GILEAD POSITION:** Gilead's proposed language is directly supported by prior jury instructions and Federal Circuit caselaw on anticipation by prior public knowledge. *St. Jude Med. v. Volcano Corp.*, C.A. No. 10-631-RGA, D.I.  431 at 12-13 (D. Del. Oct. 19, 2012) (Final Jury Instructions) (Andrews, J.); *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1289 (Fed. Cir. 2019) ("[P]rior knowledge and use by a single person is sufficient." (alteration in original) (quoting *Coffin v. Ogden*, 85 U.S. (18 Wall.) 120, 124 (1873))); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("Accordingly, in order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public."); *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 965 (Fed. Cir. 2020) (discussing "public knowledge" as "accessible to the public 'upon reasonable inquiry'" (quoting *Gayler v. Wilder*, 51 U.S. (10 How.) 477, 497 (1850))).]

### O.     INVALIDITY – ANTICIPATION BY PRIOR PUBLIC USE

An asserted claim of the United States' patents is also invalid if either: (1) the invention defined in that claim was publicly used by others in the United States before the named inventors' date of invention; or (2) it was publicly used by others in the United States more than one year before the effective filing date of the patent.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid because the claimed invention was publicly used by Dr. Marcus Conant's patients beginning in 2004.

An invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by any other person who is not under any obligation of secrecy to the inventor.  Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation.  The absence of affirmative steps to conceal the use of the invention is evidence of a public use.   To be a prior public use, that use must have been accessible to the public upon reasonable inquiry.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use.  The invention is ready for patenting when there is reason to believe it would work for its intended purpose.  An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention.  An invention

is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

[**GILEAD PROPOSED ADDITION:** Prior use by a single person is sufficient to invalidate a claim.

If you find that Gilead has proven by clear and convincing evidence that the subject matter covered by any asserted claim(s) was either: (1) publicly used by others in the United States before it was invented by the named inventors; or (2) it was publicly used in the United States more than one year before the effective filing date of the patent, then you must find that those claim(s) are invalid.][25, 26]

---

[25] [**GOVERNMENT POSITION:** Gilead's proposed addition is extraneous language reframing the law in a conclusory manner.]

[26] [**GILEAD POSITION:** Gilead's language correctly summarizes the instruction for the jury, including the correct placement of the burden of proof, in order to avoid jury confusion.]

P.        INVALIDITY – OBVIOUSNESS

A claim is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art as of the time the invention was made.  The issue is not whether the claimed subject matter would have been obvious to you as a layperson or to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to a person of ordinary skill in the art as of the time the invention was made.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid as obvious.

Obviousness can only be found if you find that a reason existed at the time the invention was made to combine or modify the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success in doing so.  In determining whether the claimed invention was obvious, consider each asserted claim separately.

In determining whether an asserted claim is obvious, you must first consider the level of ordinary skill in the pertinent field that someone would have had at the time the invention was made.  You must determine what is the level of ordinary skill according to the instruction I gave you earlier.

Second, you must determine what prior art may be considered in determining whether the asserted claims are obvious.  Prior art may be considered if it discloses information designed to solve any problems or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.  In addition to printed references and publications, the prior art may also include prior public knowledge, prior public uses, and information derived by the named inventors from others [**GOVERNMENT PROPOSED ADDITION:** if Gilead has established prior public knowledge, prior public use,

and information derived by the named inventors from others (i.e., conception, diligence, and reduction to practice)][27, 28].  This is true even if that prior public knowledge, prior public uses, and information derived by the named inventors does not by itself anticipate any asserted claim.

[**GILEAD PROPOSED ADDITION:** You should consider whether any evidence relating to invalidity was previously considered by the U.S. Patent and Trademark Office ("USPTO").  Where the USPTO did not previously have all the material facts before it, Gilead's burden to prove invalidity by clear and convincing evidence may be easier to sustain.]

[**GOVERNMENT PROPOSAL:** You should consider whether any evidence relating to invalidity is materially new to the evidence considered by the U.S. Patent and Trademark Office

---

[27] [**GOVERNMENT POSITION:** The Government's proposed language is adapted from and consistent with the Court's prior instruction in requiring the accused infringer to establish prior public knowledge, prior public uses, and derivation before consideration with respect to obviousness. *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 25-27 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.).  The additional length results from Gilead's multiple theories of asserted prior art.]

[28] [**GILEAD POSITION:** The government's proposed addition does not assist instructing the jury and merely adds length without effect.  The government's proposed additional language merely repeats what is already present in agreed-upon language.]

("USPTO").  Where the USPTO did not previously have all the material facts before it, Gilead's burden to prove invalidity by clear and convincing evidence may be easier to sustain.][29, 30]

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the Asserted Patents.  As I instructed you earlier, you must put yourself in the place of a person of ordinary skill in the at the time the invention was made.

In considering whether a claimed invention is obvious, you should consider whether, at the relevant time, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine or modify the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention

---

[29] [**GOVERNMENT POSITION:** Gilead's proposed addition should be modified to refer to evidence that is "materially new to the evidence" considered by the PTO, which is supported by the caselaw.  *See Microsoft Corp v. i4i Ltd. P'ship*, 564 U.S. 91, 110-11 (2011) ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force.  And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain.  In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should, be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent.  When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question.  In either case, the jury may be instructed to evaluate whether the evidence before it is ***materially new***, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence." (internal citation omitted) (emphasis added)).]

[30] [**GILEAD POSITION:** Gilead does not understand the government's position on this issue.  What is marked as "Gilead's Proposal" was originally language proposed for addition by the government to the obviousness instruction, for which Gilead agreed to its addition.  The government subsequently presented this in a redline on the morning of April 17, 2023 (the date of filing with Court) to Gilead as a disputed issue.  With respect to the remainder of the government's position, the accuracy of the language herein identified as a "Gilead Proposal," which it  was not, remains accurate irrespective of the outcome of any *motion in limine* by Gilead.]

was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.  To find it rendered the claimed invention obvious, you must find that the prior art gave a person of ordinary skill in the art a reasonable expectation of success in practicing the claimed invention.

Finally, in determining whether the claimed invention is obvious, you should consider any of the following factors (called "secondary considerations") that you find have been shown by the evidence:

1. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

2. Whether others had tried and failed to make the claimed invention;

3. Whether others copied the claimed invention;

4. Whether the claimed invention satisfied a long-felt need;

5. Whether others in the field praised the claimed invention;

6. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

7. Whether the claimed invention achieved [**GOVERNMENT PROPOSAL:** unexpected results][31] [**GILEAD PROPOSAL:** unexpected superior results compared to the closest prior art][32];

8. Whether others sought or obtained rights to the patent from the patent holder [**GILEAD PROPOSED ADDITION:** because of the validity or enforceability of the patent][33, 34]; and

9. Whether the inventors proceeded contrary to accepted wisdom in the field.

When evidence establishes the presence of one or more of these secondary considerations, it tends to support a finding that the inventions were not obvious.

[**GOVERNMENT PROPOSAL:** A secondary consideration is relevant only if there is a connection, or nexus, between the secondary consideration and the inventive concept of a patent claim. For example, if commercial success is due to advertising, promotion, salesmanship or the

---

[31] [**GOVERNMENT POSITION:** The Government's proposed language is taken directly from and consistent with the Court's prior instructions on secondary factors. *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 25-27 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.); *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 30-31 (D. Del. Apr. 1, 2022) (Final Jury Instructions) (Noreika, J.).]

[32] [**GILEAD POSITION:** The Federal Circuit has expressly held that "[i]n considering unexpected results, courts ask whether 'the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.'" *Forest Labs., LLC v. Sigmapharma Labs., LLC*, 918 F.3d 928, 937 (Fed. Cir. 2019) (quoting *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995)). The Federal Circuit has also explained that "when unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art." *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) (quotation and citation omitted).]

[33] [**GILEAD POSITION:** The Federal Circuit has clearly explained that "[t]he significance of licensing a patent as a secondary consideration in enhancing the nonobviousness of an invention is that an independent party with an interest in being free of the patent has chosen to respect it and pay a royalty under it rather than litigate and invalidate it. … [T]he Board was correct to require that Teva show something more than the mere existence of the license." *Teva Pharm. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1363-64 (Fed. Cir. 2021).]

[34] [**GOVERNMENT POSITION:** The Government's proposed language is taken directly from and consistent with the Court's prior instructions on secondary factors. *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 25-27 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.); *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 30-31 (D. Del. Apr. 1, 2022) (Final Jury Instructions) (Noreika, J.).]

like, or is due to features of the products other than those required by a claim, then any commercial success may have no relation to the issue of that claim's obviousness.][35, 36]

[**GILEAD PROPOSAL:** But evidence of secondary considerations supporting nonobviousness must be the result of the merits of the claimed invention, which is sometimes called a "nexus" to the claimed invention.  The United States bears the burden of establishing a nexus between the evidence of secondary considerations and the invention recited in the claims.  The United States may establish nexus by showing the secondary considerations evidence is the direct result of the novel characteristics of the claimed invention. A nexus is not established where the offered secondary consideration actually results from something other than the novel aspect of the claimed invention, such as a feature that was known in the prior art, an additional unclaimed feature, or external factors such as marketing.   Additionally, any evidence of secondary considerations supporting nonobviousness must be commensurate in scope with the claims for which the evidence is offered to support.]

[**GILEAD PROPOSED ADDITION:** In addition to the above factors, another factor that you may consider is "whether others had contemporaneously conceived of or practiced the

---

[35] [**GOVERNMENT POSITION:** The Government's proposed language is taken directly from and consistent with the Court's prior instructions on nexus.  *See Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 25-27 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.); *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 30-31 (D. Del. Apr. 1, 2022) (Final Jury Instructions) (Noreika, J.).  As stated, this language requires a nexus for a secondary consideration and provides examples to assist the jury in making its determination based on the evidence actually presented.]

[36] [**GILEAD POSITION:** The government's proposed language incorrectly frames the nexus issue as permissive ("may") and omits the requirement that evidence of secondary considerations be commensurate with the scope of the claims.  *See, e.g.*, *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 ("Evidence of secondary considerations must be reasonably commensurate with the scope of the claims."); *see also id.* ("But there is a more fundamental requirement that must be met before secondary considerations can carry the day.  For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." (cleaned up)).]

claimed invention." When evidence establishes that others contemporaneously conceived of or practiced the claimed invention, that tends to prove that invention would have been obvious.][37, 38]

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious.

[**GILEAD PROPOSED ADDITION:** If you find that Gilead has proven by clear and convincing evidence that any asserted claims of the United States' patents would have been obvious to a person of ordinary skill in the art at the time the invention was made, then you must find that those claim(s) are invalid.][39, 40]

---

[37] [**GILEAD POSITION:** The Federal Circuit has expressly held that "[s]imultaneous invention" "constitutes objective evidence that persons of ordinary skill in the art understood the problem and a solution to that problem." *Regents of the Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1295 (Fed. Cir. 2018). Because Gilead intends to introduce such evidence at trial, instruction on the role of simultaneous or contemporaneous in the context of the overall obviousness determination is an appropriate instruction on the law for the jury.

The government below concedes that this is a correct factor under the law. The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[38] [**GOVERNMENT POSITION:** The appropriateness of this factor will depend on the extent of the evidence of simultaneous invention Gilead is able to introduce at trial. While simultaneous invention may be relevant in "some rare instances" to provide objective indicia of obviousness, *Geo. M. Martin Co. v. All Mech. Sys. Int'l*, 618 F.3d 1294, 1304 (Fed. Cir. 2010), "a single instance of simultaneous invention cannot alone support a finding of obviousness," *Exela Pharma Scis., LLC v. Eton Pharms., Inc.*, No. CV 20-365 (MN), 2022 WL 3278735, at *29 (D. Del. Aug. 8, 2022) (Noreika, J.).]

[39] [**GOVERNMENT POSITION:** Gilead's proposed addition is extraneous language reframing the law in a conclusory manner.]

[40] [**GILEAD POSITION:** Gilead's language summarizes the instruction for the jury, including the correct placement of the burden of proof, in order to avoid jury confusion.]

### Q.      INVALIDITY – LACK OF ENABLEMENT

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation.  This requirement is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In this case, Gilead contends that the United States' patents are invalid for lack of enablement.  As the party challenging validity, Gilead bears the burden of establishing, by clear and convincing evidence, that the specification fails to satisfy the enablement requirement.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain, such as what was well known in the art and what would have already been available to the public. In addition, the patent disclosure need not enable persons of ordinary skill to make a commercially viable product or to otherwise meet the standards for success in the commercial marketplace.

Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the claimed invention include:

1.  the quantity of experimentation necessary;

2.  the amount of direction or guidance disclosed in the patent;

3.  the presence or absence of working examples in the patent;

4.  the nature of the invention;

5.  the state of the prior art;

6.  the relative skill of those in the art;

7.   the predictability of the art; and

8.   the breadth of the claims;

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the invention from the disclosures in the patent coupled with information known in the art.

[**GOVERNMENT PROPOSAL:** To the extent that that any of the embodiments or combinations recited in the asserted claims are inoperable, you may consider whether the number of inoperable embodiments is significant and would require one of ordinary skill of the art to conduct undue experimentation.][41]  [**GILEAD PROPOSAL:** If you determine that a patent claim expressly recites embodiments of a method that are inoperative or impossible, the claim is invalid as not enabled.][42]

---

[41] [**GOVERNMENT POSITION:** The Government's proposed language is consistent with caselaw considering whether the number of inoperable embodiments is significant.  *See Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1576-77 (Fed. Cir. 1984) ("Even if some of the claimed combinations were inoperative, the claims are not necessarily invalid. . . . Of course, if the number of inoperative combinations becomes significant, and in effect forces one of ordinary skill in the art to experiment unduly in order to practice the claimed invention, the claims might indeed be invalid.").]

[42] [**GILEAD POSITION:** The Federal Circuit has invalidated claims that expressly claim inoperative embodiments for failing to enable the claim.  *See, e.g., Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1364 (Fed. Cir. 2018) (practicing one of six claimed permutations "would have required undue experimentation—indeed, … it is impossible," and the claims were therefore invalid as not enabled); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).]

Invalidity – Lack of Enablement

[**GILEAD PROPOSED ADDITION:** If you find that the Gilead has proven by clear and convincing evidence that the United States' patents do not enable a person of ordinary skill in the art to practice of any asserted claim(s), then you must find that those claim(s) are invalid.][43,44]

---

[43] [**GOVERNMENT POSITION:** Gilead's proposed addition is extraneous language reframing the law in a conclusory manner.]

[44] [**GILEAD POSITION:** Gilead's language summarizes the instruction for the jury, including the correct placement of the burden of proof, in order to avoid jury confusion.]

### R.        INVALIDITY –WRITTEN DESCRIPTION

A patent must contain a written description of the method claimed in the patent.  The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter.  The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent, with all of its recited claim limitations.  The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.  When determining whether the specification discloses the invention, the claim must be viewed as a whole.

In this case, Gilead contends that the asserted claims of the United States' patents are invalid for failure to satisfy the written-description requirement.  Gilead bears the burden of establishing by clear and convincing evidence that the patent specification fails to satisfy the written-description requirement.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.

In evaluating whether the specification has provided an adequate written description, you may consider such factors as

1.  the nature and scope of the patent claims;

2.  the complexity, predictability, and maturity of the technology at issue;

3.  the existing knowledge in the relevant field; and

4.  the scope and content of the prior art.

– 43 –

[**GILEAD PROPOSED ADDITION:** If you find that the Gilead has proven by clear and convincing evidence that the United States' patents do not contain adequate written description support for the inventions recited in any asserted claim(s), then you must find that those claim(s) are invalid.][45, 46]

---

[45] [**GOVERNMENT POSITION:** Gilead's proposed addition is extraneous language reframing the law in a conclusory manner.]

[46] [**GILEAD POSITION:** Gilead's language summarizes the instruction for the jury, including the correct placement of the burden of proof, in order to avoid jury confusion.]

III.      **<u>DAMAGES</u>**

A.      **DAMAGES – GENERALLY**

I will next instruct you on damages.  You must not take these instructions as implying that the United States is entitled to recover damages.  Instructions regarding the measure of damages are given for your guidance in the event you find that Gilead infringed one or more valid patent claims.

If you find that Gilead is liable for inducing direct infringement of one or more of the asserted claims, and that the asserted claims are not invalid, you must determine the amount of money damages to be awarded to the United States.  On the other hand, if you find that none of the asserted claims is infringed, or that each of the asserted claims that you find infringed is invalid, then you should not consider damages in your deliberations.

The United States has the burden of proving damages by a preponderance of the evidence.  Although the United States is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

If proven by the United States, the amount of damages must be adequate to compensate the United States for the infringement.  The damages award cannot in any event be less than a reasonable royalty.  You may not add anything to the amount of damages to punish an accused infringer or to set an example.  You also may not add anything to the amount of damages for interest.

.

– 45 –

## B.      REASONABLE ROYALTY

The United States is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the alleged infringement began.

In considering this hypothetical negotiation, you should focus on what the expectations of the United States and Gilead would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.  In determining this, you must assume that all parties to the hypothetical negotiation believed the patent was valid and infringed and that all parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that one party would have preferred.

[**GILEAD PROPOSED ADDITION:** A reasonable royalty may be awarded in several ways.  For example, you may structure that royalty as a percentage of the revenue from infringing sales.  You may also structure that reasonable royalty as a lump sum, which is a one-time, up-front payment covering all past and future infringement.][47, 48]

---

[47] [**GOVERNMENT POSITION:** The appropriateness of this additional language will depend on the lump sum evidence Gilead is able to introduce at trial.]

[48] [**GILEAD POSITION:** The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

### C.    REASONABLE ROYALTY – FACTORS RELEVANT TO THE HYPOTHETICAL NEGOTIATION

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. [**GOVERNMENT PROPOSED ADDITION:** Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.][49]

2. [**GOVERNMENT PROPOSED ADDITION:** The rates paid by Gilead to license other patents comparable to the Asserted Patents.][50]

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. [**GOVERNMENT PROPOSED ADDITION:** The effect of selling a product for use of the patented method in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.][51]

---

[49] [**GILEAD POSITION:**  The government has not produced evidence to support such an instruction to the jury in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[50] [**GILEAD POSITION:**  The government has not produced evidence to support such an instruction to the jury in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

[51] [**GILEAD POSITION:**  The government has not produced evidence to support such an instruction to the jury in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

**Reasonable Royalty – Relevant Factors to the Hypothetical Negotiation**

7. The duration of the Asserted Patents and the term of the license.

8. The established profitability of the product used under the Asserted Patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which the licensee has made use of the invention; and any evidence that shows the value of that use.

12. [**GOVERNMENT PROPOSED ADDITION:** The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.][52]

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the alleged infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors.  You may also consider any other factors that in your mind would have increased or decreased the royalty Gilead would have been willing

---

[52] [**GILEAD POSITION:**  The government has not produced evidence to support such an instruction to the jury in this case.  The parties previously discussed that disputes over certain jury instructions based on the evidence actually adduced before the jury at trial could be resolved at the charge conference.]

**Reasonable Royalty – Relevant Factors to the Hypothetical Negotiation**

to pay, and the United States would have been willing to accept, acting as normally prudent businesspeople.

### D.      REASONABLE ROYALTY – APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features or other factors such as marketing or advertising, or Gilead's size or market position.

[**GILEAD PROPOSED ADDITION:** If you award a royalty as a percentage of revenue from infringing sales, you must determine the royalty base, which represents the revenue generated by the infringement, and the royalty rate, which represents the percentage of that revenue owed to the patent owner.] In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty base and the royalty rate must reflect the value attributable to the infringing use of the claimed method, and no more.  In other words, the royalty base must be closely tied to the invention's footprint in the marketplace. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate.  Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate.  Rather, you must determine an appropriate royalty base and an appropriate royalty rate that reflect the value attributable to the patented invention alone.  The ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

The process of separating the value of the allegedly infringing use from the value of all other uses is called apportionment.  When a product has both patented and unpatented uses, your award must be apportioned so that it is based only on the value of the patented uses, and no more.  [**GILEAD PROPOSED ADDITION:** Where, as here, the asserted claims are method claims, patent holders cannot recover damages based on sales of products with the mere capability to practice the claimed method.  In determining the royalty base, you also may not include sales of a product unless the United States proves that those products were actually used

to perform the claimed methods.  This means that if you award reasonable royalty damages, you may not include in your calculation of damages sales of Truvada® and Descovy® for uses not patented by the United States, such as treatment of HIV.  Similarly, you may not base any reasonable royalty calculation on sales of Truvada® and Descovy® for uses that you determine were not induced or caused by either GSI or GSIUC, for example, infringing use of Truvada® or Descovy® that is induced by someone other than Gilead.][53, 54]

---

[53] [**GILEAD POSITION:**  First, Gilead's proposed addition that "you also may not include sales of a product unless the government proves that those products were actually used to perform the claimed methods," is directly supported by the Federal Circuit's decision in *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, where it held that "failure to 'apportion'" or "failing to limit damages to a reasonable approximation of actual infringing uses of the claimed method" is "legally improper."  30 F.4th 1339, 1357 (Fed. Cir. 2022).

Second, Gilead's proposed addition that "you may not base any reasonable royalty calculation on sales of Truvada® and Descovy® for uses that you determine were not induced or caused by either GSI or GSIUC" is directly supported by the Federal Circuit's decision in *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, where it held that "[t]o establish inducement, a patent owner must show that the accused inducer's actions actually induced the infringing acts of another and knew or should have known that its actions would induce actual infringement." 7 F.4th 1320, 1339 (Fed. Cir. 2021); *see also* 35 U.S.C. § 284 (permitting "damages adequate to compensate for the infringement").]

[54] [**GOVERNMENT POSITION:** Gilead's proposed addition goes far beyond apportionment and is inconsistent with its cited cases, which allow for a "reasonable approximation of actual infringing uses of the claimed method."  *See, e.g., Niazi Licensing Corp.*, 30 F.4th at 1357. *GlaxoSmithKline*, as cited by Gilead, pertains to liability and not apportionment of damages. Gilead's proposed addition also improperly injects argument as to how the jury should view the evidence.]

### E.      REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation in June 2015.   [**GOVERNMENT PROPOSED ADDITION:** Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider, for example, evidence of usage after infringement started, profits earned by the infringer.][55]   [**GILEAD PROPOSED ADDITION:** The date of the hypothetical license negotiation, that is June 2015, is independent of the earliest date of any liability for induced infringement by Gilead.  To the extent to you find that there has been any induced infringement by the Gilead, you must separately determine the earliest date of liability.][56]

---

[55] [**GOVERNMENT POSITION:** The Government's language is taken directly from and is consistent with the Court's instruction in *Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 37 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.), which also involved a claim of induced infringement.]

[56] [**GILEAD POSITION:** Gilead's proposed addition directly implements the Federal Circuit's guidance in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, where the Court stated that "[w]e have also been careful to distinguish the hypothetical negotiation date from other dates that trigger infringement liability."  694 F.3d 51, 75-76 (Fed. Cir. 2012).]

F.    **REASONABLE ROYALTY – COMPARABLE LICENSE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

IV.        <u>**DELIBERATIONS AND VERDICT**</u>

 A. **DELIBERATIONS AND VERDICT – INTRODUCTION**

 Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

 Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

 One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### B.      UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to every answer on the verdict form.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review that document with you in a minute.

You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

.

## C.      DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So, you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

### D.   SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### E.      COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.