UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA,
    *Plaintiff–Counterclaim Defendant*,

v.

GILEAD SCIENCES, INC.,
    *Defendant–Counterclaim Plaintiff,*

AND GILEAD SCIENCES IRELAND UC,
    *Defendant.*

Civil No. 1:19-cv-02103-MN

## UNITED STATES' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50(a)

LAURA D. HATCHER (DE Bar No. 5098)
Assistant United States Attorney
SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:   (302) 573-6277
Fax:   (302) 573-6220
*Laura.hatcher@usdoj.gov*
*Shamoor.anis@usdoj.gov*


Of Counsel:

LENA YUEH
Special Counsel
Department of Justice

DAVID C. WEISS
United States Attorney

MICHAEL GRANSTON
Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director
CARRIE E. ROSATO
PATRICK C. HOLVEY
MATTHEW D. TANNER
LUCY GRACE D. NOYOLA
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Tel:   (202) 307-0341
Fax:   (202) 307-0345

*Attorneys for Plaintiff United States*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      Non-Infringement .................................................................................................................. 2

    A.  Direct Infringement ....................................................................................................... 2

    B.  Induced Infringement .................................................................................................... 4

II.     Invalidity ............................................................................................................................... 5

    A.  Anticipation .................................................................................................................... 5

    B.  Obviousness ................................................................................................................... 7

    C.  Lack of Enablement ...................................................................................................... 8

III.    Damages ................................................................................................................................ 9

CONCLUSION ................................................................................................................................ 9

## INTRODUCTION

Defendants Gilead Sciences, Inc. and Gilead Sciences Ireland UC (collectively, "Gilead") failed to present sufficient evidence from which a reasonable jury could find in their favor on any of their defenses or counterclaims. Accordingly, Plaintiff the United States of America ("the Government") respectfully requests that the Court grant judgment as a matter of law in its favor under Federal Rule of Civil Procedure 50(a) on the following claims and defenses: (1) the Government's claims for direct and induced infringement of claim 13 of U.S. Patent No. 9,579,333 ("the '333 patent"), claim 18 of U.S. Patent No. 9,937,191 ("the '191 patent"), and claim 18 of U.S. Patent No. 10,335,423 ("the '432 patent") (collectively, "the Asserted Patents" and "the Asserted Claims"); (2) Gilead's defense that the Asserted Claims are invalid due to anticipation pursuant to 35 U.S.C. § 102; (3) Gilead's defense that the Asserted Claims are invalid as obvious pursuant to 35 U.S.C. § 103; (4) Gilead's defense that the Asserted Claims are invalid due to lack of enablement pursuant to 35 U.S.C. § 112; and (5) the Government's claim for relief that it is entitled to damages based upon a reasonable royalty in the range of 4% to 10% of Gilead's sales of Truvada® and Descovy® for PrEP.

## LEGAL STANDARD

A motion for judgment as a matter of law under Rule 50(a) should be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Rule 50 "allows the trial court to remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quotation omitted). "A mere scintilla of evidence presented by [the

opposing party] is not sufficient to deny a motion for judgment as a matter of law." *Stewart v. Walbridge, Aldinger Co.*, 882 F. Supp. 1441, 1443 & n.2 (D. Del. 1995).

## ARGUMENT

### I. NON-INFRINGEMENT

#### A. Direct Infringement

Direct patent infringement occurs when the accused infringer "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). "A patentee is only required to prove direct infringement by a preponderance of the evidence—that it is more likely than not that the direct infringement occurred." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 928 (Fed. Cir. 2011) (citation omitted). "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 327 (D. Del. 2021) (quotation omitted).

Gilead failed to present sufficient evidence from which a reasonable jury could find that one or more patients or physicians (either separately or jointly) did not directly infringe any of the Asserted Claims by using or prescribing Truvada® for PrEP. Gilead similarly failed to present sufficient evidence from which a reasonable jury could find that one or more patients or physicians (either separately or jointly) did not directly infringe any of the Asserted Claims by using or prescribing Descovy® for PrEP.

Gilead disputes infringement with respect to only one limitation of the Asserted Claims: "wherein the combination is administered prior to a potential exposure of the human to the human immunodeficiency retrovirus." Tr. 1006 (Flexner); *see also id.* 1002-05 (same). Gilead's expert Dr. Flexner testified that the labels do not instruct direct infringement of the Asserted Claims

2

because the "recommendation or instructions for use" are to use Truvada® and Descovy® "as part of a comprehensive prevention strategy" that includes safer sex practices such as consistent and correct condom use and knowledge of the HIV and sero status of the user and user's sex partners. *Id.* 1004-06.

However, Gilead presented no evidence that those instructions negated or diminished other instructions in the labels directing patients and physicians how to specifically use Truvada® for PrEP and Descovy® for PrEP such that no direct infringement occurred. *See, e.g.*, Tr. 562, 572-573, 577-585, 599-600, 603-607 (Murphy); PTX-1010.001, .003-.004, 0.10, .042; PTX-1015.001, .003, .005-.006, .037. Indeed, despite the instructions cited by Gilead, its own internal documents confirmed infringement by most patients: "Risky behaviors abound: few are monogamous and most have had unprotected anal sex." Tr. 586-88 (Murphy); PTX-670.063. Both Dr. Flexner and Dr. Conant also acknowledged some instances in which PrEP users were not using condoms consistently or correctly. Tr. 801-02 (Conant) (agreeing that "sometimes . . . PrEP users use condoms incorrectly, even though they're trying to"); *id.* at 1011 (Flexner) (agreeing that "some" have "engag[ed] in riskier nonsafer sex practices knowing that they're on PrEP" and that "half the patients in [the Mayer study] acquired a sexually transmitted infection like syphilis or gonorrhea[, s]uggesting they had at least some sexual encounters where they weren't using condoms").

In addition, Dr. Flexner's testimony and the REMS data demonstrate that more than one patient or physician (either separately or jointly) directly infringed the Asserted Claims. Dr. Flexner testified that, based on the REMS 5 survey results, five "patients or uninfected individuals" and "15 health care providers" completed the survey. Tr. 1000. He also acknowledged the "personal experience" of the Government's expert Dr. Murphy prescribing Truvada® for PrEP. Tr. 997 (Flexner); *id.* at 552-53, 555-56, 558 (Murphy). Dr. Flexner also

3

acknowledged that REMS 4 was conducted in part after the '333 patent issued and did not dispute that survey had a meaningful sample size. *Id.* at 999 (Flexner); *id.* at 573, 585-86 (Murphy). Moreover, Dr. Flexner did not dispute that the REMS survey results are representative of the population of patients taking Truvada® for PrEP and physicians prescribing Truvada® for PrEP and their adherence to the PrEP label. *Id.* at 937, 997-1000, 1009-13 (Flexner).

### B.      Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." *See* 35 U.S.C. § 271(b). Induced infringement requires proof of direct infringement by a third party. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022) (quotation omitted). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 646 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). To find inducement, the "plaintiff must [] prove that the defendants' actions led to direct infringement of the patent-in-suit." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330 (Fed. Cir. 2016) (quotation omitted).

Gilead failed to present sufficient evidence from which a reasonable jury could find that Gilead did not induce infringement of the Asserted Claims with respect to Truvada® and Descovy® for PrEP. In addition to the insufficient evidence with respect to direct infringement discussed above, Gilead presented insufficient evidence that it lacked the requisite intent for induced infringement.

Gilead executive Mr. Alton conceded that a goal of Gilead's REMS was strict adherence to the labels and that the PrEP indication in the label "encourage[s] people to use the Truvada once daily to ensure the safety and efficacy of PrEP." Tr. 766-67. Gilead presented no evidence

4

disputing that the Truvada® and Descovy® labels provide instructions directing patients and physicians how to specifically use Truvada® for PrEP and Descovy® for PrEP in an infringing manner. Where "the patient did not have to consult anything outside of the label to infringe," "the instruction would 'necessarily lead' to infringement"; this is "enough for 'active steps' taken to 'encourage' direct infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 634 (Fed. Cir. 2015) (citation omitted).

In addition, Gilead adduced insufficient evidence rebutting testimony and documents showing that Gilead either had actual knowledge of—or was willfully blind to—the Asserted Patents and infringement of the patents. Gilead executive Dr. Rooney testified that he "became aware of the patents in this case in 2016" and CDC "seeking patent protection for Truvada for PrEP" in 2014. Tr. 858-59. He also conceded receiving from Dr. Heneine a scientific article about CDC's experiments on Truvada® for PrEP and a resume listing the provisional application that led to the Asserted Patents. *Id.* at 850, 860-61; PTX-425; PTX-443. Other Gilead executives testified about, and Gilead does not dispute, receiving information about the PCT application to which the Asserted Patents claim priority through a widely-distributed Derwent patent alert and Dr. Janssen's invention disclosure form. Tr. 522-26 (Lee); *id.* at 528 (uncontested facts); *id*. 705-07 (same); PTX-635; PTX637.043; PTX128.001; PTX128.008. Any evidence of Gilead's purported belief as to invalidity, a contractual breach, unenforceability, or license "cannot negate the scienter required for induced infringement." *See Commil*, 575 U.S. at 642-46; Fed. R. Civ. P. 8(c)(1).

II. **INVALIDITY**

    A. **Anticipation**

Anticipation must be proven by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*., 564 U.S. 91, 95 (2011). Anticipatory prior knowledge or use must be accessible to the public "upon reasonable inquiry." *BASF Corp. v. SNF Holding Co*., 955 F.3d 958, 965 (Fed.

Cir. 2020) (citations omitted). The "existence of relevant confidentiality agreements and the degree to which they were honored are evidence of whether prior knowledge and use were accessible to the public." *Id.* Uncorroborated testimony of an alleged public use "does not, of itself, provide the clear and convincing evidence required to invalidate a patent." *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998). "For a prior art reference to anticipate a claim, it must disclose all of the limitations of the claim, 'arranged or combined in the same way as in the claim.'" *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1361 (Fed. Cir. 2012) (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008)).

Gilead alleges that the Asserted Claims are invalid pursuant to 35 U.S.C. § 102(a) based on alleged prior public knowledge because: (1) the claimed invention was allegedly known by Dr. Grant and/or Dr. Conant, and made available to the public in the United States before the named inventors' date of invention by Dr. Grant and (2) the claimed invention was allegedly made available to the public in the United States before the named inventors' date of invention by Dr. Kaldor. Gilead also alleges that the Asserted Claims are invalid based on prior public use pursuant to 35 U.S.C. § 102(a) and (b) because the claimed inventions were allegedly publicly used by Dr. Conant's patients beginning in 2004.

Gilead failed to present sufficient evidence from which a reasonable jury could find that any of the Asserted Claims is invalid as anticipated by prior public knowledge. Gilead provided insufficient evidence that Dr. Grant's proposal was publicly available, that Dr. Grant knew of the efficacy of Truvada® for PrEP, and that Dr. Grant's work preceded the date of invention by the named inventors. Gilead also adduced insufficient evidence to show any anticipation by Dr. Kaldor of the Asserted Claims.

Gilead failed to present sufficient evidence from which a reasonable jury could find that any of the Asserted Claims is invalid as anticipated by prior public use. Gilead adduced insufficient evidence to corroborate Dr. Conant's testimony concerning his alleged use of Truvada® for PrEP.

### B.     Obviousness

A patent is invalid as obvious only "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "A party seeking to invalidate a patent on the basis of obviousness must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc*., 688 F.3d 1342, 1360 (Fed. Cir. 2012) (quotations omitted).

Gilead alleges that the Asserted Claims are invalid as obvious based upon the following combination of prior art references: (1) Tsai 1995 and the Truvada 2004 label; (2) Tsai 1995 and the California PEP guidelines; and (3) Tsai 1995, the California PEP guidelines, and the Truvada 2004 label.

Gilead failed to present sufficient evidence from which a reasonable jury could find that any of the Asserted Claims is invalid as obvious in view of the prior art and the understanding of one of ordinary skill in the art. Gilead provided no evidence that the Truvada 2004 label, Tsai 1995, and the California PEP guidelines included PrEP data or otherwise taught PrEP, the combination of TDF and FTC for PrEP, or its efficacy. *See, e.g.*, JTX-10; JTX-11; JTX-12. Gilead

7

presented insufficient evidence that a person of ordinary skill would have been motivated to combine Tsai 1995 with the Truvada 2004 label and/or the California PEP guidelines in view of Tsai 1995's teaching away from tenofovir-based PrEP.

In addition, Gilead failed to dispute the evidence of secondary considerations, including commercial success, failure of others, copying, long-felt need, praise of the invention, whether others sought or obtained rights to the patents from the Government, and accepted wisdom in the field.  Dr. Flexner agreed "there was a long felt unmet need" and provided no testimony about any of the other factors.  Tr. 985-89.

### C. Lack of Enablement

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112 ¶ 1 (pre-AIA).  The party asserting non-enablement bears the burden of proof by clear and convincing evidence.  *See Alcon Rsch. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1189-90 (Fed. Cir. 2014).  A patent may be enabling even though some experimentation is necessary to make and use the claimed invention, although the amount of experimentation needed must not be unduly extensive.  *See* 35 U.S.C. § 112, ¶ 1; *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986).

Gilead failed to present sufficient evidence from which a reasonable jury could find that any of the Asserted Claims is invalid for lack of enablement.  Gilead provided insufficient evidence that any of the following factors show that the disclosures of the Asserted Patents require undue experimentation:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability

or unpredictability of the art, and (8) the breadth of the claims.  *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

## III. DAMAGES

Under 35 U.S.C. § 284, on a finding of infringement, a patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 504 (1964).  The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) (quotation omitted).

Gilead failed to present sufficient evidence that the Government is not entitled to damages, including the amount of a reasonable royalty, for infringement of the Asserted Claims.  The Government presented ample evidence that it is entitled to recover for Gilead's infringement up to the time of trial damages reasonable royalty damages based on a rate between 4% and 10% on Gilead's sales of Truvada® and Descovy® for PrEP.  The Government presented evidence through the testimony of Dr. McDuff that the Government is entitled to recover damages in an amount between $276.4 million and $691 million with respect to Truvada® for PrEP, and between $124.2 million and $311 million with respect to Descovy® for PrEP.

## CONCLUSION

For at least these reasons, the Court should grant judgment to the Government as a matter of law.

| | |
|---|---|
| Dated: May 8, 2023 | Respectfully submitted, |// 

Dated: May 8, 2023

LAURA D. HATCHER (DE Bar No. 5098)
Assistant United States Attorney
SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:   (302) 573-6277
Fax:   (302) 573-6220
*Laura.hatcher@usdoj.gov*
*Shamoor.anis@usdoj.gov*


Of Counsel:
LENA YUEH
Special Counsel
U.S. Department of Justice

Respectfully submitted,

DAVID C. WEISS
United States Attorney

MICHAEL GRANSTON
Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

*/s/ Walter W. Brown*
WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director

CARRIE E. ROSATO
PATRICK C. HOLVEY
MATTHEW D. TANNER
LUCY GRACE D. NOYOLA
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
Tel:   (202) 307-0341
Fax:   (202) 307-0345

*Attorneys for Plaintiff United States*

10