IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE UNITED STATES OF AMERICA,          )
                                       )
        Plaintiff/Counterclaim Defendant,  )
                                       )
        v.                             )
                                       )
GILEAD SCIENCES, INC.,                 )     C.A. No. 19-2103 (MN)
                                       )
        Defendant/Counterclaim Plaintiff,  )
                                       )
and GILEAD SCIENCES IRELAND UC,        )
                                       )
        Defendant.                     )

## **FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

I.     **GENERAL**........................................................................................................................**1**

    A.    INTRODUCTION ........................................................................1

    B.    CONSIDERATION OF EVIDENCE ............................................2

    C.    BURDENS OF PROOF ................................................................3

II.    **PATENT JURY INSTRUCTIONS** ...............................................................................**4**

    A.    THE PARTIES' CONTENTIONS ...............................................4

    B.    SUMMARY OF PATENT ISSUES ............................................5

    C.    THE CLAIMS OF A PATENT ...................................................6

    D.    INFRINGEMENT – GENERALLY..............................................8

    E.    DIRECT INFRINGEMENT ........................................................9

    F.    JOINT INFRINGEMENT ..........................................................11

    G.    INDUCED INFRINGEMENT ....................................................13

    H.    INVALIDITY – GENERALLY ..................................................14

    I.    PERSON OF ORDINARY SKILL IN THE ART...........................15

    J.    PRIOR ART – GENERALLY ....................................................16

    K.    DATE OF INVENTION.............................................................17

    L.    INVALIDITY – ANTICIPATION GENERALLY .............................19

    M.    INVALIDITY – ANTICIPATION BY PRIOR PUBLIC
          KNOWLEDGE ........................................................................20

    N.    INVALIDITY – ANTICIPATION BY PRIOR PUBLIC USE...........21

    O.    INVALIDITY – OBVIOUSNESS...............................................22

    P.    INVALIDITY – LACK OF ENABLEMENT................................26

III.    **DAMAGES** ...................................................................................................................**28**

    A.    DAMAGES – GENERALLY....................................................28

    B.    REASONABLE ROYALTY ......................................................29

    C.    REASONABLE ROYALTY – FACTORS RELEVANT TO THE
          HYPOTHETICAL NEGOTIATION ...........................................30

    D.    REASONABLE ROYALTY – APPORTIONMENT .........................32

    E.    REASONABLE ROYALTY – TIMING......................................33

    F.    REASONABLE ROYALTY – COMPARABLE LICENSE
          AGREEMENTS........................................................................34

IV.    **DELIBERATIONS AND VERDICT** .........................................................................**35**

    A.    DELIBERATIONS AND VERDICT – INTRODUCTION................35

    B.    UNANIMOUS VERDICT.........................................................36

C.      DUTY TO DELIBERATE ......................................................................................37

D.      SOCIAL MEDIA ...................................................................................................38

E.      COURT HAS NO OPINION..................................................................................39

I.    **GENERAL**

A.    **INTRODUCTION**

Members of the jury, now is the time for me to instruct you about the law that you must follow in deciding this case.  Please listen carefully to everything I say.  You must follow all of my instructions, including the ones that I gave you at the start of the case and the ones I have given during trial, and not single out some and ignore others.  They are all important.

You will have a written copy of these instructions, as well as my preliminary instructions, with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by reminding you of the respective burdens in this case, and then I will instruct you concerning the positions of the parties and the law you will apply in this case.  Then we will hear the closing arguments.  After that, I will explain the rules that you must follow during your deliberations in the jury room.

**B.      CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### C.        BURDENS OF PROOF

As I told you on the first day of trial, in a legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I will now remind you what they mean.

This is a civil case in which the United States alleges that Gilead Sciences, Inc. and Gilead Sciences Ireland UC have induced others to infringe three patents the United States owns. I will usually refer to the two companies collectively as "Gilead." When there are distinctions that need to be made between the two companies, I will refer to Gilead Sciences, Inc. as "GSI" and Gilead Sciences Ireland as "GSIUC." The United States has the burden of proving infringement and the amount of money damages for any infringement by a preponderance of the evidence. That means it has to produce evidence that, when considered in light of all of the facts, leads you to believe that what the United States claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the United States' claims of induced infringement and damages must make the scales tip somewhat on its side.

Gilead contends that the United States' patents are invalid. A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid. Clear and convincing evidence means that it is highly probable that what Gilead seeks to prove is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden is a higher burden of proof that applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case and put it out of your mind.

II.      **PATENT JURY INSTRUCTIONS**

A.      **THE PARTIES' CONTENTIONS**

This case was filed in November of 2019 by the United States, alleging patent infringement against Gilead.  You have heard evidence regarding the three Asserted Patents in this case: U.S. Patent Nos. 9,579,333; 9,937,191 and 10,335,423, which have been referred to as the '333, '191, and '423 patents, or the "Asserted Patents."  The United States alleges that Gilead has induced infringement of claim 13 of the '333 patent, claim 18 of the '191 patent and claim 18 of the '423 patent.  The United States also alleges that it is entitled to damages for Gilead's infringement.  Gilead denies that it has induced infringement of the asserted claims of the Asserted Patents and contends that the asserted claims of the Asserted Patents are invalid on various grounds.

### B.     SUMMARY OF PATENT ISSUES

You must decide the following issues in this case according to the instructions that I give you:

1. Whether the United States has proven by a preponderance of the evidence that one or more patents or physicians (either separately or jointly) directly infringed one or more of the asserted claims of the Asserted Patents;

2. Whether the United States has proven by a preponderance of the evidence that Gilead induced infringement of one or more of the asserted claims of the Asserted Patents;

3. Whether Gilead has proven by clear and convincing evidence that one or more of the asserted claims of the Asserted Patents is invalid;

If you decide that Gilead induced infringement of any claim of the Asserted Patents that is not invalid, then you will also need to decide what money damages should be awarded to compensate the United States.

## C.     THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you need to understand the role of patent "claims." The claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

In this case, the asserted patent claims are what are known as "method claims," which consist of one or more "steps." Because a method constitutes a sequence of steps, the use of a method necessarily involves doing or performing each and every one of the recited steps.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is directly infringed, whether GSI or GSIUC or both, induce infringement of each claim, and whether or not each claim is invalid.

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The three claims at issue in this case are dependent claims. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the terms (also called "limitations") of the other claim or claims to which it refers, as well as the additional terms of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim to which it refers. For example, claim 13 of the '333 patent refers to claim 12 and is a dependent claim. To determine what claim 13 covers, the words of that claim and the words of independent claim 12 of the '333 patent must be read together.

It is my job to define the terms of the claims and instruct you about the meaning.  It is your role to apply my definitions to the issues that you are asked to decide.  In this case, I have determined the meaning of the following terms of the asserted claims of the Asserted Patents:

- "[a] process for inhibiting establishment of a human immunodeficiency virus self-replicating infection of human immunodeficiency virus infection in a human" means "a process for inhibiting establishment of a human immunodeficiency virus self-replicating infection in a human"

- "thereby inhibiting the establishment of the self-replicating infection with the immunodeficiency virus in the human" requires that "[t]he human remains negative for the immunodeficiency virus while receiving the administration." Whether a host remains negative is based on both a serological and PCR assay if both tests are performed but the claims do not require unnecessary testing to be done.

- "prior to an [or the] exposure" requires an exposure, which means "contact between an immunodeficiency retrovirus and a host"

- "prior to [a] potential exposure" means "prior to engaging in activity that could result in an exposure"

You must accept my definitions of these terms as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning in the field of the patents.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

### D.      INFRINGEMENT – GENERALLY

United States patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell or selling the patented method in the United States during the term of the patent.  Any person or company that has engaged in any of those acts without a license infringes the patent.

Infringement is assessed on a claim-by-claim basis.   Therefore, there may be infringement of one claim but no infringement of another.  In this case, there are two possible ways that a claim may be infringed. The two types are called: (1) direct infringement and (2) induced infringement.  Induced infringement is referred to as indirect infringement.  The United States alleges that one or more patients or physicians directly infringed the asserted claims of the Asserted Patents.  The United States alleges that Gilead indirectly infringed the three asserted claims of the Asserted Patents by inducing infringement by patients or physicians.

The United States bears the burden of proving by a preponderance of the evidence that each of the asserted claims of the Asserted Patents is infringed.  You, the jury, must determine infringement for each patent and each claim separately.

I will now explain each type of infringement in more detail.

### E.     DIRECT INFRINGEMENT

With respect to Truvada, you must determine whether the United States has proven direct infringement of the asserted claims of the '333, '191, and '423 patents by patients or physicians (either separately or jointly).  With respect to Descovy, you must determine whether the United States has proven direct infringement of asserted claim 18 of the '423 patent by patients or physicians (either separately or jointly).

As I just told you, you must determine, separately for each asserted claim, whether or not there is infringement.  There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of any claims that depend from the independent claim were met, in order to determine whether the dependent claims have also been infringed.  Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

To determine direct infringement, you must compare the actions of a third party (such as a patient or physician) to each asserted claim of the Asserted Patents to determine whether those actions satisfy each and every one of the requirements of that claim.  A patent claim is infringed only if the actions of that third party meet each and every limitation in that patent claim.  If one or more steps recited in a claim was not performed, there is no infringement.  The presence of additional steps in an accused method beyond those claimed, however, does not avoid infringement, as long as every claimed step is performed.

You may find direct infringement based on one instance of the claimed method being performed by a patient or physician (either separately or jointly).  Proof of direct infringement may be based on circumstantial evidence.

One may directly infringe a patent unknowingly – that is, without knowledge that what one is doing is an infringement of the patent.  One can be a direct infringer of a patent even if that person believes in good faith that he is not infringing any patent or even if he does not know of the patent.

All steps of the method must be performed for there to be direct infringement of an asserted claim.  If any step of an asserted claim is not performed, there is no direct infringement.

### F.    JOINT INFRINGEMENT

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single actor.  Where more than one actor is involved in practicing the steps, you must determine whether the steps performed by one actor are attributable to another actor.  There are two situations where the steps performed by one actor are attributable to another actor: (1) the actors have formed a joint enterprise; or (2) one actor directs or controls the other actor's performance of the claim steps.

Here, in addition to alleging that both physicians and patients directly infringe the asserted claims of the Asserted Patents, the United States also alleges that physicians and patients jointly infringe the asserted claims of the Asserted Patents.

For direct infringement to be proved by a physician and patient jointly, the United States must prove by a preponderance of the evidence (1) that all steps of the claimed method were performed and (2) that the acts of the patient are attributable to the physician, either because the physician and the patient have formed a joint enterprise or because the physician directs or controls the acts of the patient.

To prove that a physician and a patient have formed a joint enterprise, the United States must prove four elements by a preponderance of the evidence:

1    there was an agreement, either express or implied between the physician and the patient;

2    they shared a common purpose;

3    they had a common financial interest; and

4    each had an equal right of control in the enterprise.

To prove that a physician directed or controlled the acts of a patient, the United States must prove either that (1) the patient is the agent of the physician or is contractually obligated

to the physician to carry out the claimed steps, or (2) the patient performed the claim step(s) because the physician conditioned participation in an activity or receipt of a benefit upon performance of a step or steps of the claimed method and established the manner or timing of that performance.

## G.    INDUCED INFRINGEMENT

The United States alleges that Gilead is liable for actively inducing others to directly infringe the Asserted Patents.  A party actively induces patent infringement if it purposefully causes, urges, instructs, aids or encourages another to infringe an asserted claim.  In order to find a party liable for induced infringement of an asserted claim, you must first find direct infringement of that claim.  If there is no direct infringement by anyone, there can be no induced infringement.

Unlike direct infringement, inducing infringement cannot occur unintentionally.  To prove active inducement, the United States must prove by a preponderance of the evidence that each of GSI or GSIUC knowingly induced acts of direct infringement, meaning:

1.  the party aided, instructed, or otherwise acted with the intent to cause acts by others that would constitute direct infringement of the patent claim(s);

2.  the party was aware of the patent at that time, or showed willful blindness to the existence of the patent; and

3.  the party knew, or showed willful blindness, that the actions of the infringing party would directly infringe at least one claim of the patent; and

4.  the party actually caused the infringing party to carry out the acts of direct infringement.

To find willful blindness, you must find that (1) the accused party subjectively believed that there is a high probability that a patent existed covering the accused method and that the actions of the infringing party would directly infringe at least one claim of the patent; and (2) took deliberate actions to avoid learning of the patent and the infringement.

The United States has accused both GSI and GSUIC of induced infringement.  You must separately determine whether the United States has proven active inducement as to each of those defendants.  If you find that either GSI or GSIUC or both believed in good faith that it was not aiding, instructing or otherwise causing directly infringing acts by others, you may not find that that defendant induces infringement.

– 13 –

## H.      INVALIDITY – GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Gilead has proven that the asserted claims of the United States' patents are invalid.  As I previously told you, to prove that a claim of a patent is invalid, Gilead must persuade you by clear and convincing evidence.

Like infringement, you must determine whether each asserted claim of the Asserted Patents is invalid on a claim-by-claim basis.  As I instructed you earlier, there are independent claims and dependent claims in a patent.  A dependent claim recites all the requirements of its independent claim and adds additional requirements.  This means the scope of the dependent claim should be narrower than the scope of the independent claim from which it depends.

## I.      PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the named inventors' invention date.  Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the time of invention.  I will instruct you regarding the date of invention later on in these instructions.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventor and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. Rapidity with which innovations are made;

5. The sophistication of the technology.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

**J.      PRIOR ART – GENERALLY**

In order for someone to be entitled to a patent, the claimed invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art is considered in determining whether the asserted claims are invalid as anticipated (that is, not "new") or as obvious.  Prior art may include items that were publicly known or that were used or offered for sale or documents such as publications or patents, known as "prior art references," that disclosed the claimed invention or elements of the claimed invention.

## K.     DATE OF INVENTION

The date of invention is either when the invention was reduced to practice or when the invention was conceived, provided the inventors were diligent in reducing the invention to practice.  I may sometimes refer to the date of the invention as the time the invention was made.

The United States contends that the date of invention was when the invention claimed by the Asserted Patents was conceived.  Gilead contends the invention date was when the invention was reduced to practice.

Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception requires a showing that the inventor possessed every feature recited in the claims, and that every limitation of the claimed invention was known to the inventor at the time of the alleged conception.

Diligence means working continuously, though not necessarily every day.  The diligence must be reasonably continuous.   Periods of inactivity within the critical period, including interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her, do not prevent a finding of reasonable diligence.  That being said, the period during which diligence is required must be accounted for by either affirmative acts or acceptable excuses.  The diligence inquiry is to determine whether the invention was abandoned or unreasonably delayed.

A claimed method is reduced to practice when all of its elements are successfully performed and has been shown that it will work for its intended purpose, or when it is fully described in a patent application filed with the Patent Office.

The oral testimony of the inventors is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice.  An inventor's

testimony concerning conception, diligence and reduction to practice of an invention must be corroborated by independent evidence.  Evidence of diligence includes development efforts and work of non-inventors.

To prove the date of invention, the United States must produce evidence to prove that, for each asserted claim, that the invention was conceived by that date and the named inventors were diligent in reducing the invention to practice after that date.

**L.      INVALIDITY – ANTICIPATION GENERALLY**

An invention must be new relative to the prior art to be entitled to patent protection under the U.S. patent laws.  If an invention is not new, it is said to be anticipated.

To anticipate a claim, each element in the claim must be presented in a single item of prior art or in a prior invention by another and arranged or combined in the same way as recited in the claim.  I will now describe the different types of anticipation at issue in this case.

## M.       INVALIDITY – ANTICIPATION BY PRIOR PUBLIC KNOWLEDGE

An asserted claim is invalid if the invention defined in that claim was publicly known by others in the United States before the date of invention.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid because the claimed invention was known by Dr. Robert Grant and/or Dr. Marcus Conant and made available to the public in the United States before the named inventors' date of invention by Dr. Robert Grant.  Gilead also contends that the claimed invention was made available to the public in the United States before the named inventors' date of invention by Dr. John Kaldor.

To prove public knowledge of a particular claim, Gilead must prove by clear and convincing evidence that a publicly known method in the United States met all of the elements of the asserted claim.

For an invention to be publicly known, knowledge of the invention must be accessible to the public upon reasonable inquiry.  The public knowledge of the invention must teach one of ordinary skill in the art how to make or carry out the invention without undue experimentation, but the invention does not need to have been reduced to practice.

### N.      INVALIDITY – ANTICIPATION BY PRIOR PUBLIC USE

An asserted claim of the Asserted Patents is also invalid if either: (1) the invention defined in that claim was publicly used by others in the United States before the date of invention; or (2) it was publicly used by others in the United States more than one year before February 3, 2006.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid because the claimed invention was publicly used by Dr. Marcus Conant's patients beginning in 2004.

An invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by any other person who is not under any obligation of secrecy to the inventor.  Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation.  The absence of affirmative steps to conceal the use of the invention is evidence of a public use.   To be a prior public use, that use must have been accessible to the public upon reasonable inquiry.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use.  The invention is ready for patenting when there is reason to believe it would work for its intended purpose.  An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention.  An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

### O.   INVALIDITY – OBVIOUSNESS

A claim is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art as of the time the invention was made.  The issue is not whether the claimed subject matter would have been obvious to you as a layperson or to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to a person of ordinary skill in the art as of the time the invention was made.

In this case, Gilead contends that the asserted claims of the Asserted Patents are invalid as obvious.  Obviousness can only be found if you find that a reason existed at the time the invention was made to combine or modify the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success in doing so.   In determining whether the claimed invention was obvious, consider each asserted claim separately.

In determining whether an asserted claim is obvious, you must first consider the level of ordinary skill in the pertinent field that someone would have had at the time the invention was made.  You must determine what is the level of ordinary skill according to the instruction I gave you earlier.

Second, you must determine what prior art may be considered in determining whether the asserted claims are obvious.  Prior art may be considered if it discloses information designed to solve any problems or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.  In addition to printed references and publications, the prior art may also include established prior public knowledge and prior public uses   This is true even if that prior public knowledge or prior public use does not by itself anticipate any asserted claim.

You should consider whether any evidence relating to invalidity is materially new to the evidence considered by the U.S. Patent and Trademark Office ("USPTO").  Where the USPTO did not previously have all the material facts before it, Gilead's burden to prove invalidity by clear and convincing evidence may be easier to sustain.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the Asserted Patents.  As I instructed you earlier, you must put yourself in the place of a person of ordinary skill in the at the time the invention was made.

In considering whether a claimed invention is obvious, you should consider whether, at the relevant time, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine or modify the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.  To find it rendered the claimed invention obvious, you must find that the prior art gave a person of ordinary skill in the art a reasonable expectation of success in practicing the claimed invention.

Finally, in determining whether the claimed invention is obvious, you should consider any of the following factors (called "secondary considerations") that you find have been shown by the evidence:

1. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

2. Whether others had tried and failed to make the claimed invention;

3. Whether others copied the claimed invention;

4. Whether the claimed invention satisfied a long-felt need;

5. Whether others in the field praised the claimed invention;

6. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

7. Whether the claimed invention achieved unexpected superior results compared to the closest prior art;

8. Whether others sought or obtained rights to the patent from the patent holder; and

9. Whether the inventors proceeded contrary to accepted wisdom in the field.

When evidence establishes the presence of one or more of these secondary considerations, it tends to support a finding that the inventions were not obvious.

A secondary consideration is relevant only if there is a connection, or nexus, between the secondary consideration and the inventive concept of a patent claim. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those required by a claim, then any commercial success may have no relation to the issue of that claim's obviousness.

In addition to the above factors, another factor that you may consider is "whether others had contemporaneously conceived of or practiced the claimed invention." When evidence establishes that others contemporaneously conceived of or practiced the claimed invention, that tends to prove that invention would have been obvious.

– 24 –

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious.

### P.     INVALIDITY – LACK OF ENABLEMENT

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of February 6, 2006 to make and use the full scope of the claimed invention without undue experimentation.   This requirement is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In this case, Gilead contends that claim 18 of the '423 patent is invalid for lack of enablement.  As the party challenging validity, Gilead bears the burden of establishing, by clear and convincing evidence, that the specification fails to satisfy the enablement requirement.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain, such as what was well known in the art and what would have already been available to the public. In addition, the patent disclosure need not enable persons of ordinary skill to make a commercially viable product or to otherwise meet the standards for success in the commercial marketplace.

Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the claimed invention include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

– 26 –

7. the predictability of the art; and

8. the breadth of the claims;

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art as of February 6, 2006, a person having ordinary skill would need to experiment unduly to make and use the invention from the disclosures in the patent coupled with information known in the art.

III.      **DAMAGES**

    A.      **DAMAGES – GENERALLY**

I will next instruct you on damages.  You must not take these instructions as implying that the United States is entitled to recover damages.  Instructions regarding the measure of damages are given for your guidance in the event you find that Gilead infringed one or more valid patent claims.

If you find that Gilead is liable for inducing direct infringement of one or more of the asserted claims, and that the asserted claims are not invalid, you must determine the amount of money damages to be awarded to the United States**.**  On the other hand, if you find that none of the asserted claims is infringed, or that each of the asserted claims that you find infringed is invalid, then you should not consider damages in your deliberations.

The United States has the burden of proving damages by a preponderance of the evidence.  Although the United States is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

If proven by the United States**,** the amount of damages must be adequate to compensate the United States for the infringement.  The damages award cannot in any event be less than a reasonable royalty.  You may not add anything to the amount of damages to punish an accused infringer or to set an example.  You also may not add anything to the amount of damages for interest.

.

### B.     REASONABLE ROYALTY

The United States is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the alleged infringement began, which in this case, would be February 28, 2017, the date that the first Asserted Patent issued (the '333 Patent)

In considering this hypothetical negotiation, you should focus on what the expectations of the United States and Gilead would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations.  In determining this, you must assume that all parties to the hypothetical negotiation believed the patent was valid and infringed and that all parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that one party would have preferred.

### C.     REASONABLE ROYALTY – FACTORS RELEVANT TO THE HYPOTHETICAL NEGOTIATION

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

3. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

4. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

5. The duration of the Asserted Patents and the term of the license.

6. The established profitability of the product used under the Asserted Patents; its commercial success; and its popularity.

7. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

8. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

9. The extent to which the licensee has made use of the invention; and any evidence that shows the value of that use.

10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

11. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the alleged infringer.

12. The opinion testimony of qualified experts.

13. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

14. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors. You may also consider any other factors that in your mind would have increased or decreased the royalty Gilead would have been willing to pay, and the United States would have been willing to accept, acting as normally prudent businesspeople.

### D.    REASONABLE ROYALTY – APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features or other factors such as marketing or advertising, or Gilead's size or market position.

If you award a royalty as a percentage of revenue from infringing sales, you must determine the royalty base, which represents the revenue generated by the infringement, and the royalty rate, which represents the percentage of that revenue owed to the patent owner.  In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty base and the royalty rate must reflect the value attributable to the infringing use of the claimed method, and no more.  In other words, the royalty base must be closely tied to the invention's footprint in the marketplace.  It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate.  Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate.  Rather, you must determine an appropriate royalty base and an appropriate royalty rate that reflect the value attributable to the patented invention alone.  The ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

The process of separating the value of the allegedly infringing use from the value of all other uses is called apportionment.  When a product has both patented and unpatented uses, your award must be apportioned so that it is based only on the value of the patented uses, and no more.  In addition, your award must be based on the patented uses that GSI or GSIUC induces. In determining the royalty base, you also may not include sales of a product unless the United States proves that those products were actually used to perform the claimed methods.

### E.    REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation in February 2017.  Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.

### F.      REASONABLE ROYALTY – COMPARABLE LICENSE AGREEMENTS

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

*****

IV.     **DELIBERATIONS AND VERDICT**

     A.     **DELIBERATIONS AND VERDICT – INTRODUCTION**

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### B.      UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to every answer on the verdict form.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.   In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review that document with you in a minute.

You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

.

### C.      DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So, you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

### D.      SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### E.      COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.