UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>*Plaintiff–Counterclaim Defendant*,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br>*Defendant–Counterclaim Plaintiff,*<br><br>AND GILEAD SCIENCES IRELAND UC,<br>*Defendant*. | **C.A. No. 1:19-cv-02103-MN**<br><br>██████████████ |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW ON ISSUES OF INFRINGEMENT, ANTICIPATION, OBVIOUSNESS
AND ENABLEMENT, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:    (302) 573-6277
Fax:    (302) 573-6220
*shamoor.anis@usdoj.gov*

Of Counsel:

LENA YUEH
Special Counsel
U.S. Department of Justice

DAVID C. WEISS
United States Attorney

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director
CARRIE E. ROSATO
PATRICK C. HOLVEY
MATTHEW D. TANNER
LUCY GRACE D. NOYOLA
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
Tel:    (202) 307-0341
Fax:    (202) 307-0345

*Attorneys for Plaintiff United States*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iv

Table of Abbreviations ............................................................................................ viii

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.   LEGAL STANDARDS ............................................................................. 3

III.  ARGUMENT ............................................................................................ 4

   A.    Unrebutted Evidence Supports Overturning the Jury's Verdict of No Direct
         Infringement. ........................................................................................... 4

      1.    Dr. Murphy **Provided Unrebutted Evidence of Direct Infringement**
            Based on His Personal Experience in Prescribing PrEP and Counseling
            PrEP Patients. ................................................................................... 5

      2.    Gilead's REMS Data Also Provides Uncontroverted Evidence That
            Patients and Physicians Directly Infringe. ...................................... 7

      3.    Gilead Did Not Rebut This Evidence and Did Not Contest That Some
            Patients or Physicians Directly Infringe. ........................................ 9

      4.    The Court Should Grant the Government Judgment as a Matter of Law on
            Direct Infringement. ...................................................................... 10

   B.    The Asserted Claims Are Not Anticipated. ........................................... 11

      1.    Anticipation Must Be Proven by Clear and Convincing Evidence. .......... 11

      2.    There Is No Substantial Evidence of Anticipation. ......................... 13

      3.    The Grant Documents Are Not Substantial Evidence of Anticipation ...... 14

      4.    There Is No Evidence of Prior Public Knowledge From Dr. Kaldor. ........ 16

      5.    There Is No Corroboration of Dr. Conant's Alleged Prior Public Use. .... 17

   C.    The Asserted Claims Are Non-Obvious Over the Prior Art. .............................. 19

      1.    There Is No Substantial Evidence That Tsai, CA PEP, or the 2004 Truvada
            Label Expressly Disclosed the "Thereby" Limitation. ............................. 21

      2.    There Is No Substantial Evidence That Tsai, CA PEP, or the 2004 Truvada
            Label Inherently Disclosed the "Thereby" Limitation. ............................ 23

3.       The Government's Evidence Confirms Gilead's Failure to Meet Its
         Burden on Obviousness. .........................................................................24

4.       Alternatively, a New Trial Is Appropriate Based on Inappropriately
         Excluded Evidence of Non-Obviousness. .................................................25

D.      Claim 18 of the '423 Patent Is Enabled...............................................................27

E.      A New Trial Should Be Granted Based on Gilead's Reliance on the Government's
        Alleged Failure to Comply with the MTA Notice Provisions.............................30

# TABLE OF AUTHORITIES

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)......................................................................................4

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)..............................................................................13, 14

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
    561 F.3d 199 (3d Cir. 2009)..........................................................................................3

*Alcon Res. Ltd. v. Barr Labs., Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014)....................................................................................27

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33 (1980) .......................................................................................................4

*Amgen Inc. v. Hospira, Inc.*,
    944 F.3d 1327 (Fed. Cir. 2019)....................................................................................10

*Amgen Inc. v. Sanofi*,
    143 S. Ct. 1243 (2023)..................................................................................................27

*ArcelorMittal Fr. v. AK Steel Corp.*,
    700 F.3d 1314 (Fed. Cir. 2012)....................................................................................12

*Arendi S.A.R.L. v. Apple Inc.*,
    832 F.3d 1355 (Fed. Cir. 2016) ....................................................................................23

*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*,
    85 F. Supp. 3d 768 (D. Del. 2015) ................................................................................4

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
    932 F.3d 1364 (Fed. Cir. 2019)................................................................. 11, 13, 14, 15

*Barbed Wire Patent*,
    143 U.S. 275 (1892) .....................................................................................................11

*Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*,
    31 F.3d 1154 (Fed. Cir. 1994) .....................................................................................21

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) .......................................................................................................4

*Bruckelmyer v. Ground Heaters, Inc.*,
    445 F.3d 1374 (Fed. Cir. 2006).....................................................................................12

*Bruning v. Hirose*,
    161 F.3d 681 (Fed. Cir. 1998) ...................................................................28

*Dawn Equip. Co. v. Ky. Farms, Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998).................................................................10

*Eibel Process Co. v. Minn. & Ont. Paper Co.*,
    261 U.S. 45 (1923) ...............................................................................11, 17

*Finnigan Corp. v. Int'l Trade Comm'n*,
    180 F.3d 1354 (Fed. Cir. 1999)..........................................................12, 19

*Fireman's Fund v. Videfreeze Corp.*,
    540 F.2d 1171 (3d Cir. 1976)...................................................................10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) .................................................19, 20, 24

*In re Bayer*,
    568 F.2d 1357 (C.C.P.A. 1978)...............................................................12

*In re Cronyn*,
    890 F.2d 1158 (Fed. Cir. 1989)...............................................................12

*In re Klopfenstein*,
    380 F.3d 1345 (Fed. Cir. 2004)...............................................................12

*In re NTP, Inc.*,
    654 F.3d 1279 (Fed. Cir. 2011)...............................................................12

*In re Ochiai*,
    71 F.3d 1565 (Fed. Cir. 1995) .................................................................20

*In re Wyer*,
    655 F.2d 221 (C.C.P.A. 1981) .................................................................12

*Inline Connection Corp. v. Earthlink, Inc.*,
    684 F. Supp. 2d 496 (D. Del. 2010).........................................................23

*K/S Himpp v. Hear-Wear Techs, LLC*,
    751 F.3d 1362 (Fed. Cir. 2014) ...............................................................23

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004)........................................................passim

*Lightning Lube v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993).........................................................................4

*Mondis Tech. v. LG Elecs., Inc.*,
    2011 WL 3847603 (E.D. Tex. 2011)..............................................................................11

*Mycogen Plant Sci. v. Monsanto Co.*,
    243 F.3d 1316 (Fed. Cir. 2001).................................................................................10

*On Demand Mach. Corp. v. Ingram Indus.*,
    No. 4:01CV1668MLM, 2003 U.S. Dist. LEXIS 28275 (E.D. Mo. Dec. 3, 2003)............12

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)...............................................................................3, 13

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984)......................................................................................3

*Realtime Data, LLC v. T-Mobile USA, Inc.*,
    2013 WL 12144075 (E.D. Tex. 2013)......................................................................20, 24

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
    272 F.3d 1335 (Fed. Cir. 2001) .................................................................................28

*Salix Pharms., Ltd. v. Norwich Pharms., Inc.*,
    2022 WL 3225381 (D. Del. 2022)..............................................................................21

*Schenk v. Nortron Corp.*,
    713 F.2d 782 (Fed. Cir. 1983) ...................................................................................22

*Schumer v. Lab. Comput. Sys.*,
    308 F.3d 1304 (Fed. Cir. 2002)...............................................................................13, 29

*Southwire Co. v. Cerro Wire LLC*,
    870 F.3d 1306 (Fed. Cir. 2017) .................................................................................23

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1364 (Fed. Cir. 2011)...................................................................................24

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999).....................................................................................4

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002)...............................................................................25, 28

*Upjohn Co. v. Mova Pharm. Corp.*,
    225 F.3d 1306 (Fed. Cir. 2000) ...............................................................................19, 23

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
    799 F. Supp. 2d 1092 (N.D. Cal. 2011) ...................................................................20, 24

*Williamson v. Conrail*,
    926 F.2d 1344 (3d Cir. 1991)............................................................................4

*Woodland Tr. v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998)..............................................................passim

## Statutes

35 U.S.C. § 103............................................................................................20, 22

35 U.S.C. § 112....................................................................................................27

## Rules

Fed. R. Civ. P. 50.............................................................................................1, 4

Fed. R. Civ. P. 59.............................................................................................1, 4

## Treatises

9 *Wigmore on Evidence* § 2495 (3d ed. 1940)..............................................10

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Patent Office | U.S. Patent and Trademark Office |
| Pretrial Tr. | Transcript of pretrial conference (April 24, 2023) |
| Tr. | Transcript of jury trial proceedings (May 2-9, 2023) |

Plaintiff and Counterclaim Defendant, the United States (the Government), hereby moves for judgment as a matter of law (JMOL) under Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial under Fed. R. Civ. P. 59(a)(1).  The Government sued Defendants and Counterclaim Plaintiffs Gilead Sciences, Inc. (GSI) and Gilead Sciences Ireland UC (GSIUC) for induced infringement of U.S. Patent Nos. 9,044,509 (the '509 Patent), 9,579,333 (the '333 Patent), 9,937,191 (the '191 Patent) and 10,335,423 (the '423 Patent) based on four asserted claims (claim 13 of the '509 and '333 Patents and claim 18 of the '191 and '423 Patents).  The Court invalidated asserted claim 13 of the '509 Patent in pretrial motions, D.I. 450 at 8–9, and the Government proceeded to a jury trial on the three remaining asserted claims for the '333, '191, and '423 Patents (collectively, the Patents-in-Suit).

Following a five-day trial, the jury rendered its verdict on May 9, 2023, finding that (1) patients and physicians had not directly infringed the three asserted claims; (2) all three claims were anticipated and obvious; and (3) claim 18 of the '423 Patent was not enabled.  D.I. 469 at 2–4.  On May 15, 2023, the Court issued final judgment based on the jury's verdict.  D.I. 471.

This motion under Fed. R. Civ. P. 50(b), renewing the Government's Rule 50(a) motion (D.I. 460), requests that this Court grant to the United States judgment as a matter of law (JMOL).  The Government presented overwhelming evidence that at least one patient or physician directly infringed each of the asserted claims and Gilead did not present legally sufficient evidence to support any of the verdicts of patent invalidity.  Alternatively, the Government seeks a new trial under Fed. R. Civ. P. 59(a) on multiple grounds.  A proposed order is attached.

## I.    SUMMARY OF ARGUMENT

The jury's verdict on direct infringement, anticipation, obviousness, and enablement lacks legally sufficient evidence.  Under the applicable standards, no reasonable jury could find that the asserted claims were not directly infringed by a single patient or physician, that the claims were

1

all anticipated and obvious, or that claim 18 of the '423 Patent was not enabled based on the evidence and testimony Gilead presented at trial.  Therefore, a JMOL is appropriate.

Regarding direct infringement, the Government provided unrebutted evidence that at least one patient or physician infringed the asserted claims.  The Government's expert, Dr. Robert Murphy, testified that he had counseled "hundreds of" patients on Truvada® or Descovy® for PrEP and prescribed these regimens to "dozens" of patients who directly infringed.  Dr. Murphy further testified regarding Gilead's REMS surveys, which were required by the Food and Drug Administration (FDA) to ensure the safe and effective use of Truvada® and Descovy® for PrEP. The fifth survey (REMS 5) provided patient and physician survey answers collected after one or more of the Patents-in-Suit issued.  Those answers also demonstrate that patients and physicians directly infringe.

Regarding anticipation, each of Gilead's three theories (based on the activities of Dr. Marcus Conant, Dr. Robert Grant, and Dr. John Kaldor) all fail to provide evidence of prior public knowledge or a prior public use that both (1) discloses all claim limitations and (2) is properly corroborated, as is legally required.  In particular, the alleged public knowledge of Drs. Grant and Kaldor discloses nothing about efficacy as required by the "thereby" step, which requires an express or inherent disclosure of PrEP efficacy of the claimed two-drug combination of the asserted claims (which all require emtricitabine).  And the alleged public use by Dr. Conant, along with the alleged public knowledge of Dr. Kaldor are wholly uncorroborated by contemporaneous documents or independent witnesses.

Regarding the verdict of obviousness, none of Gilead's three principal prior art references discloses the "thereby" step.  And Gilead's expert, Dr. Charles Flexner, did not testify that this aspect of the claims is indisputably within the common knowledge of a person of ordinary skill.

Regarding the jury's finding that claim 18 of the '423 Patent is not enabled, Gilead only presented brief and conclusory testimony from Dr. Flexner that the recited "prodrug" encompassed possibly "tens of thousands" of compounds without any support.  There was no evidence presented by Gilead of "undue experimentation," as legally required.

If any portion of the Government's renewed Rule 50 motion is not granted, the Government alternatively seeks a new trial on two grounds.  First, on the issue of obviousness, the Government respectfully submits that the Court's *in limine* ruling excluding all aspects of Gilead's petitions for *inter partes* review of the Patents-in-Suit from the jury trial was manifestly unjust.  Second, the Government also respectfully submits that it was overly prejudicial and confusing to allow Gilead to argue that the Government provided insufficient notice under certain material transfer agreements in 2006-07, which was irrelevant to the patent issues considered by the jury.

## II.    LEGAL STANDARDS

To grant a renewed JMOL motion, the Court must determine that the jury's findings, "presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings."[1] *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation omitted); *see also Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).  "Substantial evidence" is "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review."  *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).  The inquiry is "not whether there is literally no evidence supporting the [nonmovant] . . . , but whether there is evidence upon which the jury could

---

[1] Where the moving party bears the burden of proof, the Court must also "test the body of evidence . . . for its overwhelming effect."  *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (internal quotation omitted).

properly find a verdict for that party." *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). In particular, "[g]eneral and conclusory testimony" by an expert witness "does not suffice as substantial evidence." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Under Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(l)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Unlike a Rule 50(b) motion, a court "need not view the evidence in the light most favorable to the verdict winner," and a court should grant a new jury trial where "the verdict was against the weight of the evidence" and "a miscarriage of justice would result if the verdict were to stand." *See id.* at 36; *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991). The Court should also grant a new trial "where the jury's verdict was facially inconsistent." *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015) (citation omitted).

## III.   ARGUMENT

### A.   Unrebutted Evidence Supports Overturning the Jury's Verdict of No Direct Infringement.

Patent infringement is a question of fact, "reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial. *See Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1357–58 (Fed. Cir. 1999).

Here, the jury found that the Government had not proven "***by a preponderance of the evidence that one or more patients or physicians (either separately or jointly)*** directly infringed" the three asserted claims.   D.I. 469 at 2 (emphasis added).   This verdict contradicts the overwhelming evidence presented at trial and is unsupported by the record.   At trial, the Government's expert witness on infringement, Dr. Robert Murphy, presented evidence of direct infringement based on (1) his personal experience counseling patients on their use of Truvada and Descovy for PrEP; (2) Gilead's Risk Evaluation and Mitigation Strategy (REMS) survey data submitted to FDA, PTX3053–55; and (3) other Gilead-generated survey and trial data regarding PrEP patients' behavior, PTX670; JTX20.  Dr. Murphy's conclusions of direct infringement based on (i) his own personal experience and (ii) the REMS survey data collected after the '333 Patent issued as well as other Gilead-generated survey and trial data provides, by itself, overwhelming evidence that one or more patients or physicians practiced each step of the asserted claims, and thus directly infringe.

### 1.     Dr. Murphy Provided Unrebutted Evidence of Direct Infringement Based on His Personal Experience in Prescribing PrEP and Counseling PrEP Patients.

At trial, Dr. Murphy testified that he had counseled "***many hundreds***" of patients on using PrEP, written PrEP prescriptions "in the ***dozens***," and continues these activities today.  Tr. 553:19–554:5 (emphases added).  And he detailed his process with patients who are ultimately prescribed either Truvada® or Descovy® for PrEP.  Tr. 556:20–557:10.  He further provided his opinion, based on his personal experience and other evidence, that PrEP patients and/or physicians had practiced all five steps of the three asserted claims:  (1) the preamble step, (2) the "selecting" step, (3) the "administering" step, (4) the "thereby" step; and (5) the "wherein" step.  Tr. 567:1–590:22.

Most notably, Dr. Murphy testified that he personally "follow[s] the instructions in [the Truvada® and Descovy®] inserts as part of his regular practice when prescribing or counseling

patients" and discusses "Gilead's instructions in the Truvada and Descovy inserts with patients" in prescribing or counseling patients on Truvada® or Descovy® for PrEP.  Tr. 561:14–562:13.  He further testified that, in his experience, "the patients follow the dosage and testing instructions for taking Truvada or Descovy for PrEP" including in the package inserts.  Tr. 563:10–13.

Because patients follow these dosage and testing instructions, Dr. Murphy concluded that patients and their physicians, including himself, directly infringe the asserted claims.  Tr. 597:13–21 (Truvada®); Tr. 614:7–15 (Descovy®).  First, patients using Truvada® or Descovy® for PrEP are periodically tested to confirm they remain HIV negative while receiving the drugs, which confirms that "establishment" of a "self-replicating infection" has been inhibited, as required by the "preamble."  Tr. 572:22–574:23; Tr. 578:7–14 (Truvada®); Tr. 600:13–18, 604:2–9 (Descovy®).  Second, the "selecting an uninfected human" step is met where the patient is confirmed as being HIV-negative before beginning PrEP.  Dr. Murphy confirmed that, in accordance with insert instructions, a patient must be tested and confirmed to be HIV negative before beginning PrEP.  Tr. 578:15–579:13(Truvada®); Tr. 600:13–18, 604:10–23 (Descovy®).  Third, by taking a daily tablet of Truvada® or Descovy®, the "administrating" step of the asserted claims is met, as the patient is taking a "pharmaceutically effective amount" of the claimed two-drug combination.  Tr. 580:15–581:19 (Truvada®); Tr. 605:14–606:18 (Descovy®).  Fourth, the "thereby" step requires, according to the Court's construction, for the patient to remain "negative for the immunodeficiency virus [*e.g.*, HIV]" while being administered Truvada® or Descovy® for PrEP.  Tr. 583:2–4.  The respective inserts both instruct that patients be HIV tested every three months, and patients actually are tested to confirm they remain HIV negative, which infringes the "thereby" step.  Tr. 583:5–22 (Truvada®); 606:19–607:17 (Descovy®).

6

The "wherein" step requires administering the drug combination prior to a potential exposure to HIV, which the Court construed to mean "prior to engaging in activity that could result in an exposure" to HIV.  D.I. 186 at 13.  Unlike the dosage and testing instructions, Dr. Murphy's patients did not follow the safe sex practices outlined in the Truvada® and Descovy® inserts, even though he counseled "every one of them" on such practices.  Tr. 590:6–15.  Thus, PrEP patients, including his own, were at "high risk" for HIV infection and subject to potential exposures to HIV, as set forth in the asserted claims.  *See* Tr. 615:13–616:1, *see also* Tr. 642:6–19 (asserting that "less than one percent" of his patients were not potentially exposed).  For these reasons, Dr. Murphy and his PrEP patients directly infringe the "wherein" step in accordance with the insert instructions designating PrEP for "high risk" patients and the Court's claim construction.  Tr. 590:16–22; Tr. 583:3–587:4 (Truvada®); Tr. 607:18–609:15, 611:7–25 (Descovy®).

### 2.     Gilead's REMS Data Also Provides Uncontroverted Evidence That Patients and Physicians Directly Infringe.

Dr. Murphy's opinions are further supported by REMS surveys conducted by Gilead. When Gilead applied to FDA for the Truvada for PrEP® indication, it submitted a REMS that included an overall strategy to ensure that Truvada for PrEP® "would be safe and effective throughout its uses."  Tr. 455:9–456:3 (Birnkrant).  The REMS surveys were periodically submitted "assessments" designed to evaluate if "there was compliance" with the label's instructions for safe and effective PrEP usage.[2]  Tr. 458:13–22.

---

[2] Though REMS surveys were conducted solely on the use of Truvada for PrEP®, Dr. Murphy explained that the Truvada® data was nonetheless applicable to the testing rates and behavior of Descovy for PrEP patients, as it involved the "same patient group" or "pool" and the "same clinician group" or "pool."  Tr. 601:17–21, 610:8–14.  Dr. Julia Marcus, another Government expert, corroborated this testimony.  Tr. 1043:3–11, 1045:2–11.  Dr. Flexner admitted that the "Mayer" Descovy study catalogued the same risky behaviors that were catalogued in the Truvada REMS surveys.  Tr. 1015:7–1016:8.

The fifth survey, REMS 5, included survey data collected from November 16, 2017 to July 9, 2018, Tr. 463:23–464:1 (citing PTX0355)—a time period overlapping with the issuance of the '333 Patent on February 28, 2017 (JTX2) and the '191 Patent (JTX3) on April 10, 2018. Dr. Murphy testified about results from this survey, including: (1) that all surveyed physicians confirmed that patients were HIV negative before beginning PrEP, Tr. 579:6–580:11; PTX3055 at 3055.061; (2) that all surveyed patients were regularly tested for HIV to confirm their negative status, Tr. 575:24–576:19 (discussing PTX3055 at 3055.062); (3) that patients frequently did not know the HIV status of their sexual partners, Tr. 586:19–587:1 (discussing PTX3055 at 3055.234), demonstrating that they engage in actions that are at high risk for potential exposure to HIV; and (4) that a high percentage of patients did not use a condom the last time they had had sex and had unprotected sex in the last three months, again demonstrating that they engage in activities that are at high risk for potential exposure to HIV, Tr. 587:2–11 (discussing PTX3055 at 3055.0234).

This data demonstrates by itself infringement of all five steps of the asserted claims. Item 1 demonstrates infringement of the "selecting" step, Tr. 580:8–11; item 2 demonstrates infringement of the "preamble" step, Tr. 577:9–12, and "thereby" step, Tr. 583:12–19; and items 3 and 4 demonstrate infringement of the "wherein" step. Given that REMS 5 surveyed physicians prescribing, PTX3055 at 3055.0012, and patients actively taking Truvada for PrEP®, *id.* at 3055:0020, REMS 5 also demonstrates infringement of the "administering" step. Dr. Murphy specifically relied on the REMS 5 results (and other REMS data) to support his infringement opinions. *See, e.g.*, Tr. 633:8–14.

**3.      Gilead Did Not Rebut This Evidence and Did Not Contest That Some Patients or Physicians Directly Infringe.**

Regarding the REMS data, Gilead's technical expert, Dr. Charles Flexner,[3] did not dispute that the data showed infringement, but instead opined that certain REMS data was collected before any of the Patents-in-Suit were granted and that the REMS 5 survey gathered data from a relatively small number of patients.[4]  Tr. 1000:16–1002:12.  Dr. Flexner's testimony does not contest Dr. Murphy's assertions that the REMS 5 survey results demonstrate that at least one patient or physician practiced the asserted claims, particularly in view of the millions of PrEP prescriptions written since the Patents-in-Suit have issued.  *See* PTX3087; Tr. 571:18–572:21.

In fact, Gilead did not argue that there was no infringement whatsoever based on a lack of direct infringement.  Instead, it argued that it did not ***induce infringement*** based on the safe sex practice recommendations in the package insert.  This point was made clear in Gilead's closing argument, wherein Gilead's counsel plainly stated:  "The government has not met its burden of proving induced infringement.  Gilead does not tell anyone to infringe the government's patents."  Tr. 1384:23–1385:1.  Regarding the REMS surveys, Gilead only questioned whether they evidenced inducement, not direct infringement.  *See* Tr. 1396:10–12 (questioning "how can Gilead be intend[ing] to infringe the government's patents if it's doing what the government told it to do").  In short, Gilead failed to present evidence, or even argue, that the record somehow lacked a preponderance of the evidence on the issue of direct infringement.

---

[3] Dr. Flexner had only prescribed Truvada for PrEP® to a small number of patients as part of a clinical trial and had never prescribed Descovy for PrEP®.  Tr. 1010:21–1011:17.

[4] Dr. Flexner also noted that no patient had testified in support of the Government's infringement case, Tr. 1000:3–5, but as the Court observed before trial, this is not typical practice, Pretrial Tr. 51:20–23, and it also ignores that an infringing physician, Dr. Murphy, did testify.  Dr. Flexner also asserts the flawed theory that proving infringement under a preponderance standard forecloses the use of aggregate REMS data.  Tr. 1000:16–1001:3.  There is no support for that assertion.

### 4. The Court Should Grant the Government Judgment as a Matter of Law on Direct Infringement.

This Court should grant judgment as a matter of law that there is direct infringement of each asserted claim by at least one patient or physician, as no reasonable jury could reach a contrary conclusion. *See Dawn Equip. Co. v. Ky. Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). Specifically, where the movant bears the burden of proof on an issue, as the Government does with patent infringement, judgment as a matter of law is appropriate if "there is insufficient evidence for permitting any different finding." *Fireman's Fund v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting 9 *Wigmore on Evidence* § 2495 at 306 (3d ed. 1940)); *see also Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019). That is the case here.

The Government provided specific evidence of direct infringement through Dr. Murphy's testimony about his personal experience in prescribing Truvada® and Descovy® for PrEP to dozens of patients as well as his experience counseling hundreds of patients on the use of Truvada® and Descovy® for PrEP, and the REMS 5 data. This evidence was not specifically challenged by Gilead or Dr. Flexner, nor did Gilead challenge the notion that some patients or physicians, among the millions of PrEP prescriptions, infringe the asserted claims. Such overwhelming and unrebutted evidence far exceeds the preponderance standard and supports a judgment of direct infringement as a matter of law.[5] *See Mycogen Plant Sci. v. Monsanto Co*., 243 F.3d 1316, 1325 (Fed. Cir. 2001) (granting JMOL where finding literal infringement where jury's verdict of no infringement was not supported by substantial evidence and the infringer did not challenge the infringement finding); *Mondis Tech. v. LG Elecs., Inc*., 2011 WL 3847603 at *6 n.12 (E.D. Tex.

---

[5] Given that the jury did not reach the issue of induced infringement, a JMOL on the issue of direct infringement further supports the Government's motion for a new trial.

2011) (granting JMOL that asserted claims were infringed where defendant "essentially conceded infringement in certain circumstances").

## B.   <u>The Asserted Claims Are Not Anticipated.</u>

Gilead alleged anticipation of the asserted claims based on three theories:  prior public knowledge (1) by Dr. Grant and (2) by Dr. Kaldor, and prior public use (3) by Dr. Conant.  *See* Tr. 976:3–977:18.  Gilead failed to present substantial evidence of anticipation for all these theories.

### 1.   **Anticipation Must Be Proven by Clear and Convincing Evidence.**

Under 35 U.S.C. § 102(a), a patent is invalid for anticipation if the invention was described in a printed publication, in public use, or otherwise available to the public before the invention.  A party asserting an anticipation defense must prove by clear and convincing evidence "that 'each and every element is found within a single prior art reference, arranged as claimed.'"  *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019) (quotation omitted).  That single prior art reference demonstrating prior knowledge or use "must have been available to the public." *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).  The party challenging validity thus "shoulder[s]" "an especially heavy burden."  *Koito Mfg.*, 381 F.3d at 1151 (quotation omitted).

When "recalling long-past events, uncorroborated testimony about prior knowledge or use," is not, on its own, clear and convincing evidence sufficient to invalidate a patent as anticipated.  *Woodland Tr.*, 148 F.3d. at 1369.  "Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information." *Id*. at 1372 (quoting *Barbed Wire Patent*, 143 U.S. 275, 284 (1892)); *see also Eibel Process Co. v. Minn. & Ont. Paper Co.*, 261 U.S. 45, 60 (1923) (finding oral evidence fell "far short of enough to overcome the presumption of novelty from the granting of the patent").  The need for corroboration is not dependent on whether the testifying witness is

interested in the outcome of the litigation or is uninterested but testifying on behalf of a party to the litigation. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999). Thus, "[c]orroboration of oral evidence of prior invention is the general rule in patent disputes." *Woodland Tr.*, 148 F.3d at 1371.

"Anticipation is a question of fact, reviewed for substantial evidence when tried to a jury." *ArcelorMittal Fr. v. AK Steel Corp.*, 700 F.3d 1314, 1322 (Fed. Cir. 2012). "Whether a reference is publicly accessible is a question of fact," also "review[ed] for substantial evidence." *In re NTP, Inc.*, 654 F.3d 1279, 1296 (Fed. Cir. 2011) (citation omitted). Specifically, "dissemination and public accessibility are the keys to the legal determination whether a prior art reference was published," as is statutorily required. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989) (quotation omitted); *see also In re NTP, Inc.*, 654 F.3d at 1296. "[T]he requirement of public accessibility can be satisfied under a variety of conditions, including when there has been a meaningful distribution, indexing, or display of the material to the public interested in the art." *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1381 (Fed. Cir. 2006) (citation omitted).

A factor weighing against a finding of public accessibility includes the existence of "reasonable expectations" that the reference or information would not be copied or shared with others. *See In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004); *see also In re Wyer*, 655 F.2d 221, 227 (C.C.P.A. 1981); *In re Cronyn*, 890 F.2d at 1160; *In re Bayer*, 568 F.2d 1357, 1361 (C.C.P.A. 1978). For example, when marked confidential, "disclosures of an invention for the purpose of securing financing is not a public disclosure to persons interested in the art." *On Demand Mach. Corp. v. Ingram Indus.*, No. 4:01CV1668MLM, 2003 U.S. Dist. LEXIS 28275, at *22 (E.D. Mo. Dec. 3, 2003) (citation omitted).

Testimony concerning anticipation usually must be "from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and ***explain in detail how each claim element is disclosed in the prior art reference***.  The testimony is insufficient if it is merely conclusory." *Schumer v. Lab. Comput. Sys.*, 308 F.3d 1304, 1315–16 (Fed. Cir. 2002) (emphasis added); *see also ATEN Int'l*, 932 F.3d at 1368.  Judgment as a matter of law is appropriate where the jury findings of anticipation "are not supported by substantial evidence or, if they were, [where] the legal conclusions implied by the jury's verdict cannot in law be supported by those findings." *Pannu*, 155 F.3d at 1348 (quotation omitted); *see ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1329 (Fed. Cir. 2012) (affirming JMOL of no anticipation because defendant's expert failed to explain how each claim element was met in the relied upon references).

### 2.     There Is No Substantial Evidence of Anticipation.

Dr. Flexner's testimony fails to provide substantial evidence of anticipation for any of Gilead's three theories of anticipation involving Drs. Grant, Kaldor, and Conant.  Dr. Flexner's anticipation analysis spans just three pages of the trial transcript (Tr. 975:20–977:18) and is highly conclusory.  He provided no testimony about how the alleged public knowledge or use satisfies any of the claim limitations, much less all claim limitations.  *Id.*

In particular, Dr. Flexner provided no testimony explaining why the alleged public knowledge or use satisfies the Court's construction of the "thereby" step, which the Court construed (and the jury was instructed) requires that "the human remains negative for the immunodeficiency virus while receiving administration" (Tr. 1414:13–16), and whether a human remains negative "is based on both a serological and PCR assay if both tests are performed but the claims do not require unnecessary testing to be done." Tr. 1414:17–19.  More generally, Dr. Flexner did not provide any analysis as to how Dr. Grant's or Dr. Kaldor's protocol proposals were

prior public knowledge of each and every claim limitation, nor did he provide any analysis as to how Dr. Conant' alleged public use met each and every claim limitation.

Gilead, thus, failed to provide substantial evidence of anticipation, and JMOL in favor of the Government is appropriate. *See, e.g.*, *ATEN Int'l*, 932 F.3d at 1368–69 (reversing the denial of a JMOL of no anticipation since the accused infringer had failed to provide testimony that showed that an alleged prior art reference met one of the claim limitations); *ActiveVideo Networks*, 694 F.3d at 1328–31 (affirming JMOL that claims were not anticipated since the accused infringer's expert testimony was not sufficiently specific to be substantial evidence to show that the prior art reference disclosed each claim limitation).

Beyond these basic failures, additional deficiencies with each of Gilead's three anticipation theories that are addressed below.

### 3. The Grant Documents Are Not Substantial Evidence of Anticipation.

Dr. Flexner's allegation of anticipation by Dr. Grant is based on a concept sheet, JTX62, and draft protocol, JTX64 (collectively, the Grant Documents), to study the use of Truvada for PrEP®. These documents do not evidence anticipation of the claims because, at minimum, they fail to disclose the "thereby" step recited by the claims and are not public.[6]

---

[6] While the Grant Documents were addressed by Gilead's witness Dr. Kimberly Page, Dr. Flexner did not rely on other aspects of her testimony in asserting prior public knowledge by Dr. Grant. None of the testimony supports a finding of anticipation. Specifically, Dr. Page offered **uncorroborated testimony** (1) that there were discussions, outside the United States, among a group about switching the Cambodia study to Truvada® for PrEP at a July 2004 conference, and (2) that Dr. Grant discussed the use of Truvada® for PrEP before a 2004 meeting in Atlanta but it was not discussed in the presentation. Tr. 901:12–903:14, 909:19–25, 920:14–25. Dr. Page also referenced an August 31, 2004 NIH grant proposal, DTX161, drafted by Dr. Grant, which presents a Truvada arm as a contingency if TDF alone showed moderate efficacy. Tr. 904:19–906:6. Dr. Page admitted the proposal was "kept within NIH in the review process," Tr. 918:11–919:12, consistent with Dr. Grant's testimony that the **grant proposal was kept confidential by NIH**, Tr. 1204:2–11.

14

a) **The Grant Documents Do Not Disclose the Thereby Step of the Asserted Claims.**

As discussed above, Dr. Flexner did not explain how the Grant Documents meet the "thereby" step as construed by the Court. His "[g]eneral and conclusory testimony" that the Grant Documents anticipate the asserted claims, does not constitute substantial evidence. *Koito Mfg.*, 381 F.3d at 1152 (citation omitted). In contrast, Dr. Grant explained that the "primary objective[]" of the Grant Documents was "to see if daily oral Truvada was a successful method for PrEP for HIV prevention in humans." Tr. 416:21–24 (discussing JTX64); *see also* Tr. 409:14–20 (explaining JTX62 included justifications for studying Truvada for PrEP because there was "no data" in the concept sheet demonstrating efficacy). The proposed experiments described in the Grant Documents intended to test efficacy, but no actual testing was performed. The Grant Documents therefore cannot demonstrate that any human remained negative for HIV while receiving administration of Truvada based on a serological and/or PCR assay because no results of a serological or PCR assay are described in the Grant Documents. To the extent the jury's finding of anticipation was based on the Grant Documents, that finding lacks substantial evidence because the documents do not disclose all limitations of the asserted claims. *See ATEN Int'l*, 932 F.3d at 1369.

b) **The Grant Documents Were Not Publicly Available.**

In addition, there is no evidence that the Grant Documents were made available to the public. Both of the Grant Documents were marked "Confidential" on every page of the documents (JTX62; JTX64), with the draft protocol further explaining on the cover page that the "draft has not been reviewed by any interested parties" and was "intended only to focus discussions of protocol development among interested parties." JTX64 at 64.001. Dr. Grant explained that these documents were marked confidential because he only wanted to

15

communicate his idea for a proposed clinical trial to the individuals that could support the study, Tr. 439:3–18, due to his concern that those in the field would think he was "studying the wrong regimen." Tr. 439:14–15. Further, Dr. Grant believed these documents were not made available to the public, Tr. 1205:19–25; Tr. 1207:1–3, and the recipients "would not forward [them] to anyone else." Tr. 1206:16–25 (addressing JTX64).

Dr. Page, Dr. Grant's former colleague, testified that she was involved with Dr. Grant's concept sheet and draft protocol. Tr. 910:21–911:7. While Dr. Page claimed that she did not treat the draft protocol, JTX64, confidentially despite the confidential markings, she did ***not*** testify that she failed to treat the concept sheet, JTX62, confidentially. *Id.* Further, Dr. Page did not testify that either document was in fact publicly available, nor did she identify a single member of the public that she made the documents available to, later confirming that both documents would not have been shared outside the clinical trial study group. Tr. 920:1–6, 922:3–4. Notably, Dr. Flexner did not address the confidentiality markings on JTX62 or JTX64 and gave no testimony that these documents were publicly available.[7] Dr. Page's uncorroborated testimony is not sufficient to establish that the Grant Documents were available to the public, *Woodland Tr.*, 148 F.3d at 1369–70. Gilead has not met its heavy burden of proving the asserted claims were anticipated by the Grant Documents.

### 4. There Is No Evidence of Prior Public Knowledge From Dr. Kaldor.

Gilead contends the asserted claims were anticipated by prior public knowledge from Dr. John Kaldor. *See* Tr. 1426:1–4 (jury instructions). But Gilead did not mention Dr. Kaldor in its

---

[7] Dr. Flexner did not rely on Dr. Page's testimony that she did not keep the Grant Documents confidential, only mentioning her testimony in passing to say some in the field were working on PrEP studies. *See* Tr. 963:16–24 (relying on Page testimony that some were considering studies of "TDF for HIV prevention"); Tr. 796:15–21 (Page and Grant working on Truvada PrEP study proposals as of July 2004).

opening or closing statements.  Nor did Gilead submit any documents associated with Dr. Kaldor's alleged public knowledge.  Gilead's invalidity expert, Dr. Flexner, made just one mention of Dr. Kaldor in the context of anticipation, but this testimony was "general and conclusory" and does not constitute "substantial evidence."[8]  *Koito Mfg.*, 381 F.3d at 1152 (citation omitted).

Other than Dr. Flexner's testimony, the only additionally evidence related to Dr. Kaldor was a stipulated fact that "Dr. John Kaldor submitted a grant application titled, "Safety and pharmacokinetics of oral tenofovir and emtricitabine in HIV negative Thai women" (1 R34 AI069962-01) to NIAID on August 29, 2005."  D.I. 446-1 at ¶ 58.  But the Kaldor grant application was not admitted into evidence and there is no testimony describing the application or whether it disclosed each and every element of the asserted claims.  For all these reasons, Gilead cannot meet its "especially heavy burden" to prove anticipation based on Dr. Kaldor's alleged public use.  *Koito Mfg.*, 381 F.3d at 1151 (quotation omitted).

### 5. There Is No Corroboration of Dr. Conant's Alleged Prior Public Use.

Dr. Conant's alleged use of Truvada for PrEP "in 2004 or 2005," Tr. 791:22–24; Tr. 793:15–21, is only supported by his testimony, which falls "far short of enough to overcome the presumption of novelty from the granting of the patent."  *Eibel Process Co.*, 261 U.S. at 60. Indeed, a party asserting invalidity may not rely only on uncorroborated, self-serving oral testimony.  *Woodland Tr.*, 148 F.3d at 1371.  Moreover, the documentary evidence that does exist

---

[8] Asked if he was aware of any other "discussions relating to the possibility of Truvada for PrEP for clinical trials in humans in either late 2004 or early 2005," Dr. Flexner testified that he was aware Dr. Kaldor "approached Gilead in early 2005 asking for Truvada for use in a HIV PrEP study that he was proposing."  Tr. 975:3–12.  No other evidence of this alleged request to Gilead was admitted.  The other scant references to Dr. Kaldor in the transcript are in the context of Dr. Flexner's obviousness analysis.  *See* Tr. 991:20–992:7, 1311:10–22, 1320:3–12.

here fails to corroborate Dr. Conant's testimony, and in fact contradicts his testimony in several important respects.

First, Dr. Conant testified that his patient named "Nick," the only patient he can specifically recall,[9] remained protected from contracting HIV while taking antiretroviral medication "because we tested him every time he came back for a refill" of his prescription, and he came back for a refill "[t]two or three times."  Tr. 801:19–802:4.  The documentary evidence contradicts this testimony because it shows that none of Dr. Conant's patients ever refilled their prescription.  *See* Tr. 809:25–810:12; PTX213 at 213.002–003 ("None, he said, have ever asked for a refill.").

Second, the description of Dr. Conant's prescription of antiretroviral medication to Nick demonstrates that he prescribed medication ***after*** Nick was potentially exposed to HIV, not before, as required by the asserted claims.  Tr. 800:17–803:5.  Specifically, Dr. Conant testified that Nick was recently potentially exposed to HIV prior to Dr. Conant's prescription because Nick was "having sex contemporaneously," Tr. 802:22–25, and "out there having sex every night."  Tr. 813:15–17.  Dr. Conant admitted that he did not instruct Nick to abstain from risky sexual behavior before Nick started taking medication, meaning Nick was prescribed PEP, not PrEP.  Tr. 802:19–803:5; Tr. 1202:6–1203:1.

Third, the earliest allegedly corroborating evidence of Dr. Conant prescribing Truvada for PrEP are two August 2006 newspaper articles, which occurred after the time of invention.  Tr. 793:22–794:23, 795:20–796:4; DTX509; DTX510.[10]   The documentary evidence more

---

[9] Dr. Conant could not recall details regarding any other alleged prescriptions of Truvada for PrEP in the period before the date of invention.  Tr. 794:18–795:1; Tr. 800:17–19.

[10] These exhibits are two versions of the same article printed in different publications.

contemporaneous with the invention, however, shows that Dr. Conant had specifically prescribed Viread (not Truvada).  Tr. 806:3–19; DTX126.

The contradictions and discrepancies between Dr. Conant's testimony "recalling long-past events" that was "prodded by the eagerness of interested parties" (*i.e.*, Gilead) and the documentary evidence fails to corroborate his testimony.[11]  *Woodland Tr.*, 148 F.3d. at 1369, 1372; *see also Finnigan Corp.*, 180 F.3d at 1369 (noting that corroboration is necessary because witnesses' memories are often unreliable).  Thus, there is insufficient corroborating evidence of an anticipatory prior public use of Truvada for PrEP to invalidate the asserted claims.  *Woodland Tr.*, 148 F.3d at 1369.

## C.  **The Asserted Claims Are Non-Obvious Over the Prior Art.**

"When the issue of obviousness is submitted to the jury, the underlying factual findings, whether explicitly made or as necessary to support the verdict, are reviewed to ascertain whether they are supported by substantial evidence."  *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1310 (Fed. Cir. 2000).  "The ultimate question of obviousness *vel non* is reviewed as a matter of law, viewing the evidence, when it is reasonably in dispute, in the manner most favorable to the verdict."  *Id.*  A jury's "verdict of obviousness must be supported by facts of (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) any objective indicia such as commercial success or long-felt need."  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1294 (Fed. Cir. 2009).  An obviousness determination requires a "fact-specific analysis of claims and prior art," including

---

[11] The scant evidence of Dr. Conant's prior public use is evidenced by Dr. Flexner's anticipation opinion, which makes only three brief and conclusory references to Dr. Conant's alleged prior public use.  *See* Tr. 975:13–19, 976:12–14, 977:5–12; *Koito Mfg.*, 381 F.3d at 1152.

"a searching comparison of the claimed invention—including all its limitations—with the teaching of the prior art."  *In re Ochiai*, 71 F.3d 1565, 1572 (Fed. Cir. 1995); *see also* 35 U.S.C. § 103.

JMOL is proper when the party challenging validity fails to demonstrate that all limitations of the claimed invention were present in the asserted prior art. *See, e.g.*, *Fresenius USA*, 582 F.3d at 1300 (holding that district court properly granted the plaintiff's JMOL motion as to invalidity defense of obviousness because the party challenging validity failed to present evidence that all of the elements of the claims were present in the prior art); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F. Supp. 2d 1092, 1099–100 (N.D. Cal. 2011); *Realtime Data, LLC v. T-Mobile USA, Inc.*, 2013 WL 12144075, *6–7 (E.D. Tex. 2013).

Gilead asserted only three bases for finding the asserted claims invalid for obviousness: (1) Tsai and the 2004 Truvada label,[12] *see* Tr. 978:7–10, (2) CA PEP and the 2004 Truvada label, Tr. 983:11–16, and (3) a combination of those three references, Tr. 987:6–17.  The record does not contain substantial evidence that the combination of any of these references renders obvious the "thereby" step of the asserted claims as construed by the Court.  The jury therefore had no factual basis on which to conclude that any of the asserted claims were obvious, and judgment as a matter of law in the Government's favor should be granted.

The "thereby" step of the asserted claims requires "thereby inhibiting the establishment of the self-replicating infection with the immunodeficiency virus in the human."  *See, e.g.*, JTX3 at 13:24–26.  The meaning of this step was a significant dispute during claim construction.  The Court resolved that dispute by determining that the "thereby" step was limiting and requires that "the human remains negative for the immunodeficiency virus while receiving the administration."

---

[12] The 2004 Truvada label does not contain the PrEP indication.  The PrEP indication was not included until 2012.  Tr. 556:1–4, 1326:23–1327:5.

Tr. 1414:13–16.  Step (b) of the claims requires administration of a pharmaceutically effective amount of emtricitabine and tenofovir (or TDF or a tenofovir prodrug).  *See, e.g.*, JTX3 at 13:18–23.  The Court clarified, and the jury was instructed, that whether a human host remains negative while receiving the administration of the combination of drugs "is based on both a serological and PCR assay if both tests are performed but the claims do not require unnecessary testing to be done." Tr. 1414:17–19; D.I. 186 at 10.

### 1.  There Is No Substantial Evidence That Tsai, CA PEP, or the 2004 Truvada Label Expressly Disclosed the "Thereby" Limitation.

Dr. Flexner failed to explain how any of the prior art references result in a human remaining negative while receiving the combination of emtricitabine and tenofovir (or TDF or a tenofovir prodrug) based on a serological and PCR assay.  On that basis alone, Gilead fails to prove obviousness.  *See Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, 2022 WL 3225381, *15 (D. Del. 2022) (the prior art did not describe all limitations of a method claim and "[o]n that basis alone, Defendant fails to prove obviousness"); *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1162–63 (Fed. Cir. 1994) (determining that the district court erred in denying patentee's motion for JMOL on obviousness because the record lacked substantial evidence that a limitation was obvious over the asserted prior art).

Dr. Flexner admitted that Tsai does not teach step (b) of administering a combination of emtricitabine and tenofovir.  *See* Tr. 979:9–14.  Tsai cannot disclose that any host remained negative while receiving the combination of emtricitabine and tenofovir based on a serological and PCR assay as required by the "thereby" step because Tsai only administers a single drug, tenofovir, and not a combination of drugs as required by the asserted claims.  *See* Tr. 1214:17–1215:5.  Dr. Flexner's conclusory testimony that Tsai meets the "thereby" step, *see* Tr. 979:15–980:1, is void

of any substantive analysis and fails to address the Court's construction of this step. *Koito Mfg.*, 381 F.3d at 1152. And it is contradicted by the express disclosure of Tsai itself.

For the 2004 Truvada label, Dr. Flexner never asserted that this reference met the "thereby" step. *See* Tr. 981:3–14.

Finally, Dr. Flexner's testimony regarding CA PEP was admittedly terse. *See id.* at 983:21–984:1 ("I promise I will spare you [the details]"). Dr. Flexner asserted that CA PEP meets the "thereby" step, *see* Tr. 984:21–25, but he improperly considered the "thereby" step in isolation. The Patent Act mandates that the claimed method be analyzed "as a whole," rather than dissected into discrete clauses or steps. *See Schenk v. Nortron Corp.*, 713 F.2d 782, 785 (Fed. Cir. 1983) (the statute "requires that an invention be considered 'as a whole'") (quoting 35 U.S.C. § 103). Dr. Flexner admitted that "CA PEP obviously does not teach administration of the drug combination prior to exposure, it only teaches administration of the combination ***after exposure***." Tr. 985:1–15 (emphasis added). The asserted claims require administration of the claimed compound ***prior*** to a potential exposure to an immunodeficiency retrovirus. Tr. 1414:23–24; JTX3 at 13:26–14:2. Dr. Flexner offered no testimony that CA PEP discloses any host remaining negative based on receiving the combination of emtricitabine and tenofovir prior to a potential exposure as required by the claimed methods. It is impossible for CA PEP to disclose the "thereby" step within the context of the claimed methods because CA PEP does not disclose that any host remained negative due to administration of emtricitabine and tenofovir being initiated prior to a potential exposure.

Thus, the record does not contain substantial evidence that any of Tsai, the 2004 Truvada label, or CA PEP expressly discloses the "thereby" step within the context of the claimed methods.

2.      **There Is No Substantial Evidence That Tsai, CA PEP, or the 2004 Truvada Label Inherently Disclosed the "Thereby" Limitation.**

There is also no inherent disclosure in the prior art of the "thereby" step.  The Federal Circuit has cautioned that "[t]he use of inherency in the context of obviousness must be carefully circumscribed because that which may be inherent is not necessarily known and that which is unknown cannot be obvious."  *Southwire Co. v. Cerro Wire LLC*, 870 F.3d 1306, 1310–11 (Fed. Cir. 2017).  For inherency to supply a missing claim limitation in an obviousness analysis, "the limitation at issue necessarily must be present."  *Id.* at 1311.  Dr. Flexner conceded that no prior art combination inherently discloses the "thereby" step because Gilead's "product label or package insert for Truvada says it's not a hundred percent or not completely protective against infection of HIV and the clinical studies confirm that."  Tr. 1023:14–19.

When a missing claim limitation "is not evidently and indisputably within the common knowledge of those skilled in the art," any testimony attempting to supply the missing limitation must "be supported by evidence and a reasoned explanation," particularly "where the missing limitation goes to the heart of an invention."  *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1363 (Fed. Cir. 2016); *see also K/S Himpp v. Hear-Wear Techs, LLC*, 751 F.3d 1362, 1365–66 (Fed. Cir. 2014).  During claim construction, the Court agreed that the "entirety of the patent" discusses protection from HIV, which is required by the claimed methods.  *See* D.I. 186 at 5–8.  Dr. Flexner did not testify that the "thereby" step is evidently and indisputably within the common knowledge of a person of ordinary skill, and his testimony is insufficient to support a finding by the jury that any of the three references relied upon by Gilead discloses the "thereby" step as construed by the Court.  *See, e.g., Upjohn Co.*, 225 F.3d at 1310–12 (reversing jury verdict of invalidity because the prior art did not render obvious a limitation recited by the claim); *Inline Connection Corp. v. Earthlink, Inc.*, 684 F. Supp. 2d 496, 521–23 (D. Del. 2010) (granting JMOL of nonobviousness

where there was no showing that the prior art disclosed each limitation of the asserted claims); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011) (reversing denial of JMOL on obviousness including because "[b]oth [prior art references] fail to teach the [recited] claim limitation").

### 3. The Government's Evidence Confirms Gilead's Failure to Meet Its Burden on Obviousness.

In contrast to the lack of proof of obviousness presented by Gilead, the Government provided significant evidence showing that the asserted claims are nonobvious over the prior art. Dr. Grant explained that Tsai cannot teach the "thereby" step because that reference did not use emtricitabine. *See* Tr. 1214:25–1215:5. He further explained that the 2004 Truvada label cannot meet the "thereby" step because it provides "no information about [Truvada's] use for prevention and they specifically say that you shouldn't do it." Tr. 1215:23–1216:3. He explained that PEP takes place after a potential exposure, and therefore CA PEP cannot meet the claimed method. Tr. 1224:12–1228:13. Dr. Grant similarly provided significant evidence relating to secondary considerations of nonobviousness, including: skepticism regarding the efficacy of PrEP, Tr. 1230:2–1231:13; copying of the Government's invention in contemporaneous clinical trials, Tr. 1231:19–1232:3; unexpected superior results, Tr. 1232:4–10; and the commercial success of the claimed inventions with sales in excess of $10 billion, Tr. 1232:11–24. And there is no dispute that a long felt need existed for the claimed inventions. Tr. 1231:14–18.

Given the lack of proof by Gilead and the significant evidence set forth by the Government, the Court should find as a matter of law that the asserted claims are not invalid for obviousness. *See, e.g.*, *Fresenius USA*, 582 F.3d at 1300; *Volterra*, 799 F. Supp. 2d at 1099–100; *Realtime Data*, 2013 WL 12144075 at *6–*7.

24

**4.    Alternatively, a New Trial Is Appropriate Based on Inappropriately Excluded Evidence of Non-Obviousness.**

If the Court is not inclined to grant JMOL on Gilead's obviousness defense in favor of the Government, it should at least order a new trial.  For the reasons discussed above, the jury's verdict of obviousness goes against the weight of the evidence because the prior art does not render obvious at least the "thereby" step.  *See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187–88 (Fed. Cir. 2002) (affirming grant of a new trial on obviousness because the prior art references did not each an efficiency claim limitation).

Also, Gilead's obviousness defense requires a person of ordinary skill in the art to have been motivated to pursue Truvada for PrEP during the 2004-06 timeframe.  *See, e.g.*, Tr. 1428:12–18.  Yet Gilead, who was one of the major HIV research companies during the relevant timeframe, readily concedes that it was not interested in pursuing Truvada for PrEP in that timeframe.  *See* Tr. 1230:25–1231:13, 1319:8–1320:2, 746:15–747:7; PTX3064 at 1004 ("In an unusual twist, tenofovir's maker, Gilead Sciences of Foster City, California—says it has no interest in pursuing PrEP because of fears that uninfected people who take tenofovir and still become infected might sue the company.").  Gilead's obviousness position requires the person of ordinary skill to have been motivated to pursue a prevention method that Gilead itself admittedly was not interested in pursuing.  The jury verdict rests on this contradiction and goes against the weight of evidence.

In addition, Gilead repeatedly made misleading and confusing statements that left the jury with the incorrect impression that the use of Truvada for PEP, and PEP guidelines, specifically, were never considered by the Patent Office in evaluating the nonobviousness of the asserted claims.  *See, e.g.*, Tr. 1314:15–23 ("It is my understanding from reviewing the prosecution history of these three patents that the government's patent examiner did not have access to the California PEP June 2004 guidelines."), 1382:6–10 ("[Y]ou heard the examiner did not consider the

25

California PEP guidelines at all."), 1252:22–1253:5.  It was misleading for Gilead to present this type of testimony and argument to the jury when it was fully aware that the Patent Office had considered and rejected Gilead's position that the disclosure of Truvada for PEP in PEP guidelines renders the asserted claims obvious in each of Gilead's unsuccessful IPR petitions.  Specifically, the Patent Office determined that the use of Truvada® for PEP disclosed in prior art PEP guidelines did not raise even a reasonable likelihood of obviousness in four failed IPR Petitions filed by Gilead.  *See* D.I. 448-18 at 29–38, 168–70.  Due to Gilead's motion practice, the Government was precluded from even mentioning Gilead's failed IPR Petitions during the jury trial.  *See* Pretrial Tr. 64:17–65:15; D.I. 450 at 3.  Accordingly, the Government could not rely upon or cross-examine Dr. Flexner on the Patent Office's contrary understanding of the cited CDC PEP (Jan. 2005) guidelines, JTX65, which the Government contends are not materially different from the CA PEP guidelines, JTX11, and CDC PEP guidelines (Sept. 2005), JTX66, relied upon by Dr. Flexner in his obviousness analysis.  *See* D.I. 434-18 at 168.

Gilead's repeated statements are particularly misleading and confusing in view of the jury instruction that where "the USPTO did not previously have all the material facts before it, Gilead's burden to prove invalidity by clear and convincing evidence may be easier to sustain."  Tr. 1429:18–21.  A new trial should be granted in view of the prejudicial effect of Gilead's misleading and confusing statements that the Patent Office had not considered the disclosure of Truvada for PEP when, in fact, the Patent Office had considered that very issue in denying Gilead's IPR petitions.

Gilead further made misleading and confusing statements regarding obviousness by treating the Grant Documents, Dr. Kaldor's alleged public knowledge, and Dr. Conant's alleged public use as prior art to the Patents-in-Suit.  *See* Tr. 971:11–975:19, 983:1–3, 986:17–24, 991:9–

992:9.  Gilead failed to provide substantial evidence to prove that any of this material qualifies as prior art to the Patents-in-Suit at least because the materials were not disseminated to the public and/or because the testimony provided to the jury lacked corroboration for at least the reasons discussed above.  *See supra* Part III.B.

In particular, these facts hopelessly taint the obviousness allegations made by Gilead at trial, as (1) the alleged Grant and Kaldor prior knowledge; (2) the alleged Conant prior public use; and (3) the CA PEP, JTX11, and CDC PEP (Sept. 2005) guidelines, JTX66, constitute the heart of what Dr. Flexner cited as background prior art.  Even more importantly, he cited this alleged art in specifically addressing the secondary considerations, such as long-felt need, *e.g.*, Tr. 991:9–992:9, and whether Truvada for PrEP was "obvious to try" with a "reasonable expectation of success," Tr. 982:21–983:3 (citing alleged Conant public use).  Accordingly, a new trial should be granted on obviousness in view of the prejudicial effect of Gilead's misleading and confusing statements about the breadth of the prior art—and in particular its assertions that much was publicly known about the potential use of Truvada for PrEP and its efficacy as a PrEP regimen.

**D.      Claim 18 of the '423 Patent Is Enabled.**

A patent is enabling when its specification describes the claimed invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention."  *Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1255 (2023) (quoting 35 U.S.C. § 112).  A patent need not "describe with particularity how to make and use every single embodiment within a claimed class."  *Id.* at 1254.  "[A] specification may call for a reasonable amount of experimentation to make and use a claimed invention."  *Id.* at 1255.  To establish a lack of enablement, "a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'"  *Alcon Res. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014).

Gilead failed to present substantial evidence that claim 18 of the '423 Patent requires undue experimentation for a person of ordinary skill in the art to make and use the invention. Dr. Flexner's testimony on this issue, the only evidence presented at trial by Gilead, spans just six pages of the trial transcript. *See* Tr. 993:19–998:5. Dr. Flexner stated—in conclusory fashion— that claim 18 is not enabled because the "tenofovir prodrug" term covers "literally thousands or tens of thousands of possible candidates." Tr. 994:19–995:3. Dr. Flexner provided no explanation why he believes the claim covers tens of thousands of possible candidates.

Dr. Flexner's conclusory testimony, which was presented without any evidentiary support, is insufficient to prove invalidity by clear and convincing evidence because "some evidentiary support must be offered beyond an expert's conclusory opinion." *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1358 (Fed. Cir. 2001) (cert. granted, judgment vacated and remanded on other grounds, 538 U.S. 974 (2003) and opinion modified and reinstated, 345 F.3d 1366 (2003)). For example, the Federal Circuit previously determined that conclusory and speculative expert testimony did not establish that the patent lacks enablement. *See Bruning v. Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998). It similarly affirmed this Court's grant of a new trial overturning a jury verdict that claims were invalid for lack of an enabling disclosure where the defendant's expert provided only "general and vague" statements that "hundreds and hundreds" of ineffective compositions were within the scope of a claim. *Union Carbide*, 308 F.3d at 1186.

The lack of substantial evidence provided by Dr. Flexner's conclusory testimony is readily apparent in view of the Government's expert witness, Dr. Thakker, who provided extensive testimony explaining that a person of ordinary skill in the art would not "have to look at tens of thousands of prodrugs." Tr. 1178:19–20. He explained that "you're looking at a very small subset of potential thousands of molecules" because with tenofovir "we knew that there is a negative

charge which we need to ma[sk] so that we can improve adsorption" and "[t]he moment you know the problem, you now actually can design or find in the literature prodrugs that already have amassed." Tr. 1178:21–1179:7. He further explained that there are a finite number of tenofovir prodrugs "that have been tested and evaluated and one can choose from those." Tr. 1184:16–22.

Dr. Thakker's testimony was fully supported by references authored by Gilead, but not addressed by Dr. Flexner. Dr. Thakker explained, for example, that Gilead's Becker reference, PTX1509, teaches a manner to find and identify additional tenofovir prodrugs that "not only should get absorbed into the bloodstream, but once it is in the bloodstream it should still continue to really have stability until it enters the cells which harbor the virus." Tr. 1176:2–15; *see generally* Tr. 1176:16–1178:2. He further explained that "a simple test like a stability toward intestinal homogenate, gives them a good insight" on how tenofovir prodrugs will behave. Tr. 1174:9–1175:5, 1179:2–7, 1179:25–1180:7. This testimony was based on, for example, Gilead's Shaw reference, PTX1507. *Id.*

Gilead's unsupported and conclusory testimony from Dr. Flexner on the issue of enablement does not establish that it is highly probable that claim 18 of the '423 Patent is invalid. *See Schumer*, 308 F.3d at 1315–16 (testimony concerning invalidity is "insufficient if it is merely conclusory" and accepting "generalized testimony as evidence of invalidity is improper"). Gilead failed to present evidence to meet its high burden by clear and convincing evidence that a person of ordinary skill in the art could not practice claim 18 of the '423 Patent without undue experimentation. Accordingly, no reasonable jury could conclude that claim 18 is invalid for failing to meet the enablement requirement.

**E.**     **A New Trial Should Be Granted Based on Gilead's Reliance on the Government's Alleged Failure to Comply with the MTA Notice Provisions.**

For the reasons discussed above, a new trial should be granted.  *See supra* Part III.C.4. Additionally, the Court denied the Government's motion to preclude Gilead from offering arguments and testimony about breach of contract issues relating to Material Transfer Agreements (MTAs), but it expressed concern for juror confusion based on Gilead's presentation of MTA issues.  *See* Tr. 536:25–544:23; Pretrial Tr. 52:5–58:6; D.I. 450 at 3.  Gilead proceeded to permeate the record with irrelevant, misleading, and confusing allegations about breach of contract relating to the MTAs that had nothing to do with patent infringement or validity.  *See, e.g.*, Tr. 1391:25– 1392:19, 1397:6–16, 137:19–138:6, 169:3–21, 321:22–322:12, 336:3–340:14, 742:14–745:18, 753:12–22, 754:15–755:5.  Dr. Rooney, for example, alleged that the Government breached the "prompt notification" provision of the MTAs.  *See* Tr. 848:1–849:16, 850:23–851:7, 858:21–25 ("Q. Did all of the MTAs require the CDC to promptly notify Gilead of any invention?  A. Yes.  Q. Did the CDC do that?  A. No, they did not.").  As another example, during closing arguments Gilead's counsel argued that Dr. Heneine did not "tell anyone about his patent" and he "even kept the patents from his own colleagues at the CDC," *id.* at 1393:6–7, 1393:12–13, and "[i]f Admiral Mermin didn't know about these patents from somebody in his own division, how could Gilead be expected to know."  *Id.* at 1394:17–19.

Gilead's repeated allegations that it was not "promptly notified" about the patents under the MTAs confused the jury regarding the actual issue of knowledge of the patents, which Gilead readily admits it had.  *See* Tr. 539:4–8, 745:10–14, 849:13–16.  In turn, it was also highly prejudicial in that Gilead's supposed arguments about knowledge of the patents, permitted by the Court, in fact were used by Gilead to indicate the Government had behaved unethically and unfairly.  For these reasons, the Court should grant a new trial.

30

Dated: June 12, 2023

SHAMOOR ANIS
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899-2046
Tel:    (302) 573-6277
Fax:    (302) 573-6220
*shamoor.anis@usdoj.gov*


Of Counsel:
LENA YUEH
Special Counsel
U.S. Department of Justice

Respectfully submitted,

DAVID C. WEISS
United States Attorney

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

*/s/ Walter W. Brown*
WALTER W. BROWN
Senior Litigation Counsel

PHILIP CHARLES STERNHELL
Assistant Director

CARRIE E. ROSATO
PATRICK C. HOLVEY
MATTHEW D. TANNER
LUCY GRACE D. NOYOLA
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C.  20530
Tel:    (202) 307-0341
Fax:    (202) 307-0345

*Attorneys for Plaintiff United States*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| |
|---|
| THE UNITED STATES OF AMERICA, |
| *Plaintiff-Counterclaim Defendant*, |
| v. |
| GILEAD SCIENCES, INC., |
| *Defendant-Counterclaim Plaintiff*, |
| AND GILEAD SCIENCES IRELAND UC, |
| *Defendant*. |

Civil No. 1:19-cv-02103-MN

**[PROPOSED] ORDER GRANTING PLAINTIFF'S RENEWED**
**MOTION FOR JUDGMENTS AS A MATTER OF LAW ON ISSUES OF**
**INFRINGEMENT, ANTICIPATION, OBVIOUSNESS AND ENABLEMENT,**
**OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

WHEREAS Plaintiff and Counterclaim Defendant, the United States of America, renewed their motion for judgments as a matter of law and, in the alternative, for a new trial; and

WHEREAS, the Court having considered the motions, and any opposition thereto;

NOW, THEREFORE, IT IS HEREBY ORDERED this _____ day of

_____, 20____, that the United States' renewed motion for judgment as a matter of law is GRANTED IN FULL.  At least one patient or physician directly infringed claim 13 of U.S. Patent No. 9,579,333, claim 18 of U.S. Patent No. 9,937,191 and claim 18 of U.S. Patent No. 10,335,423.  These claims are also not anticipated or obvious; and claim 18 of the '423 Patent is enabled.  Consistent with this Order, the Court further grants a new trial limited to the issues of induced infringement of these claims and damages.

1

_____          _____
DATE                               THE HONORABLE MARYELLEN NOREIKA
                                   DISTRICT JUDGE
                                   UNITED STATES DISTRICT COURT
                                   DISTRICT OF DELAWARE